(c) <u>Students with 17-Month STEM OPT employment authorization</u>.  (1) Subject to paragraph (c)(3) of this section, any Employment Authorization Document, Form I-766, indicating a 17-month OPT extension under the rule issued at 73 FR 18944 that has been issued and is valid prior to May 10, 2016 remains valid until such Form I-766 expires or is terminated or revoked under 8 CFR 274a.14, and the student, the student's employer, and the student's DSO must continue to abide by all the terms and conditions that were in effect when the Form I-766 was issued.

(2) Subject to the requirements in paragraphs (c)(2)(i) through (iii) of this section, F-1 students with a 17-month OPT extension under the rule issued at 73 FR 18944 are eligible to apply for an additional 7-month period of OPT.  The F-1 student applying for the additional 7-month period of OPT must:

(i) Properly file a Form I-765, with USCIS on or after May 10, 2016 and on or before August 8, 2016, and within 60 days of the date the DSO enters the recommendation for the 24-month OPT extension into the student's SEVIS record, with applicable fees and supporting documentation, as described in the form instructions;

(ii) Have at least 150 calendar days remaining prior to the end of his or her 17-month OPT extension at the time the Form I-765, is properly filed; and

(iii) Meet all the requirements for the 24-month OPT extension as described in 8 CFR 214.2(f)(10)(ii)(C), except the requirement that the student must be in a valid period of post-completion OPT authorized under 8 CFR 274a.12(c)(3)(i)(B).

(3) Students on a 17-month OPT extension who apply for and are granted an additional 7-month period of OPT shall be considered to be in a period of 24-month OPT extension, as authorized under 8 CFR 214.2(f)(10)(ii)(C).  Upon proper filing of the application for the

additional 7-month OPT extension, the student, the student's employer as identified in the student's completed Form I–983 and the student's DSO are subject to all requirements of the 24-month OPT extension period, except for the 150-day unemployment limit described in 8 CFR 214.2(f)(10)(ii)(E), which applies to students only upon approval of the additional 7-month OPT extension.  Subsequent to any denial of the application for the additional 7-month extension, the student, the student's employer, and the student's DSO must abide by all the terms and conditions that were in effect when the 17-month OPT extension was issued throughout the remaining validity period of the 17-month OPT extension.

## PART 274a—CONTROL OF EMPLOYMENT OF ALIENS

5.  The authority citation for part 274a continues to read as follows:

**Authority:** 8 U.S.C. 1101, 1103, 1324a; 48 U.S.C. 1806; 8 CFR part 2.

## Subpart B—Employment Authorization

6.  In § 274a.12, revise paragraph (b)(6)(iv) and (v) and (c)(3)(i) to read as follows:

§ 274a.12  **Classes of aliens authorized to accept employment.**

* * * * *

(b) * * *

(6) * * *

(iv) An Employment Authorization Document, Form I-766 or successor form, under paragraph (c)(3)(i)(C) of this section based on a STEM Optional Practical Training extension, and whose timely filed Form I-765 or successor form is pending and employment authorization and accompanying Form I-766 or successor form issued under paragraph (c)(3)(i)(B) of this section have expired.  Employment is authorized beginning on the expiration date of the Form I-766 or successor form issued under paragraph (c)(3)(i)(B) of this section and ending on the date of USCIS' written decision on the current Form I-765 or successor form, but not to exceed 180

299

Exhibit 1
632

days.  For this same period, such Form I-766 or successor form is automatically extended and is considered unexpired when combined with a Certificate of Eligibility for Nonimmigrant (F-1/M-1) Students, Form I-20 or successor form, endorsed by the Designated School Official recommending such an extension; or

(v) Pursuant to 8 CFR 214.2(h) is seeking H-1B nonimmigrant status and whose duration of status and employment authorization have been extended pursuant to 8 CFR 214.2(f)(5)(vi).

* * * * *

(c) * * *

(3) * * *

(i)(A) Is seeking pre-completion practical training pursuant to 8 CFR 214.2(f)(10)(ii)(A)(1) and (2);

(B) Is seeking authorization to engage in up to 12 months of post-completion Optional Practical Training (OPT) pursuant to 8 CFR 214.2(f)(10)(ii)(A)(3); or

(C) Is seeking a 24-month OPT extension pursuant to 8 CFR 214.2(f)(10)(ii)(C);

* * * * *

_____

Jeh Charles Johnson,

Secretary of Homeland Security.

[FR Doc. 2016-04828 Filed: 3/9/2016 8:45 am; Publication Date:  3/11/2016]

300

Exhibit 1
633

# **Action 31**

L-1B Adjudications Policy

Exhibit 1
634

U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC  20529-2000

**MEMO FOR FEEDBACK**

Posted:                03-24-2015
Feedback period ends:  05-08-2015

This memo is effective 08-31-2015.

**March 24, 2015**                                    **PM-602-0111**

# Policy Memorandum

SUBJECT:   L-1B Adjudications Policy

## Purpose

This policy memorandum provides guidance on the adjudication of the L-1B classification, which permits multinational companies to transfer employees who possess "specialized knowledge" from their foreign operations to their operations in the United States.  It provides consolidated and authoritative guidance on the L-1B program, superseding and rescinding certain prior L-1B memoranda.  USCIS is issuing this memorandum for public review and feedback. Upon final publication, the memorandum will update chapter 32.6(e) of the Adjudicator's Field Manual (AFM).

## Scope

This memorandum applies to and shall be used to guide determinations by all U.S. Citizenship and Immigration Services (USCIS) employees.

## Authorities

- Immigration and Nationality Act (INA) sections 101(a)(15)(L) and 214(c)(2), 8 U.S.C. 1101(a)(15)(L) and 1184(c)(2).
- 8 CFR 214.2(l).

## Policy

## I.   Introduction

The L-1 ("intracompany transferee") nonimmigrant visa classification permits multinational companies to transfer certain categories of employees from their foreign operations to their operations in the United States.  Specifically, the L-1A classification is available for intra-

Exhibit 1
635

company transfers of corporate managers and executives, while the L-1B visa classification enables intracompany transfers of employees who possess "specialized knowledge." This memorandum sets forth USCIS policy regarding the L-1B classification for workers with specialized knowledge.

Congress created the L-1B classification so that multinational companies could more effectively transfer foreign employees with specialized knowledge to their U.S. operations, enhancing such companies' ability to leverage their workforces. Employees who work in any industry and serve in any type of position may be classified as L-1B nonimmigrants, so long as the position described in the L-1B petition requires specialized knowledge and the beneficiary is found to possess such knowledge. Creation of the program reflected Congress's concerns with meeting the workforce needs of multinational employers operating in an increasingly global marketplace. USCIS's mission is to ensure that the objectives of the L-1B program are achieved and that the program's integrity is maintained.

This memorandum provides guidance to officers in adjudicating petitions filed by employers seeking to transfer "specialized knowledge" personnel to the United States. The guidance provides clarification regarding how L-1B petitioners may demonstrate that an employee possesses specialized knowledge. In the case of off-site employment, it also provides greater clarity regarding compliance with the requirements of the L-1 Visa (Intracompany Transferee) Reform Act of 2004 ("L-1 Visa Reform Act"), Pub. L. No. 108-447, div. J, tit. IV, subtit. A, 118 Stat. 3351. The practical approach outlined in this guidance reflects the L-1B classification's broad statutory and regulatory definitions, while serving the purpose of the L-1B program and recognizing the fluid dynamics of the business world in which petitioning organizations operate.

This memorandum provides consolidated and authoritative guidance on the L-1B program, superseding and rescinding prior L-1B memoranda as described in Section III. It interprets existing statutory and regulatory authorities to promote consistency and efficiency in L-1B adjudications and the policy objectives described herein. Such adjudications require individualized assessments based on a totality of the circumstances and determinations based upon the law and a preponderance of the evidence presented.

## II.    Background

In 1970, Congress created the L-1 visa program after concluding that immigration laws at the time unduly restricted the transfer and development of foreign personnel vital to the interests of U.S. businesses.[1] Congress designed the L-1 classification to enable employers to more effectively transfer such personnel within their organizations, including personnel with "specialized knowledge." The legislative history indicates that Congress intended for the class of eligible persons to be narrowly drawn, but Congress also anticipated that the L-1 petition

---

[1] See generally Immigration Act of 1970, Pub. L. No. 91-225; H.R. Rep. 91-851, as reprinted in 1970 U.S.C.C.A.N. 2750, 2753-54 (noting the need to "help eliminate problems faced by American companies having offices abroad transferring key personnel freely within the organization").

Exhibit 1
636

process would be administered in an efficient way to facilitate qualifying personnel transfers for U.S. businesses.

The 1970 Act, however, did not define "specialized knowledge."  Interpretation of the term thus developed over time through a series of agency regulations and precedent decisions, which generally imposed new and increasingly restrictive requirements.  Such requirements included, for example, that specialized knowledge must relate to "proprietary" information and that such knowledge cannot otherwise be available in the U.S. labor market.

In 1990, Congress sought, among other things, to provide clarity to the term "specialized knowledge" through the passage of the Immigration Act of 1990, Pub. L. No. 101-649.  This Act provides the current statutory definition of "specialized knowledge":

> [A]n alien is considered to be serving in a capacity involving specialized knowledge with respect to a company if the alien has a special knowledge of the company product and its application in international markets or has an advanced level of knowledge of processes and procedures of the company.

Immigration and Nationality Act (INA) 214(c)(2)(B).  In drafting the 1990 Act, Congress intended to broaden the use of the L-1 visa category in specific ways.[2]  Notably, the 1990 Act did not include a proprietary knowledge requirement.  H.R. Rep. 101-723(I), 1990 U.S.C.C.A.N. at 6749.

Subsequently, the former Immigration and Naturalization Service (INS) revised its L-1 regulations to include a more liberal interpretation of specialized knowledge.  56 Fed. Reg. 31,553, 31,554 (1991).  The definition of "specialized knowledge" in those regulations, which continues to govern today, closely tracks the statutory definition:

> [S]pecial knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures.

Title 8, Code of Federal Regulations (8 CFR) 214.2(1)(l)(ii)(D).  The prior regulatory definition had required that the beneficiary possess an advanced level of expertise, as well as proprietary knowledge not available in the U.S. labor market.  The new (and current) definition eliminated these requirements, permitting a finding of specialized knowledge in more varied circumstances. This approach is consistent with the intent of Congress to enhance the ability of multinational employers to use the specialized skills of their employees and to promote the United States as a global business destination.

---

[2] The 1990 Act expanded eligibility for L-1 classification in four ways: (1) by allowing certain accounting firms access to the L-1 program; (2) by recognizing the L-1 blanket petition process; (3) by expanding the 'one-year' foreign employment requirement to include employment within three years prior to admission, and (4) by providing a seven-year maximum period of L-1A admission for managers and executives.  *See* H.R. Rep. 101-723(I)(1990), reprinted in 1990 U.S.C.C.A.N. 6710, 6749.

Exhibit 1
637

Following promulgation of the above regulation, legacy INS and USCIS issued the following memoranda to clarify the meaning of specialized knowledge:

- Memorandum of James A. Puleo, Acting Executive Associate Commissioner, Office of Operations, INS, "Interpretation of Specialized Knowledge (CO 214L-P)" (Mar. 9, 1994) ("Puleo Memo");

- Memorandum of Fujie Ohata, Associate Commissioner, Service Center Operations, INS, "Interpretation of Specialized Knowledge (HQSCOPS 70/6.1)" (Dec. 20, 2002) ("2002 Ohata Memo"); and

- Memorandum of Fujie Ohata, Director, Service Center Operations, USCIS, "Interpretation of Specialized Knowledge for Chefs and Specialty Cooks Seeking L-1B Status" (Sept. 9, 2004) ("2004 Ohata Memo").

The Puleo Memo described "specialized knowledge" as knowledge that is different from that which is generally found in the particular industry, but not necessarily knowledge that is proprietary or unique. It also clarified that specialized knowledge based on knowledge of the company's processes or procedures must be "advanced, highly developed, or complex," but need not be proprietary, unique or narrowly held throughout the company. Similarly, the 2002 Ohata Memo stressed that specialized or advanced knowledge "need not be proprietary or unique;" that "specialized knowledge of the company product . . . must be noteworthy or uncommon;" and that "knowledge of company processes or procedures . . . must be advanced" but "need not be narrowly held throughout the company." Finally, the 2004 Ohata Memo noted the need to analyze whether "the petitioning entity would suffer economic inconvenience or disruption to its U.S. or foreign-based operations if it had to hire someone other than the particular overseas employee on whose behalf the petition was filed." The 2004 Ohata Memo also reiterated that advanced knowledge "need not be narrowly held throughout the company."

In 2004, Congress enacted the L-1 Visa Reform Act, which established further requirements for the adjudication of L-1B petitions.[3] This legislation did not affect the meaning of "specialized knowledge," but instead addressed the placing of L-1B beneficiaries at third-party worksites as "labor for hire." Among other things, the Act requires that any prospective L-1B beneficiary who will be primarily located at the worksite of another employer (referred to as "offsite employment") must be (1) controlled and supervised by the petitioning organization; and (2) provided in connection with an exchange of products or services between the petitioning organization and the unaffiliated company for which specialized knowledge specific to the petitioning organization is required. *See* INA 214(c)(2)(F). Accordingly, where a prospective L-1B beneficiary will be located primarily at a third-party worksite, USCIS must determine whether that beneficiary is eligible for the classification under the conditions established in the L-1 Visa Reform Act.

---

[3] L-1 Visa Reform Act 412-417.

Exhibit 1
638

### III.    Scope of this Memorandum and Revision to the Adjudicator's Field Manual (AFM).

To date, policy on the L-1B classification has been set forth in a series of policy memoranda dating back to 1994.  This memorandum is consistent with those policy memoranda but provides consolidated and authoritative guidance on determining whether specialized knowledge has been established in L-1B petitions and ensuring compliance with the L-1 Visa Reform Act. As such, USCIS supersedes and rescinds the following memoranda:

- Memorandum of James A. Puleo, Acting Executive Associate Commissioner, Office of Operations, INS, "Interpretation of Specialized Knowledge (CO 214L-P)" (Mar. 9, 1994);

- Memorandum of Fujie Ohata, Associate Commissioner, Service Center Operations, INS, "Interpretation of Specialized Knowledge (HQSCOPS 70/6.1)" (Dec. 20, 2002);

- Memorandum of Fujie Ohata, Director, Service Center Operations, "Interpretation of Specialized Knowledge for Chefs and Specialty Cooks Seeking L-1B Status" (Sept. 9, 2004); and

- Memorandum of William R. Yates, Associate Director for Operations, "Changes to the L Nonimmigrant Classification Made by the L-1 Reform Act of 2004 (HQ 70/8)" (July 28, 2005).

In addition, USCIS will update chapter 32.6(e) of the AFM when it issues the final version of this memorandum.  At that time, the previous version of *AFM* chapter 32.6(e) will no longer be applicable to the L-1B adjudicative process.

The guidance in this memorandum regarding the L-1 Visa Reform Act is consistent with that set forth in *AFM* chapters 32.3(c) and 32.5(b) and should be read in conjunction with those *AFM* chapters.

This guidance applies to all USCIS employees.   When adjudicating L-1B petitions, USCIS officers should apply the statutory and regulatory criteria for L-1B classification in a manner consistent with this guidance.

### IV.    "Preponderance of the Evidence" Standard

A petitioner seeking L-1B classification for an employee must establish that it meets each eligibility requirement of the classification by a preponderance of the evidence.[4]  In other words, the petitioner must show that what it claims is more likely the case than not.  This is a lower standard of proof than that of "clear and convincing evidence" or the "beyond a reasonable doubt" standard.  The petitioner does not need to remove all doubt from the adjudication.  Even if an officer has some doubt about a claim, the petitioner will have satisfied the standard of proof

---

[4] *See Matter of Chawathe*, 25 I. & N. Dec. 369, 375-376 (AAO 2010).

Exhibit 1
639

if it submits relevant, probative, and credible evidence, considered "individually and within the context of the totality of the evidence," that leads to the conclusion that the claim is "more likely than not" or "probably" true.[5]

## V.     Elements of the L-1B Classification

In order to establish eligibility for approval, the L-1B petitioner must show: (1) that the beneficiary possesses "specialized knowledge"; (2) that the position offered involves the "specialized knowledge" held by the beneficiary; and (3) that the beneficiary has at least one continuous year of employment abroad in a managerial, executive, or specialized knowledge capacity with the petitioning organization or a qualifying foreign organization within the preceding three years.  If the beneficiary will be located primarily at the workplace of an unaffiliated company, the petitioning organization also must establish that the beneficiary is eligible for L-1B classification under the requirements of the L-1 Visa Reform Act, discussed below in section VI.

### A.     Definition of "specialized knowledge"

A petitioning organization can demonstrate "specialized knowledge" by establishing either one of two statutory criteria.  Under the statute, a beneficiary is deemed to have specialized knowledge if he or she has: (1) "special" knowledge of the company product and its application in international markets; or (2) an "advanced" level of knowledge or expertise of the processes and procedures of the company.  INA 214(c)(2)(B).  The corresponding regulation similarly defines specialized knowledge in terms of "special" or "advanced" knowledge:

> **[S]pecial knowledge** possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an **advanced level of knowledge or expertise** in the organization's processes and procedures.

8 CFR 214.2(l)(1)(ii)(D) (emphasis added).

Because the statute and regulations do not define the terms "special" or "advanced," we look to their common dictionary definitions, as well as the agency's practice and experience in this context.  The term "special" is defined in leading dictionaries as "surpassing the usual," "distinct among others of a kind," "distinguished by some unusual quality," "uncommon," or "noteworthy."[6]  The term "advanced" is defined in various dictionaries as "greatly developed beyond an initial stage," or "ahead or far or further along in progress, complexity, knowledge,

---

[5] *Id.* at 376.
[6]     *See*    Merriam-Webster    Dictionary    ("special"),    *available    at*    http://www.merriam-webster.com/dictionary/special?show=0&t=1418153019 (last visited Mar. 13, 2015); Dictionary.com ("special"), *available at* http://dictionary.reference.com/browse/special?s=t (last visited Mar. 13, 2015); Oxford English Dictionary                    ("special"),                    *available                    at* http://www.oed.com/search?searchType=dictionary&q=special&_searchBtn=Search (last visited Mar. 13, 2015).

Exhibit 1
640

skill, etc."[7]  Applying these definitions to the statutory and regulatory text, a beneficiary seeking L-1B classification should possess:

- **special knowledge**, which is knowledge of the petitioning employer's product, service, research, equipment, techniques, management, or other interests and its applications in international markets that is demonstrably ***distinct or uncommon in comparison to*** that generally found in the particular industry or within the petitioning employer; or

- **advanced knowledge**, which is knowledge or expertise in the organization's specific processes and procedures that is not commonly found in the relevant industry and is ***greatly developed or further along in progress, complexity and understanding*** than that generally found within the petitioning employer.

The following section explains how to determine whether a beneficiary possesses special or advanced knowledge.

### B.     Application of the "specialized knowledge" definition

A beneficiary may possess either special or advanced knowledge, or both.  Determining whether a beneficiary has "special knowledge" requires review of the beneficiary's knowledge of how the company manufactures, produces, or develops its products, services, research, equipment, techniques, management, or other interests (hereinafter "products or services").  Determinations concerning "advanced knowledge," on the other hand, require review of the beneficiary's knowledge of the specific employing company's processes and procedures.  While the beneficiary may have general knowledge of processes and procedures common to the industry, the focus here is primarily on the processes and procedures utilized specifically by the beneficiary's employer.  With respect to either special or advanced knowledge, the petitioner ordinarily must demonstrate that the beneficiary's knowledge is not commonly held throughout the particular industry or within the petitioning employer.  As discussed in detail below, however, such knowledge need not be proprietary in nature or narrowly held within the employer's organization.

Determining whether knowledge is "special" or "advanced" inherently requires a comparison of the beneficiary's knowledge against that of others.   The petitioner bears the burden of establishing such a favorable comparison.  Because "special knowledge" concerns knowledge of the petitioning organization's products or services and its application in international markets, the petitioner may meet its burden through evidence that the beneficiary has knowledge that is demonstrably distinct or uncommon in comparison to the knowledge of other similarly employed workers in the particular industry or within the petitioning organization.  Alternatively, because "advanced knowledge" concerns knowledge of a company's processes and procedures, the petitioner may meet its burden through evidence that the beneficiary has knowledge or expertise

---

[7]   *See*   Merriam-Webster   Dictionary   ("advanced"),   *available   at*   http://www.merriam-webster.com/dictionary/advanced (last visited Mar. 13, 2015); Dictionary.com ("advanced"), *available at* http://dictionary.reference.com/browse/advanced?s=t (last visited Mar. 13, 2015).

Exhibit 1
641

that is greatly developed or more complex in comparison to other workers in the petitioning employer's operations.

The following is a ***non-exhaustive*** list of factors that USCIS may consider when determining whether a beneficiary's knowledge is specialized:

- The beneficiary is qualified to contribute to the U.S. operation's knowledge of foreign operating conditions as a result of knowledge not generally found in the industry or the petitioning organization's U.S. operations.

- The beneficiary possesses knowledge that is particularly beneficial to the employer's competitiveness in the marketplace.

- The beneficiary has been employed abroad in a capacity involving assignments that have significantly enhanced the employer's productivity, competitiveness, image, or financial position.

- The beneficiary's claimed specialized knowledge normally can be gained only through prior experience with that employer.

- The beneficiary possesses knowledge of a product or process that cannot be easily transferred or taught to another individual without significant economic cost or inconvenience (because, for example, such knowledge may require substantial training, work experience, or education).[8]

- The beneficiary has knowledge of a process or a product that either is sophisticated or complex, or of a highly technical nature, although not necessarily unique to the firm.

The presence of one or more of these (or similar) factors, when assessed in the totality of the circumstances, may be sufficient to establish by a preponderance of the evidence that a beneficiary has specialized knowledge. As noted above, this list of factors is meant to be illustrative, not exhaustive, and it does not impose particular requirements that a petitioner must demonstrate. Suggested evidence that petitioners may provide consistent with these factors are provided in Section V.C.

      1.    <u>Specialized knowledge cannot be easily imparted to other individuals.</u>

One of the several factors that may be considered in determining whether knowledge is specialized is the amount and type of training, work experience, or education required to develop that knowledge. *See* 8 CFR 214.2(l)(3)(iv) (requiring petitioner to submit evidence of the

---

[8] One factor that may be relevant in weighing economic inconvenience is the time-sensitivity of the organization's need in its U.S. operations for an employee with the particular type of specialized knowledge, and the harm the organization would suffer if it cannot fulfill its time-sensitive personnel need through transfer of the beneficiary. *Cf. Fogo De Chao (Holdings) Inc. v. DHS*, 769 F.3d 1127, 1142 (D.C. Cir. 2014) (observing that a "natural prox[y] for economic inconvenience" is "the amount of in-house training a company's employees would have to receive to acquire the knowledge in question").

Exhibit 1
642

beneficiary's "prior education, training, and employment").   Knowledge therefore will not generally be considered specialized if it can be easily imparted from one person to another.  On the other hand, knowledge generally may be considered specialized if a petitioner can demonstrate through credible and relevant evidence that the knowledge possessed by the beneficiary would be difficult to impart to another individual without significant economic cost or inconvenience to the petitioning organization.[9]   Although significant economic cost or inconvenience may be a relevant factor, a petitioner is not required to establish significant economic cost or inconvenience in order to establish that the beneficiary's knowledge is specialized.

### 2.   Specialized knowledge need not be proprietary or unique to the petitioning organization.

Although specialized knowledge cannot be knowledge that is generally possessed or easily transferrable, it need not be proprietary or unique to the petitioning organization.  A petitioner is not required to demonstrate that it is the only company where the beneficiary could have acquired the knowledge, or that it is the only company that trades in the technologies, techniques, products, services, or processes that are the subject of the beneficiary's knowledge.  Although a petitioner may provide evidence that knowledge is proprietary or unique in support of its claim that the knowledge is also special or advanced, and thus specialized, the L-1B classification does not *require* such a finding.

### 3.   L-1B classification does not require test of the U.S. labor market.

As noted above, the petitioning organization must ordinarily demonstrate that the beneficiary's knowledge is not generally or commonly held in the relevant industry.  Such a determination, however, does *not* involve a test of the U.S. labor market.  A petitioner is not required to demonstrate the lack of readily available workers to perform the relevant duties in the United States.[10]   The relevant inquiry is not whether workers with the beneficiary's knowledge are available to the employer; rather, it is whether there are so many such workers that the knowledge is generally or commonly held in the relevant industry, and thus not specialized.  If there are numerous workers in the United States who possess knowledge that is generally similar to the beneficiary's, it is the petitioner's burden to establish that the beneficiary's knowledge nevertheless is truly specialized.[11]

---

[9] *See Fogo De Chao,* 769 F.3d at 1142.

[10] In *Fogo De Chao,* the D.C. Circuit noted that the Immigration Act of 1990 precludes USCIS from requiring evidence establishing that the specialized knowledge in question is not readily available in the United States labor market.  769 F.3d at 1145.  An inquiry into whether knowledge is generally or commonly held in a given industry—and thus not "special," as that term is naturally understood—is separate from an inquiry into whether there are U.S. workers available to perform a given job.

[11] Comparisons that account for similarly employed workers within the petitioning organization's U.S. operations are discussed in section V.B.4.

Exhibit 1
643

4.     Specialized knowledge need not be narrowly held within the petitioning organization.

Although comparisons with other employees of the petitioning organization may be useful in determining whether the beneficiary's knowledge is "special" or "advanced," such knowledge need not be narrowly held within the petitioning organization.  Multiple employees within a company may have obtained the experience, training, or education necessary to possess the same type of specialized knowledge.  Some companies may use technologies or techniques that are so advanced or complex that nearly all employees working on the relevant products or services possess specialized knowledge.  The mere existence of other employees with similar knowledge should not, in and of itself, be a ground for denial.

However, in cases where there are already many employees in the U.S. organization with the same specialized knowledge as that of the beneficiary, officers generally should carefully consider the organization's need to transfer the beneficiary to the United States.  The officer may consider, for example, the need for another individual with similar specialized knowledge in the organization's U.S. operations and the difficulty in transferring or teaching the relevant knowledge to an individual other than the beneficiary.  The officer should also consider how the duties to be performed by the beneficiary that require his or her specialized knowledge may or may not differ from those already employed in the organization's U.S. operations; the extent to which the petitioning organization would suffer economic inconvenience or disruption to its U.S. or foreign-based operations if it were unable to transfer the beneficiary; and whether the salary to be paid to the beneficiary is comparable to similarly situated peers in such U.S. operations.  Where many employees within the organization's U.S. operations share the beneficiary's knowledge, yet the beneficiary will be paid substantially less than those similarly situated employees, this may indicate that the beneficiary lacks the requisite specialized knowledge.  As described *infra*, however, there may be valid business reasons for the wage discrepancy, but justification for the variance generally should be evaluated in light of the skills, experience, and other factors pertinent to the entire spectrum of employees in the U.S. operations who possess the requisite specialized knowledge.

5.     Specialized knowledge workers need not occupy managerial or similar positions or command high salaries compared to their peers.

Unlike the L-1A nonimmigrant classification, the L-1B classification does not require that the beneficiary be a manager or executive.  Nor does the classification require that the beneficiary be an officer or supervisor, or hold any other similar position within the petitioning organization.  Although rank and salary are factors that may be considered when analyzing whether a beneficiary possesses specialized knowledge, there is no requirement that the beneficiary be of a certain rank within the organization or that the beneficiary's salary be "elevated" compared to his or her peers within the organization or the particular industry.  There may be valid business reasons that one employee may be earning more or less than his or her peers.  A company in its early development, for example, may not yet have generated sufficient income to pay the beneficiary a greater salary.  In creating the L-1B classification, Congress focused on the beneficiary's "knowledge," not his or her position on a company's organizational chart or pay scale.

Exhibit 1
644

6.     Eligibility for another nonimmigrant classification is not a bar to eligibility for L-1B classification.

The requirements for L-1B classification are distinct from other visa classifications. Eligibility for one classification does not preclude eligibility for another. A beneficiary may possess characteristics that make him or her potentially qualified for two or more distinct nonimmigrant classifications. For example, the beneficiary may have characteristics that make him or her eligible as an L-1B specialized knowledge worker and an H-1B "specialty occupation" worker. Similarly, a beneficiary may qualify for L-1B nonimmigrant status while at the same time possessing the extraordinary ability or achievement necessary for O-1 status. Possession of such dual qualifications does not render the beneficiary ineligible for either classification. Officers should only consider the requirements for the classification sought in the petition, without considering eligibility requirements for other classifications.

## C.  Evaluating Claims of Specialized Knowledge

USCIS will be able to perform its adjudicatory function most effectively when the petitioner explains with clarity the specific nature of the industry or field involved, the nature of the petitioning organization's products or services, the specialized knowledge required to perform the beneficiary's duties, and the need for the beneficiary's specialized knowledge. To show that the offered position in the United States involves specialized knowledge, the petitioner must submit "a detailed description of the services to be performed." 8 CFR 214.2(l)(3)(ii). The petitioner must also submit evidence that the beneficiary's "prior education, training, and employment qualifies him/her to perform the intended services in the United States." 8 CFR 214.2(l)(3)(iv). While the petitioner is required in all cases to compare the beneficiary's knowledge to that of others, the petitioner may also be able to demonstrate the nature of the claimed specialized knowledge by, among other things, indicating how and when the beneficiary gained such knowledge or explaining the difficulty of imparting such knowledge to others without significant cost or disruption to its business.

Other evidence that a petitioner may submit to demonstrate that an individual's knowledge is special or advanced, includes, but is not limited to:

- Documentation of training, work experience, or education establishing the number of years the individual has been utilizing or developing the claimed specialized knowledge as an employee of the organization or in the industry;

- Evidence of the impact, if any, the transfer of the individual would have on the organization's U.S. operations;

- Evidence that the alien is qualified to contribute to the U.S. operation's knowledge of foreign operating conditions as a result of knowledge not generally found in the industry or the petitioning organization's U.S. operations;

- Contracts, statements of work, or other documentation that shows that the beneficiary possesses knowledge that is particularly beneficial to the organization's competitiveness in the marketplace;

Exhibit 1
645

- Evidence, such as correspondence or reports, establishing that the beneficiary has been employed abroad in a capacity involving assignments that have significantly enhanced the organization's productivity, competitiveness, image, or financial position;

- Personnel or in-house training records that establish that the beneficiary's claimed specialized knowledge normally can be gained only through prior experience or training with that employer;

- Curricula and training manuals for internal training courses, financial documents, or other evidence that may demonstrate that the beneficiary possesses knowledge of a product or process that cannot be transferred or taught to another individual without significant economic cost or inconvenience;

- Evidence of patents, trademarks, licenses, or contracts awarded to the organization based on the beneficiary's work, or similar evidence that the beneficiary has knowledge of a process or a product that either is sophisticated or complex, or of a highly technical nature, although not necessarily proprietary or unique to the petitioning organization; and

- Payroll documents, federal or state wage statements, resumes, organizational charts, or similar evidence documenting the positions held and the wages paid to the beneficiary and parallel employees in the organization.

A petitioner may submit any other evidence it chooses. In all cases, USCIS will review the entire record to determine whether the petitioner has established by a preponderance of the evidence that the beneficiary has specialized knowledge under the totality of the circumstances, in accordance with the standards set forth in the relevant statutes and regulations, as reflected in this memorandum. Merely stating that a beneficiary's knowledge is somehow different from others or greatly developed does not, in and of itself, establish that he or she possesses specialized knowledge. Ultimately, it is the weight and type of evidence that establishes whether the beneficiary possesses specialized knowledge.

### D.    Demonstrating Qualifying Employment

To be eligible for L-1B classification, the beneficiary must have been employed abroad by the petitioning organization (or an affiliate, subsidiary, parent, or branch of the petitioning organization) on a full-time basis for one continuous year within the three years preceding the filing of the petition. 8 CFR 214.2(l)(3)(iii). The required employment abroad must have been in a managerial or executive capacity, or a capacity involving specialized knowledge. *Id.* 214.2(l)(3)(iv). However, the work to be performed in the United States need not be the same type of work that the beneficiary performed abroad. *Id.* For instance, a person who was employed abroad for one continuous year as a manager by a qualifying organization may,

Exhibit 1
646

depending on the circumstances, meet the qualifying employment requirement for L-1B classification.[12]

## VI.    Offsite L-1B Employment (L-1 Visa Reform Act)

When an L-1B beneficiary will be primarily stationed at the worksite of an unaffiliated employer, the L-1 Visa Reform Act requires the petitioning organization to show that the beneficiary: (1) will not be "controlled and supervised principally" by the unaffiliated employer; and (2) will be placed "in connection with the provision of a product or service for which specialized knowledge specific to the petitioning employer is necessary."  INA 214(c)(2)(F).  Absent this showing, the worker is not eligible for L-1B classification.  *Id.*  The L-1 Visa Reform Act is designed to prevent, among other things, the outsourcing of L-1B beneficiaries to third-party entities as "labor for hire."[13]  Accordingly, if a determination has been made that a beneficiary has specialized knowledge and that he or she will be stationed primarily at the worksite of an unaffiliated employer, USCIS must also determine whether the position involves "labor for hire."

USCIS has interpreted the "control and supervision" prong of the L-1 Visa Reform Act to require that, despite placement with another employer, the beneficiary will continue to be controlled and supervised principally by the petitioning organization (or its affiliate, subsidiary, parent, or branch).[14]  The petitioning organization therefore may not merely supply workers and issue their paychecks in a "labor for hire" arrangement.  Instead, the unaffiliated company must have a business relationship with the petitioning organization that involves the provision of products or services by the petitioning organization and not simply the supply of workers alone.  This ground of ineligibility applies to all petitions filed on or after June 6, 2005, including petitions for initial, amended, or extended L-1B classification.

With respect to section 214(c)(2)(F)(i) (which requires that the worker not be "controlled and supervised principally" by an unaffiliated employer), it is important to note that the L-1 Visa Reform Act did not prohibit all offsite employment.  An L-1B beneficiary may be legitimately stationed at a third-party worksite, even if it is located far from the petitioning employer's office(s).  Further, an unaffiliated employer is not necessarily prohibited from giving day-to-day assignments to the beneficiary, provided that, in the totality of the circumstances, the unaffiliated employer does not principally control and supervise the beneficiary's activities.  The petitioner may establish that the unaffiliated entity lacks principal control and supervision by showing, among other things, that the petitioner at all times retains the principal authority to: dictate the manner in which the work is to be performed, reward or discipline the worker for his or her work performance, and provide the worker's salary and any normal employer-provided benefits, such

---

[12] Further, an L-1B petitioner seeking to use the "blanket petition" process must show that the beneficiary is a "specialized knowledge *professional*," which is defined as an individual with specialized knowledge who is a member of the professions as defined in INA 101(a)(32).  8 CFR 214.2(l)(1)(ii)(E) (emphasis added).

[13] INA 214(c)(2)(F)(ii); *see also* 149 Cong. Rec. 11,649, 11,686, 2003 WL 22143105 (2003) (statement of Sen. Saxby Chambliss).

[14] *See* 149 Cong. Rec. at 11,686 (discussing supervision and control by petitioning organization).

Exhibit 1
647

as health insurance.  In all cases, however, determinations with respect to control and supervision will be based on all of the facts presented.

To satisfy section 214(c)(2)(F)(ii) (which requires that the placement not "essentially be an arrangement to provide labor for hire," but instead be "in connection with the provision of a product or service for which specialized knowledge specific to the petitioning employer is necessary"), the petitioner must show that the purpose of the offsite placement is for the beneficiary to use specialized knowledge that is specific to *the petitioning organization*.  To be eligible for L-1B status, a beneficiary stationed primarily offsite must be applying specialized knowledge of the petitioning organization's own services or products.  Where a petitioning organization provides a customized product or service to a third party, the beneficiary's knowledge of the third party's systems may be considered in addition to, but not as a substitute for, the beneficiary's knowledge of the petitioning organization's product or service to determine whether the beneficiary's knowledge is "special" or "advanced," based on the totality of the circumstances.  USCIS will determine, based on the evidence presented, whether the petitioner has demonstrated that the placement is truly in connection with the provision of the petitioning organization's product or service, or whether it is essentially an impermissible arrangement of labor for hire.

## VII.    Readjudication of L-1B Status

In matters relating to an extension of L-1B status involving the same parties (i.e., the same petitioning organization and beneficiary employee) and the same underlying facts, USCIS officers should give deference to the prior determination by USCIS approving L-1B classification.[15]  In such cases, USCIS officers should reexamine a finding of L-1B eligibility only where it is determined that: (1) there was a material error with regard to the previous approval for L-1B classification; (2) there has been a substantial change in circumstances since that approval; or (3) there is new material information that adversely impacts the petitioner's or beneficiary's eligibility.[16]

## VIII.   Conclusion

Congress has determined that the ability to transfer company personnel with specialized knowledge is important in fostering the growth and competitiveness of U.S. businesses. Companies should be able to transfer their specialized knowledge employees to do business in an increasingly global marketplace. The L-1B classification provides petitioning organizations

---

[15] This policy of deference does not apply to a request for extension where the prior petition indicated that the beneficiary would be coming to the United States to open or be employed in a "new office."  *See* 8 CFR 214.2(l)(3)(vi).

[16] *See* Memorandum of William R. Yates, Associate Director for Operations, USCIS, "The Significance of a Prior CIS Approval of a Nonimmigrant Petition in the Context of a Subsequent Determination Regarding Eligibility for Extension of Petition Validity (HQOPRD 72/11.3)," 1-2, (Apr. 23, 2004) (a change in offsite employment, for example, may constitute a substantial change in circumstances or new material information requiring re-adjudication by USCIS to ensure compliance with the L-1 Visa Reform Act).

Exhibit 1
648

flexibility, consistent with this memorandum, as to how they may demonstrate that an employee possesses specialized knowledge and, in the case of off-site employment, compliance with the requirements of the L-1 Visa Reform Act.  This practical approach is reflected in the L-1B classification's broad statutory and regulatory definitions, maintains the integrity of the L-1B program, and recognizes the fluid dynamics of the business world in which petitioning organizations operate.

**Implementation**

***Revisions to AFM Chapter 32.6(e) will be included upon issuance of the final memorandum.***

To provide sufficient time for training of USCIS employees, USCIS intends to make this memorandum effective on August 31, 2015.

**Use**

This memorandum is intended solely for the training and guidance of USCIS personnel in performing their duties relative to the adjudication of applications and petitions.  It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

**Contact Information**

Questions or suggestions regarding this PM should be addressed through appropriate channels to the Office of Policy and Strategy.

Exhibit 1
649

# **Action 32**

New Classification for Victims of Criminal Activity, Eligibility for "U"
Nonimmigrant Status

And

Adjustment of Status to Lawful Permanent Resident for T and U nonimmigrants

Exhibit 1
650

## New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status [72 FR 53014][FR 48-07]

**DOCUMENT NUMBER:** FR 48-07
**FEDERAL REGISTER CITE:** 72 FR 53014
**DATE OF PUBLICATION:** September 17, 2007

BILLING CODE: 4410-10

DEPARTMENT OF HOMELAND SECURITY

8 CFR Parts 103, 212, 214, 248, 274a and 299

[CIS No. 2170-05; DHS Docket No. USCIS-2006-0069]

RIN 1615-AA67

New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status
AGENCY: U.S. Citizenship and Immigration Services, DHS.
ACTION: Interim rule with request for comments.
SUMMARY: This interim rule amends Department of Homeland Security regulations to establish the requirements and procedures for aliens seeking U nonimmigrant status. The U nonimmigrant classification is available to alien victims of certain criminal activity who assist government officials in investigating or prosecuting such criminal activity. The purpose of the U nonimmigrant classification is to strengthen the ability of law enforcement agencies to investigate and prosecute such crimes as domestic violence, sexua l assault, and trafficking in persons, while offering protection to alien crime victims in keeping with the humanitarian interests of the United States.

This interim rule outlines the eligibility and application requirements for the U nonimmigrant classification and the benefits and limitations relating to those granted U nonimmigrant status. This interim rule also amends existing regulations to include U nonimmigrants among the nonimmigrant status holders able to seek a waiver of documentary requirements to gain admission to the United States, and to permit nonimmigrants to change status to that of a U nonimmigrant where applicable. This rule also establis hes a filing fee for U nonimmigrant petitions.

Aliens who have been granted interim relief from USCIS are encouraged to file for U nonimmigrant status within 180 days of the effective date of this interim rule. USCIS will no longer issue interim relief upon the effective date of this rule; however, if the alien has properly filed a petition for U nonimmigrant status, but USCIS has not yet adjudicated that petition, interim relief will be extended until USCIS completes its adjudication of the petition.

DATES: *Effective date* . This rule is effective October 17, 2007.

*Comment date* . Written comments must be submitted on or before November 16, 2007.

ADDRESSES: You may submit comments, identified by DHS Docket No. USCIS-2006-0069 by one of the following methods:

    • *Federal eRulemaking Portal* : **http://www.regulations.gov** . Follow the instructions for submitting comments.

    • *Mail:* Chief, Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529. To ensure proper handling, please reference DHS Docket No. USCIS-2006-0069 on your correspondence. This mailing address may also be used for paper, disk, or CD-ROM submissions.

    • *Hand Delivery/Courier* : Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529. Contact Telephone Number (202) 272-8377.

FOR FURTHER INFORMATION CONTACT: Laura Dawkins, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529, telephone: (202) 272-8350.

SUPPLEMENTARY INFORMATION: This supplemental information section is organized as follows:

I. Public Participation

II. Background and Legislative Authority

III. Analysis of Requirements and Procedures Under This Interim Rule

    A. Eligibility Requirements for U Nonimmigrant Status

        1. Victims of Qualifying Criminal Activity Who Have Suffered Physical or Mental Abuse

        2. Possession of Information Concerning the Qualifying Criminal Activity

        3. Helping Law Enforcement in the Investigation or Prosecution of Criminal Activity

        4. Criminal Activity That Violated U.S. Law or Occurred in the United States

    B. Application Process

        1. Filing the Petition to Request U Nonimmigrant Status

        2. Initial Evidence

        3. Derivative Family Members

        4. Designations

    C. Adjudication and Post-Adjudication

        1. Credible Evidence

        2. Prohibitions on Disclosure of Information

        3. Annual Numerical Limitation on Grants of U Nonimmigrant Status

        4. Decision on Petitions

        5. Benefits for U Nonimmigrants

        6. Travel Outside the United States

        7. Revocation of U Nonimmigrant Status

        8. Removal Proceedings

    D. Filing and Biometric Services Fees

IV. Regulatory Requirements

    A. Administrative Procedure Act

    B. Regulatory Flexibility Act

    C. Unfunded Mandates Reform Act of 1995

D. Small Business Regulatory Enforcement Fairness Act of 1996

E. Executive Order 12866 (Regulatory Planning and Review)

F. Executive Order 13132 (Federalism)

G. Executive Order 12988 (Civil Justice Reform)

H. Family Assessment

I. Paperwork Reduction Act

I. Public Participation

Interested persons are invited to participate in this rulemaking by submitting written data, views, or arguments on all aspects of this interim rule. U.S. Citizenship and Immigration Services (USCIS) also invites comments that relate to the economic, environmental, or federalism effects that might result from this interim rule. Comments that will provide the most assistance to USCIS in developing these procedures will reference a specific portion of the interim rule, explain the reason for any recommended c hange, and include data, information, or authority that support such recommended change.

*Instructions:* All submissions received must include the agency name and DHS Docket No. USCIS-2006-0069. All comments received will be posted without change to **http://www.regulations.gov** , including any personal information provided.

*Docket:* For access to the docket to read background documents or comments received go to **http://www.regulations.gov** . Submitted comments may also be inspected at the Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529.

II. Background and Legislative Authority

Congress created the U nonimmigrant classification in the Battered Immigrant Women Protection Act of 2000 (BIWPA). *See* Victims of Trafficking and Violence Protection Act of 2000, div. B, Violence Against Women Act of 2000, tit. V, Battered Immigrant Women Protection Act of 2000, Pub. L. 106-386, § 1513, 114 Stat. 1464, 1533-37 (2000), *amended by* Violence Against Women and Department of Justice Reauthorization Act of 2005 (VAWA 2005), tit. VIII, Pub. L. 109-162, 119 Stat. 2960 (2006), *amended by* Violence Against Women and Department of Justice Reauthorization Act-- Technical Corrections, Pub. L. 109-271, 120 Stat. 750 (2006). Alien victims may not have legal status and, therefore may be reluctant to help in the investigation or prosecution of criminal activity for fear of removal from the United States. In passing this legislation, Congress intended to strengthen the ability of law enforcement agencies to investigate and prosecute cases of domestic violence, sexual assault, trafficking of aliens an d other crimes while offering protection to victims of such crimes. See BIWPA, § 1513(a)(2)(A). Congress also sought to encourage law enforcement officials to better serve immigrant crime victims. *Id.*

The U nonimmigrant classification was established under section 1513(b) of the BIWPA. Notwithstanding the title of the legislation, the U nonimmigrant classification is available to qualified victims of crimes, without regard to gender. The U nonimmigrant classification provides temporary immigration benefits to certain victims of criminal activity who: (1) Have suffered substantial mental or physical abuse as a result of having been a victim of criminal activity; (2) have information regarding the criminal activity; and (3) assist government officials in the investigation and prosecution of such criminal activity. USCIS can only grant U nonimmigrants status to 10,000 principal aliens in each fiscal year. *See* INA § 214(p)(2), 8 U.S.C. 1184 (p)(2). (Note: this number does not include persons eligible for U nonimmigrant derivative status--e.g. spouses, children, or parents of applicants--as discussed in Section III. C. of this rule below).

Aliens granted U nonimmigrant status can remain in the United States for a period of up to four years, with possible extensions upon certification of need by certain government officials. INA § 214(p)(6), 8 U.S.C. 1184(p)(6). Section 1513(f) of the BIWPA provides DHS with discretion to convert the temporary U nonimmigrant status to permanent resident status if (1) the alien has been physically

present in the United States for a continuous period of at least three years since the date of admission as a U non immigrant; and (2) DHS determines that the "alien's continued presence in the United States is justified on humanitarian grounds, to ensure the family unity, or is otherwise in the public interest."

To qualify for the U nonimmigrant classification:

• The alien must have suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity;

• The alien must be in possession of information about the criminal activity of which he or she has been a victim;

• The alien must be of assistance to a Federal, State,or local law enforcement official or prosecutor, a Federal or State judge, the Department of Homeland Security (DHS), or other Federal, State, or local authority investigating or prosecuting criminal activity; and

• The criminal activity must have violated U.S. law or occurred in the United States (including Indian country and military installations) or the territories and possessions of the United States. INA § 101(a)(15)(U)(i), 8 U.S.C. 1101(a)(15)(U)(i). Qualifying criminal activity is defined by statute to be "activity involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law: Rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; f alse imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes[.]" Id.,(iii). The list of qualifying crimes represents the myriad types of behavior that can constitute domestic violence, sexual abuse, or trafficking, or are crimes of which vulnerable immigrants are often targeted as victims.

U nonimmigrant status can also extend to certain family members of the alien victim. If the alien victim is under 21 years of age, the victim's spouse, children, unmarried siblings under 18 years of age, and the victim's parents may qualify for U nonimmigrant status. INA § 101(a)(15)(U)(ii)(I), 8 U.S.C. 1101(a)(15)(U)(ii)(I). If the alien victim is 21 years of age or older, his or her spouse and children may also qualify for U nonimmigrant status. INA § 101(a)(15)(U)(ii)(II), 8 U.S.C. 1101(a)(15)(U)(ii)(II) .

Aliens applying for U nonimmigrant status must provide a certification from a Federal, State or Local law enforcement official demonstrating that the applicant "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of the qualifying criminal activity. INA § 214 (o), 8 U.S.C. 1184(o). The BIWPA further directs DHS to provide aliens who are eligible for U nonimmigrant status with referrals to nongovernmental organizations (NGOs) to advise the aliens regarding their options in the United States. Id. Further, USCIS is required to provide U nonimmigrants with employment authorization. Id.

Section 1513(e) of the BIWPA amended section 212(d) of the INA, 8 U.S.C. 1182(d), to provide for a waiver of inadmissibility if the Secretary of Homeland Security determines that such a waiver is in the public or national interest. \1\ Finally, the BIWPA added a new paragraph (1)(E) to 8 U.S.C. 1367(a) to prohibit adverse determinations of admissibility or deportability and disclosure of information pertaining to an alien seeking U nonimmigrant status, except in certain circumstances. BIWPA § 1513 (d) (amending section 384(a) of the Illegal Immigration and Immigrant Reform Act (IIRIRA), div. C of the Omnibus Appropriations Act of 1996, Pub. L. 104-208, 110 Stat. 3009 (1996)).

Following passage of the BIWPA in October 2000, USCIS implemented procedures to ensure that those aliens who appeared to be eligible for U nonimmigrant status under the BIWPA would not be

removed from the United States until they had an opportunity to apply for such status. *See* e.g., Memorandum from Michael D. Cronin, Acting Executive Associate Commissioner, Office of Field Operations, Immigration and Naturalization Service (Aug. 30, 2001); Memorandum from William R. Yates, Associate Director of Operations, USCIS, Centralization of Interim Relief for U Nonimmigrant Status Applicants (Oct. 8, 2003) ; Memorandum from William R. Yates, Associate Director of Operations, USCIS, Assessment of Deferred Action in Requests for Interim Relief from U Nonimmigrant Status Eligible Aliens in Removal Proceedings (May 6, 2004). \2\ Alien victims who may be eligible for U nonimmigrant status were given the opportunity to ask USCIS for interim relief pending the promulgation of implementing regulations. Family members seeking to derive immigration benefits from such aliens were accorded the same treatment. Interim relief provides alien victims with parole, stays of removal, or assessed deferred action, as well as an opportunity to apply for employment authorization. \3\

III. Analysis of Requirements and Procedures Under This Interim Rule

To implement the BIWPA and its creation of the U nonimmigrant classification, this interim rule outlines the eligibility and application requirements for the U nonimmigrant classification and the benefits and limitations relating to those granted U nonimmigrant status. Specifically, this interim rule provides definitions of relevant terms contained in the BIWPA and establishes procedures and standards for adjudicating petitions for U nonimmigrant status. It also describes the filing procedures and adjudicat ion standards for applications for the waiver of inadmissibility created by the BIWPA that is available to those seeking U nonimmigrant status. New 8 CFR 212.17. The rule amends 8 CFR 212.1 to include U nonimmigrant status recipients among the nonimmigrant status holders able to seek a waiver of documentary requirements to gain admission to the United States. This rule also amends 8 CFR 248.2 to permit nonimmigrants to change status to that of a U nonimmigrant; 8 CFR 274a.12(a) to add U nonimmigrant status recipients to the list of aliens authorized to accept employment; 8 CFR 274a.13(a) to require an application to be filed for certain U nonimmigrants seeking evidence of employment authorization; 8 CFR 299.1 to prescribe the petition form for U nonimmigrant status; and 8 CFR 103.7 to prescribe the filing fee for U nonimmigrant petitions. As discussed below, USCIS encourages petitioners and accompanying or following to join family members who have been granted interim relief to file Form I-918 within 180 days of the effective date of this rule. After the effective date of this rule, the interim relief process will no longer be in effect, and USCIS will not consider initial requests for interim relief. After the 180-day time period, USCIS will reevaluate previous grants of deferred action, parole, and stays of removal and terminate inter im relief for those aliens who fail to file Form I-918 within the 180-day time period. However, if the alien has properly filed a Form I-918, but USCIS has not yet adjudicated that petition, interim relief will be extended until USCIS completes its adjudication of Form I-918.

A. *Eligibility Requirements for U Nonimmigrant Status*

There are four statutory eligibility requirements for U nonimmigrant status, the alien (1) Has suffered physical or mental abuse as a result of having been a victim of certain criminal activity; (2) possesses information concerning such criminal activity; (3) has been helpful, is being helpful or is likely to be helpful in the investigation or prosecution of the crime; and (4) the criminal activity violated the laws of the United States or occurred in the United States. This section of the Supplementary Information describes each statutory eligibility requirement for U nonimmigrant status and this rule's implementation of each requirement.

1. Victims of Qualifying Criminal Activity Who Have Suffered Physical or Mental Abuse

The first eligibility requirement for U nonimmigrant status is that the alien must have suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity. INA § 101(a)(15)(U)(i)(I), 8 U.S.C. 1101(a)(15)(U)(i)(I). This interim rule defines the following terms that relate to this eligibility requirement: Victims of qualifying criminal activity, physical or

mental abuse, and qualifying crime or qualifying criminal activity. New 8 CFR 214.14(a). These definitions are discussed below.

a. Victims of Qualifying Criminal Activity

The meaning of "victim of qualifying criminal activity" is provided by new 8 CFR 214.14(a)(14). Within this definition, the rule provides for indirect victims of the criminal activities in the case of deceased victims of murder and manslaughter and victims of violent criminal activity who are incapacitated or incompetent. *See* new 8 CFR 214.14(a)(14)(i). The definition also clarifies how victims of witness tampering, obstruction of justice, and perjury can constitute victims of qualifying criminal activity. *See* new 8 CFR 214.14(a)(14)(ii). This interim rule also excludes alien victims who are themselves culpable of criminal activity from the definition of victim, subject to certain exceptions. *See* 8 CFR 214.14(a)(14)(iii).

(i) Direct Victims

This rule generally defines "victim of qualifying criminal activity" as an alien who is directly and proximately harmed by qualifying criminal activity. 8 CFR 214.14(a)(14). To formulate the general definition, USCIS drew from established definitions of "victim." Federal statutory provisions consistently define "victim" as one who has suffered direct harm or who is directly and proximately harmed as a result of the commission of a crime. *See* e.g., 42 U.S.C. 10603(c) (relating to terrorism); 18 U.S.C. 3663(a)(2) (relating to restitution); 18 U.S.C. 3771(e) (relating to crime victim rights); Fed. R. Crim. P. 32(a)(2) (defining victim for sentencing purposes); *see* also *United States v. Terry* , 142 F.3d 702, 710-11 (4th Cir. 1998) (reviewing the possible definitions of "victim"). The Department of Justice's (DOJ's) Attorney General Guidelines for Victim and Witness Assistance (AG Guidelines) adopts a similar definition of the term "victim." See Attorney General Guidelines for Victim and Witness Assistance at 9 (May 2005) ( **http://www.ojp.usdoj.gov/ovc/publications/welcome.html** ). The AG Guidelines serve to guide federal investigative, prosecutorial, and correctional agencies in the treatment of crime victims and, therefore, were viewed by USCIS as an informative resource in the development of this rule's definition of victim. \4\

The AG Guidelines also state that individuals whose injuries arise only indirectly from an offense are not generally entitled to rights or services as victims. AG Guidelines at 10. The AG Guidelines, however, provide DOJ personnel discretion to treat as victims bystanders who suffer unusually direct injuries as victims. USCIS does not anticipate approving a significant number of applications from bystanders, but will exercise its discretion on a case-by-case basis to treat bystanders as victims where that b ystander suffers an unusually direct injury as a result of a qualifying crime. An example of an unusually direct injury suffered by a bystander would be a pregnant bystander who witnesses a violent crime and becomes so frightened or distraught at what occurs that she suffers a miscarriage.

(ii) Indirect Victims

USCIS believes that the U nonimmigrant classification contemplates encompassing certain indirect victims in addition to direct victims. This is because the list of qualifying criminal activity at section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii), includes the crimes of murder and manslaughter, the direct targets of which are deceased. The list also includes witness tampering, obstruction of justice, and perjury, which are not crimes against a person. Therefore, this rule extends the defini tion of victim beyond the direct victim of qualifying criminal activity in certain circumstances. *See* new 8 CFR 214.14(a)(14)(i) & (ii).

The AG Guidelines also cover those persons who are not direct victims of a crime where the direct victim is deceased as a result of the qualifying crime (e.g. murder or manslaughter), incompetent or incapacitated, or under the age of 18. AG Guidelines, at 9. In these situations, the direct victim is not available or sufficiently able to help in an investigation or prosecution of the criminal activity. *Id.* The AG Guidelines list such indirect victims to be a spouse, legal guardian, parent, child, sibling, another family member, or another person designated by the court. Id. Under the AG Guidelines, however, only the first available person on the list is eligible to be considered a victim. Id. For instance, the

parent of a murder victim is only considered a victim if his or her child is unmarried. The spouse, as the first person on the list, would be deemed the victim.

Drawing from the AG Guidelines in conjunction with the U classification statutory provision describing qualifying family members (section 101(a)(15)(U)(ii) of the INA, 8 U.S.C. 1101(a)(15)(U) (ii)), this rule extends the victim definition to the following list of indirect victims in the case of murder, manslaughter, or incompetent or incapacitated victims: Spouses; children under 21 years of age; \5\ and, if the direct victim is or was under 21 years of age, parents and unmarried siblings under 18 years of age. *See* new 8 CFR 214.14(a)(14)(i). This rule does not extend the victim definition beyond these family members since the U nonimmigrant classification does not apply to other individuals. Unlike the AG Guidelines, the rule does not restrict the victim definition only to the first available person on the list of indirect victims. USCIS has determined that such a restrictive definition of victim would not adequately serve the purpose behind the U nonimmigrant classification. Family members of murder, manslaughter, i ncompetent, or incapacitated victims frequently have valuable information regarding the criminal activity that would not otherwise be available to law enforcement officials because the direct victim is deceased, incapacitated, or incompetent. By extending the victim definition to include certain family members of deceased, incapacitated, or incompetent victims, the rule encourages these family members to fully participate in the investigation or prosecution. Extending immigration benefits only to the first available person on the AG Guidelines list could separate families and lead to anomalous results. For example, in the case of a mother who is murdered and leaves behind her husband and young children, extending benefits only to the husband, as the first person on the list, could leave minor children without U nonimmigrant status protection.

USCIS notes, however, that while family members on the list of indirect victims under this rule may apply for U nonimmigrant status in their own right as principal petitioners, there is no requirement that they do so. For example, in the scenario described above of a mother who is murdered and leaves behind a husband and minor children, the husband and minor children could each apply as principal petitioners. In the alternative, the husband could file as a principal petitioner and the children could be incl uded as family members on his petition, as will be discussed later in this Supplementary Information. Likewise, the children potentially could be principal petitioners and their father (the husband of the deceased), could be included as a family member on one of the children's petitions. Family members who are recognized as indirect victims and, therefore, eligible to apply for U nonimmigrant status as principal petitioners must meet all of the eligibility requirements that the direct victim would have had to meet in order to be accorded U nonimmigrant status.

In the case of witness tampering, obstruction of justice, or perjury, the interpretive challenge for USCIS was to determine whom the BIWPA was meant to protect, given that these criminal activities are not targeted against a person. USCIS looked to the purpose of the BIWPA--to encourage cooperation with criminal investigations and protect vulnerable victims (BIWPA § 1502)--and to the federal definitions of the term "victim." As discussed above, in order to be classified as a victim under Federal law, an ind ividual must suffer direct and proximate harm. Therefore, USCIS considered which categories of people would suffer direct and proximate harm from witness tampering, obstruction of justice, and perjury. USCIS identified one such category as individuals who are harmed when a perpetrator commits one of the three crimes in order to avoid or frustrate the efforts of law enforcement authorities. USCIS identified another such category as individuals who are harmed when the perpetrator uses the legal system to expl oit or impose control over them.

Accordingly, this rule provides that a victim of witness tampering, obstruction of justice, or perjury is an alien who has been directly and proximately harmed by the perpetrator of one of these three crimes, where there are reasonable grounds to conclude that the perpetrator principally committed the offense as a means: (1) To avoid or frustrate efforts to investigate, arrest, prosecute, or otherwise bring him or her to justice for other criminal activity; or (2) to further his or her abuse or exploitation of or undue control over the alien through manipulation of the legal system. New 8 CFR 214.14(a)

(14)(ii). In developing this definition, USCIS considered whether or not the criminal activity of witness tampering, obstruction of justice, or perjury must have been committed in relation to one of the other qualifying crimes listed in the statute. However, the text of section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii), listing qualifying criminal activity explicitly states that the criminal ac tivity must involve "one or more" of the 27 categories of crimes listed. USCIS reads the phrase "one or more" to mean that each of the crimes listed thereafter may qualify independently. Therefore, this rule does not require such a nexus.

(iii) Culpability of the Victim

This rule excludes a person who is culpable for the qualifying criminal activity being investigated or prosecuted from being deemed a victim. See new 8 CFR 214.14(a)(14)(iii). Although the statutory provision at section 101(a)(15)(U)(i) of the INA, 8 U.S.C. 1101(a)(15)(U)(i), describing who qualifies as a U nonimmigrant neither explicitly covers nor explicitly excludes culpable persons, USCIS believes that this exclusion is warranted.

This exclusion does not apply to an alien who committed a crime other than the one under investigation or prosecution, even if the crimes are related. For instance, an alien who agrees to be smuggled into the United States, but is then held in involuntary servitude may still be deemed to be a victim of involuntary servitude even though he or she also may be culpable in the smuggling crime and for illegally entering the United States. USCIS has concluded that, while it is reasonable to exclude culpable indiv iduals from being defined as a victim, it is not reasonable to exclude individuals simply based on any criminal activity in which they may have at one time engaged. USCIS notes that this approach of distinguishing between those who are culpable for the qualifying crime and those who are culpable for other crimes is supported by the AG Guidelines. See AG Guidelines, at 10.

b. Physical or Mental Abuse

This rule defines physical or mental abuse to mean injury or harm to the victim's physical person, or harm to or impairment of the emotional or psychological soundness of the victim. New 8 CFR 214.14 (a)(8). In considering how to define the term physical or mental abuse, USCIS examined existing regulations that use similar terms. In particular, USCIS looked to regulations promulgated following the enactment of VAWA 1994 that allow battered spouses and children of U.S. citizens and lawful permanent residents to seek immigration status. See 8 CFR 204.2(c), 216.5(e)(3). These regulations use the terms "battery" and "extreme cruelty" to refer to any act or threatened act of violence that results in physical or mental injury. See 8 CFR 204.2(c)(2)(vi); 8 CFR 216.5(e)(3)(i). Battery and extreme cruelty are terms that the regulations use interchangeably with the term "abuse." See 8 CFR 204.2(c)(1)(vi); (2)(iv); 216.5(e)(3)(i); and 216.5(e)(3)(iii).

The term, "physical or mental abuse," encompasses a wide range of physical or mental harm. Section 101(a)(15)(U)(i)(I) of the INA, 8 U.S.C. 1101(a)(15)(U)(i)(I), which establishes this as a requirement, qualifies "physical or mental abuse" with the term, "substantial." The statutory provision does not make clear, however, whether the standard of "substantial" physical or mental abuse is intended to address the severity of the injury suffered by the victim, or the severity of the abuse inflicted by the perpe trator. USCIS has concluded that it is reasonable to consider both. Rather than define what constitutes abuse that is "substantial," however, USCIS believes that a better approach would be to make case-by-case determinations, using factors as guidelines.

This rule lists a number of factors USCIS will consider when determining whether the physical or mental abuse at issue qualifies as substantial. New 8 CFR 214.14(b)(1). These factors are: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim. Through these factors , USCIS will be able to evaluate the kind and degree of harm suffered by the individual applicant based upon that applicant's individual experience. No single factor is a prerequisite to

establish that the abuse suffered was substantial. Also, the existence of one or more of the factors does not automatically create a presumption that the abuse suffered was substantial.

USCIS recognizes the possibility that some victims will have a pre-existing physical or mental injury or condition at the time of the abuse. In evaluating whether the harm is substantial, this rule requires USCIS to consider the extent to which any pre-existing conditions were aggravated. *Id.* Some abuse may involve a series of acts or occur repeatedly over a period of time. USCIS will consider the abuse in its totality to determine whether the abuse is substantial. A series of acts taken together may be considered to constitute substantial physical or mental abuse even where no single act alone rises to that level. *Id.*

c. Qualifying Criminal Activity

The statutory list of qualifying criminal activity in section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15)(U)(iii), is not a list of specific statutory violations, but instead a list of general categories of criminal activity. It is also a non-exclusive list. Any similar activity to the activities listed may be a qualifying criminal activity. This interim rule adopts the statutory list of criminal activity and further defines what constitutes "any similar activity." *See* new 8 CFR 214.14(a)(9). The rule provides that for a criminal activity to be deemed similar to one specified on the statutory list, the similarities must be substantial. USCIS bases this definition on the fact that the statutory list of criminal activity is not composed of specific statutory violations. Instead, the criminal activity listed is stated in broad terms. The rule's definition of "any similar activity" takes into account the wide variety of state criminal statutes in which criminal activity may be named differently than criminal activity found on the statutory list, while the nature and elements of both criminal activities are comparable. In addition, qualifying criminal activity may occur during the commission of non-qualifying criminal activity. For varying reasons, the perpetrator may not be charged or prosecuted for the qualifying criminal activity, but instead, for the non-qualifying criminal activity. For example, in the course of investigating Federal embezzlement and fraud charges, the investigators discover that the perpetrator is also abusing his wife and children, but because there are no applicable Federal domestic violence laws, he is charged only with non-qualifying Federal embezzlement and fraud crimes.

2. Possession of Information Concerning the Qualifying Criminal Activity

In passing the BIWPA, Congress wanted to encourage aliens who are victims of criminal activity to report the criminal activity to law enforcement and fully participate in the investigation and prosecution of the perpetrators of such criminal activity. BIWPA § 1513(a)(1)(B). The second eligibility requirement for U nonimmigrant status is that the alien must possess information about the qualifying criminal activity of which he or she is a victim. INA § 101(a)(15)(U)(i)(II), 8 U.S.C. 1101 (a)(15)(U)(i)(II). This rule adopts this statutory requirement at new 8 CFR 214.14(b)(2). Possessing information about a crime of which the alien is not a direct or indirect victim would not satisfy this requirement and, therefore, is not included in the rule.

USCIS will consider an alien victim to possess information concerning qualifying criminal activity of which he or she was a victim if he or she has knowledge of the details (i.e., specific facts) concerning the criminal activity that would assist in the investigation or prosecution of the criminal activity. See new 8 CFR 214.14(b)(2). The findings that Congress expressed in sections 1513(a)(1) and (2) of the BIWPA make clear that the intent behind the creation of U nonimmigrant status was to facilitate the investigation and prosecution of criminal activity of which immigrants are targets while providing protection for victims of such criminal activity. USCIS believes that, to give effect to congressional intent, the information that the alien must possess must be related to the crime of which he or she is a victim. If not, the stated purpose of the statute is thwarted. Possession of information concerning the criminal activity necessarily means that the alien must have knowledge of it.

When the alien victim is under 16 years of age, the statute does not require him or her to possess information regarding the qualifying criminal activity. Rather, the parent, guardian, or next friend of the alien victim may possess that information if the alien victim does not. INA § 101(a)(15)(U)(i)(II),

8 U.S.C. 1101(a)(15)(U)(i)(II). This rule reiterates this exception at new 8 CFR 214.14(b)(2). This provision specifies that the age of the alien victim on the day on which an act constituting an element o f the qualifying criminal activity first occurred is the applicable age to consider for purposes of establishing whether the exception is triggered. The purpose of the exception is to allow for alternative mechanisms for possessing information when a child is at an age where he or she may be too young to adequately understand and relay traumatic and sensitive information. As such, USCIS believes that the date on which the qualifying criminal activity began is the appropriate date for triggering this excepti on.

The rule also permits a parent, guardian, or next friend to provide information when the alien victim is incapacitated or incompetent. New 8 CFR 214.14(b)(2). Permitting certain family members or guardians to act in lieu of incapacitated or incompetent victims is supported by the AG Guidelines, at 9.

This rule also defines the term "next friend." New 8 CFR 214.14(a)(7). An individual will qualify as a next friend under this rule if he or she appears in a lawsuit to act for the benefit of an alien who is under the age of 16 or who is incapacitated or incompetent. *See Whitmore v. Arkansas* , 495 U.S. 149, 163-4 (1990) (describing next friend as someone dedicated to the best interests of the individual who cannot appear on his or her own behalf because of inaccessibility, mental incompetence, or other disability). The next friend is not a party to the legal proceeding and is not appointed as a guardian.

3. Helping Law Enforcement in the Investigation or Prosecution of Criminal Activity

The third eligibility requirement for U nonimmigrant status is that the alien victim of qualifying criminal activity (or, in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been, is being, or is likely to be helpful to a government official or authority in the investigation or prosecution of the qualifying criminal activity. INA § 101(a)(15)(U)(i)(III), 8 U.S.C. 1101(a)(15)(U)(i)(III). This requirement is set forth in new 8 CFR 214.14(b)(3), which furth er provides that the alien victim cannot refuse or fail to provide reasonably requested information and assistance in order to remain eligible for U nonimmigrant status. The rule also provides for alien victims who are incompetent or incapacitated. Additionally, this rule provides that the official or authority receiving the assistance be a "certifying agency," as defined in new 8 CFR 214.14(a)(2).

a. Helpfulness

USCIS interprets "helpful" to mean assisting law enforcement authorities in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim. USCIS is excluding from eligibility those alien victims who, after initiating cooperation, refuse to provide continuing assistance when reasonably requested. New 8 CFR 214.14(b)(3). USCIS believes that the statute imposes an ongoing responsibility on the alien victim to provide assistance, assuming there is an ongoing need for the ap plicant's assistance. USCIS bases this interpretation on the plain text of the statutory provision that sets forth this requirement. *See* INA § 101(a)(15)(U)(i)(III), 8 U.S.C. 1101(a)(15)(U)(i)(III). The requirement was written with several verb tenses, recognizing that an alien may apply for U nonimmigrant status at different stages of the investigation or prosecution. By allowing an individual to petition for U nonimmigrant status upon a showing that he or she may be helpful at some point in the future, USCIS believes that Congress intended for individuals to be eligible for U nonimmigrant status at the very early stages of an investigatio n. This suggests an ongoing responsibility to cooperate with the certifying official while in U nonimmigrant status. If the alien victim only reports the crime and is unwilling to provide information concerning the criminal activity to allow an investigation to move forward, or refuses to continue to provide assistance to an investigation or prosecution, the purpose of the BIWPA is not furthered. See BIWPA § 1513(a)(2). In addition, in order to qualify for permanent resident status on the basis of the U nonimmigrant classification, the alien must not have unreasonably refused to provide assistance in a criminal investigation or prosecution. INA § 245(m)(1), 8 U.S.C. 1255(m)(1). This requirement further

suggests an ongoing responsibility to cooperate with the certifying official while in U nonimmigrant status.

An exception to the helpfulness requirement applies to alien victims who are under 16 years of age. Such alien victims can satisfy the helpfulness requirement if their parent, guardian, or next friend provides the required assistance. INA § 101(a)(15)(U)(i)(III), 8 U.S.C. 1101(a)(15)(U)(III). This exception is the same exception applicable to the previous requirement that the alien victim possess information regarding the criminal activity. *See* new 8 CFR 214.14(b)(2). This rule reiterates the exception with respect to the helpfulness requirement at new 8 CFR 214.14(b)(3). The provision specifies that the age of the victim on the day on which an act constituting an element of the qualifying criminal activity first occurred is the applicable age to consider for purposes of establishing whether the exception is triggered. New 8 CFR 214.14(b)(3). It also extends the exception to individuals who are incapacitated or incompetent and allows a parent, gua rdian, or next friend to be helpful in those instances. *Id.*

b. Certifying Agency

This rule requires that the assistance in the investigation or prosecution of qualifying criminal activity be provided to a "certifying agency." As discussed later in this Supplementary Information, an alien victim must include a certification from such agency in support of his or her request for U nonimmigrant status. INA § 214(p)(1), 8 U.S.C. 1184(p)(1).

A "certifying agency" is one of the government officials and entities identified in the statute that is investigating or prosecuting qualifying criminal activity. INA § 101(a)(15)(U)(i)(III), 8 U.S.C. 1101 (a)(15)(U)(i)(III). The rule defines a "certifying agency" as a Federal, State, or local law enforcement agency, prosecutor, judge, or other authority, that has responsibility for the investigation or prosecution of the qualifying criminal activities designated in the BIWPA. New 8 CFR 214.14(a)(2). This in cludes traditional law enforcement branches within the criminal justice system. However, USCIS also recognizes that other agencies, such as child protective services, the Equal Employment Opportunity Commission, and the Department of Labor, have criminal investigative jurisdiction in their respective areas of expertise. The rule specifies these agencies. *See id.*

The rule provides that the term "investigation or prosecution," used in the statute and throughout the rule, includes the detection or investigation of a qualifying crime or criminal activity, as well as the prosecution, conviction, or sentencing of the perpetrator of such crime or criminal activity. New 8 CFR 214.14(a)(5). Referring to the AG Guidelines, USCIS is defining the term to include the detection of qualifying criminal activity because the detection of criminal activity is within the scope of a la w enforcement officer's investigative duties. AG Guidelines, at 22-23. Also referring to the AG Guidelines, USCIS is defining the term to include the conviction and sentencing of the perpetrator because these extend from the prosecution. *Id.* at 26-27. Moreover, such inclusion is necessary to give effect to section 214(p)(1) of the INA, 8 U.S.C. 1184(p)(1), which permits judges to sign certifications on behalf of U nonimmigrant status applications. INA § 214(p)(1), 8 U.S.C. 1184(p)(1). Judges neither investigate crimes nor prosecute perpetrators. Therefore, USCIS believes that the term "investigation or prosecution" should be interpreted broadly as in the AG Guidelines.

4. Criminal Activity That Violated U.S. Law or Occurred in the United States

The fourth requirement for U nonimmigrant classification is that the qualifying criminal activity violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States. INA 101(a)(15)(U)(i) (IV), 8 U.S.C. 1101(a)(15)(U)(i)(IV). This requirement is adopted in new 8 CFR 214.14(b)(4). The term United States is defined in section 101(a)(38) of the INA, 8 U.S.C. 1101(a)(38), to mean the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the U.S. Virgin Islands. The BIWPA does not define the term "Indian country," but for purposes of this rule, USCIS is adopting the definition contained in 18 U.S.C. 1151. Under this rule, "Indian country" means all land within the limits of any Indian reservation under the jurisdiction of the United States, all dependent Indian

communities wi thin the borders of the United States, and all Indian allotments. New 8 CFR 214.14(a) (4). Although 18 U.S.C. 1151 is a criminal jurisdiction statute, tribal and federal courts have applied this statutory definition to both criminal and civil matters. See *California v. Cabazon Band of Mission Indians* , 480 U.S. 202, 208 n.5 (1996).

Similarly, the term "military installation" is not defined in the BIWPA. This rule defines that term as meaning any facility, base, camp, post, encampment, station, yard, center, port, aircraft, vehicle, or vessel under the jurisdiction of the Department of Defense, or any location under military control, including any leased facility. New 8 CFR 214.14(a)(6). To develop this definition, USCIS looked to other statutory definitions of the term. *See, e.g.* , 10 U.S.C. 2687(e) (defining the term in the context of base closures and realignments); 10 U.S.C. 2801(c)(2) (relating to military construction). A review of the federal case law reveals that this is a nebulous concept with no absolute definition. *United States v. Buske* , 2 M.J. 465, 467 (A.C.M.R. 1975). In order to realize the purpose of the U nonimmigrant classification, to facilitate criminal investigations and prosecutions, USCIS interpreted the term broadly to encompass a wide range of military locations.

New 8 CFR 212.14(a)(11) defines the term "territories and possessions of the United States" to mean American Samoa, Swains Island, Bajo Nuevo (the Petrel Islands), Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Atoll, Navassa Island, Northern Mariana Islands, Palmyra Atoll, Serranilla Bank, and Wake Atoll. This definition is based on current information that the Department of Interior provided to USCIS. Although Guam, Puerto Rico, and the U.S. Virgin Islands are also consi dered territories or possessions of the United States, USCIS has not included them in this regulatory definition because they are already incorporated into the INA definition of United States. *See* INA § 101(a)(38), 8 U.S.C. 1101(a)(38).

Section 101(a)(15)(U)(i)(IV) of the INA, 8 U.S.C. 1101(a)(15)(U)(i)(IV), requires that the criminal activity either violated the laws of the United States or occurred in the United States. USCIS does not believe that this distinction is based on which laws are violated--U.S. laws or foreign laws--because elsewhere in the statute, qualifying criminal activity is defined as criminal activity that is "in violation of Federal, State, or local criminal law." *See* INA § 101(a)(15)(U)(iii), 8 U.S.C. 1101(a)(15)(U)(iii). Instead, USCIS believes that the distinction refers to where the violation occurred, whether inside or outside the United States. Accordingly, USCIS interprets the phrase, "occurred in the United States," to mean qualifying criminal activity that occurred in the United States that is in violation of U.S. law. USCIS interprets the phrase, "violated the laws of the United States," as referring to criminal activity that occurred outside the United States that is in violation of U.S. law.

This rule provides that criminal activity that has occurred outside of the United States, but that fits within a type of criminal activity listed in section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15) (U)(iii), will constitute a qualifying criminal activity if it violates a federal statute that specifically provides for extraterritorial jurisdiction. *See* new 8 CFR 214.14(b)(4). Such criminal activity will have "violated the laws of the United States." Congress has enacted a variety of statutes governing criminal activity occurring outside the territorial limits of the United States. These statutes establish extraterritorial and federal, criminal jurisdiction. Statutes establishing extraterritorial jurisdiction generally require some nexus between the criminal activity and U.S. interests. For example, pursuant to 18 U.S.C. 2423(c), the United States has jur isdiction to investigate and prosecute cases involving U.S. citizens or nationals who engage in illicit sexual conduct outside the United States, such as sexually abusing a minor. *See* also 18 U.S.C. 32 (destruction of an aircraft); 15 U.S.C. 1 (extraterritorial application of the Sherman Act governing antitrust laws).

This rule does not require that the prosecution actually occur, since the statute only requires an alien victim to be helpful in the investigation or the prosecution of the criminal activity. *See* INA sections 101(a)(15)(U)(i)(III) & 214(p)(1), 8 U.S.C. 1101(a)15(u)(i)(III) and 1184(p)(1). Prosecution may be impossible due to a number of factors, such as an inability to extradite the defendant.

B. *Application Process*

By statute, the petition for U nonimmigrant status must be filed by the alien victim and contain a certification of helpfulness from a certifying agency. *See* INA § 214(p)(1), 8 U.S.C. 1184(p)(1). Based upon these statutory requirements, this rule designates the form that petitioners must use to request U nonimmigrant status and describes the evidence that must accompany the form, including the certification of helpfulness. The rule also sets forth filing requirements and procedures. This section of the Supplementary Information discusses these requirements, as well as eligibility and filing requirements for those qualifying family members of the alien victim who also are seeking U nonimmigrant status.

1. Filing the Petition To Request U Nonimmigrant Status

This interim rule designates Form I-918, "Petition for U Nonimmigrant Status," as the form an alien victim must use to request U nonimmigrant status. *See* New 8 CFR 214.14(c)(1), This provision also requires petitioners to follow the instructions to Form I-918 for proper completion and accompany Form I-918 with initial evidence and the correct fee(s). \6\ Form I-918 requests information regarding the applicant's eligibility for U nonimmigrant status and admissibility to the United States.

Jurisdiction over all petitions for U nonimmigrant status rests with USCIS. The instructions to Form I-918 specify where petitioners must file (by mail) their application package. At present, USCIS has centralized the adjudication process for Forms I-918 at its Vermont Service Center. This centralization will allow adjudicators to develop expertise in handling U nonimmigran t petitions and provide for uniformity in the adjudication of these petitions.

The rule addresses several special considerations that may affect certain petitioners seeking to file Form I-918: Filing petitions from outside the United States; the effect of a petition on interim relief; petitioners subject to grounds of inadmissibility; petitioners in removal proceedings or subject to a final order of exclusion, deportation, or removal; changing nonimmigrant classifications; and the effect of a petition on other immigration benefits. These considerations are discussed below.

a. Alien Victims of Qualifying Criminal Activity Filing Form I-918 From Outside the United States

This interim rule does not require petitioners to file Form I-918 from within the United States. USCIS has determined that the statutory framework for U nonimmigrant status permits alien victims of qualifying criminal activity to apply for U nonimmigrant status classification from either inside or outside the United States. For example, the statute does not require petitioners to be physically present in the United States to qualify for U nonimmigrant status. By contrast, other nonimmigrant classifications, such as the T nonimmigrant classification (INA § 101(a)(15)(T), 8 U.S.C. 1101(a)(15)(T)), explicitly require an alien's physical presence in the United States as a condition of eligibility. Moreover, under section 101(a)(15)(U)(i)(IV) of the INA, 8 U.S.C. 1101(a)(15)(U)(i)(IV), qualifying criminal activity may occur outside the territorial jurisdiction of the United States under certain circumstances. USCIS recognizes that for qualifying criminal activity that occurred outside the United States, the invest igation may take place either outside or inside the United States. The alien victim may be needed in the United States to assist the certifying agency in its investigation or subsequent prosecution of the criminal activity. Allowing alien victims to submit petitions from outside the United States provides the certifying agency with the necessary flexibility to further the investigation or prosecution.

To apply from outside the United States, petitioners must submit a complete application package for U nonimmigrant status to the USCIS location specified in the form instructions.

b. Petitioners With Interim Relief From Removal

This rule does not impose a deadline for submission of U nonimmigrant status petitions. However, USCIS encourages petitioners and accompanying or following to join family members who were granted interim relief to file Form I-918 within 180 days of the effective date of this rule. After the effective date of this rule, the interim relief process will no longer be in effect, and USCIS will not consider initial requests for interim relief. After the 180-day time period following the effective date of the rule , USCIS will reevaluate previous grants of deferred action, parole, and stays of removal

and terminate such interim relief for those aliens who fail to file Form I-918 within the 180-day time period. However, if the alien has properly filed a Form I-918, but USCIS has not yet adjudicated that petition, interim relief will be extended until USCIS completes its adjudication of Form I-918. USCIS believes that 180 days provides an interim relief recipient a sufficient period of time within which to file and per fect a U nonimmigrant petition, taking into account the time it may take for individuals to learn of this rule and put together a complete package requesting U nonimmigrant status.

c. Petitioners Who Are Inadmissible

To be eligible for U nonimmigrant status, the alien requesting status must be admissible to the United States. 8 CFR 214.1(a)(3)(i); *see also* INA § 214(a)(1), 8 U.S.C. 1184(a)(1). Therefore, those who are inadmissible to the United States, or who become inadmissible for conduct that occurs while their petition for U nonimmigrant status is pending, will not be eligible for U nonimmigrant status unless the ground of inadmissibility is waived by USCIS. *See* INA § 212(a), 8 U.S.C. 1182(a) (grounds of inadmissibility). USCIS has general authority to waive many grounds of inadmissibility for nonimmigrants and may prescribe conditions on their temporary admission to the United States. *See* INA § 212(d)(3)(B), 8 U.S.C. 1182(d)(3)(B).

In addition, the BIWPA created a waiver specific to U nonimmigrant status. Under this waiver, the Secretary of Homeland Security has the discretion to waive any ground of inadmissibility with respect to applicants for U nonimmigrant status, except the ground applicable to participants in Nazi persecutions, genocide, acts of torture, or extrajudicial killings. INA § 212(d)(14), 8 U.S.C. 1182(d)(14). However, the Secretary of Homeland Security first must determine that such a waiver would be in the public or national interest. *Id.*

It is important to note that the determination that a waiver would be in the public or national interest and the decision to grant a waiver are made at the discretion of the Secretary. In the immigrant context, the Board of Immigration Appeals has held that, in assessing whether an applicant has met the burden that a waiver is warranted in the exercise of discretion, the adjudicator must balance adverse factors evidencing inadmissibility as a lawful permanent resident with the social and humane consideratio ns presented to determine if the grant of the waiver appears to be in the best interests of the United States. *Matter of Mendez-Moralez* , 21 I&N Dec. 296 (BIA 1996). More recently, in the context of a case involving a waiver of a criminal ground of inadmissibility under section 209(c) of the Act, the Attorney General determined that favorable discretion should not be exercised for waivers under section 212(h) of the Act involving violent or dangerous crimes, except in extraordinary circumstances. *Matter of Jean* , 23 I&N Dec. 373 (A.G. 2002).

In view of these considerations, this rule provides a general rule that DHS will only exercise favorable discretion in U nonimmigrant status cases in which a waiver for violent or dangerous crimes or the security and related grounds under section 212(a)(3) of the Act is requested, in extraordinary circumstances. Moreover, depending on the nature and severity of the underlying offense/s to be waived, the Secretary retains the discretion to determine that the mere existence of extraordinary circumstances is i nsufficient.

Additionally, this rule provides that the Secretary will not exercise discretion under section 212(d)(3) of the Act, 8 U.S.C. 1182(d)(3), to waive the ground of inadmissibility under section 212(a)(3)(E) applicable to participants in Nazi persecutions, genocide, acts of torture, or extrajudicial killings. New 8 CFR 212.17(b). Because Congress determined not to make a waiver available for this ground of inadmissibility in the waiver provision created for U nonimmigrant applicants at section 212(d)(14) of the Act, DHS has determined that it would not be logical to allow these applicants to be eligible for a waiver of this ground of inadmissibility under section 212(d)(3) of the Act.

To apply for a waiver of inadmissibility, a petitioner must file Form I-192, "Application for Advance Permission to Enter as Nonimmigrant," with USCIS. New 8 CFR 212.17(a); new 8 CFR 214.14(c)(2) (iv). USCIS will evaluate the application to determine whether it is in the public or national interest to exercise discretion to waive the applicable ground(s) of inadmissibility. New 8 CFR 212.17(b)(1). As

with inadmissibility waiver applications for other nonimmigrant classifications, there is no appeal of a deci sion to deny Form I-192. New 212.17(b)(2); *see* also 8 CFR 212.4(a)(1). This rule also provides that an applicant whose waiver application is denied is not prevented from re-filing a request for a waiver. New 8 CFR 212.17(b)(2). This is to allow those petitioners whose Forms I-918 and concurrently filed Forms I-192 are denied an opportunity to have a subsequently filed Form I-192 considered in the context of other immigration benefits.

USCIS has determined that implicit in its discretionary authority to grant a waiver is the authority to determine the conditions under which a waiver is granted, including revocation of previously granted waiver. Therefore, this interim rule establishes USCIS' authority to revoke its approval of a waiver of inadmissibility that was previously granted. The decision to revoke a waiver is not appealable. New 8 CFR 212.17(c).

d. Petitioners Who Are in Removal, Deportation, or Exclusion Proceedings or Who Are Subject to a Final Order of Removal, Deportation, or Exclusion

Aliens who are in removal proceedings under section 240 of the INA, 8 U.S.C. 1229a, or in deportation or exclusion proceedings under former sections 242 and 236 of the INA, 8 U.S.C. 1252, 1226 (as in effect before April 1, 1997), or who are the subject of a final order of removal, deportation, or exclusion, may be eligible for U nonimmigrant status. \7\ Because jurisdiction over U nonimmigrant petitions rests solely with USCIS, aliens who are in removal proceedings or who are subject to a final removal order nevertheless must file their petition for U nonimmigrant status directly with USCIS. Filing a petition for U nonimmigrant status will not affect the proceedings or the order. However, in instances in which the U nonimmigrant status petitioner or a derivative family member of the petitioner listed on the Form I-918 is in removal, deportation, or exclusi on proceedings before the Immigration Court or has a matter pending before the Board of Immigration Appeals (Board), \8\ this rule provides that the alien may seek the agreement of DHS' Bureau of Immigration and Customs Enforcement (ICE) \9\ to file a joint motion to terminate the proceedings without prejudice while a petition for U nonimmigrant status is being adjudicated by USCIS. \10\ New 8 CFR 214.14(c)(1)(i) and (f)(2)(i). The joint motion to terminate must be filed with the Immigration Court or the Board, whichever has jurisdiction. *Id* . The agreement to pursue termination of the pending proceedings lies within the sole prosecutorial discretion of ICE. DHS is including a specific provision on motions to terminate in this rule to identify a mechanism that conserves prosecutorial resources with respect to a class of aliens who are providing assistance in investigating and prosecuting criminal activity.

This rule further provides that if proceedings are terminated, and USCIS subsequently denies the petition for U nonimmigrant status, DHS may file a new Notice to Appear \11\ to place the individual into proceedings again. New 8 CFR 214.14(c)(5)(ii) and (f)(6)(iii).

With respect to petitioners who are the subject of an administrative final order, this rule provides that they are not precluded from filing a petition for U nonimmigrant status directly with USCIS. New 8 CFR 214.14(c)(1)(ii) and (f)(2)(ii). However, the filing of a petition for U nonimmigrant status has no effect on ICE's authority to execute a final order. Therefore, those aliens subject to a final order of removal, deportation, or exclusion who are physically present in the United States should apply sep arately for a discretionary stay of removal if they wish to remain in the United States while their petition is pending with USCIS. To do so, such aliens must file Form I-246, "Application for Stay of Removal," as provided in 8 CFR 241.6(a) and 8 CFR 1241.6(a). For those petitioners who are subject to a final order of removal and are detained in ICE's custody while USCIS adjudicates their petition, rules of detention still apply. Under the post-order detention rules, an alien who has been subject to post-or der detention for more than six months (dating from the beginning of the removal period as described in INA § 241(a)(1)) may request release from detention. See 8 CFR 241.13. If, after six months of post-order detention, the alien can provide "good reason to believe there is no significant likelihood of removal * * * in the reasonably foreseeable future," the alien, with certain exceptions,

will be released on an order of supervision. 8 CFR 241.13(a); *see Zadvydas v. Davis* , 533 U.S. 678, 701 (2001); Clark v. Martinez, 543 U.S. 371, 386 (2005). However, under this rule, the time during which a stay of removal is in effect will extend the period of detention reasonably necessary to bring about the petitioner's eventual removal. New 8 CFR 214.14(c)(1)(ii) and (f)(2)(ii). As the petitioner has, of his or her own choosing, requested that his or her removal be stayed, the reasonably necessary period for removal justifiably is extended. ICE will have a full and fair period to effec t removal if USCIS denies the petition. See 8 CFR 241.4.

If USCIS grants the petition for U nonimmigrant status, an order of exclusion, deportation, or removal issued by the Secretary will be canceled by operation of law as of the date of the grant. New 8 CFR 214.14(c)(5)(i) & (f)(6). However, if USCIS subsequently revokes approval of the petition, DHS may place the petitioner in removal proceedings. In cases where an order of exclusion, deportation, or removal was issued by an immigration judge or the Board, the alien may seek cancellation of such order by filin g, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23. *Id.*

e. Aliens Seeking Change of Nonimmigrant Classification

Aliens who currently are in a nonimmigrant status may seek to change their classification to the U nonimmigrant classification. Section 248 of the INA, 8 U.S.C. 1258, and implementing regulations at 8 CFR 248 govern change of nonimmigrant classification. These provisions permit nonimmigrants to change status to another nonimmigrant classification, unless they fall within certain nonimmigrant classifications. INA § 248(a)(1)-(4), 8 U.S.C. 1258(a)(1)-(4); 8 CFR 248.2. For example, aliens classified under sect ions 101(a)(15)(C), (D), (K), or (S) of the INA, 8 U.S.C. 1101(a)(15)(C), (D), (K), or (S), as well as certain aliens classified under section 101(a)(15)(J) of the INA, 8 U.S.C. 1101 (a)(15)(J), may not change nonimmigrant status. VAWA 2005 amended section 248 of the INA, 8 U.S.C. 1258, so that even aliens within the excepted classifications may seek a change of nonimmigrant status if the status sought is U nonimmigrant status. INA § 248(b), 8 U.S.C. 1258(b). This rule adopts this statutory amendment in revi sed 8 CFR 248.2(b) and makes structural modifications to 8 CFR 248.2 to accommodate the revisions. The rule also clarifies that the procedures for applying for U nonimmigrant status, even when changing nonimmigrant status, are contained in new 8 CFR 214. Revised 8 CFR 248.1(a).

f. Aliens Seeking Other Immigration Benefits

Aliens seeking U nonimmigrant status are free to seek any other immigration benefit or status for which they are eligible. INA § 214(p)(5), 8 U.S.C. 1184(p)(5). Therefore, nothing in this rule limits a qualified petitioner from applying for U nonimmigrant status as well as other immigration benefits, including immigrant status. However, USCIS will only grant one nonimmigrant or immigrant status at a time. Where multiple applications or petitions are filed and pending at the same time, USCIS will grant the s tatus for the application or petition that is approved first. USCIS will deny any remaining petitions or applications for status.

2. Initial Evidence

This rule requires petitioners filing Form I-918 to accompany the petition with supporting documentation, or "initial evidence," in order for USCIS to consider the request for U nonimmigrant status complete. New 8 CFR 214.14(c)(1). If all required initial evidence is not submitted with the petition or does not demonstrate eligibility, USCIS, in its discretion, may deny the application for lack of initial evidence or for ineligibility, or request that the missing or insufficient initial evidence be submitted within a specified period of time as determined by USCIS. 8 CFR 103.2(b)(8)(ii). This rule provides the following list of required initial evidence:

• Form I-918, Supplement B, "U Nonimmigrant Status Certification," properly and timely executed;

• Any additional evidence the petitioner wants USCIS to consider to establish further that:

-- The petitioner is a victim of qualifying activity;

-- The petitioner has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity;

-- The petitioner possesses information concerning the qualifying criminal activity of which he or she was a victim;

-- The petitioner has been, is being, or is likely to be helpful to a certifying agency;

-- The criminal activity is qualifying and occurred in the United States, including in Indian country and military installations, or the territories and possessions of the United States, or violated a U.S. federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. Federal court;

• A statement by the petitioner describing the facts of the victimization; and

• If the petitioner is inadmissible, Form I-192, "Application for Advance Permission to Enter as Non-Immigrant." New 8 CFR 214.14(c)(2).

a. U Nonimmigrant Status Certification

This rule designates Form I-918, Supplement B, "U Nonimmigrant Status Certification," as the form that petitioners must obtain from a certifying official of a certifying agency. New 8 CFR 214.14(c)(2) (i). Form I-918, Supplement B must be prepared by the certifying agency conducting an investigation or prosecution of the qualifying criminal activity in accordance with the instructions to the form, and must have been signed by the certifying official within the six months immediately preceding the submission of Form I-918. *Id* . USCIS is setting a six-month requirement to seek a balance between encouraging the filing of petitions and preventing the submission of stale certifications. USCIS believes that this requirement provides petitioners enough time to prepare the necessary paperwork for the petition package, while also precluding the situation where petitioners delay filing the package until some time after the certification is signed, and they cease to be helpful to the certifying agency. If a petitioner requested and receiv ed interim relief prior to the effective date of this rule, USCIS will consider the evidence submitted to meet the certification requirements for interim relief purposes in lieu of Form I-918, Supplement B. New 8 CFR 214.14(c)(1).

This rule defines "certifying official" as the head of the certifying agency or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency, or a Federal, State, or local judge. New 8 CFR 214.14(a)(3). USCIS believes that this definition is reasonable and necessary to ensure the reliability of certifications. It also should encourage certifying agencies to develop internal policies and pr ocedures so that certifications are properly vetted.

Under this rule, the certifying official must affirm the following in the certification: (1) That the person signing the certificate is the head of the certifying agency or person(s) in a supervisory role who has been specifically designated with the authority to issue U nonimmigrant status certifications on behalf of that agency, or a Federal, State, or local judge; (2) that the agency is a Federal, State, or local law enforcement agency, prosecutor, judge, or other authority that has responsibility for th e detection, investigation, prosecution, conviction, or sentencing of qualifying criminal activity; (3) that the petitioner has been a victim of qualifying criminal activity that the certifying official's agency is investigating or prosecuting; (4) that the petitioner possesses information concerning the qualifying criminal activity of which he or she has been a victim; (5) that the petitioner has been, is being, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activ ity; and (6) that the qualifying criminal activity violated U.S. law, or occurred in the United States, its territories and possessions, Indian country, or at military installations abroad. New 8 CFR 214.14(c)(2)(i). The certification also should provide relevant, specific details about the nature of the crime being investigated or prosecuted and describe, in detail, the petitioner's helpfulness to the case.

USCIS developed the requirements for Form I-918, Supplement B based upon the eligibility requirements petitioners must meet and the purposes for which the certification will be used. USCIS determined that since the certifying agency is the primary point of contact between the petitioner and the criminal justice system, the certifying agency is in the best position to verify certain factual information. In addition, USCIS does not believe that petitioners are in the best position to know the specific violati on of U.S. law the certifying agency is investigating or prosecuting, or what specific statute provides the certifying agency with the extraterritorial jurisdiction to investigate or prosecute criminal activity that occurred outside the United States. Therefore, USCIS determined that information regarding the eligibility requirements should be addressed by the certifying agency on Form I-918, Supplement B. USCIS will use Form I-918, Supplement B in the course of adjudicating whether the eligibility requirem ents have been met.

b. Additional Evidence To Satisfy the Eligibility Requirements

While USCIS will give a properly executed certification on Form I-918, Supplement B, significant weight, USCIS will not consider such certification to be conclusory evidence that the petitioner has met the eligibility requirements. USCIS believes that it is in the best position to determine whether a petitioner meets the eligibility requirements as established and defined in this rule. In addition to Form I-918, Supplement B, this interim rule permits the petitioner to provide any additional evidence that i s relevant and credible to help demonstrate that the petitioner meets each of the eligibility requirements. New 8 CFR 214.14(c)(2)(ii) and (iii). For petitioners with interim relief, USCIS will consider evidence previously submitted with the request for interim relief as part of the petition package. Petitioners with interim relief may file additional evidence with Form I-918 to supplement this previously submitted evidence. New 8 CFR 214.14(c)(1).

Evidence to further establish that the petitioner is a victim of qualifying criminal activity may include: trial transcripts, court documents, news articles, police reports, orders of protection, and affidavits of other witnesses, such as medical personnel.

Evidence to further establish the nature of the abuse suffered may include such documentation as reports and affidavits from police, judges, other court officials, medical personnel, school officials, clergy, social workers, and other social service agency personnel. Petitioners who have obtained an order of protection against the perpetrator or taken other legal steps to protect themselves against the perpetrator should submit copies of the relating legal documents. A combination of documents such as a pho tograph of the visibly injured applicant supported by affidavits of individuals who have personal knowledge of the facts regarding the criminal activity may be relevant as well.

Evidence to further establish that the petitioner possesses information about the qualifying criminal activity may include documents establishing that he or she has knowledge of the details of the criminal activity. Examples of relevant evidence include: reports and affidavits from police, judges, and other court officials. In cases where the petitioner is a child under the age of 16, or is incapacitated or incompetent, this requirement can be satisfied by the parent, guardian, or next friend submitting the necessary evidence on behalf of the petitioner. Such person must provide evidence of his or her qualifying relationship to the petitioner and evidence establishing the age, incapacity, or incompetence of the petitioner. Examples of such evidence include: birth certificates, court documents demonstrating recognition of an individual as the petitioner's next friend, medical records, or reports of licensed medical professionals demonstrating the incapacity or incompetence of the applicant.

Evidence to further establish that the petitioner has provided the necessary assistance in the investigation or prosecution of qualifying criminal activity may include such documentation as: Trial transcripts, court documents, police reports, news articles, copies of reimbursement forms for travel to and from court, and affidavits of other witnesses or officials. If USCIS has reason to believe that there is a question about the petitioner's helpfulness to, or continuing cooperation with, the investigation o r prosecution, USCIS may contact the certifying official for further explanation. In cases where the petitioner is a child under the age of 16 or is incapacitated or incompetent, this requirement can be

satisfied by the parent, guardian, or next friend submitting the necessary evidence on behalf of the petitioner. Such person must provide evidence of their qualifying relationship to the petitioner and evidence that the petitioner is a child under the age of 16, incapacitated, or incompetent. Evidence that w as submitted to satisfy the possession of information requirement will satisfy this requirement and need not be submitted twice.

Examples of evidence to further establish that the criminal activity is qualifying and violated U.S. law or occurred in the United States include: A copy of the statutory provision(s) showing the elements of the offense or factual information about the crime demonstrating that it is similar to the list of qualifying criminal activity contained in section 101(a)(15)(U)(iii) of the INA, 8 U.S.C. 1101(a)(15) (U)(iii). If the criminal activity occurred outside the United States, the additional evidence submitted may include a copy of the statutory provision(s) providing for the extraterritorial jurisdiction and documentation showing that the criminal activity violated federal law and is prosecutable in a federal court.

c. Statement by the Petitioner

In support of Form I-918, this rule requires the petitioner to submit a separate statement describing the facts of his or her victimization. 8 CFR 214.14(c)(2)(iii). USCIS is requiring that the petitioner submit a statement because USCIS believes that it is important to learn about the facts of the victimization from the petitioner in his or her own words. This statement should include the following information: The nature of the criminal activity, when the criminal activity occurred, who was responsible, t he events surrounding the criminal activity, how the criminal activity came to be investigated or prosecuted, and what substantial physical and/or mental abuse was suffered as a result of having been the victim of the criminal activity. The statement also may include information supporting any of the other eligibility requirements.

When the petitioner is under the age of 16, incapacitated, or incompetent, a parent, guardian, or next friend must submit a statement in lieu of the petitioner that contains as much information surrounding the criminal activity and physical and/or mental abuse as possible.

d. Petitioners Who Are Inadmissible

As stated earlier in this Supplementary Information, this rule requires petitioners seeking a waiver of inadmissibility to file Form I-192, "Application for Advance Permission to Enter as Nonimmigrant." New 8 CFR 212.17(a). USCIS has listed the Form I-192 in this rule as initial evidence which must be filed concurrently with Form I-918, along with a separate filing fee. New 8 CFR 214.14(c)(2)(iv). Form I-192 is an established form to waive grounds of inadmissibility for aliens seeking immigration benefits. *See, e.g.,* 8 CFR 212.4 (general authority for waivers in nonimmigrant cases); 8 CFR 212.16 (providing for use of Form I-192 in T nonimmigrant status cases).

3. Derivative Family Members

Section 101(a)(15)(U)(ii) of the INA, 8 U.S.C. 1101(a)(15)(U)(ii), permits certain family members accompanying or following to join the alien victim to obtain U nonimmigrant status, regardless of whether or not they are in the United States or overseas. USCIS refers to such family members as derivatives, and the alien victim as the principal. Which family members are considered "qualifying" depends on the age of the principal. If the principal is under 21 years of age, qualifying family members include the principal's spouse, children, unmarried siblings under 18 years of age (on the filing date of the principal's petition), and parents. INA § 101(a)(15)(U)(ii)(I), 8 U.S.C. 1101(a)(15) (U)(ii)(I). If the principal is 21 years of age or older, qualifying family members include the spouse and children of the principal. INA § 101(a)(15)(U)(ii)(II), 8 U.S.C. 1101(a)(15)(U)(ii)(II). This rule provides the eligibility requirements and petition procedures for qualifying family members seeking derivative status. *See* new 8 CFR 214.14(f).

a. Eligibility

New 8 CFR 214.14(f)(1) sets forth two eligibility requirements for derivative U nonimmigrant status. First, the alien must be a qualifying family member. New 8 CFR 214.14(f)(1)(i). Second, the alien

Exhibit 1

must be admissible to the United States. New 8 CFR 214.14(f)(1)(ii); *see also* INA § 214(a)(1), 8 U.S.C. 1184(a)(1); 8 CFR 214.1(a)(3)(i).

Generally, in order to be considered a qualifying family member, the relationship between the principal petitioner and the family member must exist at the time Form I-918 was filed. New 8 CFR 214.14(f)(4). The relationship must continue to exist at the time the petition for derivative status is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States. *Id* . Otherwise, the family member would not meet section 101(a)(15)(U)(ii) of the INA, 8 U.S.C. 1101(a)(15)(U)(ii), describing who qualifies as a family member.

Note that parents are only considered qualifying family members if the principal is under 21 years of age and a "child." New 8 CFR 214.14(f)(1). Although the statutory language at section 101(a)(15)(U) (ii), 8 U.S.C. 1101(a)(15)(U)(ii), naming parents as qualifying family members does not specify that the principal must be a child under the age of 21 for the parents to qualify, USCIS believes that this qualification is required by section 101(b)(2) of the INA, 8 U.S.C. 1101(b)(2). This provision defines the term, "child," as an unmarried person under 21 years of age. INA sections 101(b)(1), 8 U.S.C. 1101(b)(1).

A special rule applies to unmarried siblings under age 18 of petitioners who are under 21 years of age. For such siblings, the statute provides that the siblings' age on the date that Form I-918 is filed is controlling. INA § 101(a)(15)(U)(ii)(I), 8 U.S.C. 1101(a)(15)(U)(ii)(I). Therefore, in new 8 CFR 214.14(f)(4)(ii), if the principal petitioner was under 21 years of age, and requested U nonimmigrant status for an unmarried sibling under the age of 18 at the time Form I-918 was filed, USCIS will continue to consider such sibling as a qualifying family member for purposes of U nonimmigrant status at the time of adjudication even if circumstances change. This rule also provides that children born to the principal petitioner after Form I-918 has been filed will be eligible for derivative U nonimmigrant status. New 8 CFR 214.14(f)(4)(i).

This rule excludes certain qualifying family members from eligibility. Section 204(a)(1)(L) of the INA, 8 U.S.C. 1154(a)(1)(L), prohibits an alien victim from petitioning for derivative U nonimmigrant status on behalf of a qualifying family member who committed battery or extreme cruelty or trafficking against the alien victim which established his or her eligibility for U nonimmigrant status. The rule incorporates this prohibition at new 8 CFR 214.14(f)(1). USCIS has interpreted the prohibition as applying to qualifying family members who committed qualifying criminal activity in a family violence or trafficking context. In making this determination, USCIS considered the plain text of section 204(a)(1)(L) of the INA, 8 U.S.C. 1154(a)(1)(L), and found it to be unclear regarding its intended application. In addition to trafficking, the statute lists battery and extreme cruelty as disqualifying activity even though those terms are not listed as qualifying criminal activity in section 101(a)(15)(U)(iii) of the I NA, 8 U.S.C. 1101(a)(15)(U)(iii), and are not included in the standard of harm necessary to establish eligibility for U nonimmigrant status. However, when the terms battery or extreme cruelty are used in other contexts in the INA, they are used to refer to harm occurring as a result of domestic violence or child abuse. See INA sections 204(a)(1)(A) & (B), 216 (c)(4)(C), 240A(b)(2), 8 U.S.C. 1154(a)(1)(A) & (B), 1186(c)(4)(C), 1229b. USCIS believes it is reasonable to conclude that by using these terms, Congr ess intended to prohibit approval of petitions for U nonimmigrant status where the petition is based on qualifying criminal activity for which the qualifying family member is responsible that occurred in a family violence or trafficking context.

b. Filing Procedures

This rule requires that a principal petitioner for U nonimmigrant status or a principal alien who has been granted U nonimmigrant status must petition for derivative status on behalf of qualifying family members by submitting a Form I-918, Supplement A, "Petition for Qualifying Family Member of U-1 Recipient," for each qualifying family member. New 8 CFR 214.14(f)(2). Principal petitioners can file Form I-918, Supplement A either at the same time or after filing his or her Form I-918. *Id*. Principal aliens who have already received U nonimmigrant status may file Form I-918, Supplement

A at any time while maintaining U nonimmigrant status. Id. This provides principals with maximum flexibility to request derivative status for qualifying family members.

This rule further requires that Form I-918, Supplement A must be accompanied by supporting evidence ("initial evidence") and the fees required by the instructions to the form. Id . If the principal petitioner files Form I-918, Supplement A while his or her Form I-918 is pending adjudication with USCIS, the principal petitioner must accompany Form I-918, Supplement A with a copy of his or her Form I-918. Id. If the principal already has been granted U nonimmigrant status, then he or she must accompany Form I-918, Supplement A with a copy of the Form I-94 he or she received when the Form I-918 was approved. Id. This will be considered evidence of the principal's U nonimmigrant status. Requiring evidence of the principal's pending petition or status will enable USCIS to match up the derivative petition with the principal's petition.

New 8 CFR 214.14(f)(3) sets forth the initial evidence that must accompany each Form I-918, Supplement A: (1) Evidence of the family member's qualifying relationship with the principal; and (2) if the alien is inadmissible under section 212(a) of the INA, 8 U.S.C. 1182(a), Form I-192, with fee. Such initial evidence corresponds to the two eligibility requirements for derivative U nonimmigrant status.

4. Designations

This rule amends 8 CFR 214.1(a)(1) to codify the derivative subclassifications established by section 101(a)(15)(U) of the INA, 8 U.S.C. 1101(a)(15)(U). See new 8 CFR 214.1(a)(1)(ix). In addition, the rule provides for the following designations for qualifying family members of the principal applicant (U-1): Spouse (U-2), child (U-3), the child's parents (U-4), and siblings (U-5). New 8 CFR 214.14(f) (1). This rule likewise adds these designations to current 8 CFR 214.1(a)(2), to add to the list of designati ons assigned to all other nonimmigrant classifications. These designations are a matter of administrative convenience, providing a shorthand notation for identifying the principal petitioner and each derivative based upon the relationship to the principal.

C. *Adjudication and Post-Adjudication*

The statutory provisions establishing U nonimmigrant status contain a number of parameters guiding the adjudication of U nonimmigrant petitions. Specifically, in determining whether to grant U nonimmigrant status, the statute requires that the adjudicator consider any credible evidence relevant to the petition. *See* INA § 214(p)(4), 8 U.S.C. 1184(p)(4). In addition, the statute protects information relating to applicants for U nonimmigrant status from disclosure. 8 U.S.C. 1367(a)(2). Moreover, the statute precludes adjudicators from making adverse determinations on inadmissibility or deportability with respect to petitions for U nonimmigrant status based on information provided by the perpetrator of abuse and criminal activity. 8 U.S.C. 1367(a)(1)(E). The number of grants of U nonimmigrant status that may be made in a fiscal year is limited by an annual cap of 10,000. INA § 214(p)(2), 8 U.S.C. 1184(p)(2).

In this section of the Supplementary Information , these parameters are discussed, as well as the steps that follow a decision to grant or deny a petition for U nonimmigrant status.

1. Credible Evidence

This rule adopts the statutory requirement that any credible evidence relevant to the petition must be considered in the adjudication of petitions for U nonimmigrant status. New 8 CFR 214.14(c)(4) & (f) (5). As in the case of all other immigration benefits, the burden of establishing eligibility for U nonimmigrant status rests with the petitioner. *Id* . USCIS will consider all evidence de novo and will not be bound by any of its prior determinations made during the course of adjudicating an application for interim relief on any essential element of U nonimmigrant status. *Id.* A grant of interim relief means only that the alien presented prima facie evidence that he or she was eligible for U nonimmigrant status and does not constitute a binding determination that any given eligibility requirement had been proven. In adjudicating Form I-918, USCIS will review all evidence submitted in conjunction with the interim relief application along with any additional evidence submitted by the

petitioner in conjunction with his or her Form I-918, including the certification, Form I-918, Sup plement B.

This rule also provides that USCIS may review documentation submitted by the alien in conjunction with any other applications he or she has made for immigration benefits in the past. *Id.* This will enable USCIS to review the petition for U nonimmigrant status in the context of the petitioner's past immigration history and verify that statements made in his or her petition are consistent with information he or she provided to USCIS in the past. In addition, this rule provides that USCIS may investigate any aspect of the petition. *Id.* This means that if, during its adjudication of Form I-918, USCIS has reason to believe that there is a question about the petitioner's helpfulness to, or continuing cooperation with, the investigation or prosecution, or any other aspect of the petition, USCIS may contact the certifying official for further explanation. USCIS then will be able to verify the veracity of the contents of the petition and safeguard the integrity of the U nonimmigrant status program.

2. Prohibitions on Disclosure of Information

Information concerning U nonimmigrant petitioners is protected against disclosure in two ways. *See* 8 U.S.C. 1367. First, adverse determinations of admissibility or deportability cannot be made based on information obtained solely from the perpetrator of substantial physical or mental abuse and the criminal activity. 8 U.S.C. 1367(a)(1)(E). Second, the disclosure of information relating to the beneficiary of a pending or approved petition for U nonimmigrant status is prohibited except in certain circumstances. 8 U.S.C. 1367(a)(2). The statute allows information to be released to a sworn officer or employ ee of DHS, the Department of Justice, the Department of State, or a bureau or agency of either of those Departments, for legitimate Department, bureau, or agency purposes. *Id.* There are eight specific exemptions from the general nondisclosure rule:

(1) At the discretion of the Secretary of Homeland Security or Attorney General, officials may disclose information in the same manner and circumstances as census information may be disclosed by the Secretary of Commerce under 13 U.S.C. 8.

(2) At the discretion of the Secretary of Homeland Security or Attorney General, officials may provide for the disclosure of information to law enforcement officials to be used solely for a legitimate law enforcement purpose.

(3) In connection with judicial review of a determination, information may be disclosed in a manner that protects the confidentiality of such information.

(4) Information may be disclosed if all the crime victims in the case are adults, and they have waived the general restrictions on disclosure of information provided by 8 U.S.C. 1367(a)(2).

(5) Information may be disclosed to Federal, State, and local public and private agencies providing benefits, to be used solely to make determinations of eligibility for benefits pursuant to 8 U.S.C. 1641 (c).

(6) Information may be disclosed after a petition for U nonimmigrant status has been finally denied.

(7) Information may be disclosed on closed cases to the chairmen and ranking members of the Committee on the Judiciary of the Senate, or the Committee on the Judiciary of the House of Representatives, for the exercise of congressional oversight authority, provided the disclosure is made in a manner that protects the confidentiality of the information and omits personally identifying information (including locational information about individuals).

(8) With prior written consent from the principal petitioner or derivative family member, information may be disclosed to nonprofit, nongovernmental victims' service providers for the sole purpose of assisting the victim in obtaining victim services from programs with expertise working with immigrant victims.

8 U.S.C. 1367(b). Appropriate disciplinary action must be taken and a monetary penalty of up to $5,000 may be imposed on anyone who willfully uses, publishes, or permits information to be disclosed in violation of the nondisclosure provisions. 8 U.S.C. 1367(c). This rule incorporates the

prohibitions and restrictions on information relating to U nonimmigrant petitions into new 8 CFR 214.14(e).

Within the bounds of the statutory prohibitions and restrictions against disclosure of information relating to a U nonimmigrant petitioner, USCIS may provide information taken from the petition about any Federal, State or local crimes to investigative agencies that have a reason to know based on a legitimate law enforcement purpose. Possible agencies or bureaus to which information may be disclosed include: The Federal Bureau of Investigation (FBI); the U.S. Attorney's Office or the Civil Rights or Criminal Divisions of the Department of Justice; or U.S. Immigration and Customs Enforcement (ICE). As part of the adjudication process, USCIS also may contact the certifying agency for the purpose of assessing whether the petitioner is, has been, or is likely to be helpful to the investigation or prosecution of the qualifying criminal activity. Because the certifying agency has submitted a certification on behalf of the petitioner and, therefore, has already been informed about the fact of the petition as well as the facts upon which the petition is based, USCIS has determined that contacting the certifying agency would not violate the statutory prohibitions and restrictions against disclosure. USCIS recognizes the sensitive nature of application information and takes seriously its obligation to protect confidentiality. USCIS will make any disclosure to an investigative agency in a manner that provides the maximum confidentiality under the circumstances.

In addition to disclosures to investigative agencies, DHS may have an obligation to provide portions of petitions for U nonimmigrant status to federal prosecutors for disclosure to defendants in pending criminal proceedings. This obligation stems from constitutional requirements that pertain to the government's duty to disclose information, including exculpatory evidence or impeachment material, to defendants. See U.S. Const. amend. V & VI; Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154 (1972). Accordingly, this rule incorporates this requirement at new 8 CFR 214.14(e)(1)(ix).

3. Annual Numerical Limitation on Grants of U Nonimmigrant Status

Before USCIS may grant U nonimmigrant status, it must consider the statutory cap on the number of aliens who may receive a grant of status each fiscal year. See INA § 214(p)(2), 8 U.S.C.1184(p)(2). No more than 10,000 principal aliens may be granted U nonimmigrant status in a given fiscal year (October 1 through September 30). INA § 214(p)(2)(A), 8 U.S.C. 1184(p)(2)(A). This numerical limitation does not apply to spouses, children, parents, and unmarried siblings who are accompanying or following to join the principal alien victim. INA § 214(p)(2)(B), 8 U.S.C. 1184(p)(2)(B). USCIS anticipates that within the first few fiscal years after publication of this regulation, it will receive petitions for U nonimmigrant status from more than 10,000 principal aliens. USCIS is cognizant of the fact that law enforcement agencies and prosecutors need a stable mechanism through which to regularize the status of victims and witnesses, but is equally cognizant of the fact that Congress saw fit to limit the number of aliens who may be granted U nonimmigrant status in any given fiscal year. USC IS has determined that to balance the statutorily imposed numerical cap against the dual goals of enhancing law enforcement's ability to investigate and prosecute criminal activity and providing protection to alien victims of crime, it will create a waiting list should the cap be reached in a given fiscal year before all petitions are adjudicated. USCIS's goal is to respect the intent of the numerical limitation imposed by Congress while still allowing the legislation to achieve maximum efficacy. USCIS beli eves that this rule's waiting list methodology will provide a stable mechanism through which victims cooperating with law enforcement agencies can regularize their immigration status.

Under this rule, once the numerical limit has been reached in a particular fiscal year, all pending and subsequently submitted petitions will continue to be reviewed in the normal process to determine eligibility. See new 8 CFR 214.14(d)(2). USCIS will deny petitions that are not approvable. Eligible petitioners who are not granted U-1 nonimmigrant status due solely to the numerical limits will be notified by USCIS that they have been placed on a waiting list. Id . Each fiscal year, as new numbers

for U-1 nonimmigrant status become available, USCIS will grant U nonimmigrant status to petitioners on the waiting list. *Id* . Petitioners on the waiting list will be given priority based on the date the petition was properly filed. *Id* . Petitioners on the waiting list must continue to meet the eligibility requirements for U nonimmigrant status and be admissible at the time status is granted. Id. After USCIS has granted U nonimmigrant status to petitioners on the waiting list, USCIS will continue to grant petitions, up to the annual limit, to new petitioners in the order in which each petition was properly filed. Id.

This rule also provides that, USCIS will give petitioners on the waiting list deferred action or parole until the start of the next fiscal year. *Id* . Those petitioners will be eligible to apply for employment authorization. *Id.* The rule further provides that petitioners on the waiting list will not accrue unlawful presence under section 212(a)(9)(B) of the INA, 8 U.S.C. 1182(a)(9)(B). New 8 CFR 214.14(d)(3). However, at its discretion, USCIS may remove a petitioner from the waiting list and terminate deferred action or parole. *Id* . For example, USCIS may terminate deferred action or parole if the petitioner is convicted of a crime that renders him or her removable. USCIS also may terminate deferred action or parole if it becomes aware that a petitioner has failed to disclose a criminal conviction or has misrepresented a material fact in his or her petition.

4. Decisions on Petitions

USCIS will issue decisions granting or denying U nonimmigrant petitions in writing. New 8 CFR 214.14(c)(5) (principal petitioners); new 8 CFR 214.14(f)(6) (derivative family members). If USCIS denies a petition, it will also provide reasons for the denial in writing. New 8 CFR 214.14(c)(5)(ii); new 8 CFR 214.14(f)(6)(iii). In any case in which USCIS denies a petition for U nonimmigrant status, the petitioner may appeal to USCIS's Administrative Appeals Office (AAO) under established procedures outlined in 8 CFR 103.3. *Id.*

a. Granting U Nonimmigrant Status

If USCIS finds that the petitioner has satisfied the requirements for U nonimmigrant status, it will grant U nonimmigrant status to the petitioner and derivative family members, unless the annual numerical limit applicable to principal petitioners has been reached. New 8 CFR 214.14(c)(5)(i); new 8 CFR 214.14(f)(6). If a number is available for the principal petitioner, USCIS will send a notice of approval on Form I-797, "Notice of Action," to the principal petitioner or, if the principal petitioner is oversears, to the Department of State for forwarding to the appropriate U.S. Embassy or Consulate or to the appropriate port of entry (visa exempt alien). New 8 CFR 214.14(c)(5)(i)(A) and (B). USCIS also will send to the principal petitioner a notice of approval on Form I-797 for derivative family members for whom USCIS has approved Form I-918, Supplement A. New 8 CFR 214.14(f)(6)(i) and (ii). If a number is not available, USCIS will notify the petitioner that, in accordance with new 8 CFR 214.14(d)(2), he or she has been placed on the waiting list, given deferred action or parole, and may request employment authorization. USCIS will also grant deferred action or parole to derivative family members with an opportunity to request employment authorization. New 8 CFR 214.14(d)(2). For those principal petitioners and derivative family members who are within the United States, a Form I-94, "Arrival-Departure Record," indicating U nonimmigrant status will be attached to the approval notice and will constitute evidence that the petitioner has been granted U nonimmigrant status. New 8 CFR 214.14(c)(5)(i)(A); new 8 CFR 214.14(f)(6)(i). For those principal petitioners or qualifying family members who are outside the United States, USCIS will follow the standard procedures for issuing grants as applied to other nonimmigrant categories. USCIS will forward the notice of approval to the Department of State for delivery to the U.S. Embassy or Consulate designated on the petition, which should be the U.S. Embassy or Consulate having jurisdiction over the area in which the alien is located, or to the appropriate port of entry for a visa exempt alien. New 8 CFR 214.14(c)(5)(i)(B); new 8 CFR 214.14(f)(6)(ii). \12\ The principal petitioner and any derivative family members should file for a U nonimmigrant visa with the designated U.S. Embassy or

Consulate or port of entry. If granted, the visa can be used to travel to the United States for admission as a U nonimmigrant.

This rule provides that principal petitioners and derivative family members who were granted interim relief and whose petition for U nonimmigrant status is approved will be accorded U nonimmigrant status as of the date that the request for U interim relief was approved. New 8 CFR 214.14(c)(6); new 8 CFR 214.14(f)(6)(i). USCIS has determined that according status as of the date that interim relief was approved is appropriate so that the time a petitioner spent with interim relief will count towards the three years of continuous physical presence in U nonimmigrant status required before the petitioner may adjust status to that of a lawful permanent resident under section 245(m) of the INA, 8 U.S.C. 1255(m). Memorandum from Michael Aytes, Acting Associate Director, Domestic Operations, USCIS, Applications for U Nonimmigrant Status (Jan. 6, 2006). In fact, the House Report for VAWA 2005 indicates that members of Congress expect this result. *See* H.R. Rep. No. 109-233, at 114 (2005); *see also* 151 Cong. Rec. E2605, E2608 (statement of Representative John Conyers). Therefore, under this rule, recipients of U nonimmigrant status will be eligible to submit an application to adjust status three years after the date that interim relief was accorded, rather than having to wait until three years after the date on which USCIS approves their petition for U nonimmigrant status.

b. Duration of U Nonimmigrant Status

Section 214(p)(6) of the INA, 8 U.S.C. 1184(p)(6), provides that the duration of U nonimmigrant status cannot exceed four years. Extensions are permitted upon certification from a certifying agency that the alien's presence in the United States is required to assist in the investigation or prosecution of qualifying criminal activity. This rule incorporates this provision in new 8 CFR 214.14(g).

New 8 CFR 214.14(g)(1) provides that U nonimmigrant status for both principals (U-1) and derivative family members (U-2, U-3, U-4, and U-5) may be approved for a period not to exceed an aggregate of four years. Because derivative status is based on the principal's status, derivative status initially will be approved for a period that does not exceed the period initially approved for the principal. New 8 CFR 214.14(g)(1). Just as with all other nonimmigrant classifications, the U nonimmigrant's Form I-94 iss ued to evidence status will indicate the approved period of stay. For petitioners who were previously accorded interim relief, USCIS necessarily will indicate on Form I-94 an approved period of stay that is less than four years. Therefore, for example, USCIS will issue a petitioner, who was accorded interim relief two years ago, a Form I-94 reflecting an approved period of stay for up to another two years upon the grant of U nonimmigrant status.

This rule further provides that U nonimmigrants can apply for an extension of status in two circumstances. A U nonimmigrant may apply for an extension of status where his or her status was granted for an approved period of stay of less than four years in the aggregate. New 8 CFR 214.14(g)(2)(i). This may be the case, for example, where a U nonimmigrant is outside the United States and experiences delays in consular processing. Because the petition for U nonimmigrant status is granted for a specified four-ye ar period, which runs from the date of approval by USCIS, delays in entering the United States would mean that the alien would not be admitted to the United States in U nonimmigrant status until after a portion of the four-year period stated in the approved petition has already run.

The rule specifically addresses the situation where an overseas derivative family member receives an approved period of stay that expires on the same date as the principal's, but that is less than four years because the derivative was unable to enter the United States in a timely fashion due to delays in consular processing. Under this rule, such derivative may apply for an extension of status even though the principal cannot since the principal's period of stay was already approved for a four-year period. New 8 CFR 214.14(g)(2)(i). Necessarily, an approved period of stay based upon such extension of status application will exceed the date on which the principal's approved period of stay expired. The reason for this provision is so that the derivative is able to attain at least three years in U

nonimmigrant status. Such period of time in U nonimmigrant status is necessary before the alien may apply to adjust status to that of a lawful permanent resident pursuant to section 245(m) of the INA, 8 U.S.C. 1255(m). To permit extensions of status for derivatives in this rule, USCIS considered the text of section 214(p)(6) of the INA, 8 U.S.C. 1184(p)(6). This statutory provision applies the four-year limit for U nonimmigrant status to all U nonimmigrants equally, and not just to principal petitioners. In addition, it does not include a requirement that the derivative's period of stay run concurrently with the principal's period of stay.

To apply for an extension of U nonimmigrant status under new 8 CFR 214.14(g)(2)(i), this rule provides that the U nonimmigrant must file Form I-539, "Application to Extend/Change Nonimmigrant Status," in accordance with the instructions to the form. USCIS requires this application of most nonimmigrants seeking to extend or change their nonimmigrant status. USCIS cannot grant an extension to exceed an aggregate period of four years in U nonimmigrant status. *Id.* If the aggregate period of four years in U nonimmigrant status has been reached, a U nonimmigrant nevertheless may apply for an extension of status beyond such period if the certifying official attests that the alien's presence in the United States continues to be necessary to assist in the investigation or prosecution of the qualifying criminal activity. New 8 CFR 214.14(g)(2)(ii). Therefore, in order to obtain an extension of U nonimmigrant status on this basis, the U nonimmigrant must file Form I-539 in accordance with the instructions to the form and a newly executed Form I-918, Supplement B. *Id.*

5. Benefits for U Nonimmigrants

Section 214(p)(3) of the INA, 8 U.S.C. 1184(p)(3), directs the Secretary of Homeland Security to provide those granted U nonimmigrant status certain benefits along with their status. The Secretary of Homeland Security and other government officials, where appropriate, must provide U nonimmigrants referrals to nongovernmental organizations which can advise such nonimmigrants of their options while in the United States and the resources available to them. INA § 214(p)(3)(A), 8 U.S.C. 1184(p)(3)(A). In additio n, the Secretary of Homeland Security must provide employment authorization to U nonimmigrants. INA § 214(p)(3)(B), 8 U.S.C. 1184(p)(3)(B). This rule implements these requirements in new 8 CFR 214.14(c)(5), (c)(7), (f)(6), and (f)(7), 8 CFR 274a.12(a)(19) and (20), and 8 CFR 274a.13(a).

a. Referrals to Nongovernmental Organizations

New 8 CFR 214.14(c)(5) and (f)(6) adopt the requirement in section 214(p)(3)(A), 8 U.S.C. 1184(p) (3)(A), that, where appropriate, USCIS provide U nonimmigrants referrals to nongovernmental organizations. USCIS has determined that it is appropriate to provide such referrals to all U nonimmigrants, including principals and derivatives alike, because, as crime victims or family members of crime victims, they may be in need of additional assistance and information. Accordingly, new 8 CFR 214.14(c)(5) and (f)(6) require USCIS to include in the notice approving the U nonimmigrant petition a list of nongovernmental organizations. The nongovernmental organizations that will be included on the list are those that can provide information and advice regarding the U nonimmigrant's options while in the United States, including information regarding options for long-term immigration relief. Such organizations can also provide the principal with necessary resource tools.

b. Employment Authorization

This rule provides for automatic employment authorization upon a grant of U nonimmigrant status, implementing the requirement at section 214(p)(3)(B) of the INA, 8 U.S.C. 1184(p)(3)(B), that the Secretary of Homeland Security confer employment authorization on aliens granted U nonimmigrant status. Under new 8 CFR 214.14(c)(7) and 8 CFR 214.14(f)(7), principal aliens and derivative family members granted U nonimmigrant status are employment authorized incident to their U nonimmigrant status. This is also ref lected in new 8 CFR 274a.12(a)(19) and (20), where the rule adds these two new categories of aliens to the existing list of aliens who are employment authorized incident to

status. Automatically conferring employment authorization obviates the need for the ministerial step of affirmatively granting employment authorization during the adjudication of each petition.

c. Evidence of Employment Authorization

In addition to conferring employment authorization automatically on U nonimmigrants, this rule also provides for the issuance of evidence of employment authorization, an Employment Authorization Document (EAD). To do so, this rule amends 8 CFR 274a.12(a) and 274a.13(a), which govern employment authorization documentation for all classes of aliens. This rule also includes more specific provisions regarding employment authorization documentation for U nonimmigrants in new 8 CFR 214.14(c)(7) and 214.14(f)(7).

The EAD can serve as evidence of both employment authorization and identity. 8 CFR 274a.2(b)(1) (v)(A)(4). Aliens seeking new employment or maintaining current employment can present their EAD to employers verifying employment authorization and identity pursuant to the requirements of section 274A(b) of the INA, 8 U.S.C. 1324a(b), and 8 CFR 274a.2.

For principal aliens seeking their first EAD based upon U nonimmigrant status, USCIS will use the information contained in Form I-918 to automatically generate an EAD, such that a separate request for an EAD is not necessary. See new 8 CFR 214.14(c)(7). USCIS has designed the Form I-918 so that it serves the dual purpose of requesting U nonimmigrant status and employment authorization to streamline the application process. Therefore, principal aliens will not have to file additional paperwork to obtain an initial EAD.

For principal aliens applying for U nonimmigrant status from outside the United States, this rule provides that the initial EAD will not be produced until the alien has been admitted to the United States in U-1 nonimmigrant status. Id. To receive an EAD, the alien must make a request to USCIS for an EAD accompanied by a copy of his or her Form I-94, "Arrival-Departure Record," proving the alien's admission to the United States in U-1 nonimmigrant status. Id. No forms or filing fees are required. Id . Form I-94 should be submitted to the office having jurisdiction over petitions for U nonimmigrant status as indicated on the instructions to Form I-918.

Derivative family members seeking an EAD must make their EAD request on a form separate from Form I-918, Supplement A requesting U nonimmigrant status. To request an EAD, derivative family members must file Form I-765, "Application for Employment Authorization," with the appropriate filing fee (or a request for a fee waiver) stated in the instructions to the form. New 8 CFR 214.14(f) (7); revised 8 CFR 274a.13(a). USCIS could not design Form I-918, Supplement A to serve as a dual purpose form for derivative family members because the form is filed by the principal alien on behalf of, rather than directly by, derivative family members.

For derivative family members who are within the United States, Form I-765 may be filed concurrently with Form I-918, Supplement A, or it may be filed at a later time. New 8 CFR 214.14(f) (7). For derivative family members who are outside the United States, Form I-765 must be filed with the office having jurisdiction over petitions for U nonimmigrant status, as specified in the instructions to the Form I-765, after their admission to the United States in U nonimmigrant status. Id . They should include a copy of their approval notice for U nonimmigrant classification, a copy of their passport, and a copy of their Form I-94. This supporting documentation is necessary to verify identity and confirm the alien's physical presence in the United States and U nonimmigrant status.

Whether automatically generated or generated based on Form I-765, USCIS will issue the initial EAD on Forms I-766 or I-688B, valid for no longer than the approved period of stay in U nonimmigrant status. U nonimmigrants whose EADs will expire earlier may request a renewal EAD. Renewal requests must be made on Form I-765 in accordance with form instructions and with the appropriate fee or request for a fee waiver.

This rule also makes conforming amendments to 8 CFR parts 274a.12 and 274a.13. New 8 CFR 274a.12(a)(19) provides that principal nonimmigrants in U-1 status are employment authorized incident to status and do not need to apply to USCIS for a document evidencing this employment

authorization. New 8 CFR 274a.12(a)(20) and revised 8 CFR 274a.13(a) provide that derivative family members in U-2, U-3, U-4, and U-5 nonimmigrant status are employment authorized incident to status, but must apply to USCIS for employm ent authorization documentation.

This rule also makes technical corrections to 8 CFR parts 274a.12 and 274a.13(a) to eliminate certain errors. The corrections clarify: (1) That asylees described in 8 CFR 274a.12(a)(5) and T nonimmigrants described in 8 CFR 274a.12(a)(16) do not need to apply to USCIS in order to receive a document evidencing their employment authorization incident to status; and (2) that aliens granted Family Unity benefits under the LIFE Act described in 8 CFR 274a.12(a)(14) and V nonimmigrants described in 8 CFR 274a.12( a)(15) must apply to USCIS in order to receive a document evidencing such employment authorization. This rule also reserves 8 CFR 274a.12(a)(17) and (18) for future use.6. Travel Outside the United States

Aliens with U nonimmigrant status may travel outside the United States. However, in order to return to the United States, such aliens must obtain a U nonimmigrant visa for re-entry to the United States unless they are visa exempt. 8 CFR 212.1. They also should keep in mind that if they accrued more than 180 days of "unlawful presence" prior to obtaining U nonimmigrant status, they may be found inadmissible upon their return to the United States. See INA § 212(a)(9)(B), 8 U.S.C. 1182(a)(9)(B). Any alien othe r than a lawful permanent resident who was unlawfully present in the United States between 180 days and one year and departs the United States is barred from readmission to the United States for three years from the date of departure. INA § 212(a)(9)(B)(i)(I), 8 U.S.C. 1182(a)(9)(B)(i) (I). If the alien was unlawfully present for more than one year, he or she is barred from seeking readmission for a period of 10 years from the date of departure. INA § 212(a)(9)(B)(i)(II), 8 U.S.C. 1182(a)(9)(B)(i)(II). An al ien is deemed to be unlawfully present in the United States if he or she remains in the United States after the expiration of an authorized period of stay or is present in the United States without being admitted or paroled. INA § 212(a)(9)(B)(ii), 8 U.S.C. 1182(a)(9)(B)(ii). U nonimmigrant aliens subject to the unlawful presence ground of inadmissibility may request a waiver of inadmissibility on Form I-192, as discussed earlier in this Supplementary Information, prior to or upon their return to the United States.

For nonimmigrants seeking admission to the United States, a valid, unexpired passport is required in addition to a valid visa, unless an exemption applies. See INA § 212(a)(7)(B), 8 U.S.C. 1182(a)(7) (B); 8 CFR 212.1. In unforeseen emergency situations, these requirements may be waived for certain categories of nonimmigrants. INA § 212(d)(4)(A), 8 U.S.C. 1182(d)(4)(A); 8 CFR 212.1(g). This rule extends eligibility to apply for this waiver to U nonimmigrants and petitioners for U nonimmigrant status. USCIS believes that such an extension is necessary because U nonimmigrants or petitioners for U nonimmigrant status, as crime victims, may be faced with threats to the ir lives or safety which may make them unable to timely obtain a visa or passport.

Accordingly, this rule amends 8 CFR 212.1(g) to add U-1, U-2, U-3, U-4, and U-5 nonimmigrants and those seeking such status to the list of nonimmigrants who may seek a waiver of the visa and passport requirements for unforeseen emergencies. See revised 8 CFR 212.1(g). This waiver may apply to a U nonimmigrant who needs to travel outside the United States but, due to an unforeseen emergency, is unable to obtain a passport from his or her country of citizenship or nationality or a visa from a U.S. Embassy or Consulate in order to re-enter the United States. This waiver also may apply to a petitioner for U nonimmigrant status who is outside the United States, but who needs to enter the United States due to an unforeseen emergency after Form I-918 is adjudicated but before he or she has received a visa from a U.S. embassy or consular office or obtained a passport from his or her country of citizenship or nationality. For example, USCIS anticipates that this waiver could be needed where government officials from the alien victim's home country are implicated in the criminal activity, and, as a result, the petitioner is unable to obtain a passport or safely travel to the U.S. Embassy or Consulate to obtain a visa. A waiver may also be needed where the per petrator is not in

custody, has made threats against the petitioner, and the petitioner needs to enter the United States immediately to ensure his or her safety.

As under the current regulatory provision, this rule maintains that all eligible nonimmigrants must request a waiver on Form I-193, "Application for Waiver of Passport and/or Visa." Revised 8 CFR 212.1(g). New 8 CFR 212.1(p) authorizes the director of the office having jurisdiction over the adjudication of Form I-918 to adjudicate the waiver application.

This rule makes a technical correction to current 8 CFR 212.1(g) by deleting the reference to "Deputy Commissioner." This position no longer exists after DHS took over the functions of the former Immigration and Naturalization Service in March of 2003. See 6 U.S.C. 291(a).

7. Revocation of U Nonimmigrant Status

This rule establishes USCIS's authority to revoke its approval of Form I-918 and Form I-918, Supplement A, and any waivers of inadmissibility that were granted in conjunction with the petition. New 8 CFR 214.14(h). Revocation authority flows from section 214(a)(1) of the INA, 8 U.S.C. 1184 (a)(1). This provision authorizes the Secretary of Homeland Security to prescribe, by regulation, the time and conditions of admission of any nonimmigrant. Implicit in this authority is the authority to prescribe the condi tions under which nonimmigrant status may be revoked. Revocation of an approved U nonimmigrant status petition necessarily results in the termination of U nonimmigrant status. New 8 CFR 214.14(h)(4).

The rule establishes two forms of revocation: Automatic and by notice. Automatic revocation applies where a principal alien with an approved U nonimmigrant petition who applied from outside the United States notifies USCIS that he or she will not use the approved petition to enter the United States. New 8 CFR 214.14(h)(1).

Revocation by notice is at the discretion of USCIS. See new 8 CFR 214.14(h)(2). This rule establishes the following bases for revocations by notice: (1) Where the certifying official withdraws the U nonimmigrant status certification upon which the principal U nonimmigrant's petition was based or disavows the contents of the certification in writing; (2) where approval of the petition was in error; (3) where there was fraud in the petition; (4) where a derivative's relationship to the principal has terminated; and (5) where the principal's approved petition for U -1 nonimmigrant status is revoked. Id. USCIS has determined that revocation of a petition by notice in cases where the certification is withdrawn is appropriate because when that occurs, the principal no longer meets the requirements for U nonimmigrant status as described by section 101(a)(15)(U) of the INA, 8 U.S.C. 1101(a)(15)(U), and therefore, is no longer maintaining status. A nonimmigrant who fails to maintain nonimmigrant status is removable from the United States under section 237(a)(1)(C)(i) of the INA, 8 U.S.C. 1227(a)(1)(C)(i). USCIS has determined that revocation of a petition by notice in cases of fraud or error is appropriate because both bases indicate that the petitioner may have obtained a benefit for which he or she was not eligible. USCIS has also determined that revocation of a derivative petition where the relationship to the principal has terminated or where the principal's U-1 nonimmigrant status has been revoked is appropriate because, as a general matter, a derivative's status is dependent upon the principal's status. Thi s rule classifies these bases for revocation as discretionary rather than automatic because USCIS recognizes that there may be instances in which revocation of the derivative petition is not warranted. For example, revocation of the derivative petition may not be warranted where the derivative is providing valuable assistance to the certifying agency in the investigation or prosecution of criminal activity. Providing such assistance is an eligibility requirement for U nonimmigrants, including derivatives, s eeking to adjust status to that of a lawful permanent resident. See INA § 245(m), 8 U.S.C. 1255(m).

At new 8 CFR 214.14(h)(2)(ii), this rule provides that the notice of intent to revoke must be in writing and contain a statement of the grounds for the revocation. This provision also states that the alien may submit evidence in rebuttal within 30 days of the date of the notice, which is the standard amount of time given for rebutting a notice of intent to revoke. See, e.g., 8 CFR 214.2(h)(11)(iii)(B); 8 CFR

214.11(s)(2). The rule mandates that USCIS must consider all relevant evidence presented in deciding whether to revoke the approval of the petition. The rule provides that just as with the initial adjudication of Form I-918, the determination of what is relevant evidence and the weight to be given to that evidence will be within the sole discretion of USCIS. If USCIS revokes approval of a petition and thereby terminates U nonimmigrant status, USCIS will provide the alien w ith a written notice of revocation that explains the specific reasons for the revocation. New 8 CFR 214.14(h)(2)(ii).
For revocations by notice, this rule permits appeals to USCIS's AAO. New 8 CFR 214.14(h)(3). The rule requires appeals to be submitted within 30 days of the date of the notice of revocation. USCIS believes this is a reasonable amount of time for the petitioner to appeal the decision and is in keeping with the desire to promote administrative efficiency and finality in adjudications. In addition, a timeframe of 30 days to file an appeal is a standard period for filing an appeal. *See, e.g.,* 8 CFR 103.3 (a)(2)(i); 8 CFR 214.2(h)(12)(ii). Appeals are not permitted for automatic revocations. New 8 CFR 214.14(h)(3). Once the certifying agency has withdrawn the certification, the alien ceases to be statutorily eligible for U nonimmigrant status, and there is no basis for an appeal.
Once USCIS revokes a principal alien's approved petition for U nonimmigrant status, USCIS will also deny any pending U nonimmigrant petitions for qualifying family members. New 8 CFR 214.14(h) (4). Without an approved petition for U nonimmigrant status for the principal, there is no statutory basis for granting U-2, U-3, U-4, or U-5 derivative status.
This rule provides that revocation of a previously approved petition will have no effect on the annual cap. New 8 CFR 214.14(h)(4). Therefore, once a U nonimmigrant status is granted to a principal alien, the number will be deemed to have been used and cannot be used again. In developing this rule, USCIS considered providing for re-use of the number. However, USCIS determined that not only would it be infeasible to track such numbers, USCIS does not believe it has the statutory authority to recapture the nu mbers after the end of each fiscal year.
8. Removal Proceedings
This rule provides for another means for terminating U nonimmigrant status. New 8 CFR 214.14(i) states that USCIS may exercise its existing authority to institute removal proceedings under section 239 of the INA, 8 U.S.C. 1229, for conduct committed after admission, for conduct or a condition that was not disclosed to USCIS prior to the granting of U nonimmigrant status, for misrepresentations of material facts in the Form I-918, Form I-918, Supplement A, or supporting documentation, or after revocation of U nonimmigrant status. Each of these circumstances may give rise to a ground of removability under section 237(a) of the INA, 8 U.S.C. 1227(a).
D. *Filing and Biometric Services Fees*
USCIS has determined that no fee will be charged for filing Form I-918 or for derivative U nonimmigrant status for qualifying family members. See 72 FR 29851, at 29865. Petitioners must, however, submit the established fee for biometric services for each person ages 14 through 79 inclusive with each U nonimmigrant status petition. New 8 CFR 214.14(c)(2)(iv). USCIS recognizes that many petitioners for U nonimmigrant status may be unable to pay the biometric services fee. Petitioners who are financially unabl e to pay the biometric services fee may submit an application for a fee waiver, as outlined in 8 CFR 103.7(c). The granting of a fee waiver will be at the sole discretion of USCIS. See 72 FR 29851, at 29865. Further guidance on fee waivers can be found on USCIS's Web site at **http://www.uscis.gov/forms** .
This program involves the personal well-being of a few applicants and petitioners, and the decision to waive the petition fee reflects the humanitarian purposes of the authorizing statutes. This blanket fee exemption is because it is consistent with the legislative intent to assist persons in these circumstances. Also, anecdotal evidence indicates that applicants under these programs are generally deserving of a fee waiver. Thus, USCIS determined that these programs would likely result in such a high number of waiver requests that adjudication of those requests would overtake the adjudication of the benefit requests themselves.

IV. Regulatory Requirements
  A. Administrative Procedure Act
  B.

USCIS has determined that delaying this rule to allow public comment would be impracticable and contrary to the public interest; thus, this rule is being published as an interim final rule and is effective 30 days after publication. Nonetheless, USCIS invites comments and will address comments in the final rule.

USCIS finds a compelling public need for rapid implementation of this rule justifying the exception allowed by the Administrative Procedure Act (APA) to the requirements for soliciting public comment before a rule shall take effect. 5 U.S.C. 553(b)(3)(B). This exception should be used by agencies in cases, such as this, where delay could result in serious harm. *See, Jifry v. Fed. Aviation Admin.* , 370 F.3d 1174 (D.C. Cir. 2004) (finding the exception excuses notice and comment where delay could result in serious harm). Congress created the new U classification to curtail criminal activity, protect victims of crimes committed against them in the United States, and encourage victims to fully participate in the investigation of the crimes and the prosecution of the perpetrators. See BIWPA § 1513(a)(2). Many immigrant crime victims fear coming forward to assist law enforcement until this rule is effect ive. Thus, continued delay of this rule further exposes victims of these crimes to danger, and leaves their legal status in an indeterminate state. Moreover, the delay prevents law enforcement agencies from receiving the benefits of the BIWPA and continues to expose the U.S. to security risks and other effects of human trafficking. Therefore, delay in the implementation of these regulations would be contrary to the public interest.

Further, USCIS finds that the good cause exception is warranted by the statutorily imposed deadline and the complicated nature of this rule. Agencies may bypass public comment when a statutorily imposed deadline is combined with a complicated statutory or regulatory scheme and there is either evidence that the agency has been diligent in its efforts to comply with the statutory deadline or a compelling need for rapid implementation of the regulation. *See Methodist Hosp. of Sacramento v. Shalala* , 38 F.3d 1225 (D.C. Cir. 1994) (5 month statutory deadline and complex regulatory framework constituted good cause for exception); *Petry v. Block* , 737 F.2d 1193, 1201 (D.C. Cir. 1984) (agency's good cause argument was justifiable "in light of extremely limited timeframe given by Congress in relation to amount of work required to produce rule."). Section 828 of the Violence Against Women and Department of Justice Reauthorization Act of 2005 (Pub. L. 109-162, January 5, 2006) requires DHS to publish regulations required by that Act within 180 days after enactment (i.e., July 4, 2006). Unfortunately, the statutory and regulatory framework of U.S. immig ration laws is exceedingly complex. *See Zadvydas v. Davis* , 533 U.S. 678 (2001). Plus, these regulations have required input and coordination with law enforcement agencies affected by this rule to balance its humanitarian goals and law enforcement interests.

Accordingly, DHS finds that good cause exists under 5 U.S.C. 553(b) to make this interim rule effective 30 days following publication in the Federal Register , before closure of the 60-day public comment period. DHS nevertheless invites written comments on this interim rule, and will consider any timely comments in preparing a final rule.

DHS notes that in compliance with the Paperwork Reduction Act, USCIS published notices in the Federal Register requesting public comment on Form I-918, "Petition for U Nonimmigrant Status," Supplement A, "Petition for Qualifying Family Member of U-1 Recipient," and Supplement B, "U Nonimmigrant Status Certification." See 70 FR 72460 (Dec. 5, 2005) (60-day notice); 71 FR 32117 (June 2, 2006) (30-day notice). The instructions to these forms include descriptions of the eligibility and evidentiary requirements for obtaining U nonimmigrant status. USCIS received 55 comments in response to the 60-day notice. The comments addressed the comprehension, readability, and burden estimate of the form, as well as the substance of the form instructions. The substantive comments primarily focused on seven general areas: (1) Changes required by intervening legislation; (2) the

New Classification for Victims of Criminal Activity; Eligibility for U... https://www.uscis.gov/sites/default/files/ocomm/ilink/820-0-137708.html
Case 3:16-cv-02583-L-BLM Document 31 Filed 10/18/18 PageID.1876 Page 52 of 76

certification process; (3) instructions for interim relief recipients; (4) filing deadlines; (5) fees; (6) the admissibility requirement; and (7) the evidence standard. In response to these comments, USCIS revised the forms for the 30-day notice and incorporate d the comments, as appropriate, into this interim rule. USCIS received no comments in response to the 30-day notice.

To review the forms, a summary of the public comments, and USCIS' response to the comments, contact the Regulatory Management Division, U.S. Citizenship and Immigration Services, Department of Homeland Security, 111 Massachusetts Avenue, NW., 3rd Floor, Washington, DC 20529, rfs.regs@dhs.gov (e-mail).

B. *Regulatory Flexibility Act*

The Regulatory Flexibility Act (RFA) (5 U.S.C. 605(b)), as amended by the Small Business Regulatory Enforcement and Fairness Act of 1996 (SBRFA), requires an agency to prepare and make available to the public a regulatory flexibility analysis that describes the effect of the rule on small entities (i.e., small businesses, small organizations, and small governmental jurisdictions). RFA analysis is not required when a rule is exempt from notice and comment rulemaking under 5 U.S.C. 553(b). USCIS has determine d that this rule is exempt from notice and comment rulemaking pursuant to 5 U.S.C. 553(b)(B). Further, this regulation directly regulates individuals, not small entities as that term is defined under the RFA. Therefore, an RFA analysis is not required for this rule.

C. *Unfunded Mandates Reform Act of 1995*

This rule will not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $100 million or more in one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

D. *Small Business Regulatory Enforcement Fairness Act of 1996*

This rule is not a major rule as defined by section 804 of the Small Business Regulatory Enforcement Act of 1996. This rule will not result in an annual effect on the economy of $100 million or more: a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

E. *Executive Order 12866 (Regulatory Planning and Review)*

This rule is considered by USCIS to be a significant regulatory action under Executive Order 12866, section 3(f), Regulatory Planning and Review. Accordingly, this regulation has been submitted to the Office of Management and Budget for review.

This rule establishes the requirements and procedures for aliens seeking nonimmigrant status under the U classification. The U nonimmigrant classification is available to alien victims of certain criminal activity who assist government officials in investigating or prosecuting that criminal activity, and provides temporary immigration benefits (nonimmigrant status and employment authorization), potentially leading to permanent resident status. This rule requires and establishes an application process for U nonimmigrant status and employment authorization, designating Form I-918 as the form that petitioners must use to request U nonimmigrant status. This rule also imposes petition requirements and processing fees.

1. Costs to Petitioners

USCIS estimates the total annual cost of this interim rule to be $6,182,000. This cost includes the biometric services fee that the petitioner must pay to USCIS, the opportunity cost of time needed to submit the required forms, the opportunity cost of time required for a visit to an Application Support Center, and the cost of traveling to an Application Support Center. Below, these costs are described in more detail.

This rule requires any individual seeking U nonimmigrant status to pay the prescribed biometric services fee. This fee is currently $80 per person. *See* 72 FR 29851.

USCIS estimates that it will receive 12,000 Forms I-918 and 24,000 Forms I-918, Supplement A each fiscal year. Therefore, USCIS estimates that this rule will cost petitioners $960,000 (12,000 x $80 biometric services charge) in fees for Forms I-918, and $1,920,000 (24,000 x $80 biometric services charge) in fees for Forms I-918, Supplement A. The total cost of this rule to petitioners will be $2,880,000 in biometric services fees each fiscal year.

Additionally, USCIS estimates that each Form I-918 petitioner will spend 5 hours complying with this rule. USCIS estimates that each petitioner will spend 75 minutes reading the Form I-918 instructions. It will take 75 minutes to complete the form and 150 minutes to assemble and submit the form, for a total of 300 minutes of each petitioner's time. USCIS estimates that petitioners also submitting Form I-918, Supplement A will spend 1 hour and 30 minutes complying with this rule. USCIS estimates that each pe titioner will spend 30 minutes reading the instructions to Form I-918, Supplement A, 30 minutes to complete the form, and 30 minutes to assemble and submit the form.

Petitioners and qualifying family members will also be required to travel to the nearest USCIS Application Support Center (ASC) to provide biometrics information. While travel times and distances will vary, USCIS estimates the average round-trip to an ASC will be 20 miles, and that the average time for that trip will be an hour. It will take an average of one hour for a petitioner or qualifying family member to wait for service, and to have his or her biometrics collected. Total time for each individual to comply with this requirement is two hours.

As previously discussed, USCIS expects to receive a total of 36,000 forms (12,000 Forms I-918 and 24,000 Forms I-918, Supplement A) annually. However, USCIS does not know how many of these forms will be filed by adults on behalf of children. Consequently, it is difficult for USCIS to estimate the opportunity cost of time for the 36,000 petitioners and qualifying family members with precision. For the purpose of this economic analysis, USCIS will assume that all petitioners and qualifying family members are adults and use an opportunity cost of time based on national wage rates. Specifically, USCIS is using the mean national hourly wage rate from the Bureau of Labor Statistics (BLS) for 2003 as a proxy for the opportunity cost of an individual's time. BLS estimates for "All Occupations" the mean hourly wage was $17.75 in 2003. Using this BLS wage data, USCIS estimates the total cost for petitioner time spent is $1,491,000 (12,000 persons x 7.0 hours x $17.75) for Form I-918 petitioners, and $1,491,000 (24,000 persons x 3.5 hours x $17.75) for Form I-918, Supplement A petitioners and qualifying family members.

Additionally, there is the cost of travel. USCIS anticipates that most petitioners will drive privately-owned vehicles to the ASCs. The General Services Administration (GSA) establishes a reimbursement rate that is used when privately owned vehicles are used by federal employees on official travel. We consider this GSA reimbursement rate to be a reasonable proxy for the cost of driving to an ASC. This reimbursement rate fluctuates over time; however, as of January 1, 2006, GSA calculates the cost of o perating a privately-owned vehicle as 44.5 cents a mile. Therefore, USCIS calculates the transportation costs as $320,400 (36,000 persons x 44.5 cents per mile x 20 miles).

In summary, USCIS estimates the total cost of the program would be $2,880,000 in biometric services fees, $2,982,000 million in time and $320,400 in transportation costs. The total cost of compliance to this rule each fiscal year by 36,000 persons is $6,182,000 ($2,880,000 + $2,982,000 million + $320,400).

2. Treatment of Petitions That Exceed the Statutory Cap

The number of petitions for U-1 nonimmigrant status that USCIS may grant is limited to 10,000 in any fiscal year (October 1 through September 30). INA § 214(p)(2), 8 U.S.C. 1184(p)(2). USCIS anticipates receiving 12,000 petitions each fiscal year. Therefore, the potential exists that the number of approvable petitions per fiscal year will exceed the numerical limit (i.e., cap). USCIS has identified the following four alternatives, the first being chosen for this rule:

1. USCIS would adjudicate petitions on a first in, first out basis. Petitions received after the limit has been reached would be reviewed to determine whether or not they are approvable but for the numerical cap. Approvable petitions that are reviewed after the numerical cap has been reached would be placed on a waiting list and written notice would be sent to the petitioner. Priority on the waiting list would be based upon the date on which the petition is filed. USCIS would provide petitioners on the wait ing list with interim relief until the start of the next fiscal year in the form of deferred action, parole, or a stay of removal. At the beginning of the next fiscal year, petitions on the waiting list would be granted first. Advantages to this alternative include: assisting law enforcement agencies by allowing the alien victim to remain in the United States to assist in the investigation or prosecution of criminal activity while waiting for new numbers to become available; improving customer service by al lowing victims to remain in the United States, giving them an opportunity to access victims services to which they may be entitled; and providing employment authorization to alien victims so they will have a lawful means through which to support themselves and their families. Disadvantages include additional administrative and case management costs to USCIS due to the need to maintain a waiting list during the fiscal year and to adjudicate interim relief. In addition, those applying for U nonimmigrant statu s from outside the United States may be disadvantaged because they will not be able to enter the United States while waiting for a new number to become available.

2. USCIS would adjudicate petitions on a first in, first out basis, establishing a waiting list for petitions that are pending or received after the numerical cap has been reached. Priority on the waiting list would be based upon the date on which the petition is filed. USCIS would not provide interim relief to petitioners whose petitions are placed on the waiting list. This means that petitioners who are not in status would be accruing unlawful presence and would be removable. At the beginning of the next fiscal year, petitions on the waiting list would be adjudicated first. The primary advantage of this alternative is that it eliminates the need for petitioners to file a new petition each year and keeps petitions in process. Disadvantages of this alternative include: little assurance that the alien victim will not be removed from the United States; law enforcement has no assurance that the alien victim will be present in the United States to assist in the investigation or prosecution of criminal activity; without permission to remain in the U.S., the alien victim may be deprived of victims services to which they may be entitled. This approach would also result in additional administrative and case management costs by creating the need to maintain a waiting list during the fiscal year and could create a perpetual waiting list/backlog.

3. USCIS would adjudicate petitions on a first in, first out basis. However, new filings would be reviewed to identify particularly compelling cases for adjudication. New filings would be rejected once the numerical cap is reached. No official waiting list would be established; however, interim relief until the start of the next fiscal year would be provided for some compelling cases. If a case was not particularly compelling, the filing would be denied or rejected. The advantage to this approach is that it would provide a mechanism to ensure that certain alien victims needed for the investigation or prosecution of criminal activity would be able to remain in the United States. Disadvantages include: difficulty in establishing balanced standards regarding who will receive interim relief; depriving alien victims not given interim relief of victims' services to which they may be entitled; and depriving law enforcement of assistance of victims not given interim relief. An additional disadvantage would be that pe titioners would have to pay the filing fee in order for USCIS to review the petition to determine whether it was particularly compelling and merited interim relief. A large percentage of the petitions would likely be denied or rejected which would result in financial losses to the petitioners.

4. USCIS would adjudicate petitions on a first in, first out basis. However, new filings would be rejected once the numerical cap is reached. No waiting list would be established, nor would interim relief be granted. Advantages to this approach include no additional administrative or case management costs since it would allow rejection once the cap is reached, and equal treatment for those applying from outside the United States. Disadvantages include: depriving law enforcement of

cooperating alien victims for those whose petitions are rejected; depriving rejected petitioners access to victims services to which they may be entitled; disadvantaging those who are unable to file early in the fiscal year; and potentially impeding case processing efficiency by causing adjudication to occur in waves (i.e., busy during the beginning of the fiscal year and then slow once the cap is reached).

USCIS chose the first alternative for this rule because USCIS believes that it best meets the goals of the BIWPA by both ensuring the protection of alien victims and minimizing the risk of disruptions to criminal investigations and prosecutions.

USCIS solicits comments on these alternatives, as well as other proposals for managing the numerical limitation on grants of U nonimmigrant status.

### F. *Executive Order 13132 (Federalism)*

This rule will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of Executive Order 13132, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

### G. *Executive Order 12988 (Civil Justice Reform)*

This rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

### H. *Family Assessment*

I have reviewed this regulation and have determined that it may affect family well-being as that term is defined in section 654 of the Treasury General Appropriations Act, 1999, Public Law 105-277, Div. A. Accordingly, I have assessed this action in accordance with the criteria specified by section 654(c) (1). This regulation will enhance family well-being by encouraging vulnerable individuals who have been victims of certain criminal activity, or in some cases, whose family members have been victims of cert ain criminal activity, to report the criminal activity, and by providing critical assistance and benefits. Additionally, this regulation allows qualifying family members to obtain U nonimmigrant status once the principal petitioner has received status.

### I. *Paperwork Reduction Act*

This rule establishes application requirements and procedures for aliens to receive U nonimmigrant status, defined in section 101(a)(15)(U) of the INA, 8 U.S.C. 1101(a)(15)(U). Some of the information collection requirements contained in this rule have been cleared by the Office of Management and Budget (OMB) under the provisions of the Paperwork Reduction Act. Clearance numbers for these collections are contained in 8 CFR 299.5, Display Control Numbers, and are noted herein. Form I-192, "Application for Ad vance Permission to Enter as Nonimmigrant," OMB Control Number 1615-0017; Form I-193, "Application for Waiver of Passport and/or Visa," OMB Control Number 1653-0004; Form I-539, "Application to Extend/Change Nonimmigrant Status," OMB Control Number 1615-0003; Form I-765, "Application for Employment Authorization," OMB Control Number 1615-0040.

In addition, this rule requires that an alien submit a completed Form I-918, "Petition for U Nonimmigrant Status," and supporting documentation to apply for U nonimmigrant status. This Form I-918 and supporting documentation is considered a new information collection under the Paperwork Reduction Act. OMB has approved this new information collection in accordance with the Paperwork Reduction Act of 1995 and assigned it OMB Control Number 1615-0104.

List of Subjects

### *8 CFR Part 103*

Administrative practice and procedure, Authority delegations (Government agencies), Fees, Forms, Freedom of information, Privacy, Reporting and recordkeeping requirements, Surety bonds.

### *8 CFR Part 212*

Administrative practice and procedure, Aliens, Immigration, Passports and visas, Reporting and recordkeeping requirements.

*8 CFR Part 214*

Administrative practice and procedure, Aliens, Cultural exchange programs, Employment, Foreign officials, Health professions, Reporting and recordkeeping requirements, Students, victims.

*8 CFR Part 248*

Aliens, Reporting and recordkeeping requirements.

*8 CFR Part 274a*

Administrative practice and procedure, Aliens, Employment, Penalties, Reporting and recordkeeping requirements.

*8 CFR Part 299*

Immigration, Reporting and recordkeeping requirements.

• Accordingly, chapter I of title 8 of the Code of Federal Regulations is amended as follows:

PART 103--POWERS AND DUTIES; AVAILABILITY OF RECORDS

• 1. The authority citation for part 103 continues to read as follows:

Authority: 5 U.S.C. 552, 552a; 8 U.S.C. 1101, 1103, 1304, 1356; 31 U.S.C. 9701; Public Law 107-296, 116 Stat. 2335 (6 U.S.C. 1 *et seq* .); E.O. 12356, 47 FR 14874, 15557, 3 CFR, 1982 Comp., p. 166; 8 CFR part 2.

• 2. Section 103.7(b)(1) is amended by adding, in proper alpha/numeric sequence, a new "Form I-918" and "Form I-918, Supplement A" to read as follows:

§ 103.7 Fees.

* * * * *

(b) * * *

(1) * * *

Form I-918. For filing a petition to classify an alien as a nonimmigrant under section 101(a)(15)(U)(i) of the Act, 8 U.S.C. 1101(a)(15)(U)(i)--$270. For filing a petition to classify an alien as a nonimmigrant under section 101(a)(15)(U)(ii) of the Act, 8 U.S.C. 1101(a)(15)(U)(ii), on Form I-918, Supplement A concurrently with Form I-918--$120 per family member, up to a maximum amount of $540.

Form I-918, Supplement A. For filing a petition to classify an alien as a nonimmigrant under section 101(a)(15)(U)(ii) separately from Form I-918--$120.

* * * * *

PART 212--DOCUMENTARY REQUIREMENTS: NONIMMIGRANTS; WAIVERS; ADMISSION OF CERTAIN INADMISSABLE ALIENS; PAROLE

• 3. The authority citation for part 212 continues to read as follows:

Authority: 8 U.S.C. 1101 and note, 1102, 1103, 1182 and note, 1184, 1187, 1223, 1225, 1226, 1227.

• 4. Section 212.1 is amended by revising paragraph (g) and adding a new paragraph (p) to read as follows:

§ 212.1 Documentary requirements for nonimmigrants .

* * * * *

(g) *Unforeseen emergency* . A nonimmigrant seeking admission to the United States must present an unexpired visa and passport valid for the amount of time set forth in section 212(a)(7)(B) of the Act, 8 U.S.C. 1182(a)(7), or a valid biometric border crossing card, issued by the DOS on Form DSP-150, at the time of application for admission, unless the nonimmigrant satisfies the requirements described in one or more of the paragraphs (a) through (f) or (i), (o), or (p) of this section. Upon a nonimmigrant's application on Form I-193, "Application for Waiver of Passport and/or Visa," a district director may, in the exercise of his or her discretion, on a case-by-case basis, waive the documentary requirements, if satisfied that the nonimmigrant cannot present the required documents because of an unforeseen

emergency. The district director may at any time revoke a waiver previously authorized pursuant to this paragraph and notify the nonimmigrant in writing to that effect.

\* \* \* \* \*

(p) *Alien in U-1 through U-5 classification.* Individuals seeking U-1 through U-5 nonimmigrant status may avail themselves of the provisions of paragraph (g) of this section, except that the authority to waive documentary requirements resides with the director of the USCIS office having jurisdiction over the adjudication of Form I-918, "Petition for U Nonimmigrant Status."

• 5. Section 212.17 is added, to read as follows:

§ 212.17 Applications for the exercise of discretion relating to U nonimmigrant status.

(a) *Filing the waiver application.* An alien applying for a waiver of inadmissibility under section 212 (d)(3)(B) or (d)(14) of the Act (waivers of inadmissibility), 8 U.S.C. 1182(d)(3)(B) or (d)(14), in connection with a petition for U nonimmigrant status being filed pursuant to 8 CFR 214.14, must submit Form I-192, "Application for Advance Permission to Enter as Non-Immigrant," in accordance with the form instructions, along with Form I-918, "Petition for U Nonimmigrant Status," or Form I-918, Supplement A, "Petition for Qualifying Family Me mber of U-1 Recipient." An alien in U nonimmigrant status who is seeking a waiver of section 212(a)(9)(B) of the Act, 8 U.S.C. 1182(a)(9) (B) (unlawful presence ground of inadmissibility triggered by departure from the United States), must file Form I-192 prior to his or her application for re-entry to the United States in accordance with the form instructions.

(b) *Treatment of waiver application* . (1) USCIS, in its discretion, may grant Form I-192 based on section 212(d)(14) of the Act, 8 U.S.C. 1182(d)(14), if it determines that it is in the public or national interest to exercise discretion to waive the applicable ground(s) of inadmissibility. USCIS may not waive a ground of inadmissibility based upon section 212(a)(3)(E) of the Act, 8 U.S.C. 1182(a)(3)(E). USCIS, in its discretion, may grant Form I-192 based on section 212(d)(3) of the Act, 8 U.S.C. 1182 (d)(3), except where the ground of inadmis sibility arises under sections 212(a)(3)(A)(i)(I), (3)(A)(ii), (3)(A)(iii), (3)(C), or (3)(E) of the Act, 8 U.S.C. 1182(a)(3)(A)(i)(I), (3)(A)(ii), (3)(A)(iii), (3)(C), or (3)(E).

(2) In the case of applicants inadmissible on criminal or related grounds, in exercising its discretion USCIS will consider the number and severity of the offenses of which the applicant has been convicted. In cases involving violent or dangerous crimes or inadmissibility based on the security and related grounds in section 212(a)(3) of the Act, USCIS will only exercise favorable discretion in extraordinary circumstances.

(3) There is no appeal of a decision to deny a waiver. However, nothing in this paragraph is intended to prevent an applicant from re-filing a request for a waiver of ground of inadmissibility in appropriate cases.

(c) *Revocation.* The Secretary of Homeland Security, at any time, may revoke a waiver previously authorized under section 212(d) of the Act, 8 U.S.C. 118(d). Under no circumstances will the alien or any party acting on his or her behalf have a right to appeal from a decision to revoke a waiver.

PART 214--NONIMMIGRANT CLASSES

• 6. The authority citation for part 214 is revised to read as follows:

Authority: 8 U.S.C. 1101, 1102, 1103, 1182, 1184, 1186a, 1187, 1221, 1281, 1282, 1301-1305 and 1372; section 643, Pub. L. 104-208, 110 Stat. 3009-708; Pub. L. 106-386, 114 Stat. 1477-1480; section 141 of the Compacts of Free Association with the Federated States of Micronesia and the Republic of the Marshall Islands, and with the Government of Palau, 48 U.S.C. 1901 note, and 1931 note, respectively; 8 CFR part 2.

• 7. Section 214.1 is amended by:

• a. Adding a new paragraph (a)(1)(ix); and by

• b. Adding classification designations in proper numeric/alphabetical sequence in the table in paragraph (a)(2).

The additions read as follows:

§ 214.1 Requirements for admission, extension, and maintenance of status.

(a) * * *

(1) * * *

(ix) Section 101(a)(15)(U)(ii) is divided into (U)(ii), (U)(iii), (U)(iv), and (U)(v) for the spouse, child, parent, and siblings, respectively, of a nonimmigrant classified under section 101(a)(15)(U)(i); and

(2) * * *

| Section | Designation |
| --- | --- |
| 101(a)(15)(U)(i) | U-1. |
| 1.101(a)(15)(U)(ii) | U-2, U-3, U-4, U-5. |

* * * * *

• 8. A new § 214.14 is added to read as follows:

§ 214.14 Alien victims of certain qualifying criminal activity.

(a) *Definitions* . As used in this section, the term:

(1) *BIWPA* means Battered Immigrant Women Protection Act of 2000 of the Victims of Trafficking and Violence Protection Act of 2000, div. B, Violence Against Women Act of 2000, tit. V, Pub. L. 106-386, 114 Stat. 1464, (2000), *amended by* Violence Against Women and Department of Justice Reauthorization Act of 2005, tit. VIII, Pub. L. 109-162, 119 Stat. 2960 (2006), *amended by* Violence Against Women and Department of Justice Reauthorization Act--Technical Corrections, Pub. L. 109-271, 120 Stat. 750 (2006).

(2) *Certifying agency* means a Federal, State, or local law enforcement agency, prosecutor, judge, or other authority, that has responsibility for the investigation or prosecution of a qualifying crime or criminal activity. This definition includes agencies that have criminal investigative jurisdiction in their respective areas of expertise, including, but not limited to, child protective services, the Equal Employment Opportunity Commission, and the Department of Labor.

(3) *Certifying official* means:

(i) The head of the certifying agency, or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency; or

(ii) A Federal, State, or local judge.

(4) *Indian Country* is defined as:

(i) All land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation;

(ii) All dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state; and

(iii) All Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through such allotments.

(5) *Investigation or prosecution* refers to the detection or investigation of a qualifying crime or criminal activity, as well as to the prosecution, conviction, or sentencing of the perpetrator of the qualifying crime or criminal activity.

(6) *Military Installation* means any facility, base, camp, post, encampment, station, yard, center, port, aircraft, vehicle, or vessel under the jurisdiction of the Department of Defense, including any leased facility, or any other location under military control.

(7) *Next friend* means a person who appears in a lawsuit to act for the benefit of an alien under the age of 16 or incapacitated or incompetent, who has suffered substantial physical or mental abuse as a

result of being a victim of qualifying criminal activity. The next friend is not a party to the legal proceeding and is not appointed as a guardian.

(8) *Physical or mental abuse* means injury or harm to the victim's physical person, or harm to or impairment of the emotional or psychological soundness of the victim.

(9) *Qualifying crime or qualifying criminal activity* includes one or more of the following or any similar activities in violation of Federal, State or local criminal law of the United States: Rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tamperi ng; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes. The term "any similar activity" refers to criminal offenses in which the nature and elements of the offenses are substantially similar to the statutorily enumerated list of criminal activities.

(10) *Qualifying family member* means, in the case of an alien victim 21 years of age or older who is eligible for U nonimmigrant status as described in section 101(a)(15)(U) of the Act, 8 U.S.C. 1101(a)(15)(U), the spouse or child(ren) of such alien; and, in the case of an alien victim under the age of 21 who is eligible for U nonimmigrant status as described in section 101(a)(15)(U) of the Act, *qualifying family member* means the spouse, child(ren), parents, or unmarried siblings under the age of 18 of such an alien.

(11) *Territories and Possessions of the United States* means American Samoa, Swains Island, Bajo Nuevo (the Petrel Islands), Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Atoll, Navassa Island, Northern Mariana Islands, Palmyra Atoll, Serranilla Bank, and Wake Atoll.

(12) *U nonimmigrant status certification* means Form I-918, Supplement B, "U Nonimmigrant Status Certification," which confirms that the petitioner has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim.

(13) *U interim relief* refers to the interim benefits that were provided by USCIS to petitioners for U nonimmigrant status, who requested such benefits and who were deemed prima facie eligible for U nonimmigrant status prior to the publication of the implementing regulations.

(14) *Victim of qualifying criminal activity* generally means an alien who has suffered direct and proximate harm as a result of the commission of qualifying criminal activity.

(i) The alien spouse, children under 21 years of age and, if the direct victim is under 21 years of age, parents and unmarried siblings under 18 years of age, will be considered victims of qualifying criminal activity where the direct victim is deceased due to murder or manslaughter, or is incompetent or incapacitated, and therefore unable to provide information concerning the criminal activity or be helpful in the investigation or prosecution of the criminal activity. For purposes of determining eligibilit y under this definition, USCIS will consider the age of the victim at the time the qualifying criminal activity occurred.

(ii) A petitioner may be considered a victim of witness tampering, obstruction of justice, or perjury, including any attempt, solicitation, or conspiracy to commit one or more of those offenses, if:

(A) The petitioner has been directly and proximately harmed by the perpetrator of the witness tampering, obstruction of justice, or perjury; and

(B) There are reasonable grounds to conclude that the perpetrator committed the witness tampering, obstruction of justice, or perjury offense, at least in principal part, as a means:

(1) To avoid or frustrate efforts to investigate, arrest, prosecute, or otherwise bring to justice the perpetrator for other criminal activity; or

(2) To further the perpetrator's abuse or exploitation of or undue control over the petitioner through manipulation of the legal system.

(iii) A person who is culpable for the qualifying criminal activity being investigated or prosecuted is excluded from being recognized as a victim of qualifying criminal activity.

(b) *Eligibility.* An alien is eligible for U-1 nonimmigrant status if he or she demonstrates all of the following in accordance with paragraph (c) of this section:

(1) The alien has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity. Whether abuse is substantial is based on a number of factors, including but not limited to: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim, including aggravation of pre-existing conditions. No single factor is a prerequisite to establish that the abuse suffered was substantial. Also, the existence of one or more of the factors automatically does not create a presumption that the abuse suffered was substantial. A series of acts taken together may be considered to constitute substantial physical or mental abuse even where no single act alone rises to that level;

(2) The alien possesses credible and reliable information establishing that he or she has knowledge of the details concerning the qualifying criminal activity upon which his or her petition is based. The alien must possess specific facts regarding the criminal activity leading a certifying official to determine that the petitioner has, is, or is likely to provide assistance to the investigation or prosecution of the qualifying criminal activity. In the event that the alien has not yet reached 16 years of ag e on the date on which an act constituting an element of the qualifying criminal activity first occurred, a parent, guardian or next friend of the alien may possess the information regarding a qualifying crime. In addition, if the alien is incapacitated or incompetent, a parent, guardian, or next friend may possess the information regarding the qualifying crime;

(3) The alien has been helpful, is being helpful, or is likely to be helpful to a certifying agency in the investigation or prosecution of the qualifying criminal activity upon which his or her petition is based, and since the initiation of cooperation, has not refused or failed to provide information and assistance reasonably requested. In the event that the alien has not yet reached 16 years of age on the date on which an act constituting an element of the qualifying criminal activity first occurred, a pa rent, guardian or next friend of the alien may provide the required assistance. In addition, if the petitioner is incapacitated or incompetent and, therefore, unable to be helpful in the investigation or prosecution of the qualifying criminal activity, a parent, guardian, or next friend may provide the required assistance; and

(4) The qualifying criminal activity occurred in the United States (including Indian country and U.S. military installations) or in the territories or possessions of the United States, or violated a U.S. federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. federal court.

(c) *Application procedures for U nonimmigrant status* --(1) *Filing a petition* . USCIS has sole jurisdiction over all petitions for U nonimmigrant status. An alien seeking U-1 nonimmigrant status must submit, by mail, Form I-918, "Petition for U Nonimmigrant Status," applicable fees (or request for a fee waiver as provided in 8 CFR 103.7(c)), and initial evidence to USCIS in accordance with this paragraph and the instructions to Form I-918. A petitioner who received interim relief is not required to submit initial evidence with Form I-918 if he or she wishes to rely on the law enforce ment certification and other evidence that was submitted with the request for interim relief.

(i) *Petitioners in pending immigration proceedings* . An alien who is in removal proceedings under section 240 of the Act, 8 U.S.C. 1229a, or in exclusion or deportation proceedings initiated under former sections 236 or 242 of the Act, 8 U.S.C. 1226 and 1252 (as in effect prior to April 1, 1997), and who would like to apply for U nonimmigrant status must file a Form I-918 directly with USCIS. U.S. Immigration and Customs Enforcement (ICE) counsel may agree, as a matter of discretion, to file, at the request of the alien petitioner, a joint motion to termina te proceedings without prejudice

Exhibit 1

with the immigration judge or Board of Immigration Appeals, whichever is appropriate, while a petition for U nonimmigrant status is being adjudicated by USCIS.

(ii) *Petitioners with final orders of removal, deportation, or exclusion* . An alien who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U-1 nonimmigrant status directly with USCIS. The filing of a petition for U-1 nonimmigrant status has no effect on ICE's authority to execute a final order, although the alien may file a request for a stay of removal pursuant to 8 CFR 241.6(a) and 8 CFR 1241.6(a). If the alien is in detention pending execution of the final order, the time during which a stay is in effect will exte nd the period of detention (under the standards of 8 CFR 241.4) reasonably necessary to bring about the petitioner's removal.

(2) *Initial evidence.* Form I-918 must include the following initial evidence:

(i) Form I-918, Supplement B, "U Nonimmigrant Status Certification," signed by a certifying official within the six months immediately preceding the filing of Form I-918. The certification must state that: the person signing the certificate is the head of the certifying agency, or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency, or is a Federal, State, or local judge; the agen cy is a Federal, State, or local law enforcement agency, or prosecutor, judge or other authority, that has responsibility for the detection, investigation, prosecution, conviction, or sentencing of qualifying criminal activity; the applicant has been a victim of qualifying criminal activity that the certifying official's agency is investigating or prosecuting; the petitioner possesses information concerning the qualifying criminal activity of which he or she has been a victim; the petitioner has been, is be ing, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activity; and the qualifying criminal activity violated U.S. law, or occurred in the United States, its territories, its possessions, Indian country, or at military installations abroad.

(ii) Any additional evidence that the petitioner wants USCIS to consider to establish that: the petitioner is a victim of qualifying criminal activity; the petitioner has suffered substantial physical or mental abuse as a result of being a victim of qualifying criminal activity; the petitioner (or, in the case of a child under the age of 16 or petitioner who is incompetent or incapacitated, a parent, guardian or next friend of the petitioner) possesses information establishing that he or she has knowledge o f the details concerning the qualifying criminal activity of which he or she was a victim and upon which his or her application is based; the petitioner (or, in the case of a child under the age of 16 or petitioner who is incompetent or incapacitated, a parent, guardian or next friend of the petitioner) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement agency, prosecutor, or authority, or Federal or State judge, investigating or prosecuting the crim inal activity of which the petitioner is a victim; or the criminal activity is qualifying and occurred in the United States (including Indian country and U.S. military installations) or in the territories or possessions of the United States, or violates a U.S. federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. federal court;

(iii) A signed statement by the petitioner describing the facts of the victimization. The statement also may include information supporting any of the eligibility requirements set out in paragraph (b) of this section. When the petitioner is under the age of 16, incapacitated, or incompetent, a parent, guardian, or next friend may submit a statement on behalf of the petitioner; and

(iv) If the petitioner is inadmissible, Form I-192, "Application for Advance Permission to Enter as Non-Immigrant," in accordance with 8 CFR 212.17.

(3) *Biometric capture* . All petitioners for U-1 nonimmigrant status must submit to biometric capture and pay a biometric capture fee. USCIS will notify the petitioner of the proper time and location to appear for biometric capture after the petitioner files Form I-918.

(4) *Evidentiary standards and burden of proof* . The burden shall be on the petitioner to demonstrate eligibility for U-1 nonimmigrant status. The petitioner may submit any credible evidence relating to

his or her Form I-918 for consideration by USCIS. USCIS shall conduct a de novo review of all evidence submitted in connection with Form I-918 and may investigate any aspect of the petition. Evidence previously submitted for this or other immigration benefit or relief may be used by USCIS in evaluating the eligibility of a petitioner for U-1 nonimmigrant status. However, USCIS will not be bound by its previous factual determinations. USCIS will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence, including Form I-918, Supplement B, "U Nonimmigrant Status Certification."

(5) *Decision.* After completing its de novo review of the petition and evidence, USCIS will issue a written decision approving or denying Form I-918 and notify the petitioner of this decision. USCIS will include in a decision approving Form I-918 a list of nongovernmental organizations to which the petitioner can refer regarding his or her options while in the United States and available resources.
(i) *Approval of Form I-918, generally.* If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS will approve Form I-918. For a petitioner who is within the United States, USCIS also will concurrently grant U-1 nonimmigrant status, subject to the annual limitation as provided in paragraph (d) of this section. For a petitioner who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be deemed canceled by operation of law as of the date of USCIS' approval of Form I-918. A petitioner who is subject to an order of exclusion, deportation, or removal issued by an immigration judge or the Board may seek cancellation of such order by filing, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 CFR 1003.2 and 1003.23.
(A) *Notice of Approval of Form I-918 for U-1 petitioners within the United States* . After USCIS approves Form I-918 for an alien who filed his or her petition from within the United States, USCIS will notify the alien of such approval on Form I-797, "Notice of Action," and include Form I-94, "Arrival-Departure Record," indicating U-1 nonimmigrant status.
(B) *Notice of Approval of Form I-918 for U-1 petitioners outside the United States* . After USCIS approves Form I-918 for an alien who filed his or her petition from outside the United States, USCIS will notify the alien of such approval on Form I-797, "Notice of Action," and will forward notice to the Department of State for delivery to the U.S. Embassy or Consulate having jurisdiction over the area in which the alien is located, or, for a visa exempt alien, to the appropriate port of entry.
(ii) *Denial of Form I-918* . USCIS will provide written notification to the petitioner of the reasons for the denial. The petitioner may appeal a denial of Form I-918 to the Administrative Appeals Office (AAO) in accordance with the provisions of 8 CFR 103.3. For petitioners who appeal a denial of their Form I-918 to the AAO, the denial will not be deemed administratively final until the AAO issues a decision affirming the denial. Upon USCIS' final denial of a petition for a petitioner who was in removal proceedings that were termina ted pursuant to 8 CFR 214.14(c)(1)(i), DHS may file a new Notice to Appear (see section 239 of the Act, 8 U.S.C. 1229) to place the individual in proceedings again. For petitioners who are subject to an order of removal, deportation, or exclusion and whose order has been stayed, USCIS' denial of the petition will result in the stay being lifted automatically as of the date the denial becomes administratively final.
(6) *Petitioners granted U interim relief* . Petitioners who were granted U interim relief as defined in paragraph (a)(13) of this section and whose Form I-918 is approved will be accorded U-1 nonimmigrant status as of the date that a request for U interim relief was initially approved.
(7) *Employment authorization* . An alien granted U-1 nonimmigrant status is employment authorized incident to status. USCIS automatically will issue an initial Employment Authorization Document (EAD) to such aliens who are in the United States. For principal aliens who applied from outside the United States, the initial EAD will not be issued until the petitioner has been admitted to the United States in U nonimmigrant status. After admission, the alien may receive an initial EAD, upon request and submission of a copy of his or her Form I-94, "Arrival-Departure Record," to the USCIS office

having jurisdiction over the adjudication of petitions for U nonimmigrant status. No additional fee is required. An alien granted U-1 nonimmigrant status seeking to renew his or her expiring EAD or replace an EAD that was lost, stolen, or destroyed, must file Form I-765 in accordance with the instructions to the form.

(d) *Annual cap on U-1 nonimmigrant status* --(1) *General* . In accordance with section 214(p)(2) of the Act, 8 U.S.C. 1184(p)(2), the total number of aliens who may be issued a U-1 nonimmigrant visa or granted U-1 nonimmigrant status may not exceed 10,000 in any fiscal year.

(2) *Waiting list* . All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement. Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority. In the next fiscal year, USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigran t status. After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed. USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.

(3) *Unlawful presence* . During the time a petitioner for U nonimmigrant status who was granted deferred action or parole is on the waiting list, no accrual of unlawful presence under section 212(a) (9)(B) of the INA, 8 U.S.C. 1182(a)(9)(B), will result. However, a petitioner may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS.

(e) *Restrictions on use and disclosure of information relating to petitioners for U nonimmigrant classification* --(1) *General.* The use or disclosure (other than to a sworn officer or employee of DHS, the Department of Justice, the Department of State, or a bureau or agency of any of those departments, for legitimate department, bureau, or agency purposes) of any information relating to the beneficiary of a pending or approved petition for U nonimmigrant status is prohibited unless the disclosure is made:

(i) By the Secretary of Homeland Security, at his discretion, in the same manner and circumstances as census information may be disclosed by the Secretary of Commerce under 13 U.S.C. 8;

(ii) By the Secretary of Homeland Security, at his discretion, to law enforcement officials to be used solely for a legitimate law enforcement purpose;

(iii) In conjunction with judicial review of a determination in a manner that protects the confidentiality of such information;

(iv) After adult petitioners for U nonimmigrant status or U nonimmigrant status holders have provided written consent to waive the restrictions prohibiting the release of information;

(v) To Federal, State, and local public and private agencies providing benefits, to be used solely in making determinations of eligibility for benefits pursuant to 8 U.S.C. 1641(c);

(vi) After a petition for U nonimmigrant status has been denied in a final decision;

(vii) To the chairmen and ranking members of the Committee on the Judiciary of the Senate or the Committee on the Judiciary of the House of Representatives, for the exercise of congressional oversight authority, provided the disclosure relates to information about a closed case and is made in a manner that protects the confidentiality of the information and omits personally identifying information (including locational information about individuals);

(viii) With prior written consent from the petitioner or derivative family members, to nonprofit, nongovernmental victims' service providers for the sole purpose of assisting the victim in obtaining victim services from programs with expertise working with immigrant victims; or

(ix) To federal prosecutors to comply with constitutional obligations to provide statements by witnesses and certain other documents to defendants in pending federal criminal proceedings.

(2) Agencies receiving information under this section, whether governmental or non-governmental, are bound by the confidentiality provisions and other restrictions set out in 8 U.S.C. 1367.

(3) Officials of the Department of Homeland Security are prohibited from making adverse determinations of admissibility or deportability based on information obtained solely from the perpetrator of substantial physical or mental abuse and the criminal activity.

(f) *Admission of qualifying family members* --(1) *Eligibility.* An alien who has petitioned for or has been granted U-1 nonimmigrant status ( *i.e.,* principal alien) may petition for the admission of a qualifying family member in a U-2 (spouse), U-3 (child), U-4 (parent of a U-1 alien who is a child under 21 years of age), or U-5 (unmarried sibling under the age of 18) derivative status, if accompanying or following to join such principal alien. A qualifying family member who committed the qualifying criminal activity in a family violence or trafficking context which established the principal alien's eligibility for U nonimmigrant status shall not be g ranted U-2, U-3, U-4, or U-5 nonimmigrant status. To be eligible for U-2, U-3, U-4, or U-5 nonimmigrant status, it must be demonstrated that:

(i) The alien for whom U-2, U-3, U-4, or U-5 status is being sought is a qualifying family member, as defined in paragraph (a)(10) of this section; and

(ii) The qualifying family member is admissible to the United States.

(2) *Filing procedures* . A petitioner for U-1 nonimmigrant status may apply for derivative U nonimmigrant status on behalf of qualifying family members by submitting a Form I-918, Supplement A, "Petition for Qualifying Family Member of U-1 Recipient," for each family member either at the same time the petition for U-1 nonimmigrant status is filed, or at a later date. An alien who has been granted U-1 nonimmigrant status may apply for derivative U nonimmigrant status on behalf of qualifying family members by submitting Form I-918, Supplement A for each family member. All Forms I-918, Supplement A must be accompanied by initial evidence and the required fees specified in the instructions to the form. Forms I-918, Supplement A that are not filed at the same time as Form I-918 but are filed at a later date must be accompanied by a copy of the Form I-918 that was filed by the principal petitioner or a copy of his or her Form I-94 demonstrating proof of U-1 nonimmigrant status, as applicable.

(i) Qualifying family members in pending immigration proceedings. The principal alien of a qualifying family member who is in removal proceedings under section 240 of the Act, 8 U.S.C. 1229a, or in exclusion or deportation proceedings initiated under former sections 236 or 242 of the Act, 8 U.S.C. 1226 and 1252 (as in effect prior to April 1, 1997), and who is seeking U nonimmigrant status, must file a Form I-918, Supplement A directly with USCIS. ICE counsel may agree to file, at the request of the qualify ing family member, a joint motion to terminate proceedings without prejudice with the immigration judge or Board of Immigration Appeals, whichever is appropriate, while the petition for U nonimmigrant status is being adjudicated by USCIS.

(ii) Qualifying family members with final orders of removal, deportation, or exclusion. An alien who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U-2, U-3, U-4, or U-5 nonimmigrant status directly with USCIS. The filing of a petition for U-2, U-3, U-4, or U-5 nonimmigrant status has no effect on ICE's authority to execute a final order, although the alien may file a request for a stay of removal pursuant to 8 CFR 241.6(a) and 8 CFR 1241.6( a). If the alien is in detention pending execution of the final order, the time during which a stay is in effect will extend the period of detention (under the standards of 8 CFR 241.4) reasonably necessary to bring about the alien's removal.

(3) *Initial evidence* . Form I-918, Supplement A, must include the following initial evidence:

(i) Evidence demonstrating the relationship of a qualifying family member, as provided in paragraph (f)(4) of this section;

(ii) If the qualifying family member is inadmissible, Form I-192, "Application for Advance Permission to Enter as a Non-Immigrant," in accordance with 8 CFR 212.17.

(4) *Relationship* . Except as set forth in paragraphs (f)(4)(i) and (ii) of this section, the relationship between the U-1 principal alien and the qualifying family member must exist at the time Form I-918 was filed, and the relationship must continue to exist at the time Form I-918, Supplement A is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States.

(i) If the U-1 principal alien proves that he or she has become the parent of a child after Form I-918 was filed, the child shall be eligible to accompany or follow to join the U-1 principal alien.

(ii) If the principal alien was under 21 years of age at the time he or she filed Form I-918, and filed Form I-918, Supplement A for an unmarried sibling under the age of 18, USCIS will continue to consider such sibling as a qualifying family member for purposes of U nonimmigrant status even if the principal alien is no longer under 21 years of age at the time of adjudication, and even if the sibling is no longer under 18 years of age at the time of adjudication.

(5) *Biometric capture and evidentiary standards* . The provisions for biometric capture and evidentiary standards in paragraphs (c)(3) and (c)(4) of this section also are applicable to petitions for qualifying family members.

(6) *Decision.* USCIS will issue a written decision approving or denying Form I-918, Supplement A and send notice of this decision to the U-1 principal petitioner. USCIS will include in a decision approving Form I-918 a list of nongovernmental organizations to which the qualifying family member can refer regarding his or her options while in the United States and available resources. For a qualifying family member who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be d eemed canceled by operation of law as of the date of USCIS' approval of Form I-918, Supplement A. A qualifying family member who is subject to an order of exclusion, deportation, or removal issued by an immigration judge or the Board may seek cancellation of such order by filing, with the immigration judge or the Board, a motion to reopen and terminate removal proceedings. ICE counsel may agree, as a matter of discretion, to join such a motion to overcome any applicable time and numerical limitations of 8 C FR 1003.2 and 1003.23.

(i) *Approvals for qualifying family members within the United States* . When USCIS approves a Form I-918, Supplement A for a qualifying family member who is within the United States, it will concurrently grant that alien U-2, U-3, U-4, or U-5 nonimmigrant status. USCIS will notify the principal of such approval on Form I-797, "Notice of Action," with Form I-94, "Arrival-Departure Record," indicating U-2, U-3, U-4, or U-5 nonimmigrant status. Aliens who were previously granted U interim relief as defined in paragraph (a)(13) of this section will be accorded U nonimmigrant stat us as of the date that the request for U interim relief was approved. Aliens who are granted U-2, U-3, U-4, or U-5 nonimmigrant status are not subject to an annual numerical limit. USCIS may not approve Form I-918, Supplement A unless it has approved the principal alien's Form I-918.

(ii) *Approvals for qualifying family members outside the United States* . When USCIS approves Form I-918, Supplement A for a qualifying family member who is outside the United States, USCIS will notify the principal alien of such approval on Form I-797. USCIS will forward the approved Form I-918, Supplement A to the Department of State for delivery to the U.S. Embassy or Consulate having jurisdiction over the area in which the qualifying family member is located, or, for a visa exempt alien, to the appropriate port of entry.

(iii) *Denial of the Form I-918, Supplement A* . In accordance with 8 CFR 103.3(a)(1), USCIS will provide written notification of the reasons for the denial. The principal alien may appeal the denial of Form I-918, Supplement A to the Administrative Appeals Office in accordance with the provisions of 8 CFR 103.3. Upon USCIS' final denial of Form I-918, Supplement A for a qualifying family member who was in removal proceedings that were terminated pursuant to 8 CFR 214.14(f)(2)(i), DHS may file a new Notice to Appear (see section 239 of the INA, 8 U.S.C. 1229) to place the individual in proceedings again. For qualifying family members who are subject to an order of removal,

deportation, or exclusion and whose order has been stayed, USCIS' denial of the petition will result in the stay being lifted automatically as of the date the denial becomes administratively final.

(7) *Employment authorization.* An alien granted U-2, U-3, U-4, or U-5 nonimmigrant status is employment authorized incident to status. To obtain an Employment Authorization Document (EAD), such alien must file Form I-765, "Application for Employment Authorization," with the appropriate fee or a request for a fee waiver, in accordance with the instructions to the form. For qualifying family members within the United States, the Form I-765 may be filed concurrently with Form I-918, Supplement A, or at any time thereafter. For qualifying f amily members who are outside the United States, Form I-765 only may be filed after admission to the United States in U nonimmigrant status.

(g) *Duration of U nonimmigrant status* --(1) *In general.* U nonimmigrant status may be approved for a period not to exceed 4 years in the aggregate. A qualifying family member granted U-2, U-3, U-4, and U-5 nonimmigrant status will be approved for an initial period that does not exceed the expiration date of the initial period approved for the principal alien.

(2) *Extension of status.* (i) Where a U nonimmigrant's approved period of stay on Form I-94 is less than 4 years, he or she may file Form I-539, "Application to Extend/Change Nonimmigrant Status," to request an extension of U nonimmigrant status for an aggregate period not to exceed 4 years. USCIS may approve an extension of status for a qualifying family member beyond the date when the U-1 nonimmigrant's status expires when the qualifying family member is unable to enter the United States timely due to delays in consular processin g, and an extension of status is necessary to ensure that the qualifying family member is able to attain at least 3 years in nonimmigrant status for purposes of adjusting status under section 245(m) of the Act, 8 U.S.C. 1255.

(ii) Extensions of U nonimmigrant status beyond the 4-year period are available upon attestation by the certifying official that the alien's presence in the United States continues to be necessary to assist in the investigation or prosecution of qualifying criminal activity. In order to obtain an extension of U nonimmigrant status based upon such an attestation, the alien must file Form I-539 and a newly executed Form I-918, Supplement B in accordance with the instructions to Form I-539.

(h) *Revocation of approved petitions for U nonimmigrant status* --(1) *Automatic revocation* . An approved petition for U-1 nonimmigrant status will be revoked automatically if, pursuant to 8 CFR 214.14(d)(1), the beneficiary of the approved petition notifies the USCIS office that approved the petition that he or she will not apply for admission to the United States and, therefore, the petition will not be used.

(2) *Revocation on notice.* (i) USCIS may revoke an approved petition for U nonimmigrant status following a notice of intent to revoke. USCIS may revoke an approved petition for U nonimmigrant status based on one or more of the following reasons:

(A) The certifying official withdraws the U nonimmigrant status certification referred to in 8 CFR 214.14(c)(2)(i) or disavows the contents in writing;

(B) Approval of the petition was in error;

(C) Where there was fraud in the petition;

(D) In the case of a U-2, U-3, U-4, or U-5 nonimmigrant, the relationship to the principal petitioner has terminated; or

(E) In the case of a U-2, U-3, U-4, or U-5 nonimmigrant, the principal U-1's nonimmigrant status is revoked.

(ii) The notice of intent to revoke must be in writing and contain a statement of the grounds for the revocation and the time period allowed for the U nonimmigrant's rebuttal. The alien may submit evidence in rebuttal within 30 days of the date of the notice. USCIS shall consider all relevant evidence presented in deciding whether to revoke the approved petition for U nonimmigrant status. The determination of what is relevant evidence and the weight to be given to that evidence will be within the sole discr etion of USCIS. If USCIS revokes approval of a petition and thereby terminates

New Classification for Victims of Criminal Activity; Eligibility for "U" ... Document 958bf0c0fedf83fd ... Page 67 of 76

Case 3:16-cv-02583-L-BLM Document 31-2 Filed 10/19/16 PageID.388 Page 67 of 78

U nonimmigrant status, USCIS will provide the alien with a written notice of revocation that explains the specific reasons for the revocation.

(3) *Appeal of a revocation of approval* . A revocation on notice may be appealed to the Administrative Appeals Office in accordance with 8 CFR 103.3 within 30 days after the date of the notice of revocation. Automatic revocations may not be appealed.

(4) *Effects of revocation of approval* . Revocation of a principal alien's approved Form I-918 will result in termination of status for the principal alien, as well as in the denial of any pending Form I-918, Supplement A filed for qualifying family members seeking U-2, U-3, U-4, or U-5 nonimmigrant status. Revocation of a qualifying family member's approved Form I-918, Supplement A will result in termination of status for the qualifying family member. Revocation of an approved Form I-918 or Form I-918, Supplement A also revokes any waiver of in admissibility granted in conjunction with such petition.

(i) *Removal proceedings* . Nothing in this section prohibits USCIS from instituting removal proceedings under section 240 of the Act, 8 U.S.C. 1229(a), for conduct committed after admission, for conduct or a condition that was not disclosed to USCIS prior to the granting of U nonimmigrant status, for misrepresentations of material facts in Form I-918 or Form I-918, Supplement A and supporting documentation, or after revocation of U nonimmigrant status.

PART 248--CHANGE OF NONIMMIGRANT CLASSIFICATION

§ 9. The authority citation for section 248 continues to read as follows:

Authority : 8 U.S.C. 1101, 1103, 1184, 1258; 8 CFR part 2.

§ 10. Section 248.1 is amended by revising paragraph (a) to read as follows:

§ 248.1 Eligibility.

(a) *General* . Except for those classes enumerated in § 248.2, any alien lawfully admitted to the United States as a nonimmigrant, including an alien who acquired such status pursuant to section 247 of the Act, 8 U.S.C. 1257, who is continuing to maintain his or her nonimmigrant status, may apply to have his or her nonimmigrant classification changed to any nonimmigrant classification other than that of a spouse or fianc(e), or the child of such alien, under section 101(a)(15)(K) of the Act, 8 U.S.C. 1101(a)(15)(K), or as an alien in transit under section 101(a)(15)(C) of the Act, 8 U.S.C. 1101 (a)(15)(C). An alien defined by section 101(a)(15)(V), or 101(a)(15)(U) of the Act, 8 U.S.C. 1101(a) (15)(V) or 8 U.S.C. 1101(a)(15)(U), may be accorded nonimmigrant status in the United States by following the procedures set forth respectively in § 214.15(f) or § 214.14 of this chapter.

* * * * *

§ 11. Section 248.2 is amended by:

§ a. Revising the introductory text;

§ b. Redesignating the revised introductory text through paragraph (f) as paragraphs (a) introductory text through (a)(6); and by

§ c. Adding a new paragraph (b) to read as follows:

§ 248.2 Ineligibile Classes.

(a) Except as described in paragraph (b) of this section, the following categories of aliens are not eligible to change their nonimmigrant status under section 248 of the Act, 8 U.S.C. 1258:

* * * * *

(b) The prohibition against a change of nonimmigrant status for the categories of aliens described in paragraphs (a)(1) through (6) of this section is inapplicable to aliens applying for a change of nonimmigrant status to that of a nonimmigrant under section 101(a)(15)(U) of the Act, 8 U.S.C. 1101 (a)(15)(U).

PART 274a--CONTROL OF EMPLOYMENT OF ALIENS

§ 12. The authority citation for section 274a continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1324a; 8 CFR part 2.

§ 13. Section 274a.12 is amended by:

§ a. Revising paragraph (a) introductory text;

§ b. Amending paragraph (a)(14) by removing the word "or" at the end of the paragraph;

§ c. Removing the period at the end of paragraph (a)(16) and inserting a semicolon in its place;

§ d. Adding and reserving paragraphs (a)(17) and (18); and by

§ e. Adding new paragraphs (a)(19) and (20).

The revision and additions read as follows:

§ 274a.12 Classes of aliens authorized to accept employment.

(a) *Aliens authorized employment incident to status.* Pursuant to the statutory or regulatory reference cited, the following classes of aliens are authorized to be employed in the United States without restrictions as to location or type of employment as a condition of their admission or subsequent change to one of the indicated classes. Any alien who is within a class of aliens described in paragraphs (a)(3), (a)(4), (a)(6)-(a)(8), (a)(10)-(a)(15), or (a)(20) of this section, and who seeks to be employed in the United States, must apply to U.S. Citizenship and Immigration Services (USCIS) for a document evidencing such employment authorization. USCIS may, in its discretion, determine the validity period assigned to any document issued evidencing an alien's authorization to work in the United States.

* * * * *

(17) [Reserved]

(18) [Reserved]

(19) Any alien in U-1 nonimmigrant status, pursuant to 8 CFR 214.14, for the period of time in that status, as evidenced by an employment authorization document issued by USCIS to the alien.

(20) Any alien in U-2, U-3, U-4, or U-5 nonimmigrant status, pursuant to 8 CFR 214.14, for the period of time in that status, as evidenced by an employment authorization document issued by USCIS to the alien.

* * * * *

§ 14. Section 274a.13 is amended by revising paragraph (a) introductory text to read as follows:

§ 274a.13 Application for employment authorization.

(a) *General* . Aliens authorized to be employed under section 274a.12(a)(3), (a)(4), (a)(6)-(8), (a)(10)-(15), and (a)(20) must file an Application for Employment Authorization (Form I-765) in order to obtain documentation evidencing this fact.

* * * * *

PART 299--IMMIGRATION FORMS

§ 15. The authority citation for part 299 continues to read as follows:

Authority : 8 U.S.C. 1101 and note, 1103; 8 CFR part 2.

§ 16. Section 299.1 is amended in the table by adding the entries for Forms "I-918," "I-918 Supplement A," and "I-918 Supplement B" in the proper alpha/numeric sequence.

§ 299.1 Prescribed forms.

* * * * *

| Form Number | Edition Date | Title |
| --- | --- | --- |
| I-918 | 08/15/07 | Petition for U Nonimmigrant Status. |
| I-918 Supplement A | 08/15/07 | Petition for Qualifying Family Member of U-1 Recipient. |
| I-918 Supplement B | 08/15/07 | U Nonimmigrant Status Certification. |

§ 17. Section 299.5 is amended in the table by adding the entries for Forms "I-918," "I-918 Supplement A," and "I-918 Supplement B" in the proper alpha/numeric sequence.
§ 299.5 Display of control numbers.
* * * * *

| Form No. | Form Title | Currently assigned OMB Control Number |
| --- | --- | --- |
| I-918 | Petition for U Nonimmigrant Status | 1615-0104 |
| I-918 Supplement A | Petition for Qualifying Family Member of U-1 Recipient | 1615-0104 |
| I-918 Supplement B | U Nonimmigrant Status Certification | 1615-0104 |

| September 4, 2007 | Signed |
| --- | --- |
| Dated: | Michael Chertoff, Secretary. |

FOOTNOTES:

\1\ Unless waived, a ground of inadmissibility can preclude an alien from receiving nonimmigrant status. 8 CFR 214.1(a)(3). Section 212(a) of the INA, 8 U.S.C. 1182(a), contains a list of the grounds of inadmissibility.

\2\ Copies of these documents are accessible on the public docket for this rulemaking at **http://www.regulations.gov** , Docket Number USCIS-2006-0069.

\3\ Parole is permission given by DHS that allows an alien to physically enter the United States temporarily for urgent humanitarian reasons or significant public benefit; the entry is not deemed to be an admission to the United States. INA 212(d)(5)(A), 8 U.S.C. 1182(d)(5)(A); 8 CFR 212.5. A stay of deportation or removal is an administrative decision to stop temporarily the deportation or removal of an alien who has been ordered deported or removed from the United States. See 8 CFR 241.6; 8 CFR 1241.6. Defer ed action is an exercise of prosecutorial discretion that defers the removal of the alien based on the alien's case being made a lower priority for removal. Immigration and Customs Enforcement, Department of Homeland Security, Detention and Deportation Officer's Field Manual, ch. 20.8 (2005). Deferred action does not confer any immigration status upon an alien.

\4\ The AG Guidelines, and some of the aforementioned statutes, also include pecuniary crimes within the scope of qualifying activities. The BIWPA, however, limits the qualification requirements to aliens who suffer substantial physical or mental abuse and did not expressly reference pecuniary crimes. Therefore, pecuniary crimes are not included as qualifying criminal activities for U nonimmigrant status. In addition, the AG Guidelines include business entities in the definition of "victim." USCIS, however, onl y grants non-immigrant status to individuals, not to business entities and therefore limits the definition of "victim" under this rule to persons.

\5\ Qualifying children also must be unmarried. See INA § 101(b), 8 U.S.C. 1101(b).

\6\ A fee waiver is available for the Form I-918 filing fee. Fee waivers are governed by 8 CFR 103.7(c).

\7\ An order of deportation is an order issued prior to April 1, 1997, in deportation proceedings, to an alien physically present in the United States requiring the alien to leave the United States. See INA § 242B, 8 U.S.C. 1252b (1996) repealed by IIRIRA, Pub. L. 104-208, div. C., § 308(b)(6), 110 Stat. 3009, 3615 (effective April 1, 1997). An order of exclusion is an order issued prior to April 1, 1997, in exclusion proceedings, that refuses the admission to the United States of an alien who is physically out side the United States (or who is treated as being so). See generally INA § 236, 8 U.S.C. 1226 (1996) (amended by IIRIRA § 303(a), 110 Stat. at 3585). Since April 1, 1997, there has been one unified removal process for persons formerly subject to deportation and exclusion proceedings; this process may result in the issuance of a removal order by either DHS or an immigration judge. INA § 240(a)(3), 8 U.S.C. 1229a(a)(3) (added by IIRIRA sections 304(a)(3) & 309(d)(2), 110 Stat. at 3587-3589, 3627). During pro ceedings, DHS or an immigration judge makes a determination regarding whether an alien is removable from the United States. INA § 240(c)(1), 8 U.S.C. 1229a(c)(1). If such a determination is made, a removal order is issued ordering the alien to leave the United States. INA § 240(c)(5), 8 U.S.C. 1229a(c)(5). The alien must leave the United States on his or her own, or will be returned to his or her country of origin (or in some cases to a third country that agrees to accept that person) by the United States. See INA sections 240B & 241, 8 U.S.C. 1229c & 1231.

\8\ The Immigration Court and Board of Immigration Appeals are within the Department of Justice's Executive Office for Immigration Review. See 8 CFR 1003.0(a).

\9\ ICE counsel are authorized to represent DHS in Immigration Court and before the Board. See 6 U.S.C. 252(c); DHS Delegation No. 7030.2, para. 2(C).

\10\ While this rule specifically addresses joint motions to terminate, it does not preclude the parties from requesting a continuance of the proceeding.

\11\ Removal proceedings are initiated when an alien is provided notice of proceedings through the service of a Notice to Appear. The contents of the Notice to Appear are prescribed in section 239 (a)(1) of the Act.

\12\ A visa exempt alien is an alien for whom a valid, unexpired passport is not required for admission to the United States. INA § 212(d)(4)(B), 8 U.S.C. 1182(d)(4)(B); 8 CFR 212.1(i).

---

\ fr \ Federal Register Publications (CIS, ICE, CBP) \ Federal Register Publications (CIS, ICE, CBP) - 2007 \ FEDERAL REGISTER INTERIM REGULATIONS - 2007 \ New Classification for Victims of Criminal Activity; Eligibility for ?U? Nonimmigrant Status [72 FR 53014][FR 48-07]

adjustment of status under this section.

(1) *Annual cap of T–1 principal applicant adjustments.* (1) *General.* The total number of T–1 principal applicants whose status is adjusted to that of lawful permanent residents under this section may not exceed the statutory cap in any fiscal year.

(2) *Waiting list.* All eligible applicants who, due solely to the limit imposed in section 245(l)(4) of the Act and paragraph (m)(1) of this section, are not granted adjustment of status will be placed on a waiting list. USCIS will send the applicant written notice of such placement. Priority on the waiting list will be determined by the date the application was properly filed, with the oldest applications receiving the highest priority. In the following fiscal year, USCIS will proceed with granting adjustment of status to applicants on the waiting list who remain admissible and eligible for adjustment of status in order of highest priority until the available numbers are exhausted for the given fiscal year. After the status of qualifying applicants on the waiting list has been adjusted, any remaining numbers for that fiscal year will be issued to new qualifying applicants in the order that the applications were properly filed.

[73 FR 75558, Dec. 12, 2008]

§ 245.24   Adjustment of aliens in U nonimmigrant status.

(a) *Definitions.* As used in this section, the term:

(1) *Continuous Physical Presence* means the period of time that the alien has been physically present in the United States and must be a continuous period of at least 3 years since the date of admission as a U nonimmigrant continuing through the date of the conclusion of adjudication of the application for adjustment of status. If the alien has departed from the United States for any single period in excess of 90 days or for any periods in the aggregate exceeding 180 days, the applicant must include a certification from the agency that signed the Form I–918, Supplement B, in support of the alien's U nonimmigrant status that the absences were necessary to assist in the criminal investigation or prosecution or were otherwise justified.

(2) *Qualifying Family Member* means a U–1 principal applicant's spouse, child, or, in the case of an alien child, a parent who has never been admitted to the United States as a nonimmigrant under sections 101(a)(15)(U) and 214(p) of the Act.

(3) *U Interim Relief* means deferred action and work authorization benefits provided by USCIS or the Immigration and Naturalization Service to applicants for U nonimmigrant status deemed *prima facie* eligible for U nonimmigrant status prior to publication of the U nonimmigrant status regulations.

(4) *U Nonimmigrant* means an alien who is in lawful U–1, U–2, U–3, U–4, or U–5 status.

(5) *Refusal to Provide Assistance in a Criminal Investigation or Prosecution* is the refusal by the alien to provide assistance to a law enforcement agency or official that had responsibility for the investigation or prosecution of persons in connection with the qualifying criminal activity after the alien was granted U nonimmigrant status. The Attorney General will determine whether the alien's refusal was unreasonable under the totality of the circumstances based on all available affirmative evidence. The Attorney General may take into account such factors as general law enforcement, prosecutorial, and judicial practices; the kinds of assistance asked of other victims of crimes involving an element of force, coercion, or fraud; the nature of the request to the alien for assistance; the nature of the victimization; the applicable guidelines for victim and witness assistance; and the specific circumstances of the applicant, including fear, severe traumatization (both mental and physical), and the age and maturity of the applicant.

(b) *Eligibility of U Nonimmigrants.* Except as described in paragraph (c) of this section, an alien may be granted adjustment of status to that of an alien lawfully admitted for permanent residence, provided the alien:

(1) Applies for such adjustment;

(2)(i) Was lawfully admitted to the United States as either a U–1, U–2, U–

582

Exhibit 1
701

**Department of Homeland Security**

3, U–4 or U–5 nonimmigrant, as defined in 8 CFR 214.1(a)(2), and

(ii) Continues to hold such status at the time of application; or accrued at least 4 years in U interim relief status and files a complete adjustment application within 120 days of the date of approval of the Form I–918, Petition for U Nonimmigrant Status;

(3) Has continuous physical presence for 3 years as defined in paragraph (a)(1) of this section;

(4) Is not inadmissible under section 212(a)(3)(E) of the Act;

(5) Has not unreasonably refused to provide assistance to an official or law enforcement agency that had responsibility in an investigation or prosecution of persons in connection with the qualifying criminal activity after the alien was granted U nonimmigrant status, as determined by the Attorney General, based on affirmative evidence; and

(6) Establishes to the satisfaction of the Secretary that the alien's presence in the United States is justified on humanitarian grounds, to ensure family unity, or is in the public interest.

(c) *Exception.* An alien is not eligible for adjustment of status under paragraph (b) of this section if the alien's U nonimmigrant status has been revoked pursuant to 8 CFR 214.14(h).

(d) *Application Procedures for U nonimmigrants.* Each U nonimmigrant who is requesting adjustment of status must submit:

(1) Form I–485, Application to Register Permanent Residence or Adjust Status, in accordance with the form instructions;

(2) The fee prescribed in 8 CFR 103.7(b)(1) or an application for a fee waiver;

(3) The biometric services fee as prescribed in 8 CFR 103.7(b)(1) or an application for a fee waiver;

(4) A photocopy of the alien's Form I–797, Notice of Action, granting U nonimmigrant status;

(5) A photocopy of all pages of all of the applicant's passports valid during the required period (or equivalent travel document or a valid explanation of why the applicant does not have a passport) and documentation showing the following:

(i) The date of any departure from the United States during the period that the applicant was in U nonimmigrant status;

(ii) The date, manner, and place of each return to the United States during the period that the applicant was in U nonimmigrant status; and

(iii) If the applicant has been absent from the United States for any period in excess of 90 days or for any periods in the aggregate of 180 days or more, a certification from the investigating or prosecuting agency that the absences were necessary to assist in the investigation or prosecution of the criminal activity or were otherwise justified;

(6) A copy of the alien's Form I–94, Arrival-Departure Record;

(7) Evidence that the applicant was lawfully admitted in U nonimmigrant status and continues to hold such status at the time of application;

(8) Evidence pertaining to any request made to the alien by an official or law enforcement agency for assistance in an investigation or prosecution of persons in connection with the qualifying criminal activity, and the alien's response to such request;

(9) Evidence, including an affidavit from the applicant, that he or she has continuous physical presence for at least 3 years as defined in paragraph (a)(1) of this section. Applicants should submit evidence described in 8 CFR 245.22. A signed statement from the applicant attesting to continuous physical presence alone will not be sufficient to establish this eligibility requirement. If additional documentation is not available, the applicant must explain why in an affidavit and provide additional affidavits from others with first-hand knowledge who can attest to the applicant's continuous physical presence by specific facts;

(10) *Evidence establishing that approval is warranted.* Any other information required by the instructions to Form I–485, including whether adjustment of status is warranted as a matter of discretion on humanitarian grounds, to ensure family unity, or is otherwise in the public interest; and

(11) *Evidence relating to discretion.* An applicant has the burden of showing that discretion should be exercised in

583

Exhibit 1
702

his or her favor. Although U adjustment applicants are not required to establish that they are admissible, USCIS may take into account all factors, including acts that would otherwise render the applicant inadmissible, in making its discretionary decision on the application. Where adverse factors are present, an applicant may offset these by submitting supporting documentation establishing mitigating equities that the applicant wants USCIS to consider when determining whether or not a favorable exercise of discretion is appropriate. Depending on the nature of the adverse factors, the applicant may be required to clearly demonstrate that the denial of adjustment of status would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the adverse factors, such a showing might still be insufficient. For example, USCIS will generally not exercise its discretion favorably in cases where the applicant has committed or been convicted of a serious violent crime, a crime involving sexual abuse committed upon a child, or multiple drug-related crimes, or where there are security- or terrorism-related concerns.

(e) *Continued assistance in the investigation or prosecution.* Each applicant for adjustment of status under section 245(m) of the Act must provide evidence of whether or not any request was made to the alien to provide assistance, after having been lawfully admitted as a U nonimmigrant, in an investigation or prosecution of persons in connection with the qualifying criminal activity, and his or her response to any such requests.

(1) An applicant for adjustment of status under section 245(m) of the Act may submit a document signed by an official or law enforcement agency that had responsibility for the investigation or prosecution of persons in connection with the qualifying criminal activity, affirming that the applicant complied with (or did not unreasonably refuse to comply with) reasonable requests for assistance in the investigation or prosecution during the requisite period. To meet this evidentiary requirement, applicants may submit a newly executed Form I-918, Supplement B, "U Nonimmigrant Status Certification."

(2) If the applicant does not submit a document described in paragraph (e)(1) of this section, the applicant may submit an affidavit describing the applicant's efforts, if any, to obtain a newly executed Form I-918, Supplement B, or other evidence describing whether or not the alien received any request to provide assistance in a criminal investigation or prosecution, and the alien's response to any such request.

(i) The applicant should also include, when possible, identifying information about the law enforcement personnel involved in the case and any information, of which the applicant is aware, about the status of the criminal investigation or prosecution, including any charges filed and the outcome of any criminal proceedings, or whether the investigation or prosecution was dropped and the reasons.

(ii) If applicable, an applicant may also provide a more detailed description of situations where the applicant refused to comply with requests for assistance because the applicant believed that the requests for assistance were unreasonable.

(3) In determining whether the applicant has satisfied the continued assistance requirement, USCIS or the Department of Justice may at its discretion contact the certifying agency that executed the applicant's original Form I-918, Supplement B, "U Nonimmigrant Status Certification" or any other law enforcement agency.

(4) In accordance with procedures determined by the Department of Justice and the Department of Homeland Security, USCIS will refer certain applications for adjustment of status to the Department of Justice for determination of whether the applicant unreasonably refused to provide assistance in a criminal investigation or prosecution. If the applicant submits a document described in paragraph (e)(1) of this section, USCIS will not refer the application for consideration by the Department of Justice absent extraordinary circumstances. In other cases, USCIS will only refer an application to the Department of Justice if an official

Exhibit 1
703

or law enforcement agency has provided evidence that the alien has refused to comply with requests to provide assistance in an investigation or prosecution of persons in connection with the qualifying criminal activity or if there are other affirmative evidence in the record suggesting that the applicant may have unreasonably refused to provide such assistance. In these instances, USCIS will request that the Department of Justice determine, based on all available affirmative evidence, whether the applicant unreasonably refused to provide assistance in a criminal investigation or prosecution. The Department of Justice will have 90 days to provide a written determination to USCIS, or where appropriate, request an extension of time to provide such a determination. After such time, USCIS may adjudicate the application whether or not the Department of Justice has provided a response.

(f) *Decision.* The decision to approve or deny a Form I–485 filed under section 245(m) of the Act is a discretionary determination that lies solely within USCIS's jurisdiction. After completing its review of the application and evidence, USCIS will issue a written decision approving or denying Form I–485 and notify the applicant of this decision.

(1) *Approvals.* If USCIS determines that the applicant has met the requirements for adjustment of status and merits a favorable exercise of discretion, USCIS will approve the Form I–485. Upon approval of adjustment of status under this section, USCIS will record the alien's lawful admission for permanent residence as of the date of such approval.

(2) *Denials.* Upon the denial of an application for adjustment of status under section 245(m) of the Act, the applicant will be notified in writing of the decision and the reason for the denial in accordance with 8 CFR part 103. If an applicant chooses to appeal the denial to the Administrative Appeals Office pursuant to the provisions of 8 CFR 103.3, the denial will not become final until the appeal is adjudicated.

(g) *Filing petitions for qualifying family members.* A principal U–1 applicant may file an immigrant petition under sec-

tion 245(m)(3) of the Act on behalf of a qualifying family member as defined in paragraph (a)(2) of this section, provided that:

(1) The qualifying family member has never held U nonimmigrant status;

(2) The qualifying family relationship, as defined in paragraph (a)(2) of this section, exists at the time of the U–1 principal's adjustment and continues to exist through the adjudication of the adjustment or issuance of the immigrant visa for the qualifying family member;

(3) The qualifying family member or the principal U–1 alien, would suffer extreme hardship as described in 8 CFR 245.24(g) (to the extent the factors listed are applicable) if the qualifying family member is not allowed to remain in or enter the United States; and

(4) The principal U–1 alien has adjusted status to that of a lawful permanent resident, has a pending application for adjustment of status, or is concurrently filing an application for adjustment of status.

(h) *Procedures for filing petitions for qualifying family members.*

(1) *Required documents.* For each qualifying family member who plans to seek an immigrant visa or adjustment of status under section 245(m)(3) of the Act, the U–1 principal applicant must submit, either concurrently with, or after he or she has filed, his or her Form I–485:

(i) Form I–929 in accordance with the form instructions;

(ii) The fee prescribed in 8 CFR 103.7(b)(1) or an application for a fee waiver;

(iii) Evidence of the relationship listed in paragraph (a)(2) of this section, such as a birth or marriage certificate. If primary evidence is unavailable, secondary evidence or affidavits may be submitted in accordance with 8 CFR 103.2(b)(2);

(iv) Evidence establishing that either the qualifying family member or the U–1 principal alien would suffer extreme hardship if the qualifying family member is not allowed to remain in or join the principal in the United States. Extreme hardship is evaluated on a case-by-case basis, taking into account the particular facts and circumstances of each case. Applicants are encouraged

585

Exhibit 1
704

to document all applicable factors in their applications, as the presence or absence of any one factor may not be determinative in evaluating extreme hardship. To establish extreme hardship to a qualifying family member who is physically present in the United States, an applicant must demonstrate that removal of the qualifying family member would result in a degree of hardship beyond that typically associated with removal. Factors that may be considered in evaluating whether removal would result in extreme hardship to the alien or to the alien's qualifying family member include, but are not limited to:

(A) The nature and extent of the physical or mental abuse suffered as a result of having been a victim of criminal activity;

(B) The impact of loss of access to the United States courts and criminal justice system, including but not limited to, participation in the criminal investigation or prosecution of the criminal activity of which the alien was a victim, and any civil proceedings related to family law, child custody, or other court proceeding stemming from the criminal activity;

(C) The likelihood that the perpetrator's family, friends, or others acting on behalf of the perpetrator in the home country would harm the applicant or the applicant's children;

(D) The applicant's needs for social, medical, mental health, or other supportive services for victims of crime that are unavailable or not reasonably accessible in the home country;

(E) Where the criminal activity involved arose in a domestic violence context, the existence of laws and social practices in the home country that punish the applicant or the applicant's child(ren) because they have been victims of domestic violence or have taken steps to leave an abusive household;

(F) The perpetrator's ability to travel to the home country and the ability and willingness of authorities in the home country to protect the applicant or the applicant's children; and

(G) The age of the applicant, both at the time of entry to the United States and at the time of application for adjustment of status; and

(v) Evidence, including a signed statement from the qualifying family member and other supporting documentation, to establish that discretion should be exercised in his or her favor. Although qualifying family members are not required to establish that they are admissible on any of the grounds set forth in section 212(a) of the Act other than on section 212(a)(3)(E) of the Act, USCIS may take into account all factors, including acts that would otherwise render the applicant inadmissible, in making its discretionary decision on the application. Where adverse factors are present, an applicant may offset these by submitting supporting documentation establishing mitigating equities that the applicant wants USCIS to consider when determining whether or not a favorable exercise of discretion is appropriate. Depending on the nature of the adverse factors, the applicant may be required to clearly demonstrate that the denial of adjustment of status would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the adverse factors, such a showing might still be insufficient. For example, USCIS will generally not exercise its discretion favorably in cases where the applicant has committed or been convicted of a serious violent crime, a crime involving sexual abuse committed upon a child, or multiple drug-related crimes, or where there are security- or terrorism-related concerns.

(2) *Decision.* The decision to approve or deny a Form I–929 is a discretionary determination that lies solely within USCIS's jurisdiction. The Form I–929 for a qualifying family member may not be approved, however, until such time as the principal U–1 applicant's application for adjustment of status has been approved. After completing its review of the application and evidence, USCIS will issue a written decision and notify the applicant of that decision in writing.

(i) *Approvals.* (A) For qualifying family members who are outside of the United States, if the Form I–929 is approved, USCIS will forward notice of the approval either to the Department of State's National Visa Center so the applicant can apply to the consular

586

Exhibit 1
705

**Department of Homeland Security** §245.24

post for an immigrant visa, or to the appropriate port of entry for a visa exempt alien.

(B) For qualifying family members who are physically present in the United States, if the Form I–929 is approved, USCIS will forward notice of the approval to the U–1 principal applicant.

(ii) *Denials.* If the Form I–929 is denied, the applicant will be notified in writing of the reason(s) for the denial in accordance with 8 CFR part 103. If an applicant chooses to appeal the denial to the Administrative Appeals Office pursuant to 8 CFR 103.3, the denial will not become final until the appeal is adjudicated. Denial of the U–1 principal applicant's application will result in the automatic denial of a qualifying family member's Form I–929. There shall be no appeal of such an automatic denial.

(i) *Application procedures for qualifying family members who are physically present in the United States to request adjustment of status.* (1) *Required documents.* Qualifying family members in the United States may request adjustment of status by submitting:

(i) Form I–485, Application to Register Permanent Residence or Adjust Status, in accordance with the form instructions;

(ii) An approved Form I–929, Petition for Qualifying Family Member of a U–1 Nonimmigrant;

(iii) The fee prescribed in 8 CFR 103.7(b)(1) or an application for a fee waiver; and

(iv) The biometric services fee as prescribed in 8 CFR 103.7(b)(1) or an application for a fee waiver.

(2) *Decision.* The decision to approve or deny Form I–485 is a discretionary determination that lies solely within USCIS's jurisdiction. After completing its review of the application and evidence, USCIS will issue a written decision approving or denying Form I–485 and notify the applicant of this decision in writing.

(i) *Approvals.* Upon approval of a Form I–485 under this section, USCIS shall record the alien's lawful admission for permanent residence as of the date of such approval.

(ii) *Denial.* Upon the denial of any application for adjustment of status, the applicant will be notified in writing of the decision and the reason for the denial in accordance with 8 CFR part 103. If an applicant chooses to appeal the denial to the Administrative Appeals Office pursuant to the provisions of 8 CFR 103.3, the denial will not become final until the appeal is adjudicated. During the appeal period, the applicant may not obtain or renew employment authorization under 8 CFR 274a.12(c)(9). Denial of the U–1 principal applicant's application will result in the automatic denial of a qualifying family member's Form I–485; such an automatic denial is not appealable.

(j) *Effect of departure.* If an applicant for adjustment of status under this section departs the United States, he or she shall be deemed to have abandoned the application, and it will be denied. If, however, the applicant is not under exclusion, deportation, or removal proceedings, and he or she filed a Form I–131, Application for Travel Document, in accordance with the instructions on the form, or any other appropriate form, and was granted advance parole by USCIS for such absences, and was inspected and paroled upon returning to the United States, he or she will not be deemed to have abandoned the application. If the adjustment of status application of such an individual is subsequently denied, he or she will be treated as an applicant for admission subject to sections 212 and 235 of the Act. If an applicant for adjustment of status under this section is under exclusion, deportation, or removal proceedings, USCIS will deem the application for adjustment of status abandoned as of the moment of the applicant's departure from the United States.

(k) *Exclusive jurisdiction.* USCIS shall have exclusive jurisdiction over adjustment applications filed under section 245(m) of the Act.

(l) *Inapplicability of 8 CFR 245.1 and 245.2.* The provisions of 8 CFR 245.1 and 245.2 do not apply to aliens seeking adjustment of status under section 245(m) of the Act.

[73 FR 75560, Dec. 12, 2008; 74 FR 395, Jan. 6, 2009]

587

Exhibit 1
706