JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

DAVID B. GLAZER, D.C. Bar No. 400966
301 Howard Street, Suite 1050
San Francisco, California
Phone:  (415) 744-6491
Fax:    (415) 744-6476
david.glazer@usdoj.gov

S. DEREK SHUGERT, OH Bar No. 84188
DEVIN T. KENNEY, UT Bar No. 15647
U.S. Department of Justice, P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 305-0169 (Shugert); (202) 532-3351 (Kenney)
Fax:  (202) 305-0506
shawn.shugert@usdoj.gov; devin.kenney@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER DRAW NATURAL RESOURCE CONSERVATION DISTRICT, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> JOHN F. KELLY, *et al*., <br><br> Defendants. | Case No. 3:16-cv-2583 <br><br> **FEDERAL DEFENDANTS' *AMENDED* MEMORANDUM IN SUPPORT OF MOTION TO STAY THE LITIGATION OR, IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME FOR FEDERAL DEFENDANTS TO RESPOND TO COMPLAINT** <br><br> Date:    July 3, 2017 <br> Time:   10:30 a.m. <br> Courtroom: 5B <br><br> Hon. H. James Lorenz |

i
Case No. 3:16-cv-2583

## Table of Contents

I.    BACKGROUND ...................................................................................1

II.   ARGUMENT.......................................................................................3

  A.  The Standard for Granting a Stay.................................................4

  B.  As a Result of the Executive Orders, Many of the Challenged Actions Are Likely be Revised or Replaced .......................................................4

  C.  Staying this Action will Ensure Government Resources are Used Most Appropriately During the Executive Order Review Periods ..................7

III.   CONCLUSION ................................................................................8

Case No. 3:16-cv-2583

Plaintiffs assert that the Department of Homeland Security ("DHS" or "Department") failed to subject a wide variety of agency immigration policies to analysis under the National Environmental Policy Act ("NEPA"). 42 U.S.C. §§ 4321–4370m. Plaintiffs' Complaint identifies 35 purported "actions," comprising directives, policies, plans for day-to-day operations, internal guidance documents, forms, and in one case, a newspaper article. *See* Compl. ¶¶ 1, 53, 79–82 (Count II); Pls.' Ex. 1, ECF No. 1-2 to ECF No. 1-6, ECF No. 3-1; Compl. ¶¶ 89–103 (Counts IV and V). Because two Executive Orders issued by President Trump since this lawsuit was filed require DHS to review and potentially "rescind[] or revise" many of the immigration-related policies at issue here, potentially rendering much of Plaintiffs' complaint moot, Federal Defendants seek a stay of this action until that review is concluded. Given that a significant portion of the 180-day review period contemplated by these Executive Orders has already passed, the requested stay will not be of immoderate duration.

In the event that this motion is denied, Federal Defendants seek twenty-one days from the date of this order to file their response. Plaintiffs do not consent to this motion.

## I.   BACKGROUND

Plaintiffs consist of resource management groups that address local conservation needs, and organizations advocating for population "stabilization." *See* Compl. ¶¶ 26–44. DHS is the federal agency charged with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens. *See* 8 U.S.C. § 1103(a). Plaintiffs filed suit on October 17, 2016 contending that DHS's implementation of federal immigration policy under this authority has caused significant environmental effects that should be analyzed under NEPA. Compl. ¶ 1.

1                                                        Case No. 3:16-cv-2583

Just over three months later, on January 25, 2017, the President of the United States issued two Executive Orders on the topic of immigration reform: "Enhancing Public Safety in the Interior of the United States," which directs the Secretary of Homeland Security ("Secretary") to review various immigration actions and policies undertaken by previous Presidential Administrations, and "Border Security and Immigration Enforcement Improvements," which among other things requires DHS take certain actions relating to the exercise of its parole authority.

The Public Safety Order observes that "we cannot faithfully execute the immigration laws of the United States if we exempt classes or categories of removable aliens from potential enforcement" and states that its purpose is "to direct executive departments and agencies (agencies) to employ all lawful means to enforce the immigration laws of the United States." Presidential Executive Order on Enhancing Public Safety in the Interior of the United States (Jan. 25, 2017) ("Public Safety Executive Order") (attached hereto as Exhibit 2) (Section 1). It specifically directs the Secretary to "review agency regulations, policies, and procedures for consistency with this order and, if required, publish for notice and comment proposed regulations rescinding or revising any regulations inconsistent with this order and shall consider whether to withdraw or modify any inconsistent policies and procedures, as appropriate and consistent with the law." *Id.* § 10(b).

The Border Security Order observes that "[b]order security is critically important to the national security of United States." Presidential Executive Order on Border Security and Immigration Enforcement Improvements (Jan. 25, 2017) ("Border Security Executive Order") (attached hereto as Exhibit 3) (Section 1). As such, the Order lays out federal policy to "expedite determinations of apprehended individuals' claims of eligibility to remain in the United States" and "remove promptly those individuals whose legal claims to remain in the United States have

been lawfully rejected." *Id.* § 2(c)-(d).  The Order directs the Secretary to "take appropriate action to ensure that [the Department's] parole authority . . . is exercised only on a case-by-case basis . . . when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." *Id.* § 11(d).

Under the terms of the Public Safety Executive Order, the Secretary is to submit an interim report on the progress of his review within 90 days and a final report detailing the results of his review within 180 days of the Order's issuance. Public Safety Executive Order § 15.  Similarly, the Border Security Executive Order requires the Secretary to compile a report on his progress within 90 days, then requires a report from the Attorney General within 180 days.  Border Security Executive Order § 15.  The 90-day reports for both Executive Orders currently are under review with the Office of the Secretary.  *See* Declaration of Michael T. Dougherty at ¶ 6 (attached hereto as Exhibit 1).  The second report is due to the President on July 24, 2017.  Dougherty Decl. ¶ 6.  The reports can be expected to document the results of reviews conducted as directed in the Executive Orders and may include recommendations of the Secretary or statements of planned actions as regards the materials reviewed for possible rescission, revision, withdrawal or modification.

## II.   ARGUMENT

The Executive Orders and immigration policy review mark substantial new developments that warrant staying this litigation.  A stay will further the Court's interests in avoiding unnecessary adjudication, support the integrity of the administrative process, and ensure due respect for the prerogative of the executive branch to evaluate the policy decisions of prior Administrations.

Case No. 3:16-cv-2583

A.  <u>The Standard for Granting a Stay</u>

Courts have broad discretion to stay proceedings and defer judicial review in the interest of justice and efficiency.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936).  The court must evaluate "the competing interests which will be affected by the granting or refusal to grant a stay," including "the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (stay may serve the interests of judicial economy by allowing development of factual and legal issues) (citation omitted).  *See also Hawaii Nurses' Ass'n Collective Bargaining Org. v. Kapiolani Health Care System*, 890 F. Supp. 925, 931 (D. Haw. 1995) (noting that where issue was already before a federal agency and where the federal agency's ultimate decision would be determinative, "a stay w[ould] serve judicial economy").  Further, agencies generally have authority to reconsider past decisions and to revise, replace, or repeal a decision to the extent permitted by law and supported by a reasoned explanation. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 42 (1983).

B.  <u>As a Result of the Executive Orders, Many of the Challenged Actions Are Likely be Revised or Replaced</u>

The comprehensive policy review contemplated under these two Executive Orders could significantly affect the scope of Plaintiffs' claims or render moot challenges to various actions and policies enumerated in their Complaint.  As

4                                                         Case No. 3:16-cv-2583

noted, the President has directed the Secretary to engage in wide review of various immigration administration and enforcement policies, expressly instructed the Secretary to revise detention and removal forms with an eye to increasing communication with law enforcement agencies, and established a specific period in which to accomplish the review.  *See* Public Safety Executive Order §§ 10(b), (c), 15; Border Security Executive Order §§ 11(d), 15.  By the terms of the Public Safety Executive Order, for example, this review process may culminate in recommendations for Presidential action, notice and comment rulemaking, or other actions consistent with the law.  Public Safety Executive Order § 10.  Although the Border Security Executive Order is less explicit, the Order's mandate to "take appropriate action" with regards to the Department's parole authority is likely to result in similar steps and actions.  *See* Border Security Executive Order § 11(d). Both orders could result in significant changes to the actions plaintiffs challenge.

As an example, the Public Safety Executive Order expressly revokes the "Secure Communities" memorandum, which Plaintiffs challenge as Action 24 (Compl. ¶ 53, at 55).  *See* Public Safety Executive Order § 10(a).  (Compl. ¶ 53, at 55).  The Public Safety Executive Order reverses this decision by reinstating the "Secure Communities" program and ending its replacement.  *See* Public Safety Executive Order § 10(a).  The language of the Public Safety Executive Order also implicates the form described in Plaintiffs' Complaint (Action Number 17) as the "[n]ew Detainer form . . . which changed the policy on detainers . . . [so that] ICE officers could now only issue detainers for aliens that had been convicted, not just booked, for a crime," (Compl. ¶ 53, at 53).  But the Order directs the Secretary to revise detention and removal forms in order to increase communication with state and local law enforcement agencies.  Public Safety Executive Order § 10(c). Rather than litigating plaintiffs' challenges now, it would be far more efficient to await the Secretary's revisions to the challenged form.

The Public Safety Executive Order also directs the Secretary to "review agency regulations, policies, and procedures for consistency with this order" and to "withdraw or modify any inconsistent policies or procedures." Public Safety Executive Order § 10(b). In just one example of how DHS's response to this directive has already affected actions challenged by Plaintiffs, DHS recently replaced Policy 10074.1 with a new policy, Policy 10074.2.[1] Plaintiffs' Complaint challenges actions, including Action 18, premised upon the superseded policy, which Plaintiffs describe as a memorandum that "limited the circumstances under which ICE can issue detainers." (Compl. ¶ 53, at 53 & Ex. 1, ECF 1-6 at 13). Thus, although DHS does "not presently know how many of the actions challenged in this litigation will be rescinded, revised, withdrawn or modified," Dougherty Decl. ¶ 5, it is clear that the review process has the potential to significantly impact this litigation.

Similarly, the Border Security Executive Order affects a number of the "actions" Plaintiffs challenge that relate to the Secretary's parole authority, including Action Number 6, which according to Plaintiffs allegedly "formalize[d] the discretionary power of 'advance parole,' [and] allow[ed] aliens in the country to leave and return as parolees." (Compl. ¶ 53, at 50). The Border Security Executive Order implicates this and other such actions by requiring the exercise of that parole discretion to use on "a case-by-case basis in . . . [and] only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." Border Security Executive Order § 11(d). These are just three of the more than two dozen "actions" Plaintiffs challenge that are potentially implicated by the Executive Order. *See* Compl. ¶ 53.

---

[1] See Issuance of Immigration Detainers by ICE Immigration Officers, Policy Number 10074.2 (Apr. 2, 2017), available at https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf.

Case No. 3:16-cv-2583

As these examples demonstrate, a stay is warranted in this case.  The President of the United States has directed the Secretary to immediately take all steps necessary to review a broad range of "previous immigration actions and policies" and, if appropriate, make recommendations that may substantially affect or alter those actions and policies.  Public Safety Executive Order § 10(b).  The President also directed the Secretary to "ensure that [the Department's] parole authority . . . is exercised only on a case-by-case basis" in instances in which the potential parolee demonstrates humanitarian need or significant public benefit.  Border Security Executive Order § 11(d).  Even if the Executive Order reviews would not moot all of plaintiffs' claims, the results of the required reviews and are likely simplify the "issues, proof, and questions of law" at issue, *Lockyer*, 398 F.3d at 1110, and a stay would serve judicial economy by minimizing the "time and effort for [the Court] itself, for counsel, and for litigants," *Landis*, 299 U.S. at 254.

C. Staying this Action will Ensure Government Resources are Used Most Appropriately During the Executive Order Review Periods

Further, a stay will allow DHS officials and employees to devote their limited resources on implementing the Executive Orders without the competing priority of preparing a defense to plaintiffs' claims.  If litigation were to proceed during the Executive Order review period, DHS would be required to prepare and compile administrative records for each of the 35 actions Plaintiffs challenge.  Compiling these records will be taxing and burdensome.  Such a large investment of government time and resources should not be required where the President has established a mandatory process for the agency to review the very actions challenged in the complaint.  Requiring the agency to defend numerous actions that may soon be amended, withdrawn or superseded, is a hardship that could easily be avoided with a stay.  *See Lockyer*, 398 F.3d at 1110.

Finally, a stay is also warranted to allow the new Administration a reasonable opportunity to formulate its position on issues that have direct bearing on this litigation.  Because the Executive Orders each prescribe a specific, limited period in which to accomplish the review contemplated, this Court should allow that review to continue without interference until its completion.

### III.   CONCLUSION

Federal Defendants therefore request that this Court stay this case and all pending deadlines while the Secretary and Attorney General conduct their review of the implicated immigration policies, actions, and directives, and that the stay remain in place until 45 days after the conclusion of review and any resulting recommendations.  At the end of the stay, the parties will submit a joint status report concerning further proceedings in this matter.  If the Court declines to grant a stay, Federal Defendants request 21 days from the date of the Court's Order to respond to the Complaint.

Dated:  June 1, 2017                              Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

DAVID B. GLAZER, D.C. Bar No. 400966
301 Howard Street, Suite 1050
San Francisco, California
Phone:  (415) 744-6491
Fax:     (415) 744-6476
david.glazer@usdoj.gov

*/s/ Devin T. Kenney*
S. DEREK SHUGERT, OH Bar No. 84188
DEVIN T. KENNEY, UT Bar No. 15647

8                                                             Case No. 3:16-cv-2583

Trial Attorneys
U.S. Department of Justice
Natural Resources Section
Environment & Natural Resources Division

P.O. Box 7611
Washington, D.C. 20044-7611
Phone:   (202) 305-0169 (Shugert)
             (202) 532-3351 (Kenney)
Fax:      (202) 305-0506
shawn.shugert@usdoj.gov;
devin.kenney@usdoj.gov
*Attorneys for Federal Defendants*

OF COUNSEL

William O. Bresnick
Environmental Counsel
Administrative Law Branch
General Law Division
Office of the General Counsel
U. S. Department of Homeland Security
Washington, DC 20528

9                                              Case No. 3:16-cv-2583