Julie B. Axelrod
California Bar. No. 250165
Immigration Reform Law Institute
25 Massachusetts Ave, NW, Suite 335
Washington, D.C. 20001
Telephone: (202) 232-5590
Fax: (202) 464-3590

Lesley Blackner
Admitted *Pro Hac Vice*
Florida Bar No. 654043
340 Royal Poinciana Way, Suite 317-377
Telephone: (561) 659-5754

James P. Miller
California Bar No. 188266
Law Office of JP Miller Jr.
181 Rea Ave, Suite 101
El Cajon, CA 92020
Telephone: (619) 590-0383

# THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER DRAW NATURAL, RESOURCE CONSERVATION DISTRICT *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN F. KELLY, *et al.*,<br><br>Defendants. | Case No. 3:16-cv-2583<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**<br><br>Date: July 3, 2017<br>Time: 10:30 a.m.<br>Courtroom: 5B<br><br>Hon. H. James Lorenz |

## I. Introduction

This case concerns the longstanding failure of the Department of Homeland Security ("DHS") to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 *et seq.* and its implementing regulations relating to its actions concerning the entry and settlement of foreign nationals into the United States. In the Complaint, Plaintiffs assert that the NEPA regulations that DHS promulgated pursuant to 42 U.S.C. § 4333 are unlawfully silent with respect to the environmental impacts (most notably population growth) resulting from the mass entry and settlement of foreign nationals into the United States. Plaintiffs further assert that 33 specific DHS actions relating to the entry and settlement of foreign nationals into the United States should have undergone NEPA analysis but did not. This failure, Plaintiffs believe, may have resulted from the underlying inadequacy of the DHS NEPA regulations themselves.

Defendants Department of Homeland Security ("DHS") and Secretary of Homeland Security John Kelly appear to be seeking a stay of proceedings because they have mistaken the nature of Plaintiffs' NEPA challenge. If this case were a substantive challenge to the 33 major governmental actions Plaintiffs identified in their Complaint, the Defendants' argument for a stay would be much stronger. See Complaint ¶ 53. However, this case is not about whether past Administrations had power under the law to implement the substance of those actions. Instead, this case

is about whether DHS's NEPA regulations arbitrarily and capriciously fail to inject significant environmental considerations into DHS's decision-making process, the inclusion of which would have ensured that the agency "take actions that protect, restore, and enhance the environment." 40 C.F.R. § 1500.1 (c). The Plaintiffs also challenge the failure of the Defendants to live up to their procedural obligations under NEPA with respect to the specific actions at issue in this case. Indeed, these specific NEPA failures likely occurred as a result of Defendants' ongoing failure even to recognize that its major actions relating to the entry and settlement of large numbers of foreign nationals into the United States result in environmentally significant impacts.

     Defendants seek a stay in order to "simplify" the "issues, proof, and questions of law at issue." Federal Defendant's Amended Memorandum In Support of Motion to Stay ("Defendant's Memo") at 7. However, the core of Plaintiffs' complaint is already quite simple, even though the results of Defendants' basic failure, which the complaint documents, are widespread. The complaint establishes that the entry and settlement of large numbers of foreign nationals into the United States has significant, ongoing impacts on the human environment. The startling truth is that the federal government has never conducted any public analysis of any environmental impacts resulting from the entry and settlement of foreign nationals, and did not do any such analysis prior to engaging in the specific actions

documented by the Plaintiffs. NEPA prohibits such environmentally uninformed decision-making.

## II.   Background

The Plaintiffs in this case are individual environmentalists, environmental groups that object to endless population growth, southwest natural resource conservation groups, and members of the southwest cattle-ranching community. Plaintiffs have brought this NEPA challenge because of DHS' ongoing failure, apparent in its own internal NEPA regulations, to recognize that DHS actions inducing mass immigration, legal and illegal, result in environmentally consequential impacts.

The core policy of NEPA, the "basic national charter for protection of the environment," is that public officials are obliged to make decisions that are based on an informed understanding of the likely environmental consequences flowing from their specific actions. 40 C.F.R. § 1500.1. NEPA aims to prevent public officials from carrying out policies which significantly affect the environment without at least considering likely environmental effects. Yet DHS regularly authorizes and implements discretionary policies which lead to the entry and settlement of foreign nationals with no analysis of likely environmental consequences.

The reason this complete lack of analysis violates NEPA is because the mass

entry and settlement of foreign nationals cannot reasonably be seen as an environmentally insignificant occurrence. Because DHS discretionary policy choices result in the mass entry and settlement of foreign nationals into the United States, the U.S. population has grown and will continue to grow substantially. Induced population growth is deemed an environmentally significant impact under NEPA, which expressly recognizes Congressional concern for "the profound influences of population growth" on the "natural environment." 40 C.F.R. Section 1500.1(c). Policy choices and other actions have led and continue to lead to the mass illegal entry across the border and settlement of untold millions of people. This flow of people results in the degradation of the natural environment of the borderlands as well and causes significant impacts.

Plaintiffs filed their complaint on October 17, 2016. Defendants first asked Plaintiffs for two extensions, on the basis that they did not have the capacity to respond during the time given. Plaintiffs took in good faith Defendants' plea for more time, and consented to two separate extensions, expecting that Defendants would use the initial four extra months to formulate their defense. When Defendants, who had not made any progress readily apparent to Plaintiffs in formulating their answer or defense in the extended time given, asked for a third extension, Plaintiffs asked if Defendants wanted to pursue settlement negotiations. Defendants took up Plaintiff's offer to engage in a settlement conference if Plaintiff

would grant another months extension, until May 30, 2017, to file their answer. Plaintiffs agreed, and parties had a settlement conference on May 8, 2017. However, Plaintiffs and Defendants were unable to find common ground during the settlement conference. On May 30, 2017, when Defendant's Answer was due, Defendants requested a further delay.

### III.     Argument

### A.     Standard for Granting a Stay

While any court's discretion to stay its proceedings is inherent in its power to "control the disposition of the causes on its docket," the "suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. American Co.*, 299 U.S. 248, 254-255 (1936). The "burden is on the party seeking the stay to show there is pressing need for delay, and that neither the other party nor the public will suffer harm from the entry of the order." *Ohio Envtl. Council v. United States Dist. Court, Southern Dist.*, 565 F. 2d 393, 396 (6th Cir. 1977). The Defendants thus are the party that must make a showing why these proceedings should not proceed even to the answer stage at this time.

**B.     Defendants have not demonstrated hardship or inequity in being required to go forward with the case until the final results of the policy review are known because they have not shown their defense depends on the policy review.**

Defendants state that two of the Executive Orders issued by the President of

the United States on January 25, 2017, may "potentially" result in the withdrawal of a number of the actions named in the Plaintiff's complaint. Defendants' Memo at 7. On this basis, Defendants contend that "defend[ing] numerous actions that may soon be amended, withdraw or superseded" is a hardship that must be avoided. Defendants' Memo at 7.

However, Defendants have not explained why their defense would require defending the actions themselves. The substantive legality of these actions is not at issue in this case. The NEPA process or lack thereof that DHS engaged in before adopting these actions is at issue. The "fundamental purpose of NEPA" is to ensure that "federal agencies take a hard look at the environmental consequences of their actions, early enough that it can serve as an important contribution to the decision making process." *Sierra Club v. Bosworth*, 510 F. 3d 1016, 1016 (9th Cir. 2007). If Defendants believe the NEPA regulations that they have adopted (also under challenge in this case) comply with the law, they ought to be able to make this defense at any time. If they believe that NEPA is not applicable to immigration actions in general, they must assert this defense regardless of what the results of the immigration policy review are.

Defendants state that compiling the administrative records for actions may be an unnecessary burden.  Defendants' Memo at 7. Such an analysis is not even necessary at the answer stage of the proceeding, which is where this case still is

because of Defendants' delays. However, if the administrative records of these actions include environmental analysis, compiling these records will be relevant to Plaintiffs' claims regardless of the results of the immigration review. Plaintiffs claim that the complete lack of environmental analysis by DHS of any of the environmental impacts relating to the entry and settlement of into the United States is arbitrary and capricious. If DHS has been conducting non-public environmental analysis before engaging in immigration increasing actions, such analysis would be relevant to Plaintiffs' claims and Defendants' defenses.

**C.     Defendants have not shown that staying this action would ensure government resources are used most appropriately during the Executive Order Review period.**

Defendants urge the Court to grant a stay so that they can devote their resources to "implementing Executive Orders without the competing priority of preparing a defense to plaintiffs' claims." Defendants' Memo at 7. But if Defendants believe that their work under this immigration policy review may touch upon issues in this case, they should be willing to consider the possibility that an immigration policy review is a good time to consider whether they are doing the proper environmental analysis. Plaintiffs would agree to a delay if Defendants were willing to review the relevant issues. But when Plaintiffs asked if this review would extent to considering the NEPA issues raised in this case, Defendants would only say they would comply with NEPA if "applicable." See Exhibit A.

At this juncture, it appears that Defendants consider that immigration related actions and policy decisions operate in an entirely separate sphere from the DHS NEPA process. That is, Defendants appear to believe that NEPA is not "applicable" to immigration related actions. Plaintiffs do not agree and are prepared to prove that this mindset is arbitrary and capricious. But if Defendants hold to it, the issue of whether their position is arbitrary and capricious is unaffected by uncertainty about whether past discretionary immigration policies will be dropped in the future. Such uncertainty is inevitable. As Defendants themselves point out, agencies always may change their policies. Defendants' Memo at 4.

## IV. Conclusion

Defendants have failed to meet their burden of establishing that they would face hardship or inequity in being required to proceed with an answer to the case at this time.

Dated: June 16, 2017

        Respectfully submitted,

        /s/Julie B. Axelrod
        Julie B. Axelrod
        California Bar. No. 250165
        Immigration Reform Law Institute
        25 Massachusetts Ave, NW, Suite 335
        Washington, D.C. 20001
        Telephone: (202) 232-5590
        Fax: (202) 464-3590

Lesley Blackner
Admitted *Pro Hac Vice*
Florida Bar No. 654043
340 Royal Poinciana Way, Suite 317-377
Telephone: (561) 659-5754

James P. Miller
California Bar No. 188266
Law Office of JP Miller Jr.
181 Rea Ave, Suite 101
El Cajon, CA 92020
Telephone: (619) 590-0383