JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

S. DEREK SHUGERT, OH Bar No. 84188
Natural Resources Section
Post Office Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 514-9269
Fax:  (202) 305-0506
shawn.shugert@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

|  |  |
|---|---|
| WHITEWATER DRAW NATURAL RESOURCE CONSERVATION DISTRICT, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>ELAINE C. DUKE[1], *et al.*,<br><br>        Federal Defendants. | **Case No. 3:16-cv-2583**<br><br>**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT IN PART FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**<br><br>Date: November 6, 2017<br>No Oral Argument Unless Requested by the Court<br><br>Hon. H. James Lorenz |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary of the Department of Homeland Security, Elaine C. Duke, is substituted for her predecessor John F. Kelly.

Case No. 3:16-cv-2583

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ............................................................................................... 2

III.  STANDARD OF REVIEW ............................................................................... 5

    A.    Federal Rule of Civil Procedure 12(b)(1) ...................................... 5

    B.    Federal Rule of Civil Procedure 12(b)(6) ...................................... 6

    C.    Judicial Review under the APA ....................................................... 6

    D.    Judicial Review under NEPA .......................................................... 8

IV.  ARGUMENT ..................................................................................................... 8

    A.    Plaintiffs' Challenges to Eleven DHS "Actions" are Moot ........... 8

    B.    Plaintiffs' Claims Are Not Reviewable Under the APA............... 11

        1.    The Actions Challenged in Counts I, II, and III Are Not Final Agency Actions    11

        2.    Review of Actions 10, 11, 25, and 26 is Precluded by Statute    15

    C.    NEPA Does Not Require a Programmatic EIS as Alleged in Count III....... 16

    D.    Plaintiffs' Challenges to Five DHS Actions are Time-Barred..................... 20

V.   CONCLUSION................................................................................................ 22

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ..................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................6

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...............................................................7, 12, 14

*Cement Kiln Recycling Coal. v. EPA*,
  493 F.3d 207 (D.C. Cir. 2007) .............................................................12

*Church of Scientology of Cal. v. United States*,
  506 U.S. 9 (1992) ...................................................................................8

*Cline v. Brusett*,
  661 F.2d 108 (9th Cir. 1981) ...............................................................21

*Coverdell v. Dep't of Soc. & Health Servs.*,
  834 F.2d 758 (9th Cir. 1987) .................................................................9

*Ctr. for Biological Diversity v. Brennan*,
  571 F. Supp. 2d 1105 (N.D. Cal. 2007) ...............................................13

*Dep't of Transp. v. Pub. Citizen*,
  541 U.S. 752 (2004) ...............................................................................8

*Feldman v. Bomar*,
  518 F.3d 637 (9th Cir. 2008) ...............................................................11

*Friends of Sierra R.R., Inc. v. ICC*,
  881 F.2d 663 (9th Cir. 1989) ...............................................................21

*Friends of the Earth v. Mosbacher*,
  488 F. Supp. 2d 889 (N.D. Cal. 2007) .................................................19

*Gen. Atomic Co. v. United Nuclear Corp.*,
  655 F.2d 968 (9th Cir. 1981) .................................................................5

*Gibson v. United States*,
  781 F.2d 1334 (9th Cir. 1986) .............................................................21

*Gill v. Dep't of Justice*,
  246 F. Supp. 3d 1264 (N.D. Cal. 2017) ...............................................14

*Gov't of Guam v. United States,*
   744 F.2d 699 (9th Cir. 1984) ................................................................. 21

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy,*
   383 F.3d 1082 (9th Cir. 2004) ............................................................... 15

*Hale v. Norton,*
   476 F.3d 694 (9th Cir. 2007) .................................................................. 8

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ............................................................................... 7

*Hells Canyon Pres. Council v. U.S. Forest Service,*
   593 F.3d 923 (9th Cir. 2010) ...................................................... 13, 20, 21

*Irwin v. Dep't of Veterans Affairs,*
   498 U.S. 89 (1990) ............................................................................... 20

*Kleppe v. Sierra Club,*
   427 U.S. 390 (1976) ....................................................................... 17, 19

*Kugel v. United States,*
   947 F.2d 1504 (D.C. Cir. 1991) ........................................................... 12

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) .................................................................. 6

*Lowry v. Barnhart,*
   329 F.3d 1019 (9th Cir. 2003) ............................................................. 13

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ...................................................... 7, 14, 17, 18, 20

*Mada-Luna v. Fitzpatrick,*
   813 F.2d 1006 (9th Cir. 1987) ............................................................. 12

*McCarthy v. United States,*
   850 F.2d 558 (9th Cir. 1988) .................................................................. 6

*Metro. Edison Co. v. People Against Nuclear Energy,*
   460 U.S. 766 (1983) ............................................................................. 20

*Mills v. Green,*
   159 U.S. 651 (1895) ............................................................................... 9

*Mohsenzadeh v. Kelly,*
   No. 3:14-CV-2715-L-RBB, 2017 WL 3896702 (S.D. Cal. Sept. 6, 2017) ................... 16

*Mortensen v. First Fed. Sav. & Loan Ass'n,*

549 F.2d 884 (3d Cir. 1977) ........................................................................5

*Murphy v. Hunt*,
455 U.S. 478 (1982) ...................................................................................9

*Nat'l Mining Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) ................................................................12

*Native Ecosystems Council v. Dombeck*,
304 F.3d 886 (9th Cir. 2002) ....................................................................7

*Native Ecosystems Council v. U.S. Forest Serv.*,
428 F.3d 1233 (9th Cir. 2005) ..................................................................7

*Native Ecosystems Council v. Weldon*,
697 F.3d 1043 (9th Cir. 2012) ..................................................................8

*Nevada v. Dep't of Energy*,
457 F.3d 78 (D.C. Cir. 2006) ..................................................................17

*Northcoast Envtl. Ctr. v. Glickman*,
136 F.3d 660 (9th Cir. 1998) ............................................................13, 18

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ............................................................................17, 18

*Preiser v. Newkirk*,
422 U.S. 395 (1975) ...................................................................................8

*Pride v. Correa*,
719 F.3d 1130 (9th Cir. 2013) ..................................................................5

*Pub. Citizen v. U.S. Trade Rep.*,
5 F.3d 549 (D.C. Cir. 1993) ....................................................................15

*Pub. Utils. Comm'n v. FERC*,
100 F.3d 1451 (9th Cir. 1996) ............................................................9, 10

*Raines v. Byrd*,
521 U.S. 811 (1997) ...................................................................................8

*River Runners for Wilderness v. Martin*,
593 F.3d 1064 (9th Cir. 2010) ................................................................13

*Robertson v. Dean Witter Reynolds, Inc.*,
749 F.2d 530 (9th Cir. 1984) ....................................................................6

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989) ...................................................................................8

iv                              Case No. 3:16-cv-2583

*S.D. Myers, Inc. v. City & Cty. of San Francisco*,
    253 F.3d 461 (9th Cir. 2001) ....................................................................9

*Savage v. Glendale Union High Sch. Dist. No. 205*,
    343 F.3d 1036 (9th Cir. 2003) ..................................................................6

*Schweiker v. Hansen*,
    450 U.S. 785 (1981) ................................................................................12

*Shiny Rock Mining Corp. v. United States*,
    906 F.2d 1362 (9th Cir. 1990) ................................................................21

*Sierra Club v. Penfold*,
    857 F.2d 1307 (9th Cir. 1988) ............................................................8, 21

*Sisseton-Wahpeton Sioux Tribe v. United States*,
    895 F.2d 588 (9th Cir. 1990) ..................................................................21

*Spencer v. Kemna*,
    523 U.S. 1 (1998) ......................................................................................9

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ....................................................................6

*Thompson v. McCombe*,
    99 F.3d 352 (9th Cir. 1996) ......................................................................5

*Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ....................................................................5

*United States v. Alameda Gateway Ltd.*,
    213 F.3d 11617 (9th Cir. 2000) ..............................................................13

*United States v. Dalm*,
    494 U.S. 596 (1990) ................................................................................20

*United States v. Fifty-Three Eclectus Parrots*,
    685 F.2d 1131 (9th Cir. 1982) ................................................................13

*United States v. Idaho, ex rel. Dir., Idaho Dep't of Water Res.*,
    508 U.S. 1 (1993) ....................................................................................20

*Vill. of Gambell v. Babbitt*,
    999 F.2d 403 (9th Cir. 1993) ..................................................................10

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ....................................................................6

*W. Radio Servs. Co. v. Espy*,

79 F.3d 896 (9th Cir. 1996) ................................................................ 12, 13

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ......................................................... 5

*Wild Fish Conservancy v. Jewell*,
730 F.3d 791 (9th Cir. 2013) ........................................................... 14

**Statutes**

5 U.S.C. § 551(13) ................................................................................ 7

5 U.S.C. §§ 701–706 ...................................................................... 2, 4, 7

5 U.S.C. § 701(a)(1) ......................................................................... 8, 16

5 U.S.C. § 701(a)(2) ............................................................................ 8

5 U.S.C. § 702 ..................................................................................... 7

5 U.S.C. § 702(1) ............................................................................... 15

5 U.S.C. § 702(2) ............................................................................... 15

5 U.S.C. § 704 ..................................................................................... 7

5 U.S.C. § 706(2) ................................................................................. 7

5 U.S.C. § 706(2)(A) ............................................................................ 7

5 U.S.C. §701(b) ................................................................................ 15

6 U.S.C. § 468(a)(2) ............................................................................. 4

6 U.S.C. § 742 ..................................................................................... 4

8 U.S.C. § 1101 ................................................................................... 1

8 U.S.C. § 1103(a)(1) ........................................................................... 4

8 U.S.C. § 1103(a)(5) ........................................................................... 4

8 U.S.C. § 1182(a)(9)(B)(v) ................................................................ 16

8 U.S.C. § 1252(a)(2) .......................................................................... 16

8 U.S.C. § 1254a ................................................................................ 15

8 U.S.C. § 1254a(b)(5)(A) ................................................................... 15

28 U.S.C. § 2401(a) ....................................................................... 20, 21

42 U.S.C. §§ 4321–4370m ................................................................... 3

Case No. 3:16-cv-2583

42 U.S.C. § 4332 ....................................................................................15

42 U.S.C. § 4332(C) ................................................................................8

44 U.S.C. § 1507 ...................................................................................21

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) .......................................................................2, 5

Fed. R. Civ. P. 12(b)(6) .......................................................................2, 6

**Regulations**

8 C.F.R. § 212.1 ..................................................................................22

8 C.F.R. § 212.7 .............................................................................15, 16

8 C.F.R. § 212.7(e)(2)(i) .........................................................................16

40 C.F.R. § 1502.4(a) ............................................................................19

40 C.F.R. § 1502.4(b) ......................................................................18, 19

40 C.F.R. § 1502.4(c) ............................................................................19

40 C.F.R. § 1502.4(c)(2) ...................................................................19, 20

40 C.F.R. § 1508.18(b)(3) ......................................................................19

42 C.F.R. § 1508.12 ..............................................................................15

67 Fed. Reg. 76,256 (Dec. 11, 2002) ........................................................22

72 Fed. Reg. 53014 (Sept. 17, 2007) ........................................................22

73 Fed. Reg. 75540 (Dec. 12, 2008) .........................................................22

78 Fed. Reg. 536 (Jan. 3, 2013) ...............................................................15

81 Fed. Reg. 50244 (July 29, 2016) ..........................................................15

82 Fed. Reg. 18,837 (Apr. 21, 2017) ..........................................................1

82 Fed. Reg. 31,887 (July 11, 2017) ...........................................................1

82 Fed. Reg. 38,926 (Aug. 16, 2017) .........................................................10

82 Fed. Reg. 5238 (Jan. 17, 2017) ..............................................................1

82 Fed. Reg. 8793 (Jan. 30, 2017) ..........................................................1, 5

82 Fed. Reg. 8799 (Jan. 30, 2017) ..........................................................1, 5

**Treatises**

*Authority to Parole Applicants for Admission Who Are Not Also Arriving Aliens*,
    Memorandum from Paul W. Virtue, INS General Counsel, to INS officials,
    Legal Op. 98-10, 1998 WL 1806685 (Aug. 21, 1998)....................................................22

U.S. Department of Homeland Security, *Fact Sheet*,
    https://web.archive.org/web/20110220124727/http://www.ice.gov/doclib/news/library/f
    actsheets/pdf/worksite-strategy.pdf (last visited May 15, 2017) ...................................22

Case No. 3:16-cv-2583

# I.     __INTRODUCTION__

Enforcing a lawful system of immigration is a critical responsibility for the U.S. Department of Homeland Security ("DHS" or "Department") and its sister federal agencies, and is a high priority for the Administration.  *See, e.g.*, 8 U.S.C. § 1101 *et seq.*; Exec. Order No. 13,768, Enhancing Public Safety in the Interior of the United States, 82 Fed. Reg. 8799 (Jan. 30, 2017) ("Public Safety Executive Order"); Exec. Order No. 13,767, 82 Fed. Reg. 8793 (Jan. 30, 2017) Border Security and Immigration Enforcement Improvements (Jan. 25, 2017) ("Border Security Executive Order"); Exec. Order. No. 13,788, Buy American and Hire American, 82 Fed. Reg. 18,837 (Apr. 21, 2017) ("Buy American and Hire American Executive Order).  Plaintiffs filed this lawsuit on October 17, 2016, less than one month before the election that resulted in the inauguration of President Donald J. Trump.  Plaintiffs' lawsuit alleges that DHS violated the National Environmental Policy Act ("NEPA") with regard to a list of more than thirty immigration-related actions occurring between 1992 and this year,[2] each of which Plaintiffs argue causes environmental impacts that require review under NEPA.  These purported "actions" comprise a range of directives, policies, plans for day-to-day operations, internal guidance documents, forms, and in one case, a newspaper article.

In the intervening time since the filing of the lawsuit, President Trump issued executive orders directing the Secretary of Homeland Security ("Secretary") to review various immigration actions and policies undertaken by prior Presidential Administrations.  *See, e.g.*, Public Safety Executive Order; Border Security Executive Order; Buy American and Hire American Executive Order.  The President directed, among other things, the "executive departments and agencies (agencies) to employ all lawful means to enforce the immigration laws of the United States" and specifically

---

[2] Action 9, a proposed rule at the time Plaintiffs filed this lawsuit, was issued as a final rule on January 17, 2017.  82 Fed. Reg. 5238 (Jan. 17, 2017).  The effective date of the rule was subsequently stayed.  *See* 82 Fed. Reg. 31,887 (July 11, 2017).

directed the Secretary to "review agency regulations, policies, and procedures for consistency with this order and, if required, publish for notice and comment proposed regulations rescinding or revising any regulations inconsistent with this order and shall consider whether to withdraw or modify any inconsistent policies and procedures, as appropriate and consistent with the law." Public Safety Executive Order.

Because Executive Orders issued by President Trump since this lawsuit was filed required DHS to review and potentially "rescind[] or revise" many of the immigration-related policies at issue here in this lawsuit, Federal Defendants moved on June 1, 2017 to stay this litigation to provide time for the new Administration to conduct the review required by the President. The court granted a stay but ordered Federal Defendants to file a response to the complaint by October 6, 2017.

Federal Defendants now move to dismiss most of the claims in Plaintiffs' complaint. Most of the actions, directives, policies, and plans Plaintiffs challenge are not reviewable because they are not final agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, fall within explicit exemptions to APA reviewability, or are otherwise committed to agency discretion by law. Several actions in Counts II and III are now moot because those actions have been rescinded by the new Administration or challenges to those actions are otherwise now time-barred. Count III fails to state a claim under NEPA. Therefore, the Court should dismiss Counts I, II, and III under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). To assist the Court, a table of claims and defenses is provided at Exhibit 1.

## II.   **BACKGROUND**

Plaintiffs are a coalition of resource management groups addressing local conservation issues, and organizations advocating for population "stabilization." *See* Compl. ¶¶ 26–44. Collectively, Plaintiffs assert that DHS' policies and actions have allowed a considerable number of foreign nationals to enter and remain in the United States. *Id.* ¶¶ 47–51. This, Plaintiffs contend, has resulted in widespread environmental

harms – either from the migration of foreign nationals across the Southwest border, or from population growth in the United States that Plaintiffs claim is attributable to "the entry and settlement of multitudinous foreign nationals into the United States" – that allegedly could have been prevented had DHS engaged in environmental review pursuant to NEPA, 42 U.S.C. §§ 4321–4370m.  *Id.* ¶¶ 1, 48–49.

For example, Plaintiffs claim that immigration-driven population growth causes urban sprawl and the loss of undeveloped land, *id.* ¶¶ 60–63; "threatens to accelerate biodiversity loss and the extinction of animal and plant species," *id.* ¶ 64; and increases greenhouse gas emissions and water use, *id.* ¶¶ 65–66.  Meanwhile, along the Southwest border, Plaintiffs allege that

> [t]he massive numbers of people illegally crossing the Southwest border have left a host of environmental impacts in their wake, such as the destruction of native and at risks [sic] species and habitats by trampling over the native vegetation; garbage dumping on a massive scale; water pollution; and setting fires, many of which turn out of control, for the purposes of heat, cooking, or to distract Border Patrol agents.

*Id.* ¶ 70.  Plaintiffs assert DHS's immigration policies "have encouraged and exacerbated the phenomenon of illegal crossing along the Southwest border," *id.* ¶ 71, though they acknowledge that these "policies are not the sole factor in all of these components of the illegal border-crossing phenomenon," *id.* ¶ 70.  Plaintiffs do not allege that the Department directly caused Plaintiffs' alleged injuries, but rather that DHS's failure to prevent both legal and illegal immigration allowed the influx of foreign nationals that has caused them.  *Id.* ¶¶ 1, 47.

The Complaint lists 36 ostensible "actions," with the bulk of them contained within the 33 "actions" in Counts II and III, which include a variety of internal guidance documents, policy memoranda, a form, and a newspaper article, taken over the course of some 25 years.  The challenged actions include a memorandum outlining Department policies on parole determinations for aliens from any nation fearing "persecution or

terror" and seeking asylum in the United States (Action Number 2) (Pls.' Ex. 1, ECF No. 1-2, at 7); a program that allowed for in-country refugee and parole processing of certain Central American minors and their relatives (Action Number 7) (Pls.' Ex. 1, at 40); and a regulation that allows science, technology, engineering, and math students to engage in up to 24 additional months of practical training in the United States (Action Number 30) (Pls.' Ex. 1, ECF 1-6, at 53).

DHS, along with partner agencies such as the Departments of Justice, Labor, and State, is responsible for enforcing and implementing immigration laws. *See*, *e.g*., 8 U.S.C. § 1103(a)(1). The scope of DHS's mission extends beyond immigration to diverse policy areas such as maritime law enforcement (6 U.S.C. § 468(a)(2)), the provision of border security (8 U.S.C. § 1103(a)(5)), and disaster prevention and management (6 U.S.C. § 742). Acting upon his broad authority, the Secretary has issued a range of internal documents in support of the Department's mission. These include, for instance, forms and policy memoranda guiding the exercise of lawful discretion of agency personnel included in Plaintiffs' Exhibit 1 (ECF No. 1-2 to ECF No. 1-6).

While some immigration-related documents issued by DHS may be subject to review under the APA, many of the documents Plaintiffs challenge here are not. For example, Count I of Plaintiffs' Complaint challenges the Department's Instruction Manual, which provides internal guidance for DHS personnel in complying with NEPA, and is not a "final agency action." *See* DHS Directive 023-01, (Pls. Ex. 20, ECF No. 1-29, at 5) and DHS Instruction Manual (Pls. Ex. 5, ECF No. 1-10, 59–87). Counts II and III purport to challenge 33 other actions concerning a wide range of immigration matters, including internal memoranda, forms, and an alleged change in Border Patrol policy supported only by a newspaper article. Count II challenges these actions individually under NEPA and the APA. Count III alleges that the 33 actions require the agency prepare a Programmatic Environmental Impact Statement ("PEIS") under NEPA.

The Court lacks jurisdiction to hear a large number of the actions challenged in

Counts II and III for another reason as well.  On January 25, 2017 the President of the United States issued two executive orders collectively calling for a significant overhaul of federal immigration policy.  Exec. Order No. 13,768, 82 Fed. Reg. 8799 (2017); Exec. Order No. 13,767, 82 Fed. Reg. 8793 (2017).  The review required by those orders, and the Agency's ongoing review of its policies, have already mooted approximately eleven of the challenged actions.  Further, Plaintiffs' challenge is untimely as to at least five of the 33 actions because it fails to satisfy the statute of limitations.

## III.  STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction."  A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.  *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981).  Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction.  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  A challenge to subject matter jurisdiction may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  With regard to a facial attack, the court may dismiss for lack of subject matter jurisdiction if, accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines that the allegations are insufficient to establish its jurisdiction.  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

By contrast, when a motion to dismiss is "a factual attack on subject matter jurisdiction . . . no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Sav. &*

Case No. 3:16-cv-2583

*Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  The court may review these additional facts without converting the motion to a motion for summary judgment.  *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  When considering a factual attack, "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In addition, a complaint that fails to provide the grounds for the requested relief beyond labels and conclusions will not survive a motion challenging the sufficiency of a complaint's statement of the claim for relief under Rule 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Where a plaintiff fails to assert a cognizable legal theory in support of a claim, the claim must be dismissed.  Moreover, while a plaintiff's material factual allegations are assumed to be true, district courts may not assume the truth of legal conclusions "merely because they are cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  A court may consider material properly submitted as part of the complaint without converting the motion to dismiss into a motion for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## C. Judicial Review under the APA

Where a statute, such as NEPA, does not provide a cause of action, the APA provides for judicial review of challenges to a federal agency's compliance with these statutes. *See Native Ecosystems Council v. U.S. Forest Serv.,* 428 F.3d 1233, 1238 (9th Cir. 2005). Section 702 of the APA waives federal sovereign immunity to the extent that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA defines "agency action" to "include [] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). For an agency action to be a "final agency action" reviewable under § 706(2) , the action must both "mark the consummation of the agency's decision-making process," and "be one by which rights or obligations have been determined, or from which legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154,177-78 (1997).

To state a cognizable claim under Section 706(2) of the APA, a plaintiff must identify a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002) (quoting 5 U.S.C. § 706(2)(A) ). Jurisdiction under the APA is limited to review of "[a]gency action made reviewable by statute and final agency action for which there is no adequate remedy in a court . . . ." 5 U.S.C. § 704; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). When agency action is "committed to agency discretion by law," judicial review is unavailable. 5 U.S.C. § 701(a)(2). Section 701(a)(1) of the APA applies "when Congress has expressed an intent to preclude judicial review" and section 701(a)(2) applies when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion" because the statute "committed the decisionmaking to the agency's judgment absolutely." *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (citing 5 U.S.C. § 701(a)(2)).

**D. Judicial Review under NEPA**

In enacting NEPA, Congress was concerned with the potential impacts of major federal actions significantly affecting the physical environment.  *See Hale v. Norton*, 476 F.3d 694, 700 (9th Cir. 2007) (quoting 42 U.S.C. § 4332(C)).  NEPA does not apply to every action involving a federal agency, however, but only where there is a proposal for "major Federal action."  *Sierra Club v. Penfold*, 857 F.2d 1307, 1313 (9th Cir. 1988). NEPA imposes procedural rather than substantive requirements.  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989); *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1051 (9th Cir. 2012).  An agency's compliance with NEPA is bounded by a "rule of reason" to "ensure that agencies determine whether and to what extent to prepare [NEPA analysis] based on the usefulness of any new potential information to the decisionmaking process."  *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767 (2004).

**IV.   ARGUMENT**

**A. Plaintiffs' Challenges to Eleven DHS "Actions" are Moot**

Counts II and III of Plaintiffs' Complaint allege NEPA violations resulting from 33 challenged actions.  Of the 33 actions, 11 consist of DHS policy or guidance memoranda that have been superseded, withdrawn, rescinded, or are otherwise no longer in effect. Therefore, those 11 actions should be dismissed as moot.

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy."  *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citations omitted). Accordingly, federal courts lack jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter at issue in the case before it."  *Church of Scientology of Cal. v. United States*, 506

U.S. 9, 12 (1992) (citations omitted).

A plaintiff bears the burden of demonstrating the existence of a case or controversy at all stages of the litigation. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *see also S.D. Myers, Inc. v. City & Cty. of San Francisco*, 253 F.3d 461,474 (9th Cir. 2001). To demonstrate this, "throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and is likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7; *see also Pub. Utils. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996) (same). The "mere physical or theoretical possibility that the challenged conduct will again injure the plaintiff is insufficient to establish a present case or controversy." *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 766 (9th Cir. 1987). If an actual or threatened injury from a challenged government action no longer exists, or a change in circumstances deprives a court of the ability to provide any meaningful or effective relief for the alleged violation, the matter is moot and must be dismissed for lack of jurisdiction. *See Mills v. Green*, 159 U.S. 651, 653 (1895). "In general a case becomes moot when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome." *Pub. Utils. Comm'n*, 100 F.3d at 1458 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

The Court lacks jurisdiction over Plaintiffs' challenges to actions 12, 13, 15, 17,

18, 19 [3], 21, 22, 23, 24, and part of Action 7[4] in Counts II and III as those Actions have been rescinded or superseded.  *See* Declaration of Sue Armstrong, Ex. 2.  "A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  The basic question is whether there exists a present controversy as to which effective relief can be granted."  *Vill. of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993) (citation and internal quotation marks omitted).  Here, the Actions challenged by Plaintiffs "are no longer live" and Plaintiffs "lack a legally cognizable interest in the outcome."  *Pub. Utils. Comm'n*, 100 F.3d at 1458.  Plaintiffs previously contended that their challenges would survive mootness even if the Actions were no longer in effect.  *See* Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. to Stay at 7, ECF No. 33-1 ("Defendants have not explained why their defense would require defending the actions themselves.").  However, that argument ignores basic elements of judicial power, jurisdiction, and justiciability.

---

[3] Action 19 challenges two memoranda: the June 15, 2012 DHS Memorandum issued by then Secretary of Homeland Security Janet Napolitano titled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" and the June 15, 2012 Memorandum issued by then Director of U.S. Immigration and Customs Enforcement John Morton titled "Secretary Napolitano's Memorandum Concerning the Exercise of Prosecutorial Discretion for Certain Removable Individuals Who Entered the United States as a Child."  The memorandum issued by Janet Napolitano was completely rescinded by a memorandum issued by Acting Secretary Elaine C. Duke on September 5, 2017, however the Duke memorandum provides for an orderly wind-down of the effects of the Deferred Action for Childhood Arrivals policy, which partially rescinds the Morton memo.  However, the program that serves as the basis for the two memoranda has ended, mooting Plaintiffs' claim.

[4] Action 7, the Central American Minors Refugee and Parole Program, has been partially rescinded.  The Acting Secretary of Homeland Security rescinded the Central American Minors Parole Program on August 16, 2017.  *See* 82 Fed. Reg. 38,926 (Aug. 16, 2017).  The Central American Minors Refugee Program remains in place.

Plaintiffs' asserted NEPA harm results from the alleged environmental impacts from the purported incremental increase in immigration, and the withdrawal of specifically challenged policies removes any alleged injury to Plaintiffs regardless of whether the policy needed to or did comply with NEPA in the first instance.  *See Feldman v. Bomar*, 518 F.3d 637, 644 (9th Cir. 2008) (holding that a litigant under NEPA must demonstrate a "remediable harm that effects their 'existing interests,'" not simply past interests, in order to survive mootness).  Accordingly, the Court should dismiss Plaintiffs' challenges to Actions 12, 13, 15, 17, 18, 19, 21, 22, 23, 24, and part of Action 7.

**B. Plaintiffs' Claims Are Not Reviewable Under the APA**

1.  The Actions Challenged in Counts I, II, and III Are Not Final Agency Actions

Beyond those that are already moot, many of the challenges that Plaintiffs mount in Counts I, II and III[5] fail to allege actions reviewable under the APA.

The DHS Instruction Manual and the majority of the actions challenged in Counts II and III are not reviewable final agency actions.  The Instruction Manual, along with DHS Directive 023-01, "establish the policy and procedures DHS follows to comply" with NEPA and CEQ regulations.  Instruction Manual at III-1.  It is the agency's internal guidance for complying with NEPA.  Actions 1-8, 12-18, 20, 27, 28, 31, and 33 of Counts II and III identify policy memoranda, internal guidance, or other agency documents that, similarly, establish agency policy.  Policy memoranda and other guides for agency operations are not actions in which "rights or obligations have been

---

[5] Federal Defendants do not raise at this time whether Actions 9, 10, 11, 19, 21 - 26, 29, 30, and 32 are final agency actions.  As discussed below, however, Actions 10, 25, and 26 are immune from review by statute, Action 11 is unreviewable Presidential action, Actions 19 and 21-24 are moot, and Actions 29 and 32 are time-barred; claims premised on those Actions should thus be dismissed.  As pleaded, Federal Defendants did not include Actions 9 and 30 in this motion, but may seek to demonstrate in later briefing, as may be necessary, that Plaintiffs lack standing to challenge those actions and, alternatively, that the environmental analysis for those actions satisfied NEPA.

11                                                                                    Case No. 3:16-cv-2583

1   determined, or from which legal consequences will flow." *Bennett*, 520 U.S. 154 at 178.

2   These actions do not constitute a reviewable "final agency action." *See Schweiker v.*

3   *Hansen*, 450 U.S. 785, 789–90 (1981) (holding that federal agency's internal instruction

4   manual, a 13-volume handbook for internal use by thousands of Social Security

5   Administration employees, "is not a regulation[,] has no legal force, and . . . does not

6   bind the [federal agency]"); *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 227–28

7   (D.C. Cir. 2007) (concluding that the EPA's technical guidance document, the Human

8   Health Risk Assessment Protocol for Hazardous Waste Combustion Facilities, was non-

9   binding because it "does not 'command[,]' does not 'require[,]' does not 'order[,]' and

10  does not 'dictate'"); *Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991) (intra-

11  office manual, "The Attorney General's Guidelines on Criminal Investigations of

12  Individuals and Organizations," "do[es] not . . . create a duty in favor of the general

13  public").

14          The Instruction Manual and the majority of Actions in Counts II and III have no

15  force of law and are unreviewable for that reason, as well.  The Ninth Circuit has

16  emphasized that courts "have no authority to bind [an agency] to the guidelines in [a]

17  Manual or [a] Handbook." *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 902 (9th Cir.

18  1996); *see also Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1017 (9th Cir. 1987)

19  (upholding internal INS operating instructions as general statements of policy against

20  procedural challenge because the subject policies did "not establish a 'binding norm'"

21  and were not "'finally determinative of the issues or rights to which they are addressed,'

22  but [instead left] INS officials 'free to consider the individual facts in the various cases

23  that arise.'").  Other circuits have reached similar conclusions.  *See, e.g., Nat'l Mining*

24  *Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) (recognizing that the APA

25  created "three boxes" for administrative actions:  "legislative rules, interpretive rules, and

26  general statements of policy," and that courts do not review "general statements of

27  policy").

28

Documents that establish guidelines or state policy do not have the force and effect of law. *See, e.g.*, *Lowry v. Barnhart*, 329 F.3d 1019, 1022 (9th Cir. 2003) (noting that not all agency pronouncements create judicially enforceable rights); *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1167 (9th Cir. 2000) (Army Corps' regulation "was not intended to have the force of law, but was instead a policy statement to guide the practice of district engineers"); *Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1119–20 (N.D. Cal. 2007). To have the force and effect of law, a rule must be substantive and "conform to certain procedural requirements." *Alameda Gateway*, 213 F.3d at 1168 (quoting *United States v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982)). Rules that are interpretive or "general statements of policy or rules of agency organization, procedure or practice" do not have the force and effect of law. *Id.*; *see Hells Canyon*, 593 F.3d at 930–31. An agency's management guidelines are not final agency action if they do not "propose any site-specific activity [or] call for specific actions directly impacting the physical environment." *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 667 (9th Cir. 1998).

The Instruction Manual challenged in Count I guides DHS personnel in *evaluating* agency actions; it does not *propose*, much less *require*, any specific actions with on-the-ground impacts and is thus not "final agency action." *Alameda Gateway*, 213 F.3d at 1167; *Glickman*, 136 F.3d at 667. In addition, the Instruction Manual has not been published in the *Federal Register*, a fact that suggests that it is not intended to have the effect of law. *Alameda Gateway*, 213 F.3d at 1168 (citing *W. Radio Servs. Co.*, 79 F.3d at 901); *see also River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1072 (9th Cir. 2010) (noting that when policy was not published in the Code of Federal Regulations, it "suggests that the [agency] did not intend to announce substantive rules enforceable by third parties in federal court"). Plaintiffs' challenge to the Instruction Manual in Count I does not challenge a final agency action, which is a prerequisite to maintaining their APA suit. Count I should be dismissed.

1    With respect to actions 1-8, 12-18, 20, 27, 28, 31, and 33, Counts II and III fail to

2    allege final agency action reviewable under the APA.  Action 1, for example, is a legal

3    opinion from the agency that preceded DHS that provides guidance on the authority to

4    parole applicants.  By its terms, that document is not a "final agency action" subject to

5    review under the APA.  *See Bennet*, 520 U.S. at 177–78 (holding that the action must

6    "mark the consummation of the agency's decision-making process").

7    Several other Actions similarly fail to create "rights or obligations" from which

8    legal consequences will flow.  Indeed, ten of the policies or memoranda challenged by

9    Plaintiffs expressly state that they create no enforceable rights in third parties.[6]  Actions 5

10   and 15, for example, are simply "announcements."  Actions 17 (a detainer form used by

11   the agency that has been superseded by several subsequent forms), and 33 (a newspaper

12   article citing anonymous sources to discuss an alleged change in Border Patrol search

13   policy) merely reflect the day-to-day conduct of Agency operations and are similarly

14   non-reviewable.  *See Lujan*, 497 U.S. at 899 (determining that agency's "Land

15   Withdrawal Review Program" was merely numerous individual decisions made on day-

16   to-day basis and not reviewable); *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801

17   (9th Cir. 2013) (day-to-day dam operations are not "final agency action").  Similarly,

18   Actions 7 (program inviting certain aliens to petition the government for a case-by-case

19   discretionary action) and 8 (same) are merely general statements of policy from which no

20   rights or obligations flow.  *See Gill v. Dep't of Justice*, 246 F. Supp. 3d 1264 (N.D. Cal.

21   2017).

22   In sum, Count I and Actions 1-8, 12-18, 20, 27, 28, 31, and 33 of Counts II and III

23   should be dismissed because they do not challenge final agency actions.  As the

24   challenges do not come within the APA's limited waiver of sovereign immunity, the

25   Court has no jurisdiction to review them.

26   _____

27   [6] *See, e.g.*, Actions 2, 3, 12, 13, 14, 15, 16, 18, 20, and 28.  (Pls. Ex. 1-2, at 17, 27; Pls.

28   Ex. 1-3, at 45, 52, 60, 65; Pls. Ex. 1-4, at 5, 15, 21, 29, 42; Pls. Ex. 1-5, at 67.)

2.   Review of Actions 10, 11, 25, and 26 is Precluded by Statute

Review of Actions 10, 11, 25, and 26 of Counts II and III is precluded by statute and those Actions should be dismissed.

Action 10 is an exercise of the Secretary's authority to designate foreign states whose nationals are eligible for temporary protected status under 8 U.S.C. § 1254a, but any judicial review of such designations is expressly barred by the terms of that statute, which provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b)(5)(A).  Because review is precluded by statute, it is unavailable under the APA, which provides that it does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702(2); § 701(a)(1).

Action 11 challenges an exercise of the President's discretion to direct deferred enforced departure of individuals from designated countries as part of his power to conduct foreign relations.  *See* Compl. ¶ 53.  It is not an agency action subject to NEPA or to judicial review under the APA because actions of the President fall outside the definition of agency action under the APA.  *See* 5 U.S.C. §701(b); 42 U.S.C. § 4332; 42 C.F.R. § 1508.12; *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy*, 383 F.3d 1082, 1088 (9th Cir. 2004) (presidential actions not subject to NEPA); *Pub. Citizen v. U.S. Trade Rep.*, 5 F.3d 549, 553 (D.C. Cir. 1993) (presidential actions are not "agency actions" and thus cannot be reviewed for alleged NEPA violation under the APA).

Actions 25 and 26 challenge the Agency's authority to grant provisional waivers to individuals who are present in the United States before departing the country for consular processing of their immigrant visas.  Plaintiffs challenge the rules as published in the *Federal Register*, *see* 78 Fed. Reg. 536 (January 3, 2013) and 81 Fed. Reg. 50244 (July 29, 2016), which are codified at 8 C.F.R. § 212.7.  Judicial review of the provisional

waiver process is expressly barred by the terms of 8 C.F.R. § 212.7, 8 U.S.C. § 1182(a)(9)(B)(v), and 8 U.S.C. § 1252(a)(2).  8 C.F.R. § 212.7(e)(2)(i) states "[c]onsistent with [8 U.S.C. 1182(a)(9)(B)(v)], the decision whether to approve a provisional unlawful presence waiver application is discretionary."  In turn, 8 U.S.C. 1182(a)(9)(B)(v) states "[t]he Attorney General[7] has sole discretion to waive clause (i) [referring to unlawful presence] . . . .  No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause."  Finally, 8 U.S.C. 1252(a)(2) states "no court shall have jurisdiction to review . . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]"  Here, the agency's approval or denial of provisional unlawful presence waivers under 8 C.F.R. § 212.7 is not reviewable as "Congress has expressed an intent to preclude judicial review."  5 U.S.C. § 701(a)(1); *see also Mohsenzadeh v. Kelly*, No. 3:14-CV-2715-L-RBB, 2017 WL 3896702 (S.D. Cal. Sept. 6, 2017) (finding review under the APA precluded by 8 U.S.C. 1252(a)(2)(B)(ii)).  Plaintiffs' challenges to Actions 25 and 26 should, therefore, be dismissed.

## C. NEPA Does Not Require a Programmatic EIS as Alleged in Count III

The disjointed spectrum of activities described in Count III do not constitute a

---

[7] On November 25, 2002, the President signed into law the Homeland Security Act of 2002 (Pub. L. No. 107-296), which created the Department of Homeland Security. Pursuant to the provisions of the Homeland Security Act, DHS came into existence on January 24, 2003.  As provided by the Homeland Security Act and by the Department of Homeland Security Reorganization Plan of November 25, 2002, the functions of the Immigration and Naturalization Service ("INS") of the Department of Justice, and all authorities with respect to those functions, transferred to DHS on March 1, 2003, and the INS was abolished on that date.  The transition and savings provisions of the Homeland Security Act, including sections 1512(d) and 1517, provide that references relating to the INS in statutes, regulations, directives or delegations of authority shall be deemed to refer to the appropriate official or component of DHS.

discrete, systematic, connected program, and, therefore, Count III should be dismissed.

The decision whether to prepare a PEIS is generally entrusted to the agency's discretion.  *See Kleppe v. Sierra Club*, 427 U.S. 390, 413–15 (1976) (programmatic EIS not required in absence of programmatic action); *see also Nevada v. Dep't of Energy*, 457 F.3d 78, 92 (D.C. Cir. 2006) ("The decision whether to prepare a programmatic EIS is committed to the agency's discretion.").  The Supreme Court has held that a claim under Section 706(1) of the APA, such as the claim in Count III, can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*"  *Norton v. Southern Utah Wilderness Alliance* (*SUWA*), 542 U.S. 55, 64 (2004).  Therefore, to succeed in Count III, Plaintiffs must establish that the 33 actions constitute a discrete agency action and that DHS is required to prepare a PEIS for the 33 actions.  Plaintiffs fail to do so.

Plaintiffs cannot demand that the Department be required to analyze 33 distinct (and in some cases, stale or speculative) actions in a PEIS because the challenged actions do not, together, constitute a discrete program.  The first prong of *SUWA* requires that a plaintiff challenge "a *discrete* agency action."  *Id.*  In this case, Plaintiffs instead contest 33 disparate actions, issued individually over a span of decades, ranging from guidance for the day-to-day administration of immigration enforcement programs, *see, e.g.*, Pls.' Ex. 1, at 152 (discussing Action 9), to a newspaper article discussing border patrol searches, *see* Compl. ¶ 60.

In a case involving more related constituent actions than the ones Plaintiffs cite here, the Supreme Court cautioned that a plaintiff cannot define an agency "program" subject to review under the APA merely by lumping a number of actions together.  *Lujan*, 497 U.S. at 890.  In *Lujan*, the plaintiffs claimed that the Bureau of Land Management ("BLM") violated NEPA when implementing what plaintiffs termed the "land withdrawal program."  *Id.* at 875.  This prompted the Court to observe that the purported "land withdrawal program:"

17                                                    Case No. 3:16-cv-2583

is simply the name by which petitioners have occasionally referred to the continuing (and thus constantly changing) operations of the BLM in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans as required by the [relevant statute]. It is no more an identifiable "agency action"—much less a "final agency action"—than a "weapons procurement program" of the Department of Defense or a "drug interdiction program" of the Drug Enforcement Administration.

*Id*. at 890. Absent discrete, final agency action, the APA does not permit a plaintiff to obtain wholesale review of an entire program. *Id*. at 891–94; *see also Glickman*, 136 F.3d at 668–70.

In this case, the 33 actions broadly encapsulate the continuing development of immigration policy from four different presidential Administrations. The topics of the actions range widely from parole policies to guidance for the exercise of prosecutorial discretion to rules governing nonimmigrant students. *Compare, e.g.*, Pls.' Ex. 1, at 18 (discussing Action 3, a policy memorandum concerning parole of current or former service personnel), *with* Pls.' Ex. 1, at 46 (discussing Action 13, a policy memorandum concerning exercise of prosecutorial discretion). Due to the broad temporal, geographic, and substantive reach of the 33 actions, Plaintiffs' claims simply refer to the Department's aggregate immigration operations/mission, much as the "individual classification terminations and withdrawal revocations" in *Lujan* simply referred to the "continuing (and thus constantly changing) operation of the BLM" land management policies under the Federal Land Policy and Management Act. *Lujan*, 497 U.S. at 890. Further, neither NEPA nor its implementing regulations *require* DHS to prepare a PEIS for the immigration actions cited by Plaintiffs. The second prong of *SUWA* requires that a plaintiff challenge an agency action that the agency is *required* to take. *SUWA*, 542 U.S. at 64. In this case, as discussed above, the Plaintiffs' 33 actions do not define a discrete program, and therefore cannot constitute the type of "broad federal action" for

1 which an EIS is "sometimes required" as contemplated in 40 C.F.R. §§ 1502.4(b),

2 1508.18(b)(3).

3      The decision whether to prepare a PEIS implicates agency expertise, and the courts

4 have generally consigned the decision to prepare a PEIS, or not, to agency discretion.

5 *See Kleppe*, 427 U.S. at 413–15 (programmatic EIS not required in absence of

6 programmatic action).  Contrary to Plaintiff's characterization, Compl. ¶84–87, CEQ

7 regulations similarly reflect that preparing a PEIS is largely discretionary. *See* 40 C.F.R.

8 § 1502.4(b) ("[An EIS] *may be* prepared . . . for broad Federal actions." (emphasis

9 added)); *id.* § 1502.4(c)(2) ("When preparing statements on broad actions . . . , agencies

10 *may find it useful* to evaluate the proposal(s) . . . [g]enerically, including actions which

11 have relevant similarities, such as common timing, impacts, alternatives, methods of

12 implementation, media, or subject matter" (emphasis added)).  Sometimes a PEIS is

13 required for "a group of concerted actions to implement a specific policy or plan" or

14 "systematic and connected agency decisions allocating agency resources to implement a

15 specific statutory program or executive directive."  40 C.F.R. §§ 1502.4(b),

16 1508.18(b)(3); *see also Friends of the Earth v. Mosbacher*, 488 F.Supp.2d 889, 910

17 (N.D. Cal. 2007) ("[i]n order to establish that Defendants have a 'program' for NEPA

18 purposes, Plaintiffs must demonstrate that Defendants have engaged in 'a *group of*

19 *concerted actions* to implement a *specific* policy or plan" or have made "*systematic and*

20 *connected agency decisions* allocating agency resources to implement a *specific* statutory

21 program or executive directive."

22      Plaintiffs have not established that the 33 actions all implement a specific statutory

23 program, executive directive, policy, or plan, as discussed above, or that the 33 actions

24 were concerted or systematic and connected.  Instead, Plaintiffs attempt to characterize

25 factors that agencies "may find . . . useful" in preparing a broader PEIS, 40 C.F.R. §

26 1502.4(c), as a test for when a broad swath of actions effectively constitutes a single

27 course of action requiring a PEIS under 40 C.F.R. 1502.4(a).  Compl. ¶¶ 84–87.  It may

28

be true that some of the 33 actions broadly have some "relevant similarities, such as common . . . subject matter" (though it is far from clear that other "relevant similarities, such as common timing, impacts. . . alternatives, methods of implementation, [or] media" are present among the 33 actions). 40 C.F.R. 1502.4(c)(2). However, such similarities do not establish that a PEIS is required by NEPA and its implementing regulations.

NEPA does not exist to "give citizens a general opportunity to air their policy objections to proposed federal actions." *Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 777 (1983) ("The political process, and not NEPA, provides the appropriated forum in which to air policy disagreements"). Thus, a plaintiff "cannot seek *wholesale* improvement of this program by court decree, rather than in the office of the Department or the halls of Congress, where programmatic improvements are normally made." *Lujan*, 497 U.S. at 891. Plaintiffs' challenge in Count III fails both prongs of *SUWA*. Therefore, the claim should be dismissed.

### D. Plaintiffs' Challenges to Five DHS Actions are Time-Barred

Five of the challenged actions in Counts II and III, Actions 1, 2, 27, 29, and 32, are barred by the statute of limitations in 28 U.S.C. § 2401(a), and must be dismissed under Rule 12(b)(6).

The United States is immune from suit unless it consents to be sued. Congress alone may subject the United States to suit, and its consent, which is a waiver of sovereign immunity, must be "unequivocally expressed" in the relevant statutory text. *United States v. Idaho, ex rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 6 (1993) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). "A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of the terms" of the United States' consent. *United States v. Dalm*, 494 U.S. 596, 608 (1990).

Claims brought against the United States under the APA and NEPA are subject to the six-year statute of limitations contained in 28 U.S.C. § 2401(a). *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2010) (general six-year

statute applies to APA claims); *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988) (same). Section 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). "Because 28 U.S.C. § 2401 is a condition of the [Government's] waiver of sovereign immunity, courts are reluctant to interpret the statute of limitations in a manner that extends the waiver beyond that which Congress clearly intended." *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990).

An action first accrues "when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986) (quoting *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981)). A challenge to the sufficiency of agency action under the APA generally accrues on the date the action is taken or issued. *Hells Canyon*, 593 F.3d at 930–31 (claim accrues on date notice of action is published); *see also Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990) (claim accrues when the plaintiff can successfully bring a cause of action and "actual knowledge" is not necessary). "Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual know-ledge or hardship resulting from ignorance." *Shiny Rock*, 906 F.2d at 1364–65 (quoting *Friends of Sierra R.R., Inc. v. ICC*, 881 F.2d 663, 667–68 (9th Cir. 1989)); *see also Gov't of Guam v. United States*, 744 F.2d 699, 701 (9th Cir. 1984) (claim was time-barred because *Federal Register* publication constituted "formal notice to the world"); *see* 44 U.S.C. § 1507 (publication in the *Federal Register* of a document required by Congress to be so published provides sufficient notice of its contents).

Here, any challenges to the five actions identified above and challenged in Counts II and III, even if those actions constituted "final agency actions", accrued prior to October 17, 2010, six years before this lawsuit. Legal Opinion No. 98-10 (Action 1) was

issued Aug. 21, 1998, *available at* 1998 WL 1806685.[8]  Directive 11002.1 (Action 2) was issued on December 8, 2009, and a summary describing its policy changes was issued on the www.ice.gov website on December 16, 2009.  The memorandum, "Worksite Enforcement Strategy" (Action 27), was issued on April 30, 2009, and a comprehensive fact sheet was distributed on the same date and published on the www.ice.gov website.[9]  The regulation codified at 8 C.F.R. §§ 212.1 *et seq.* (Action 29) was published in the *Federal Register* on December 11, 2002, 67 Fed. Reg. 76,256 (Dec. 11, 2002).  Lastly, the challenged "T & U Visa Program" regulations (Action 32) were published in the *Federal Register* on September 17, 2007 and December 12, 2008, 72 Fed. Reg. 53014 (Sept. 17, 2007); 73 Fed. Reg. 75540 (Dec. 12, 2008).  Plaintiffs do not allege any facts in their Complaint showing that their claims against Actions 1, 2, 27, 29, and 32 first accrued six years or less before Plaintiffs filed their Complaint.  Thus, these claims must be dismissed.

## V.   CONCLUSION

Counts I, II, and III fail to challenge a final agency action; several actions challenged in Counts II and III relate to matters where judicial review is precluded; and Count III fails to state a claim under NEPA.  Further, many of the individual actions challenged in Counts II and III are either moot or time-barred and should be dismissed. For the foregoing reasons the Court should dismiss Counts I, II, and III under Rules 12(b)(1) and 12(b)(6).

---

[8] Memorandum from Paul W. Virtue, INS General Counsel, to INS officials, "Authority to Parole Applicants for Admission Who Are Not Also Arriving Aliens," Legal Op. 98-10 (Aug. 21, 1998), 1998 WL 1806685.

[9] *See* https://web.archive.org/web/20110220124727/http://www.ice.gov/doclib/news/-library/factsheets/pdf/worksite-strategy.pdf (last visited May 15, 2017).

Respectfully submitted,

DATED: October 6, 2017

JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

Edward J. Passarelli, VA Bar No. 16212
Deputy Chief
Natural Resources Section

Stacey Bosshardt, DC Bar No. 458645
Assistant Section Chief
Natural Resources Section

By   */s/ S. Derek Shugert*
S. DEREK SHUGERT
Trial Attorney, Natural Resources Section
Post Office Box 7611
Washington, D.C. 20044-7611
Tel:  (202) 514-9269
Fax:  (202) 305-0506
E-mail:  shawn.shugert@usdoj.gov

*Attorneys for Federal Defendants*

23