1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

S. DEREK SHUGERT, OH Bar No. 84188
Natural Resources Section
Post Office Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 514-9269
Fax:  (202) 305-0506
shawn.shugert@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

| | |
|---|---|
| WHITEWATER DRAW NATURAL RESOURCE CONSERVATION DISTRICT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, *et al.*, <br><br> Federal Defendants. | **Case No. 3:16-cv-2583** <br><br> **FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS COUNTS ONE AND TWO OF THE AMENDED COMPLAINT** <br><br> Date: March 12, 2018 <br> No Oral Argument Unless Requested by the Court <br><br> Hon. H. James Lorenz |

Case No. 3:16-cv-2583

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................. 2

III.    STANDARD OF REVIEW .................................................................. 5

    A.      Federal Rule of Civil Procedure 12(b)(1) ................................. 5

    B.      Federal Rule of Civil Procedure 12(b)(6) ................................. 6

    C.      Judicial Review under the APA .................................................. 7

    D.      Judicial Review under NEPA ..................................................... 8

IV.     ARGUMENT ....................................................................................... 8

    A.      Count I Fails to Allege a Final Agency Action ......................... 8

        1.  The Instruction Manual is not a final agency action ............... 8

        2.  The Instruction Manual does not qualify as a "rule" under the APA ...... 11

    B.      Count II is a Non-Justiciable Programmatic Challenge................. 13

    C.      Plaintiffs' Challenge to DACA is Unreviewable under NEPA ................... 16

V.      CONCLUSION.................................................................................... 19

Case No. 3:16-cv-2583

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*Arizona v. United States*,
   567 U.S. 387 (2012) .......................................................................................... 17

4
*Arpaio v. Obama*,
5
   797 F.3d 11 (D.C. Cir. 2015) .......................................................................... 18

6
*Balistreri v. Pacifica Police Dep't*,
7
   901 F.2d 696 (9th Cir. 1990) ............................................................................ 6

8
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 6

9
*Bennett v. Spear*,
10
   520 U.S. 154 (1997) ................................................................................. 7, 9, 10

11
*Calipatria Land Co. v. Lujan*,
12
   793 F. Supp. 241 (S.D. Cal. 1990) ................................................................ 18

13
*Cement Kiln Recycling Coal. v. EPA*,
   493 F.3d 207 (D.C. Cir. 2007) .......................................................................... 9

14
*Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*,
15
   653 F. Supp. 2d 1066 (E.D. Cal. 2009) .......................................................... 8

16
*Ctr. for Biological Diversity v. Brennan*,
17
   571 F. Supp. 2d 1105 (N.D. Cal. 2007) ........................................................ 12

18
*Ctr. for Biological Diversity v. Veneman*,
   394 F.3d 1108 (9th Cir. 2005) ........................................................................ 15

19
*Dep't of Transp. v. Pub. Citizen*,
20
   541 U.S. 752 (2004) ........................................................................................... 8

21
*Friedman Bros. Inv. Co. v. Lewis*,
22
   676 F.2d 1317 (9th Cir. 1982) ........................................................................ 10

23
*Friends of Potter Marsh v. Peters*,
   371 F. Supp. 2d 1115 (D. Alaska 2005)........................................................ 10

24
*Gen. Atomic Co. v. United Nuclear Corp.*,
25
   655 F.2d 968 (9th Cir. 1981) ............................................................................ 5

26
*Hale v. Norton*,
27
   476 F.3d 694 (9th Cir. 2007) ............................................................................ 8

28

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................8, 17

*Hells Canyon Preservation Council v. U.S. Forest Serv.*,
  593 F.3d 923 (9th Cir. 2010) ...........................................................12

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ..........................................................................5

*Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*,
  335 F.3d 607 (7th Cir. 2003) ...........................................................10

*Idaho Watersheds Project v. Hahn*,
  307 F.3d 815 (9th Cir. 2002) ...........................................................10

*Kleppe v. Sierra Club*,
  427 U.S. 390 (1976) ........................................................................15

*Kugel v. United States*,
  947 F.2d 1504 (D.C. Cir. 1991) .........................................................9

*La Cuna De Aztlan Sacred Sites Prot. Circle Advisory Comm. v. U.S. DOI*,
  No. 2:11-CV-00395-ODW (OPX), 2012 WL 12888325 (C.D. Cal. Mar. 21, 2012) ....16

*Lee v. City of L.A.*,
  250 F.3d 668 (9th Cir. 2001) .............................................................7

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ........................................................................17

*Lowry v. Barnhart*,
  329 F.3d 1019 (9th Cir. 2003) .........................................................12

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................7, 13, 14, 16

*Mada-Luna v. Fitzpatrick*,
  813 F.2d 1006 (9th Cir. 1987) .........................................................11

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988) .............................................................6

*Metro. Edison Co. v. People Against Nuclear Energy*,
  460 U.S. 766 (1983) ........................................................................16

*Mobil Oil Corp. v. F.T.C.*,
  562 F.2d 170 (2d Cir. 1977) .............................................................19

iii                                          Case No. 3:16-cv-2583

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) ...................................................................6

*Nat'l Mining Ass'n v. McCarthy*,
   758 F.3d 243 (D.C. Cir. 2014) ...............................................................11

*Native Ecosystems Council v. Dombeck*,
   304 F.3d 886 (9th Cir. 2002) ..................................................................7

*Native Ecosystems Council v. U.S. Forest Serv.*,
   428 F.3d 1233 (9th Cir. 2005) ................................................................7

*Native Ecosystems Council v. Weldon*,
   697 F.3d 1043 (9th Cir. 2012) ................................................................8

*Nevada v. Dep't of Energy*,
   457 F.3d 78 (D.C. Cir. 2006) ................................................................15

*Northcoast Envtl. Ctr. v. Glickman*,
   136 F.3d 660 (9th Cir. 1998) ...............................................11, 12, 14

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ...............................................................13, 14, 15

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) ................................................................10

*Pride v. Correa*,
   719 F.3d 1130 (9th Cir. 2013) ................................................................5

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ..............................................................................18

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) ..................................................................6

*Robertson v. Methow Valley Citizens Council*,
   490 U.S. 332 (1989) ................................................................................8

*Savage v. Glendale Union High Sch., Dist. No. 205*,
   343 F.3d 1036 (9th Cir. 2003) ................................................................6

*Schweiker v. Hansen*,
   450 U.S. 785 (1981) ................................................................................9

*Sierra Club v. Penfold*,
   857 F.2d 1307 (9th Cir. 1988) ................................................................8

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...................................................................6

*Thompson v. McCombe*,
  99 F.3d 352 (9th Cir. 1996) .....................................................................5

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ...................................................................5

*Tucson Rod & Gun Club v. McGee*,
  25 F. Supp. 2d 1025 (D. Ariz. 1998) .......................................................19

*United States v. Alameda Gateway Ltd.*,
  213 F.3d 1161 (9th Cir. 2000) ..........................................................11, 12

*United States v. Fifty-Three (53) Eclectus Parrots*,
  685 F.2d 1131 (9th Cir. 1982) .................................................................12

*United States v. Glenn-Colusa Irrigation District*,
  788 F. Supp. 1126 (E.D. Cal. 1992) ........................................................18

*United States v. Rainbow Family*,
  695 F. Supp. 314 (E.D. Tex. 1988) ..........................................................17

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ...................................................................6

*W. Radio Servs. Co. v. Espy*,
  79 F.3d 896 (9th Cir. 1996) ..............................................................11, 13

*West v. Holder*,
  60 F. Supp. 3d 197 (D.D.C. 2015) ...........................................................19

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ..................................................................5

*Wild Fish Conservancy v. Jewell*,
  730 F.3d 791 (9th Cir. 2013) ...................................................................15

*Wyoming v. U.S. Dep't of Interior*,
  360 F. Supp. 2d 1214 (D. Wyo. 2005) .......................................................9

**Statutes**

5 U.S.C. § 551(4) ..............................................................................11, 12

5 U.S.C. § 551(13) .....................................................................................7

5 U.S.C. §§ 701–706 ..................................................................................1

5 U.S.C. § 701(a)(2) ........................................................................................... 7, 8

5 U.S.C. § 702 ......................................................................................................... 7

5 U.S.C. § 704 .................................................................................................... 7, 8

5 U.S.C. § 706(2)(A) ............................................................................................. 7

6 U.S.C. § 468(a)(2) .............................................................................................. 4

6 U.S.C. § 742 ......................................................................................................... 4

8 U.S.C. § 1103(a)(1) ............................................................................................ 4

8 U.S.C. § 1103(a)(5) ............................................................................................ 4

8 U.S.C. § 1151 ..................................................................................................... 15

8 U.S.C. § 1151(a) .................................................................................................. 3

8 U.S.C. § 1153(a) ............................................................................................ 3, 15

8 U.S.C. § 1153(a)(1)-(3) .................................................................................... 15

8 U.S.C. § 1153(b) .................................................................................................. 3

8 U.S.C. § 1157 ....................................................................................................... 3

8 U.S.C. § 1158 ....................................................................................................... 3

8 U.S.C. § 1182 ....................................................................................................... 3

8 U.S.C. § 1184 ....................................................................................................... 3

8 U.S.C. § 1254 ....................................................................................................... 3

42 U.S.C. § 4332(C) .............................................................................................. 8

42 U.S.C. §§ 4321–4370m-12 ............................................................................. 1

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6

**Regulations**

8 C.F.R. § 274a.12(c)(14) ................................................................................... 18

40 C.F.R. § 1502.4(b) ......................................................................................... 16

40 C.F.R. § 1502.4(c)(2) ..................................................................................... 16

Case No. 3:16-cv-2583

1

40 C.F.R. § 1508.18(a)...............................................................................................11, 17

40 C.F.R. § 1508.18(b)(3)..................................................................................................13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:16-cv-2583

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     __INTRODUCTION__

Plaintiffs, a coalition of groups addressing local conservation issues in certain border states, and organizations advocating for the overall reduction of legal and illegal immigration, assert that Department of Homeland Security ("DHS" or "Department") policies and actions have allowed migrants to enter and remain in the United States.  Am. Compl. ¶¶ 27–33, 50–69, ECF No. 44.  This influx, Plaintiffs contend, has resulted in widespread environmental harms—either from the movement of immigrants across the Southwest border, or from population growth in the United States that Plaintiffs claim is attributable to the entry and settlement of migrants into the United States—that allegedly would not/might not have occurred had DHS engaged in environmental review pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370m-12.  *Id.* ¶¶ 50–54.

The Amended Complaint lists five counts, two of which are wholly unreviewable. Count I challenges the DHS Instruction Manual, an internal DHS guidance document that is not a "final agency action" subject to review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.  Count II consists of eight NEPA claims: it challenges seven statutes that provide the statutory basis for DHS' authority to implement immigration policies, and it challenges the discretionary immigration non-enforcement policy known as Deferred Action for Childhood Arrivals ("DACA").  Count II fails to identify discrete agency actions that DHS was required to take, and with respect to DACA's policy of deferred enforcement, is wholly unreviewable under NEPA.

A review of Plaintiffs' voluminous Amended Complaint makes it clear that they simply oppose immigration into this country and seek to disrupt the administration of the Department's immigration and enforcement policies.  Such an overhaul may be appropriately provided through legislative channels, but it cannot be provided, as pled in the Amended Complaint, through NEPA and the APA.

## II.   **BACKGROUND**

Plaintiffs consist of the following groups: three Arizona-based resource management groups addressing local conservation issues, Am. Compl. ¶¶ 27–29; a California-based organization whose "priority goal is to reduce both legal and illegal immigration into California and the United States[,]" *id.* ¶ 33; an organization of scientists that advocates for population "stabilization," *id.* ¶ 41; a New Mexico-based organization that addresses the interests of cattle-ranching communities, *id.* ¶ 44; a Florida-based organization opposed to population growth caused by immigration, *id.* ¶ 46; and Glen Colton and Ralph Pope, individuals also opposed to population growth caused by immigration, *id.* ¶¶ 43, 47.[1]  Plaintiffs assert that DHS' policies and actions have allowed foreign nationals to enter and remain in the United States.  *Id.* ¶¶ 50–54. This, Plaintiffs contend, has resulted in widespread environmental harms—either from the migration of foreign nationals across the Southwest border, or from population growth in the United States that Plaintiffs claim is attributable to the entry and settlement of foreign nationals into the United States—that allegedly could have been prevented had DHS engaged in environmental review pursuant to NEPA.  *Id.* ¶¶ 68–69.

For example, Plaintiffs claim that immigration-driven population growth causes urban sprawl and the loss of undeveloped land, *id.* ¶¶ 82–83; "threatens to accelerate biodiversity loss and the extinction of animal and plant species[,]" *id.* ¶ 84; and increases greenhouse gas emissions and water use, *id.* ¶¶ 85–86.  Meanwhile, along the Southwest border, Plaintiffs allege that:

---

[1] Plaintiffs filed their original Complaint on October 17, 2016.  *See* ECF No. 1.  Due to the issuance of multiple executive orders, this Court granted a stay of all litigation deadlines until October 6, 2017.  *See* ECF No. 37.  Federal Defendants moved to dismiss the Complaint on October 6, 2017, *see* ECF No. 39, and Plaintiffs filed their Amended Complaint on December 8, 2017, *see* ECF No. 44.

> [t]he massive numbers of people illegally crossing the Southwest border have left a host of environmental impacts in their wake, such as the destruction of native and at-risks [sic] species and habitats by trampling of the native vegetation; garbage dumping on a massive scale; water pollution; and the setting fires, many of which turn out of control, for the purposes of heat, cooking, or to distract Border Patrol agents.

*Id.* ¶ 90. Plaintiffs assert DHS' immigration policies constitute "programs which have the effect of encouraging further illegal entry across the Southwest border[,]" *id.* ¶ 89, though they acknowledge that these "policies are not the sole factor in all of these components of the illegal border-crossing phenomenon," *id.* ¶ 90. Plaintiffs do not allege that the Department directly caused Plaintiffs' alleged injuries, but rather that DHS' failure to prevent both legal and illegal immigration allowed an influx of migrants that has caused them injury. *Id.* ¶¶ 7, 50.

Count I of the Amended Complaint alleges that DHS failed "to incorporate NEPA compliance" into its Instruction Manual, an internal document that guides DHS personnel in complying with NEPA. Am. Compl. ¶ 102. Count II alleges that DHS violated NEPA by failing to "initiat[e] any NEPA compliance" for eight purported "programs." *Id.* ¶ 107. Plaintiffs list seven statutes originally found within the Immigration and Nationality Act ("INA"). *Id.* ¶ 55. Those statutes as-pled are INA § 203(b), now found at 8 U.S.C. § 1153(b); INA §§ 203(a) and 201(b), now found at 8 U.S.C. §§ 1153(a) and 1151(a); INA § 214, now found at 8 U.S.C. § 1184; INA § 212(d)(5)(a), now found at 8 U.S.C. § 1182; INA § 244, now found at 8 U.S.C. § 1254; INA § 207, now found at 8 U.S.C. § 1157; and INA § 208, now found at 8 USC § 1158. Generally, these statutes govern all matters of immigration and permit DHS, in its discretion, to allow or prohibit entry into the U.S. under specified circumstances.

In addition to the statutes, Count II also alleges that DHS failed to "initiat[e] any NEPA compliance" with regard to DACA. Am. Compl. ¶ 107. The basis for Plaintiffs' challenge is the June 15, 2012 DHS Memorandum issued by then Secretary of Homeland Security Janet Napolitano titled "Exercising Prosecutorial Discretion with Respect to

Individuals Who Came to the United States as Children" ("Napolitano Memo").  Am. Compl. ¶ 55.

DHS, along with partner agencies such as the Departments of Justice, Labor, and State, is responsible for enforcing and implementing immigration laws.  *See*, *e.g*., 8 U.S.C. § 1103(a)(1).  The Secretary of Homeland Security is charged "with the administration and enforcement" of the INA along with "all other laws relating to the immigration and naturalization of aliens . . . ."  *Id.*  The scope of DHS's mission extends beyond immigration to diverse policy areas such as maritime law enforcement (6 U.S.C. § 468(a)(2)), the provision of border security (8 U.S.C. § 1103(a)(5)), and disaster prevention and management (6 U.S.C. § 742).  Acting upon her broad authority, the Secretary has issued a range of internal documents in support of the Department's mission.  These include, for instance, the policy memoranda guiding the exercise of lawful discretion of agency personnel included in Plaintiffs' Exhibit 1, ECF No. 44-2, and Exhibit 2, ECF No. 44-3.

The Department's Instruction Manual, challenged in Count I, is not reviewable under the APA because it is not a "final agency action."  By its very terms, the Instruction Manual is intended to "establish the policy and procedures DHS follows to comply with [NEPA]."  Instruction Manual at III-1.  As it is merely a statement of internal policy, it fails to meet the definition of a final agency action under the APA.

Count II purports to challenge NEPA compliance for eight so-called "programs" related to immigration.  *See* Am. Compl. ¶¶ 55, 103-07.  Of the eight "programs" listed in the Amended Complaint, seven are merely citations to statutes that form the basis or establish the framework for DHS' authority to implement immigration policies, and the eighth challenges DACA.  Count II appears to allege that the eight items require programmatic environmental analysis under NEPA, such as through a Programmatic Environmental Impact Statement ("PEIS"), and fall under § 706(1) of the APA.  However, such programmatic attacks are precluded under the APA, and thus Plaintiffs

1  fail to state a cognizable claim.

2      Plaintiffs' challenge to DACA in Count II fails for another reason as well.

3  NEPA's implementing regulations, similar to the APA's bar on judicial review of matters

4  of prosecutorial discretion, exempt enforcement-related decisions from review.[2]

5  **III.   STANDARD OF REVIEW**

6      **A. Federal Rule of Civil Procedure 12(b)(1)**

7      Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for

8  "lack of subject-matter jurisdiction[.]"  A federal court is presumed to lack jurisdiction in

9  a particular case unless the contrary affirmatively appears.  *Gen. Atomic Co. v. United*

10  *Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).  Faced with a Rule 12(b)(1)

11  motion, a plaintiff bears the burden of proving the existence of the court's subject matter

12  jurisdiction.  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  A challenge to

13  subject matter jurisdiction may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242

14  (9th Cir. 2000).  With regard to a facial attack, the court may dismiss for lack of subject

15  matter jurisdiction if, accepting the plaintiff's allegations as true and drawing all

16  reasonable inferences in the plaintiff's favor, the court determines that the allegations are

17  insufficient to establish its jurisdiction.  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir.

18  2013).

19      By contrast, when a motion to dismiss is "a factual attack on subject matter

20  jurisdiction . . . [n]o presumptive truthfulness attaches to plaintiff's allegations, and the

21  existence of disputed material facts will not preclude the trial court from evaluating for

22  itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of

23  proof that jurisdiction does in fact exist."  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*

24

25  _____

26  [2] Federal Defendants do not, at this time, move to dismiss for lack of standing.  However, Federal Defendants preserve the right to raise such an affirmative defense at a later time.

27  *Hollingsworth v. Perry*, 570 U.S. 693 (2013) ("Article III demands that an 'actual

28  controversy' persist throughout all stages of litigation.).

1   *Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Sav. & Loan*

2   *Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  The court may review these additional facts

3   without converting the motion to a motion for summary judgment.  *Savage v. Glendale*

4   *Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  When

5   considering a factual attack, "the district court is not restricted to the face of the

6   pleadings, but may review any evidence, such as affidavits and testimony, to resolve

7   factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*,

8   850 F.2d 558, 560 (9th Cir. 1988).

9       **B. Federal Rule of Civil Procedure 12(b)(6)**

10       A motion to dismiss for failure to state a claim upon which relief can be granted

11   under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "lack of a

12   cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

13   theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing

14   *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).  In addition,

15   a complaint that fails to provide the grounds for the requested relief beyond labels and

16   conclusions will not survive a motion challenging the sufficiency of a complaint's

17   statement of the claim for relief under Rule 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550

18   U.S. 544, 555 (2007); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

19   Cir. 2001) ("Nor is the court required to accept as true allegations that are merely

20   conclusory, unwarranted deductions of fact, or unreasonable inferences." (citation

21   omitted)).

22       Where a plaintiff fails to assert a cognizable legal theory in support of a claim, the

23   claim must be dismissed.  Moreover, while a plaintiff's material factual allegations are

24   assumed to be true, district courts may not assume the truth of legal conclusions "merely

25   because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643

26   F.2d 618, 624 (9th Cir. 1981) (citations omitted).  A court may consider material properly

27   submitted as part of the complaint without converting the motion to dismiss into a motion

28

1    for summary judgment.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

2        **C. Judicial Review under the APA**

3        Where a statute, such as NEPA, does not provide a cause of action, the APA

4    provides for judicial review of challenges to a federal agency's compliance with these

5    statutes.  *See Native Ecosystems Council v. U.S. Forest Serv.,* 428 F.3d 1233, 1238 (9th

6    Cir. 2005).  Section 702 of the APA waives federal sovereign immunity to the extent that

7    "[a] person suffering legal wrong because of agency action, or adversely affected or

8    aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial

9    review thereof."  5 U.S.C. § 702.  The APA defines "agency action" to "include[] the

10   whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or

11   denial thereof, or failure to act[.]"  5 U.S.C. § 551(13).  For an agency action to be a

12   "final agency action" reviewable under § 706(2) , the action must both "mark the

13   consummation of the agency's decisionmaking process," and "be one by which rights or

14   obligations have been determined, or from which legal consequences will flow[.]"

15   *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations

16   omitted).

17       To state a cognizable claim under § 706(2) of the APA, a plaintiff must identify a

18   final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not

19   in accordance with law."  *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th

20   Cir. 2002) (quoting 5 U.S.C. § 706(2)(A) ).  Jurisdiction under the APA is limited to

21   review of "[a]gency action made reviewable by statute and final agency action for which

22   there is no adequate remedy in a court . . . ." 5 U.S.C. § 704; *see also Lujan v. Nat'l*

23   *Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  When agency action is "committed to agency

24   discretion by law[,]" judicial review is unavailable.  5 U.S.C. § 701(a)(2).  Section

25   701(a)(1) of the APA applies "when Congress has expressed an intent to preclude judicial

26   review" and § 701(a)(2) applies when "the statute is drawn so that a court would have no

27   meaningful standard against which to judge the agency's exercise of discretion" because

28

7                                                    Case No. 3:16-cv-2583

1    the statute "'committed' the decisionmaking to the agency's judgment absolutely." *See*

2    *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (citing 5 U.S.C. § 701(a)(2)).

3        **D. Judicial Review under NEPA**

4        In enacting NEPA, Congress was concerned with the potential impacts of major

5    federal actions significantly affecting the physical environment.  *See Hale v. Norton*, 476

6    F.3d 694, 700 (9th Cir. 2007) (citing 42 U.S.C. § 4332(C)).  NEPA does not apply to

7    every action involving a federal agency, however, but only where there is a proposal for

8    "major Federal action."  *Sierra Club v. Penfold*, 857 F.2d 1307, 1313 (9th Cir. 1988).

9    NEPA imposes procedural rather than substantive requirements.  *Robertson v. Methow*

10   *Valley Citizens Council*, 490 U.S. 332, 350 (1989); *Native Ecosystems Council v.*

11   *Weldon*, 697 F.3d 1043, 1051 (9th Cir. 2012).  An agency's compliance with NEPA is

12   bounded by a "rule of reason" to "ensure[] that agencies determine whether and to what

13   extent to prepare [analysis] based on the usefulness of any new potential information to

14   the decisionmaking process."  *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767 (2004).

15   **IV.   ARGUMENT**

16      **A. Count I Fails to Allege a Final Agency Action**

17        1.   The Instruction Manual is not a final agency action

18        As non-binding internal agency guidance that does not require any third party to do

19   or refrain from doing anything, the DHS Instruction Manual does not constitute a final

20   agency action subject to judicial review under the APA.  Plaintiffs' challenge to the

21   Directive therefore must be dismissed.

22        NEPA claims may be reviewed only pursuant to the APA, and, as a waiver of

23   sovereign immunity for claims against the United States, the APA limits what federal

24   agency activities may be challenged in federal court.  *Cent. Delta Water Agency v. U.S.*

25   *Fish & Wildlife Serv.,* 653 F. Supp. 2d 1066, 1089 (E.D. Cal. 2009) ("[NEPA claims]

26   must fall within the APA's limited waiver of sovereign immunity.").  The APA limits

27   judicial review to "final agency action."  5 U.S.C. § 704.  Thus, Plaintiffs bear the burden

28

1  of establishing subject matter jurisdiction, which includes "identifying specific federal

2  conduct and explaining how it is 'final agency action' within the meaning of [the APA]."

3  *Wyoming v. U.S. Dep't of Interior*, 360 F. Supp. 2d 1214, 1227 (D. Wyo. 2005), *aff'd*,

4  442 F.3d 1262 (10th Cir. 2006).

5      The DHS Instruction Manual neither marks the consummation of the agency's

6  decision-making process, nor constitutes an action by which rights or obligations have

7  been determined or from which legal consequences will flow.  *Bennett,* 520 U.S. at 177–

8  78.  The Instruction Manual, along with DHS Directive 023-01, "establish[es] the policy

9  and procedures DHS follows to comply" with NEPA and Council on Environmental

10  Quality ("CEQ") regulations.  Instruction Manual at III-1.  It is the agency's internal

11  guidance for complying with NEPA.  The Instruction Manual and Directive "adopt and

12  supplement the CEQ regulations" to "help ensure the integration of environmental

13  stewardship into DHS decision making."  DHS Directive 023-01 at 1 (ECF No. 44-2).  In

14  sum, the Instruction Manual serves as a guide to ensure NEPA compliance on a project-

15  by-project or action-by-action basis.

16      Policy memoranda and guides for agency operations do not constitute reviewable

17  final agency actions.  *See Schweiker v. Hansen*, 450 U.S. 785, 789–90 (1981) (holding

18  that federal agency's internal instruction manual, a thirteen-volume handbook for internal

19  use by thousands of Social Security Administration employees, "is not a regulation[,] has

20  no legal force, and . . . does not bind the [federal agency]"); *Cement Kiln Recycling Coal.

21  v. EPA*, 493 F.3d 207, 227–28 (D.C. Cir. 2007) (concluding that the EPA's technical

22  guidance document, the Human Health Risk Assessment Protocol for Hazardous Waste

23  Combustion Facilities, was non-binding because it "does not 'command[,]' does not

24  'require[,]' does not 'order[,]' and does not 'dictate'"); *Kugel v. United States*, 947 F.2d

25  1504, 1507 (D.C. Cir. 1991) (intra-office manual, "*The Attorney General's Guidelines on

26  Criminal Investigations of Individuals and Organizations*," "do[es] not . . . create a duty

27  in favor of the general public").

28

9                                                              Case No. 3:16-cv-2583

Plaintiffs cannot establish that the Instruction Manual marks the consummation of DHS' decision-making process as it relates to NEPA. Courts have examined several factors to ascertain whether an action marks the consummation of an agency's decision-making process. First, the action "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178. But, "tentative" is a precise description of the Instruction Manual challenged here as the document is merely a guide to assist DHS personnel. "[G]uidances do not consummate the decision-making process, they are merely steps relied on to reach a decision" and do not qualify as final agency actions. *Friends of Potter Marsh v. Peters*, 371 F. Supp. 2d 1115, 1120 (D. Alaska 2005). Second, an action may mark the consummation of an agency's decision-making process if it constitutes the agency's "last word on the matter[.]" *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 984 (9th Cir. 2006). In the NEPA context, a common example is where an agency provides the "last word on a project's environmental impact" as a whole. *Friedman Bros. Inv. Co. v. Lewis*, 676 F.2d 1317, 1319 (9th Cir. 1982). The Instruction Manual does no such thing. Third, the court may inquire whether an agency has "arrived at a definitive position and put the decision into effect." *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 828 (9th Cir. 2002). For instance, when an agency implements its decision to allow grazing on federal land by issuing grazing permits to ranchers, the final action requirement is met. *Id.; Or. Nat. Desert Ass'n*, 465 F.3d at 985. Here, Federal Defendants have not issued a permit, implemented a project, nor taken any other comparable action reflecting implementation of a definitive position.

Plaintiffs' challenge to the Instruction Manual also cannot meet the second prong of *Bennett*; whether the challenged action is one by which rights or obligations have been determined or from which legal consequences flow. *Bennett*, 520 U.S. at 178. A challenge to an agency action fails the second prong of the *Bennett* test if the challenged action "establishes only the procedural framework under which the [agency] intends to operate." *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d

10                                                           Case No. 3:16-cv-2583

607, 619 (7th Cir. 2003).  The "action" Plaintiffs challenge here represents nothing more than the internal, procedural framework under which DHS intends to implement NEPA. Legal consequences do not flow from the Instruction Manual—it has no force of law. The Ninth Circuit has emphasized that courts "have no authority to bind [an agency] to the guidelines in [a] Manual or [a] Handbook." *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 902 (9th Cir. 1996); *see also Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1014, 1017 (9th Cir. 1987) (upholding internal INS operating instructions as general statements of policy against procedural challenge because the subject policies did "not establish a 'binding norm'" and were not "'finally determinative of the issues or rights to which [they are] addressed,' but [instead left] INS officials 'free to consider the individual facts in the various cases that arise.'").  Other circuits have reached similar conclusions.  *See, e.g., Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) (recognizing that the APA created "three boxes" for administrative actions:  "legislative rules, interpretive rules, and general statements of policy," and that courts do not review "general statements of policy").

The Instruction Manual challenged in Count I guides DHS personnel in *evaluating* agency actions; it does not *propose*, much less *require*, any specific actions with on-the-ground impacts and is thus not "final agency action." *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1167 (9th Cir. 2000); *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 667 (9th Cir. 1998).  Plaintiffs fail to show that the Instruction Manual meets both prongs of *Bennett*, thus Count I should be dismissed..

2.  The Instruction Manual does not qualify as a "rule" under the APA

Plaintiffs may argue that the Instruction Manual qualifies as a rule under 5 U.S.C. § 551(4), and thus requires NEPA analysis pursuant to 40 C.F.R. § 1508.18(a).  *See* Pls.' Am. Compl. ¶¶ 96, 97.  However, the Instruction Manual is merely a document establishing internal guidelines and does not meet the standard found in 5 U.S.C. § 551(4).

11                                                          Case No. 3:16-cv-2583

5 U.S.C. § 551(4) states that "'rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy[.]"  The Ninth Circuit has consistently found that documents that establish guidelines or state internal policy do not have the force and effect of law and do not meet the definition of a "rule."  *See, e.g.*, *Lowry v. Barnhart*, 329 F.3d 1019, 1022 (9th Cir. 2003) (noting that not all agency pronouncements create judicially enforceable rights); *Alameda Gateway Ltd.*, 213 F.3d at 1168 (Army Corps' regulation "was not intended to have the force of law, but was instead a policy statement to guide the practice of district engineers"); *Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1119–20  (N.D. Cal. 2007).  To have the force and effect of law, a rule must be substantive and "conform to certain procedural requirements." *Alameda Gateway Ltd.*, 213 F.3d at 1168 (quoting *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982)).

Documents that are interpretive or "general statements of policy or rules of agency organization, procedure or practice" do not have the force and effect of law.  *Alameda Gateway Ltd.*, 213 F.3d at 1168; *see Hells Canyon Preservation Council v. U.S. Forest Serv.*, 593 F.3d 923, 930–31 (9th Cir. 2010).  An agency's management guidelines are not final agency action if they do not "propose any site-specific activity [or] call for specific actions directly impacting the physical environment." *Glickman*, 136 F.3d at 667, 670.  While an agency's pronouncements may create judicially enforceable duties, such a pronouncement must "'prescribe substantive rules—*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice,' and must have been 'promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress.'"  *Lowry,* 329 F.3d at 1022 (quoting *Fifty–Three (53) Eclectus Parrots,* 685 F.2d at 1136).  Here, the Instruction Manual, by its very terms, was created to "establish the policy and procedures DHS follows[.]" Instruction Manual at III-1. The fact that it was not published in the

Code of Federal Regulations provides further evidence that the document was not intended to be binding.  *See W. Radio Servs. Co.,* 79 F.3d at 901.  The Instruction Manual is, thus, not a rule.

## B. Count II is a Non-Justiciable Programmatic Challenge

Plaintiffs' challenges in Count II fail to allege a discrete agency action that DHS was required to take.  Count II purports to challenge NEPA compliance for nearly all of DHS' statutory immigration authority, alleging that "DHS has eight programs covering, respectively: 1) employment based immigration; 2) family based immigration; 3) long-term nonimmigrant visas; 4) parole; 5) TPS; 6) refugees; 7) asylum; and DACA."  Am. Compl. ¶ 105.  Plaintiffs allege that the seven statutory areas of immigration policies and DACA require programmatic environmental analysis, such as through a PEIS, under 40 C.F.R. § 1508.18(b)(3).  Am. Compl. ¶¶ 104, 105.  However, Count II fails to state a claim under § 706(1) of the APA, which requires allegations of both a *discrete* agency action and that the agency was *required* to take such action, and it should be dismissed.

In *Lujan* and *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ("*SUWA*"), the Supreme Court made clear that the APA does not authorize suits seeking "*wholesale* improvement of [an agency] program by court decree," regardless of whether such suits are couched in terms of a challenge to a final agency action or as a suit to compel agency action unlawfully withheld or unreasonably delayed.  *Lujan*, 497 U.S. at 891; *SUWA*, 542 U.S. at 64–65.  Instead, in order "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve," the APA insists upon an "'agency action,' either as the action complained of (in §§ 702 and 704) or as the action to be compelled (in § 706(1))."  *SUWA*, 542 U.S. at 66, 62.

In *Lujan*, the Supreme Court clarified that the APA's final agency action requirement precludes "general judicial review of [an agency's] day-to-day operations."

13                                                            Case No. 3:16-cv-2583

*Lujan*, 497 U.S. at 899.  In *Lujan*, the plaintiffs claimed that the Bureau of Land Management ("BLM") violated NEPA when implementing what plaintiffs termed the "land withdrawal review program." *Id.* at 875.  This prompted the Court to observe that the purported "land withdrawal review program:"

> is simply the name by which petitioners have occasionally referred to the continuing (and thus constantly changing) operations of the BLM in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans as required by the [relevant statute].  It is no more an identifiable "agency action"—much less a "final agency action"—than a "weapons procurement program" of the Department of Defense or a "drug interdiction program" of the Drug Enforcement Administration.

*Id.* at 890.  Absent discrete, final agency action, the APA does not permit a plaintiff to obtain wholesale review of an entire program.  *Id.* at 891–94; *see also Glickman*, 136 F.3d at 668–70.

In *SUWA,* the Court further clarified the permissible scope of § 706(1) challenges, holding that § 706(1) only authorizes claims asserting that "an agency failed to take a *discrete* agency action that it is *required* to take[,]" and further explained that these two limitations "rule out several kinds of challenges." *SUWA*, 542 U.S. at 64–65.  With respect to the first limitation, the Court held that an APA "failure to act" is "properly understood as a failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Id.* at 62.  It explained that this limitation of judicial review "to discrete agency action precludes the kind of broad programmatic attack . . . rejected in [*Lujan*]," such that the *Lujan* plaintiffs "would have fared no better if they had characterized" their claim as an alleged failure to act.  *Id*. at 64–65.  With respect to the second limitation "to *required* agency action[,]" the Court explained that it "rules out judicial direction of even discrete agency action that is not demanded by law."  *Id*. at 65.

In this case, Plaintiffs contest seven statutes that DHS administers, covering broad

categories such as "family" and "employment."  Am. Compl. ¶ 55.  This is precisely the type of broadside policy attack the APA's limitations discussed in *Lujan* and *SUWA* are intended to preclude.  Plaintiffs cannot demand that DHS be required to analyze the seven broad areas of statutory authority in a PEIS because the challenged statutes do not, individually or collectively, constitute a discrete program.  Instead, the statutes provide the Congressionally-mandated framework under which DHS operates.  For example, 8 U.S.C. § 1153(a) states that "[a]liens subject to the [definitions found in 8 U.S.C § 1151] shall be allotted visas . . . in a number not to exceed 23,400" for unmarried children of citizens, "in a number not to exceed 114,200" for spouses and unmarried children of permanent resident aliens, and "in a number not to exceed 23,400" for married children of citizens.  8 U.S.C. § 1153(a)(1)-(3).  Plaintiffs merely list the statutes that provide the parameters for DHS' operation; they fail to identify any discrete, final agency action on the part of the agency, and their claim fails.  *See Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1111−13 (9th Cir. 2005) (affirming dismissal for lack of subject matter jurisdiction because plaintiffs did not challenge "discrete agency action"); *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801–02 (9th Cir. 2013) (dismissing APA claim challenging the Department of Interior's "day-to-day operations" because the claim did not challenge "final agency action").

Further, neither NEPA nor its implementing regulations *require* DHS to prepare a PEIS for the seven broad areas of statutory authority and DACA.  The second prong of *SUWA* requires that a plaintiff challenge an agency action that the agency is *required* to take.  *SUWA*, 542 U.S. at 64.  § 706(1) "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act[.]'" *SUWA*, 542 U.S. at 64.  Yet an agency's decision to prepare a PEIS rests wholly within its discretion.  *See Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976) (noting that the decision to conduct a PEIS requires "a high level of technical expertise and is properly left to the informed discretion of the responsible federal agencies"); *Nevada v. Dep't of Energy*, 457 F.3d 78, 92 (D.C.

Cir. 2006) ("The decision whether to prepare a programmatic EIS is committed to the agency's discretion.").  CEQ regulations similarly reflect that preparing a PEIS is discretionary.  *See* 40 C.F.R. § 1502.4(b) ("[An EIS] *may be* prepared . . . for broad Federal actions . . . ." (emphasis added)); *id.* § 1502.4(c)(2) ("When preparing statements on broad actions . . . , agencies *may find it useful* to evaluate the proposal(s) . . . [g]enerically, including actions which have relevant similarities, such as common timing, impacts, alternatives, methods of implementation, media, or subject matter" (emphasis added)).

Since § 706(1) can only be used to compel "non-discretionary" acts, and the preparation of a PEIS is, by definition, discretionary, DHS' alleged failure to prepare a PEIS is not reviewable under the APA.  *See La Cuna De Aztlan Sacred Sites Prot. Circle Advisory Comm. v. U.S. Dep't of the Interior*, No. 2:11-CV-00395-ODW (OPX), 2012 WL 12888325, at *4 (C.D. Cal. Mar. 21, 2012) ("because this Court may review under APA only final agency action the agency was required to take and because Defendants were not required to prepare a PEIS, Defendants' decision not to prepare a PEIS is not reviewable").  As the Supreme Court has repeatedly affirmed, NEPA does not exist to "give citizens a general opportunity to air their policy objections to proposed federal actions."  *Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 777 (1983).  Despite Plaintiffs' obvious objections to DHS' statutory mandate to implement and oversee immigration policy, Plaintiffs "cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made."  *Lujan*, 497 U.S. at 891.  Plaintiffs' challenge in Count II fails both prongs of *SUWA* and should be dismissed.

**C. Plaintiffs' Challenge to DACA is Unreviewable under NEPA**

Although NEPA applies generally to "major federal actions," excluded from that definition are decisions "bringing judicial or administrative civil or criminal enforcement

actions." 40 C.F.R. § 1508.18(a).  Hence, in a display of uniformity with the APA's bar on reviewing matters of enforcement and prosecutorial discretion,[3] the decision whether to bring judicial and administrative civil and criminal enforcement actions is specifically exempted from NEPA's requirements.  *See United States v. Rainbow Family*, 695 F. Supp. 314, 324 (E.D. Tex. 1988) (rejecting claim that NEPA required an environmental analysis to enjoin large, unpermitted gatherings in a national forest, because "it [wa]s not a 'major Federal action' under NEPA, requiring environmental analysis, to bring a civil or criminal action to enforce Forest Service or other governmental regulations or statutes").  Thus, a challenge to DACA cannot be brought under NEPA because of the express exemption for law enforcement activities.  Such activities are simply not the kind of actions that are (or should be) informed by NEPA analysis or are subject to judicial review for compliance with NEPA.

The decision to grant or not grant deferred status under DACA meets the definition of a judicial or administrative civil or criminal enforcement action.  Under the INA, individuals are subject to removal from the United States if, among other things, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 567 U.S. 387, 396 (2012) (citation omitted).  Due to resource constraints, the federal government cannot remove every removable alien, which means that a "principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396 (citation omitted).  "One form of discretion the Secretary of Homeland Security exercises is 'deferred action,' which entails temporarily postponing the removal of individuals

---

[3] The APA bars judicial review of certain categories of decisions that "courts traditionally have regarded as 'committed to agency discretion.'"  *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (quoting 5 U.S.C. § 701(a)(2)).  Among the decisions committed to executive discretion are an "agency decision not to prosecute or enforce, whether through civil or criminal process," and "an agency's exercise of enforcement power."  *Chaney*, 470 U.S. at 831, 833.

1    unlawfully present in the United States." *Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir.

2    2015) (citation omitted), *cert. denied*, 136 S. Ct. 900 (2016).  Deferred action is a practice

3    by which the Secretary exercises her "discretion to abandon" the removal process, and to

4    notify an individual alien of a non-binding decision to forbear from seeking his removal

5    for a set period.  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483

6    (1999); *see* 8 C.F.R. § 274a.12(c)(14) (describing "deferred action" as "an act of

7    administrative convenience to the government which gives some cases lower priority").

8    In 2012, DACA made deferred action available to certain unlawfully present aliens who

9    came to the United States as children.  *See* "Napolitano Memo."  DACA is an "exercise

10   of prosecutorial discretion," *id.* at 1, and it reflects the Department's decision to bring or

11   not bring an enforcement action against a particular individual.

12       Case law supports the position that Plaintiffs' challenge to DACA is unreviewable

13   under NEPA.  There are not a plethora of cases addressing the issue, likely because

14   NEPA, like the APA, is clear in its prohibition on review of law enforcement activities.

15   However, this Circuit has addressed the question and found a similar challenge

16   unreviewable under NEPA.  *United States v. Glenn-Colusa Irrigation District*, 788 F.

17   Supp. 1126 (E.D. Cal. 1992), is especially on point.  In that case, the government moved

18   for an injunction to enforce certain provisions of the Endangered Species Act ("ESA").

19   *Id.* at 1128.  The irrigation district contended that enforcement of the ESA "without

20   completion of an environmental impact statement violates the National Environmental

21   Policy Act[.]"  *Id*. at 1135.  The court disagreed, finding that the government's decision

22   to enforce the statute did not trigger NEPA.  *Id.*  As the court observed, a contrary

23   interpretation requiring NEPA analyses for law enforcement-related actions "would lead

24   to a highly impractical result in which any decision of a law enforcement agency—

25   whether to go forward with an action or forbear from action—would require a NEPA

26   analysis."  *Id.*  Here, as in *Glenn-Colusa*, the Department's decision on how to enforce

27   immigration laws is not reviewable under NEPA.  *See also Calipatria Land Co. v. Lujan*,

28

793 F. Supp. 241, 245 (S.D. Cal. 1990); *Tucson Rod & Gun Club v. McGee,* 25 F. Supp. 2d 1025, 1029 (D. Ariz. 1998); *West v. Holder*, 60 F. Supp. 3d 197, 204 (D.D.C. 2015), *aff'd sub. nom*, *West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017); *Mobil Oil Corp. v. F.T.C.*, 562 F.2d 170, 173 (2d Cir. 1977) (reversing the district court's decision to require NEPA analysis in the enforcement context and holding that "NEPA does not intend that the FTC may be indefinitely delayed in undertaking its statutory duties[.]").[4]

NEPA was not intended to become a means of delaying or obstructing an agency's discretionary authority to enforce the laws entrusted to its care, which is precisely what Plaintiffs' wholesale attack on immigration policies seeks to do here.  Plaintiffs' challenge to DACA should be dismissed.

## V.   <u>CONCLUSION</u>

Counts I and II should be dismissed.  Count I fails both prongs of *Bennett*, challenging a general statement of policy and not a final agency action as required by the APA.  Count II is a non-justiciable programmatic challenge that fails to allege a discrete agency action that DHS was required to take.  Finally, Plaintiffs' challenge to DACA in Count II further fails because judicial review is precluded under NEPA.  For the foregoing reasons, the Court should dismiss Counts I and II.

Respectfully submitted,

DATED: January 22, 2018          JEFFREY H. WOOD
                                 Acting Assistant Attorney General
                                 United States Department of Justice
                                 Environment & Natural Resources Division

---

[4] Also of note in *Mobil Oil Corp. v. F.T.C.*, CEQ issued an advisory memorandum on the application of NEPA to the FTC's enforcement actions.  The CEQ concluded that NEPA analysis was not required because such a process would impede enforcement of the laws entrusted to the FTC and severely restrict the agency's prosecutorial discretion.  562 F.2d 170.

19                                                    Case No. 3:16-cv-2583

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Edward J. Passarelli, VA Bar No. 16212
Deputy Chief
Natural Resources Section

Stacey Bosshardt, DC Bar No. 458645
Assistant Section Chief
Natural Resources Section

By   */s/ S. Derek Shugert*
S. DEREK SHUGERT
Trial Attorney, Natural Resources Section
Post Office Box 7611
Washington, D.C. 20044-7611
Tel:  (202) 514-9269
Fax:  (202) 305-0506
E-mail:  shawn.shugert@usdoj.gov

*Attorneys for Federal Defendants*