JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

S. DEREK SHUGERT, OH Bar No. 84188
Natural Resources Section
Post Office Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 514-9269
Fax:  (202) 305-0506
shawn.shugert@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

| | |
|---|---|
| WHITEWATER DRAW NATURAL RESOURCE CONSERVATION DISTRICT, *et al.*,<br><br>     Plaintiffs,<br><br>     v.<br><br>KIRSTJEN M. NIELSEN, *et al.*,<br><br>     Federal Defendants. | **Case No. 3:16-cv-2583**<br><br>**REPLY IN SUPPORT OF FEDERAL DEFENDANTS' PARTIAL MOTION TO DISMISS COUNTS ONE AND TWO OF THE AMENDED COMPLAINT**<br><br>Date: March 12, 2018<br>No Oral Argument Unless Requested by the Court<br><br>Hon. H. James Lorenz |

Case No. 3:16-cv-2583

1

## I.   **INTRODUCTION**

2   Plaintiffs have failed to cite authority that demonstrates that Counts I and II should

3   survive Federal Defendants' Motion to Dismiss.  Regarding Count I, Plaintiffs have

4   failed to establish that the Department of Homeland Security's ("DHS") National

5   Environmental Policy Act ("NEPA") Instruction Manual satisfies the Supreme Court's

6   standard for a final agency action as articulated in *Bennett v. Spear*, 520 U.S. 154 (1997).

7   Plaintiffs rely almost entirely on the Instruction Manual's publication in the Federal

8   Register to support their argument.  However, Plaintiffs do not, and in fact cannot, cite

9   any authority showing that publication in the Federal Register *per se* meets both prongs

10  of *Bennett*.  As such, Plaintiffs fail to show that the Instruction Manual qualifies as a final

11  agency action, and this Court lacks jurisdiction to hear Count I.[1]

12  Regarding Count II, Plaintiffs have failed to distinguish the precedent established

13  in two Supreme Court cases interpreting impermissible, broad programmatic challenges

14  under the Administrative Procedure Act ("APA").  Instead, Plaintiffs attempt to recast

15  Count II as a claim under 5 U.S.C. § 706(2)(A).  Whether the Court treats Count II as a

16  claim under 5 U.S.C. § 706(1) or § 706(2)(A), however, the result is the same—Count II

17  is a nonjusticiable programmatic challenge that fails to state a claim under Rule of Civil

18  Procedure 12(b)(6).

19  Plaintiffs also fail to rebut Federal Defendants' arguments regarding the

20  immigration non-enforcement policy known as Deferred Action for Childhood Arrivals

21  ("DACA"), and the Court should dismiss the DACA challenge in Count II as it is exempt

22  from review under 40 C.F.R. § 1508.18(a) as an exercise of prosecutorial discretion.

23

---

24  [1] Plaintiffs assert, without support, that "[t]he appropriate procedural vehicle by which to

25  move to dismiss a violation of NEPA and the APA is Rule 12(b)(6) rather than Rule

    12(b)(1)."  Pls.' Mem. of P. & A. Opposing Defs.' Partial Mot. to Dismiss Counts I and II

26  of the Am. Compl., ECF No. 51-1 ("Pls.' Br.") at 4.  Plaintiffs are incorrect.  *See Ass'n of*

27  *Am. Med. Colleges v. United States*, 217 F.3d 770, 785 (9th Cir. 2000); *see also Gros*

    *Ventre Tribe v. United States*, 469 F.3d 801, 814 (9th Cir. 2006).

28

1                                                                      Case No. 3:16-cv-2583

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   ARGUMENT

### A. The Instruction Manual is Not Subject to Judicial Review under the APA

Plaintiffs fail to show that the Instruction Manual meets both prongs of *Bennett*. Plaintiffs do not dispute that in order to be reviewable under the APA, the Instruction Manual must constitute a final agency action.  *See* Pls.' Br. 5.  Further, Plaintiffs do not dispute that *Bennett* is controlling on this subject, and that both prongs of *Bennett* must be satisfied for this Court to have jurisdiction to hear Count I.  *Id.* at 5-14.  Plaintiffs rely almost entirely on the Instruction Manual's publication in the Federal Register to argue that the Instruction Manual satisfies both prongs of *Bennett*.  *Id.*  However, publication in the Federal Register does not render the Instruction Manual binding and enforceable under the APA.

### 1.   Count I Fails *Bennett's* First Prong

An agency document must first "mark the consummation of the agency's decisionmaking process" to qualify as final agency action.  *Bennett*, 520 U.S. at 177-78 (internal citation and quote marks omitted).  Plaintiffs argue that this first prong of *Bennett* is satisfied because "[t]he Notice [in the Federal Register] definitively establishes that the Instruction Manual . . . marked the 'consummation of the agency's decisionmaking process.'"  Pls.' Br. 7.  Tellingly, Plaintiffs cite no case law to support this assertion.  Instead, they cite to the Notice itself, believing that it is sufficient to rely on the statement "the revised Instruction establishes the procedures for ensuring [DHS's compliance with NEPA] is implemented in an effective and efficient manner," and that DHS spent three years developing revisions to its NEPA-implementing procedures.  *Id.* These passages from the Notice do not establish that the Instruction Manual marks the consummation of the agency's decision-making process.

As explained in Federal Defendants' Motion to Dismiss, but not addressed in Plaintiffs' Brief, courts examine several factors to ascertain whether an action marks the consummation of an agency's decision-making process.  First, the action "must not be of

2                                                      Case No. 3:16-cv-2583

a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178.  Internal agency guidance documents, such as the one at issue here, are usually interlocutory in nature because they "do not consummate the decision-making process, they are merely steps relied on to reach a decision." *Friends of Potter Marsh v. Peters*, 371 F. Supp. 2d 1115, 1120 (D. Alaska 2005).  The court in *Friends of Potter Marsh* found that an agency's NEPA guidance document did not constitute final agency action because it was a beginning step in the agency's NEPA process and, even if the plaintiff's position in that case was correct and the guidance document was deficient, the final agency action would ultimately be the Record of Decision ("ROD") or Decision Notice ("DN").  *Id.*

An action may also mark the consummation of an agency's decision-making process if it is the agency's "last word on the matter[,]" *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 984 (9th Cir. 2006), or if an agency has "arrived at a definitive position and put the decision into effect," *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 828 (9th Cir. 2002).  In the NEPA context, a common example of the agency's last word on a matter or putting a decision into effect is where an agency provides the "last word on a project's environmental impact" as a whole, such as through a ROD or DN.  *Friedman Bros. Inv. Co. v. Lewis*, 676 F.2d 1317, 1319 (9th Cir. 1982).  Here, the Instruction Manual is not the agency's last word on any decision, nor is it a definitive position that the agency is putting into effect.  It is the agency's "planning and decision-making tool that helps [DHS] identify and evaluate the potential environmental impacts of proposed actions *prior to making decisions*."  DHS Instruction Manual, ECF No. 44-3 at III-1 (emphasis added).  The Instruction Manual itself states that it is merely an aid for the actual agency decisions that come later in the NEPA process.  "[I]t is not feasible to describe in this Instruction Manual the decision-making process for every DHS program," but the goal for ultimate agency decisions is to comply with NEPA.  *Id.* at IV-1.  The Instruction Manual does not meet the requirements of *Bennett's* first prong.

2. <u>Count I Fails *Bennett's* Second Prong</u>

Under the second prong of *Bennett*, the agency document must be one "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal citation and quote marks omitted). Plaintiffs argue that this second prong of *Bennett* is satisfied because the Instruction Manual discusses common examples of environmental review that DHS encounters, *see* Pls.' Br. 8, and that discussion "constitutes DHS's 'definitive statement of the agency's position' on implementing NEPA." *Id.* (quoting *Or. Nat. Desert Ass'n*, 465 F.3d at 982). Plaintiffs attempt to bolster their argument by arguing that the Instruction Manual qualifies as a rule under 5 U.S.C. § 551(4). *Id.* at 10-14. Neither argument shows that the Instruction Manual satisfies *Bennett's* second prong.

Courts may examine several factors when analyzing *Bennett*'s second prong, including whether an agency action "alter[s] the legal regime," *Bennett*, 520 U.S. at 178, "ha[s] a direct and immediate effect on the day to day business of the complaining party, ha[s] the status of law and whether immediate compliance with the decision is expected," *Hecla Mining Co. v. U.S. E.P.A.*, 12 F.3d 164, 165 (9th Cir. 1993). A challenge to an agency action fails the second prong of *Bennett* if the challenged action "establishes only the procedural framework under which the [agency] intends to operate." *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 619 (7th Cir. 2003). Here, the Instruction Manual serves as a guide to assist DHS personnel in evaluating agency actions "prior to making decisions." Instruction Manual at III-1. The Instruction Manual does not alter the legal regime; it reaffirms DHS' commitment to the existing legal regime, which is NEPA. Plaintiffs make no argument that the Instruction Manual has a direct and immediate effect on their day-to-day business, as the Instruction Manual does not require Plaintiffs to do, or refrain from doing, anything. The Ninth Circuit has emphasized that courts "have no authority to bind [an agency] to the guidelines in [a] Manual or [a] Handbook," *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 902 (9th Cir. 1996),

1    and, thus the Instruction Manual cannot have the necessary status of law.

2          Plaintiffs' final argument, that the Instruction Manual qualifies as a rule under the

3    APA, is both incorrect and fails to show that the Instruction Manual meets *Bennett's*

4    second prong.  Plaintiffs appear to argue that the Instruction Manual is an interpretive

5    rule.  *See* Pls.' Br. 13 ("The Instruction Manual qualifies as interpretive rule").  Plaintiffs

6    support their position by, again, relying almost entirely on the Instruction Manual's

7    publication in the Federal Register.  Perhaps intending to argue that the document meets

8    *Bennett*'s second prong, Plaintiffs claim, without legal support, that "[a] procedure,

9    protocol, regulation, or other rule promulgated pursuant to the notice and comment

10   requirements set forth in the APA is indisputably subject to judicial review under the

11   APA."  *Id.* at 11.  This ipse dixit is simply not supported in case law; neither the Ninth

12   Circuit nor its sister circuits find that publication in the Federal Register "indisputably"

13   satisfies *Bennett* and constitutes final agency action.  *See Cent. Delta Water Agency v.*

14   *U.S. Fish & Wildlife Serv.*, 653 F. Supp. 2d 1066, 1093 (E.D. Cal. 2009) (NEPA

15   document published in the Federal Register fails both prongs of *Bennett*); *Sierra Club v.*

16   *McCarthy*, No. 13-CV-03953-SI, 2015 WL 889142, at *8 (N.D. Cal. Mar. 2, 2015), *aff'd*

17   *sub nom. Sierra Club v. N.D.*, 868 F.3d 1062 (9th Cir. 2017) (agency statement published

18   in Federal Register does not constitute final agency action); *Nat'l Ass'n of Home Builders*

19   *v. Norton*, 298 F. Supp. 2d 68, 79 (D.D.C. 2003), *aff'd*, 415 F.3d 8 (D.C. Cir. 2005)

20   (same); *Chem. Mfrs. Ass'n v. E.P.A.*, 26 F. Supp. 2d 180, 187 (D.D.C. 1998) (agency

21   guidance document published in Federal Register fails both prongs of *Bennett*); *Nat'l*

22   *Council for Adoption v. Jewell*, 156 F. Supp. 3d 727, 736 (E.D. Va. 2015) (same).[2]

23

24   [2] Plaintiffs suggest that the Instruction Manual's lack of publication in the Code of
25   Federal Regulations ("CFR") is immaterial.  Pls.' Br. 12.  However, courts do weigh the
     importance of CFR publication.  *See Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d
26   533, 539 (D.C. Cir. 1986) ("*Publication* in the Federal Register does *not* suggest that the
27   matter published *was* meant to be a regulation . . . The real dividing point . . . is
     publication in the CFR.") (emphasis in original).
28

5                                                                    Case No. 3:16-cv-2583

Finally, Plaintiffs attempt to distinguish some of the cases cited in Federal Defendants' Motion that discuss how courts evaluate agency guidance documents. *See* Pls.' Br. 9-10. Federal Defendants do not argue that the agency's characterization of a document is controlling; the two prong test in *Bennett* controls what constitutes a final agency action. The cases previously briefed demonstrate how courts, including the Ninth Circuit, repeatedly find that agency guidance materials are less likely to meet the requirements of *Bennett*. As Plaintiffs fail to show that the Instruction Manual (1) marks the consummation of the agency's decision-making process, and (2) constitutes an action by which rights or obligations have been determined or from which legal consequences will flow, Count I should be dismissed.

**B. Count II Fails to State a Claim under Either 5 U.S.C. § 706(1) or § 706(2)(A)**

 1. Count II Fails under 5 U.S.C. § 706(1)

An examination of the Amended Complaint and Plaintiffs' Brief illustrates that Count II fails to state a claim upon which relief can be granted. Plaintiffs fail to show that Count II contains anything other than an attempt to secure "*wholesale* improvement of [an agency] program by court decree." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). As previously explained, "to avoid judicial entanglement in abstract policy disagreements" the APA requires that a plaintiff challenge "'agency action,' either as the action complained of (in §§ 702 and 704) or as the action to be compelled (in § 706(1))." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("*SUWA*"). Plaintiffs' Amended Complaint claims that "DHS never initiated NEPA compliance with respect to these eight programs," in violation of NEPA and the APA. Am. Compl. ¶ 106, ECF No. 44. As numerous courts have held, Plaintiffs cannot label agency policies a program and demand judicial review; Plaintiffs must allege a final agency action. *See Ctr. For Food Safety v. Johanns,* 451 F. Supp. 2d 1165, 1188 (D. Haw. 2006) (interpreting *Lujan*, *SUWA*, and Ninth Circuit decisions to conclude that plaintiff's claim did not constitute final agency action because it merely attacked agency policy). Evaluating Plaintiffs'

claim under 5 U.S.C. § 706(1), Plaintiffs' Brief fails to address the Supreme Court's requirement that a plaintiff challenge an agency action that the agency is *required* to take, *SUWA*, 542 U.S. at 64, let alone its holding that the preparation of a PEIS is left to the agency's discretion, *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976). Since the preparation of a PEIS is discretionary, DHS' alleged failure to prepare a PEIS is not reviewable under the APA, and Count II fails under 5 U.S.C. § 706(1). *See La Cuna De Aztlan Sacred Sites Prot. Circle Advisory Comm. v. U.S. Dep't of the Interior*, No. 2:11-CV-00395-ODW (OPX), 2012 WL 12888325, at *4 (C.D. Cal. Mar. 21, 2012).

    2.  <u>Even if Count II is a Claim under 5 U.S.C. § 706(1), It Still Fails</u>

    Plaintiffs try to salvage Count II by claiming that it does not consist of the eight categories actually listed in the Amended Complaint under Count II. Instead, Plaintiffs assert that Count II consists of 86 regulations and memoranda contained within an attachment to an exhibit to their Amended Complaint.[3] Pls.' Br. 17-22. Thus, according to Plaintiffs, they are not asserting a failure to act claim under 5 U.S.C. § 706(1), despite alleging a failure to issue programmatic NEPA analysis, but they are asserting a claim under 5 U.S.C. § 706(2)(A). Whether Count II can be recast that way is immaterial because under either formulation, it is precisely the type of argument that the Supreme Court rejected in *Lujan*.[4]

---

[3] Of the 86 regulations and memoranda listed in the attachment to an exhibit of Plaintiffs' Amended Complaint, 65 of them appear to be, on their face, barred by the six-year statute of limitations found in 28 U.S.C. § 2401(a).

[4] Plaintiffs, as masters of their Complaint, chose to plead Count II as a request for programmatic NEPA analysis on eight purported programs. *See* Pls.' Br. 22 ("Of course, Plaintiffs could have, in the alternative, listed all 88 actions separately in the Amended Complaint as individual violations of NEPA."). That Plaintiffs now rely on a bulleted list, attached to an exhibit several hundreds of pages into their Amended Complaint further supports Federal Defendants' position that Count II fails to properly state a claim. In light of Plaintiffs' new position, Federal Defendants will consider a motion to dismiss under Rule 8(a)(2), if necessary.

1     *Lujan* made plain that courts will not allow broad programmatic attacks on an

2    agency's operations or policy when those attacks fail to properly allege a discrete, final

3    agency action under the APA.  *See SUWA,* 542 U.S. at 65.  Plaintiffs' argument that they

4    are challenging some combination of eight "programs" and 86 regulations and

5    memoranda is exactly the type of argument the Court rejected in *Lujan*.  In *Lujan*, the

6    plaintiffs challenged the Bureau of Land Management's ("BLM") "land withdrawal

7    review program."  *Lujan,* 497 U.S. at 877-79.  The alleged program covered all BLM

8    activities performed under the Federal Land Policy and Management Act of 1976

9    ("FLPMA").  *Id.* at 877.  Included in this purported program challenged by plaintiffs was

10    approximately "1,250 individual decisions" by BLM, including orders and directives.  *Id.*

11    at 885-886 ("the Peterson affidavit . . . refer[s] to . . . the BLM orders listed . . . at 49

12    Fed.Reg. 19904-19905 (1984) [and] the Erman affidavit refers to the BLM order listed . .

13    . at 47 Fed.Reg. 7232-7233 (1982)").  Despite the references to individual agency actions

14    in these affidavits, the Court found that the plaintiffs' claim failed because the plaintiffs

15    challenged "the continuing (and thus constantly changing) operations of the BLM in

16    reviewing withdrawal revocation applications and the classifications of public lands and

17    developing land use plans as required by the FLPMA."  *Id.* at 890.  *Lujan* "makes clear

18    that this prohibition [on programmatic challenges] is motivated by institutional limits on

19    courts which constrain . . .  review to narrow and concrete actual controversies."  *Sierra*

20    *Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000).

21         Just as the plaintiffs in *Lujan* challenged the "land withdrawal review program,"

22    Plaintiffs here are challenging "employment based immigration," "long term

23    nonimmigrant visas," and "refugees," to name three of the eight challenges in Count II.

24    The alleged program in *Lujan* included approximately 1,250 individual agency decisions,

25    and here Plaintiffs challenge some combination of eight areas of immigration authority

26    and 86 regulations and memoranda.  Plaintiffs' attempt to frame Count II as a

27    § 706(2)(A) claim fails, just as the plaintiffs in *Lujan* failed.  *See SUWA*, 542 U.S. at 65

28

("The plaintiffs in [*Lujan*] would have fared no better if they had characterized [their claim] in terms of 'agency action unlawfully withheld' under § 706(1), rather than agency action 'not in accordance with law' under § 706(2).").

Further underscoring Count II's failure to state a cognizable claim, Plaintiffs do not understand the relief NEPA prescribes for the violations they have pled.  In the NEPA context, when a court finds that federal actions constitute a program because they "are related to each other closely enough to be, in effect, a single course of action," 40 C.F.R. § 1502.4(a), a PEIS is the *necessary* remedy.  *See Found. on Econ. Trends v. Lyng*, 817 F. 2d 882, 884 (D.C. Cir. 1987).  This is true regardless of whether the claim is under 5 U.S.C. § 706(1) or § 706(2)(A).  Plaintiffs devote several pages of their brief attempting to persuade the Court that the "eight categories of DHS authority [in Count II] constitute 'programs'" under 40 C.F.R. § 1508.18(b)(3).  Pls.' Br. 14-16.  To support their position, Plaintiffs cite to four cases.  Pls.' Br. 15-16.  Plaintiffs then assert that, after the Court finds these eight categories constitute programs, Count II should survive Federal Defendants' Motion because "the Amended Complaint does not seek a Court order compelling DHS to specifically prepare a PEIS.  Rather, Plaintiffs seek to compel DHS to initiate *some* form of NEPA review."  *Id*. at 24.

Plaintiffs cannot escape the controlling precedent from the Supreme Court's rulings in *Lujan, SUWA*, and *Kleppe*.  If the Court finds that the eight categories constitute a program under 40 C.F.R. § 1508.18(b)(3), the *necessary* remedy is a PEIS. *All* of the cases cited by Plaintiffs support this position; a finding of a program requires a PEIS.  *See Lyng*, 817 F. 2d at 884; *Sierra Club v. Watkins*, 808 F. Supp. 852, 863 (D.D.C. 1991); *Friends of the Earth, Inc. v. Mosbacher*, 488 F. Supp. 2d 889, 911 (N.D. Cal. 2007); C*itizens for Better Forestry v. U.S. Dep't. of Agric*., 481 F. Supp. 2d 1059, 1085 (N.D. Cal. 2007).  Plaintiffs pled Claim II as a failure to act claim, but now request the Court construe it as a § 706(2)(A) claim.  Plaintiffs ask the Court to rely on a bulleted list of 86 regulations and memoranda buried in an attachment to an exhibit rather than the

text of the Amended Complaint.  And now, Plaintiffs ask the Court to find that the eight categories of DHS authority that are pleaded in their complaint constitute programs, but assert that they do not ask for the form of relief that such a finding would dictate under NEPA.  Such arguments do not reflect a properly pled claim that withstands a Rule 12(b)(6) motion.

### C. Plaintiffs' Challenge to DACA is Unreviewable under NEPA

Plaintiffs fail to address Federal Defendants' argument that review of DACA is exempted from NEPA.  Plaintiffs do not discuss the applicable regulation, 40 C.F.R. § 1508.18(a), which excludes from NEPA review decisions "bringing judicial or administrative civil or criminal enforcement actions."  Plaintiffs do not attempt to distinguish the six cases cited in Federal Defendants' Motion where courts have applied NEPA's law enforcement exemption, found it to be similar to the APA's bar on reviewing matters of prosecutorial discretion, and generally held that to ignore this exemption for law enforcement actions "would lead to a highly impractical result in which any decision of a law enforcement agency—whether to go forward with an action or forbear from action—would require a NEPA analysis."  *United States v. Glenn-Colusa Irrigation Dist.*, 788 F. Supp. 1126, 1135 (E.D. Cal. 1992).

Plaintiffs' only argument is that DACA is "a program under the CEQ guidelines" and that "[u]nder NEPA, it is immaterial whether the program is adopted pursuant to statute or executive directive."  Pls.' Br. 24-25.  Plaintiffs wholly ignore 40 C.F.R. § 1508.18(a) and its explicit exemption of such activities from *all* NEPA review, programmatic or otherwise.  As Plaintiffs have waived any argument to the contrary, the Court should dismiss Plaintiffs' challenge to DACA.

### III.   <u>CONCLUSION</u>

For the reasons outlined herein and in Federal Defendants' Motion to Dismiss, the Court should dismiss Counts I and II of the Amended Complaint.

DATED:  March 7, 2018                    Respectfully submitted,

10                                                       Case No. 3:16-cv-2583

1

2          JEFFREY H. WOOD
           Acting Assistant Attorney General
3          United States Department of Justice
           Environment & Natural Resources Division
4

5          Edward J. Passarelli, VA Bar No. 16212
           Deputy Chief
6          Natural Resources Section

7

8          Stacey Bosshardt, DC Bar No. 458645
           Assistant Section Chief
9          Natural Resources Section

10

11         By   */s/ S. Derek Shugert*_____
           S. DEREK SHUGERT
12         Trial Attorney, Natural Resources Section
           Post Office Box 7611
13         Washington, D.C. 20044-7611
           Tel:  (202) 514-9269
14         Fax:  (202) 305-0506
           E-mail:  shawn.shugert@usdoj.gov
15

16         *Attorneys for Federal Defendants*

17

18

19

20

21

22

23

24

25

26

27

28