# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER DRAW NATURAL RESOURCE CONSERVATION DISTRICT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIRSTJEN NIELSEN, Secretary of Homeland Security, *et al.*, <br><br> Defendants. | Case No.: 3:16-cv-02583-L-BLM <br><br> **ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS** |

Pending before the Court in this administrative review action is Defendants' motion to dismiss two of the five causes of action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs filed an opposition, and Defendants replied. This matter is submitted on the briefs without oral argument. For the reasons stated below, Defendants' partial motion to dismiss is **GRANTED**.

/ / / / /

1

# I. BACKGROUND

Plaintiffs, various groups based in Arizona, California, New Mexico, and Florida, an informal organization of scientists and two individuals filed this action to oppose immigration and address environmental issues arising from immigration. (*See* First Amended Complaint ("FAC") at 15-40.) They allege that Defendants Kirstjen Nielsen, Secretary of Homeland Security, and the United States Department of Homeland Security (collectively "DHS") violated the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.* ("NEPA"), and corresponding regulations. NEPA requires federal agencies to identify environmental impacts of proposed actions, consider alternatives or mitigating measures capable of lessening the impact on the environment, and prepare a report detailing these considerations. *See* 42 U.S.C. § 4332. NEPA established the Council on Environmental Quality ("CEQ"), which promulgates regulations guiding agency compliance with NEPA's mandates. *Id.* CEQ regulations provide that an agency's environmental report may take the form of an Environmental Assessment ("EA"), Environmental Impact Statement ("EIS"), or a Finding of No Significant Impact. *See* 40 C.F.R. §§ 1508.9, 1508.11, 1508.13. Plaintiffs allege that immigration is a major cause of population growth with a significant impact on the environment. They claim that the DHS is required to subject all proceedings having to do with immigration to a NEPA analysis, and its failure to do so harmed Plaintiffs by degrading the environment. (FAC at 42.)

NEPA itself does not provide for judicial review. Plaintiffs therefore brought suit pursuant to the Administrative Procedure Act, 5 U.S.C. § 101 *et. seq*. ("APA"), which provides for judicial review of certain agency actions. Specifically, they bring suit under 5 U.S.C. § 706(2)(A), which provides that a reviewing court must "hold unlawful and set aside agency actions, findings, and conclusions" which it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"

/ / / / /

DHS moves to dismiss Count I and Count II of the first amended complaint. Count I alleges that the DHS Instruction Manual on the implementation of NEPA procedures ("Manual") violates NEPA because it does not require that immigration programs comply with it.  (FAC at 71.)  Count II alleges that the DHS violated NEPA by failing to engage in NEPA review with respect to actions pursuant to seven immigration statutes pertaining to employment based immigration, family based immigration, long term nonimmigrant visas, parole, Temporary Protected Status, refugees, and asylum, and because the DHS did not initiate NEPA compliance with regard to the immigration non-enforcement policy known as Deferred Action for Childhood Arrivals ("DACA").  (*Id.* at 73.)

## II.    **DISCUSSION**

DHS moves to dismiss Count I for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and Count II for failure to state a claim under Rule 12(b)(6). However, Rule 12(b)(6) applies to this motion as to both counts.  Although Defendants characterize the lack of finality of the Instruction Manual challenged in Count I as a jurisdictional issue, "the fact that an agency decision is not final under the APA is not a defect in subject matter jurisdiction." *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002), *abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, (2008), *as recognized in Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010).  The motion is therefore considered under Rule 12(b)(6) as to both counts.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See N. Star Int'l v. Ariz. Corp. Comm'n*., 720 F.2d 578, 581 (9th Cir. 1983). The Court may dismiss a complaint as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).  The Court must assume the truth of all factual allegations in the complaint and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.,* 298 F.3d 893, 895 (9th Cir. 2002).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Instead, the allegations "must be enough to raise a right to relief above the speculative level." *Id.*

Unless "agency action is committed to agency discretion by law, the APA allows for judicial review: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. §§ 701(a)(2), 702. Not every agency action is subject to judicial review. When, as here, the underlying statute does not provide adequate remedy in court, a "final agency action" is reviewable. *Id.* § 704. The scope of judicial review is limited to "compel[ling] agency action unlawfully withheld or unreasonably delayed; and [¶] hold[ing] unlawful and set[ting] aside" certain kinds of agency actions, findings, and conclusions. *Id.* § 706.

### A.  **Count I**

Plaintiffs argue that the Manual is subject to judicial review as final agency action under 5 U.S.C. 704, which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(2)(A). The parties disagree whether the Manual represents final agency action. A two-part test determines whether an agency action is final under the APA: "[f]irst, the action must mark the consummation of the agency's decisionmaking process . . . [a]nd second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted). The focus is "on the practical and legal effects of the agency action." *Or. Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir. 2006). "It is the

/ / / / /

effect of the action and not its label that must be considered." *Id.* at 985 (internal quotation marks and citation omitted).

An agency action qualifies as the "consummation of the agency's decisionmaking process" when it represents the agency's "last word in the matter" in the sense that "an action is final and is ripe for judicial review," as opposed to "merely tentative or interlocutory in nature." Id. at 984 (internal quotation marks and citations omitted). For example, the Forest Service annual operating instructions issued to the holders of cattle-grazing permits satisfied prong one of *Bennett* because they set "the parameters for the upcoming grazing season and . . . impose[d] legal consequences on the [grazing] permit holder." *Id.* at 983; *see also id.* at 986. The grazing permits by themselves were not enough. *See id*. at 985. As provided in the permits, the holders were subject to terms and conditions, including the Forest Plan and federal environmental requirements. *Id.* The annual operating instructions instructed the permit holders how those standards affected their individual grazing operations that season, including the start date of grazing in the area and how much grazing particular pastures in a given allotment can sustain that season. *Id*. at 984, 985. Although the Forest Service had issued permits, the annual operating instructions consummated its decisionmaking process regarding the extent, limitation and other restrictions on the permit holders' rights under the permit. *Id*. at 986.

By contrast, the Manual does not represent the DHS' final decision regarding NEPA review. It establishes the procedures for ensuring DHS' compliance with NEPA. *See* 79 Fed. Reg. 70,538, 70,538 (Nov. 26, 2014). The Manual informs agency employees of what to consider in evaluating a program under NEPA, provides guidance on which DHS actions NEPA applies to, and sets forth procedures for NEPA's implementation. (FAC Ex. 2 at 20, 40, 37.) It does not make any decision. It is a "decision-making tool" to be used "prior to making decisions." (*Id.* at 19.) The Manual therefore does not meet the first prong of *Bennett*. For this reason alone, the Manual is not "final agency action," and Count I is dismissed on this ground.

Alternatively, Count I is dismissed because it also does not meet the second prong of *Bennett*. An agency action meets the second prong "if the action is one by which rights or obligations have been determined, or from which legal consequences will flow." *Or. Natural Desert Assoc.,* 465 F.3d at 986 (quoting *Bennett,* 520 U.S. at 178). There are "several avenues" for meeting this element, including when administrative actions "impose an obligation, deny a right, or fix some legal relationship as a consummation of administrative process," or have "a direct and immediate effect on the day-to-day business of the subject party" or have "the status of law or comparable legal force, and whether immediate compliance with its terms is expected." *Id.* at 986-87 (internal quotation marks, ellipses and citations omitted.) In *Bennett* an agency opinion regarding the impact of a proposed reservoir project on endangered fish met this element because, although it did not conclusively determine how the project would be carried out, it altered the legal regime by authorizing the agency to take endangered species only if it complied with conditions set forth in the opinion. *Bennett*, 520 U.S. at 178. In *Oregon Natural Desert Association* the annual operating instructions met this element because they were binding on the permit-holders: if the permit-holders did not comply with the terms of the annual operating instructions, the agency could restrict their permits. 465 F.3d at 987.

Here, the Manual does not impose any obligations or consequences on the DHS that are not already imposed by NEPA itself, but only provides a procedural framework for compliance without imposing consequences for violating the Manual's guidelines. (*See generally* FAC Ex. 2.) Any legal consequences are set forth in NEPA, provided that failure to follow the Manual's provisions also violated NEPA. Accordingly, the Manual does not meet the second requirement of *Bennett's* "final agency action" definition.

Alternatively, Plaintiffs contend that the Manual qualifies as a rule under 5 U.S.C. § 551(4). Section 551(13), which defines "agency action" includes "agency rule" as an example of agency action; however, it does not define "final agency action." The definition of "final agency action" is set forth in *Bennett*. For the reasons stated above,

the Manual does not meet the definition of final agency action.  The APA therefore does not provide for judicial review.  Defendants' motion to dismiss Count I is granted.

### B. Count II

In Count II, Plaintiffs seek judicial review of seven immigration statutes pertaining to employment based immigration, family based immigration, long term nonimmigrant visas, parole, Temporary Protected Status, refugees, and asylum, and DACA, an immigration non-enforcement policy of the DHS.  Plaintiffs seeks review under 5 U.S.C. § 706(2)(A), which allows review of final agency action which is "found to be [¶] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and 5 U.S.C § 706(1), which may apply to "compel agency action unlawfully withheld or unreasonably delayed."  Plaintiffs proceed on the theory that the seven statutes and the non-enforcement policy are subject to judicial review because they are "programs" requiring "programmatic environmental analysis," such as PEIS under 40 C.F.R. § 1508.18(b)(3).  (*See* FAC at 73.)

As with Court I, only a "final agency action" is subject to judicial review and remedy.  *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 882 (1990); *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004); 5 U.S.C. §§ 702, 704, 706.  To state a claim, Plaintiffs must show that they are challenging an "agency action."  *See Lujan*, 497 U.S. at 882, 890-91.  In addition to being "final," the action must be "circumscribed," "discrete," or "particular."  *Norton*, 542 U.S. at 62; *Lujan,* 497 U.S. at 891.  This limitation "precludes . . . broad programmatic attack[s.]"  *Norton,* 542 U.S. at 64.  Plaintiffs "cannot seek *wholesale* improvement of [a government] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made."  *Lujan,* 497 U.S. at 891(emphasis in original).  These limitations are the same, whether APA review is sought under 5 U.S.C. § 706(2)(A) or § 706(1).  *Norton,* 542 U.S. at 64-65.

/ / / / /

What Plaintiffs propose here is broad programmatic review of DHS actions under seven immigration statutes and a non-enforcement policy relative to its NEPA obligations. This is precisely the type of APA review that was rejected in *Lujan* as not constituting the requisite "final agency action." *See* 497 F.3d at 890-94. Plaintiffs target whole categories of DHS actions, each of which includes many regulations and policy memoranda. (FAC Ex. 3 at 109-26; Opp'n at 19-21.) Although Plaintiffs identified regulations within these categories, as in *Lujan*, they are still challenging the continuing and evolving operations of the DHS. Further, the claim that DHS failed to engage in NEPA review arises from an alleged "general deficiency in compliance," similar to the challenges found lacking in *Lujan* and *Norton*.

Plaintiffs do not seek review of an "agency action" because they seek review of entire operations which are "continuing (and thus constantly changing)." *Lujan*, 497 U.S. at 890 & n.2. Much less are these DHS operations final in terms of being ripe for judicial review. "[T]he flaws in the entire 'program'-consisting principally of the many individual actions . . . and presumably actions yet to be taken as well-cannot be laid before the courts for wholesale correction under the APA[.]" *Id.* at 892-93. Judicial review under the APA is limited to "final agency action," which typically requires "case-by-case approach." *Id.* at 894. The "sweeping actions" Plaintiffs desire "are for the other branches." *Id.* Accordingly, DHS operations under seven immigration statutes and DACA are not reviewable under the APA.

Alternatively, Plaintiffs maintain that the seven immigration statutes and DACA are "programs" under 40 C.F.R. § 1508.18(b)(3), which requires the DHS to prepare a PEIS. However, the decision whether a set of agency actions is a "program" for which NEPA analysis is required is left to the agency's discretion. *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976). A court cannot order an agency under the APA to perform a discretionary act. *Norton,* 542 U.S. at 63-64. A court can only compel a legally required,
/ / / / /

non-discretionary act. *Id.* Judicial review of DHS' determination not to conduct a PEIS is therefore not appropriate. Defendant's motion is therefore granted at to Court II.

## C. Leave to Amend

Finally, the Court considers whether Plaintiffs should be granted leave to amend Counts I and II. *See Ebner v. Fresh, Inc.,* 838 F.3d 958, 963 (9th Cir. 2016). Rule 15 advises leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is not appropriate unless it is clear the complaint cannot be saved by amendment. *See id.* Because amendment of Claims I and II would be futile, leave to amend is denied.

## III. CONCLUSION

Defendant's motion for partial dismissal is granted. Counts I and II are dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: September 30, 2018

_____
Hon. M. James Lorenz
United States District Judge

9