Julie B. Axelrod
California Bar. No. 250165
Center for Immigration Studies
1629 K Street, NW, Suite 600
Washington, D.C. 20006
Telephone: (703) 888-2442

Lesley Blackner
Admitted *Pro Hac Vice*
Florida Bar No. 654043
340 Royal Poinciana Way, Suite 317-377
Palm Beach, FL 33480
Telephone: (561) 659-5754

James P. Miller
California Bar No. 188266
Law Office of JP Miller Jr.
181 Rea Ave, Suite 101
El Cajon, CA 92020
Telephone: (619) 590-0383

## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

WHITEWATER DRAW
NATURAL,
RESOURCE CONSERVATION
DISTRICT *et al*,

        Plaintiffs,

    v.

KEVIN MCALEENAN, *et al.*,

        Defendants.

Case No. 3:16-cv-2583

**PLAINTIFFS' MEMORADUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' CROSS MOTION AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Date: Filed Pursuant to Briefing Schedule, ECF No. 74
No Oral Argument Unless Requested by the Court

Hon. M. James Lorenz

Case No: 3:16-CV-2583

# TABLE OF CONTENTS

I)     Introduction ............................................................................................ 1

II)    Argument ................................................................................................ 1

    A)     Plaintiffs did not waive their right to bring this challenge. ....................... 1

    B)     Plaintiffs' claims are not barred by the statute of limitations.................... 2

    C)     CATEX A3 is arbitrary and capricious........................................................ 2

        1)     There is no record evidence of any NEPA review considering
            population growth for CATEX A3 on its face or as applied. ........ 2

        2)     CATEX A3 is not properly defined. .................................................. 5

        3)     Defendant's attempt to disavow scoping is unavailing. .................. 7

    D)     Plaintiffs have standing under NEPA for their claims. ............................. 9

        1)     Standard of review for standing in NEPA cases. ........................... 9

        2)     Plaintiffs' claims clear the bar for standing in NEPA cases........ 11

    E)     Defendant disavows positions crucial to prevailing in dismissal of Count
       I................................................................................................................. 16

III)   Conclusion ............................................................................................. 20

CASE NO: 3:16-cv-2583

# TABLE OF AUTHORITIES

## Cases

*Alaska Center for Environment v. United States Forest Service*
189 F.3d 851 (9th Cir. 1999) ............................................................. 5

*Cantrell v. City of Long Beach*
241 F.3d 674 (9th Cir. 2001) ............................................................. 10

*Citizens for Better Forestry v. United States Department of Agriculture*
481 F. Supp. 2d 1059 (N.D. Cal. 2007) ........................................ 5, 6, 16

*Citizens for Better Forestry v. United States Department of Agriculture*
123 F.3d 1142 (9th Cir. 1997) .......................................................... 15

*City of Carmel-By-The-Sea v. United States Department of Transportation*
521 F.2d 661 (9th Cir. 1975) ............................................................ 15

*City of Davis v. Coleman*
521 F.2d 661 (9th Cir. 1975) ............................................................ 15

*Committee to Save the Rio Hondo v. Lucerno*
103 F.3d 445 (10th Cir. 1996) .......................................................... 10

*Department of Transportation v. Public Citizen*
541 U.S. 751 (2004) .......................................................................... 1

*Ecological Rights Fund v. Pacific Lumber Co.*
230 F.3d 1141 (9th Cir. 2000) .......................................................... 10

*Friends of the Earth, Inc. v. Laidlaw*
528 U.S. 167 (2000) ....................................................................... 9, 10

*Hall v. Norton*
266 F.3d 969 (9th Cir. 2001) ............................................................ 10

*Illio'ulaokalani Coalition v. Rumsfeld*
464 F.3d 1083 (9th Cir. 2006) ........................................................... 2

*Laguna Greenbelt, Inc. v. United States Department of Transportation*
    42 F.3d 517 (9th Cir. 1994)........................................................................ 15

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ........................................................................ 9, 11, 15

*Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance*
    463 U.S. 29 (1983) .................................................................................... 3

*New Hampshire v. Maine*
    532 U.S. 742 (2001) ................................................................................ 17

*Ocean Advocates v. United States Army Corps of Engineers*
    361 F.3d 1108 (9th Cir. 2004) ........................................................... 10, 15

*Pegram v. Herdrich*
    530 U.S. 211 (2000) ................................................................................ 16

*Public Citizen v. Department of Transportation*
    316 F.3d 1002 (9th Cir. 2003) ................................................................ 10

*Sierra Club v. Bosworth*
    510 F.3d 1016 (9th Cir. 2007) ......................................................... 5, 8, 9

*Sierra Club v. Dombeck*
    161 F. Supp. 2d 1052 (D. Ariz. 2002) ...................................................... 3

*United States v. McCaskey*
    9 F.3d 368 (5th Cir. 1993).................................................................... 20

*West v. Secretary of Department of Transportation*
    206 F.3d 920 (2000).................................................................................. 5

**Statutes**

42 U.S.C. §4331................................................................................................ 1

42 U.S.C. §4331(a) .......................................................................................... 1

**Regulations**

40 C.F.R. §1501.7 ......................................................................................... 8

40 C.F.R. §1508.8(b) ................................................................................... 14

40 C.F.R. §1508.21 ....................................................................................... 8

80 Fed. Red. 23,680 (Apr. 29, 2015) ....................................................... 4, 7

81 Fed. Red. 13,040 (Mar. 11, 2016) ...................................................... 4, 7

81 Fed. Reg. 82,398 (Nov. 18, 2016) ...................................................... 4, 7

82 Fed. Reg. 5,238 (Jan. 17, 2017) .......................................................... 4, 7

83 Fed. Reg. 24,905 (May 31, 2018) ........................................................... 4

84 Fed. Reg. 888 (Jan. 31, 2019) ................................................................ 4

**Other Authorities**

*Administrative Record for the Categorical Exclusions*
(last visited June 16, 2017)
https://www.dhs.gov/sites/default/files/publications/Mgmt_NEPA_AdminRecdetailedCATEXsupport_0.pdf ........................................................... 3, 4, 17

8 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477
............................................................................................................ 16

Connaughton, James L. *Department of Homeland Security NEPA Procedures*,
(last visited June 16, 2019)
https://www.dhs.gov/sites/default/files/publications/Mgmt_NEPA_CEQConformityLetter_20060324_0.pdf ............................................................ 18

*Instruction Manual 023-01-001-01, Revision 01, Implementation of the National Environmental Policy Act (NEPA)*
(last visited June 16, 2019)
https://www.dhs.gov/sites/default/files/publications/DHS_Instruction%20Manual%20023-01-001-01%20Rev%2001_508%20Admin%20Rev.pdf ......7, 9,12-13, 17-20

## Introduction

The Department of Homeland Security and the Secretary of Homeland Security ("DHS" or Defendant) claim that Plaintiffs have a broad policy dispute with DHS regarding immigration law. This is untrue. Plaintiffs bring this case to enforce their rights for informed decision-making under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4331 *et seq.*: they are asking for a change in procedure, not substance. There is nothing "attenuated" from the primary purpose of NEPA than informed decision-making about the federal policies that drive population growth in the United States. Defendant's declaration that the environmental impacts caused by immigration are "attenuated" ignores the plain fact that population growth is the first environmental impact of Congressional concern addressed in NEPA, 42 U.S.C. §4331(a), and population growth in the United States has been primarily caused by immigration for the past several decades. (*See* Am. Comp. Ex. 4 at 183.) By failing to consider the consequences of its actions adding to the population of the United States, DHS has failed to conduct informed decision making on the very topic Congress directed all agencies to consider when it passed NEPA fifty years ago.

## II.    Argument

### A) Plaintiffs did not waive their right to bring this challenge.

Defendant incorrectly asserts that Plaintiffs have waived their rights to challenge CATEX A3 and the EA/FONSI at issue in Counts III, IV, and V because they did not comment during the comment period for these actions. (Mem. in Supp. of Defs.' Cross-Mot. for Summ. J. ("Def. Br.") at 15, ECF No. 71-1.) Defendant's cited Supreme Court and Ninth Circuit precedent does not provide that citizens must have commented on their specific concerns regarding an agency's NEPA procedures before challenging any arbitrary and capricious aspect of those procedures. "[T]he agency bears the primary responsibility to ensure that it complies with NEPA." *Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752 (2004). The Ninth Circuit is clear that it "has

declined to adopt a broad rule which would require participation in agency proceedings as a condition precedent to seeking judicial review of an agency decision." *Illio'ulaokalani Coalition v. Rumsfeld*, 464 F.3d 1083, 1092 (9th Cir. 2006). Plaintiffs have not waived their right to bring these claims. Defendant's cited cases refer only to disputes over specific and non-obvious points of agency review regarding an actual environmental analysis of a final federal action that was actually conducted. The instant action is particularly inapposite to Defendant's cited precedent because DHS's blindspot to the effects of its immigration mission is so comprehensive that the agency neglected to do any NEPA analysis of any kind at any time in connection with the challenged actions.

**B) Plaintiffs' claims are not barred by the statute of limitations.**

Defendant objects that Count III of the Amended Complaint, a facial challenge to CATEX A3, is barred by the APA's six-year statute of limitations. (Def. Br. at 15-16.) Defendant asserts that CATEX A3 was promulgated in 2006, and the statute of limitations ran before the instant action was filed in 2016. However, CATEX A3 is part of the NEPA Guidance Manual promulgated in 2014. Moreover, Defendant admits and acknowledges that CATEX A3 was indeed promulgated in 2014 as part of the large NEPA procedures. (*See* Def. Br. at 15.) Defendant's assertions to the contrary two paragraphs later is baseless. Plaintiffs' claim is timely brought.

**C) CATEX A3 is arbitrary and capricious.**

**1) There is no record evidence of any NEPA review considering population growth for CATEX A3 either on its face or as applied.**

Glaringly, the instant Administrative Record compiled by DHS does not include *any record evidence documenting any assessment of even minimal analysis of "impacts to the human environment" by DHS in connection with the actions challenged by Plaintiffs in the instant case.* Yet DHS claims that, with respect to its immigration related actions, it did in fact "determine and conduct the appropriate level of NEPA actions at the time they are

proposed." (Def. Br. at 20.) To reiterate, *absolutely* no record evidence in the instant administrative record substantiates this key assertion by Defendant. "It is well established that an agency's decision must be supported by the administrative record." *Sierra Club v. Dombeck,* 161 F. Supp. 2d 1052, 1070 (D. Ariz. 2002) (citing *Motor Vehicle Mfgs. Ass'n v. State Farm Mutual Auto. Ins.*, 463 U.S. 29, 43, 103 (1983)). Thus, each of Defendant's unsupported assertions regarding its NEPA compliance for CATEX A3 is clearly arbitrary and capricious because they have *no* record support.[1]

This key point goes to the heart of the instant action's gravamen that DHS has a blindspot regarding the application of NEPA to discretionary actions relating to the entry and settlement of foreign nationals into the United States. And, contrary to DHS's claim, the instant administrative record does indeed establish that DHS promulgated the vast majority of its immigration related actions without engaging in any NEPA analysis at all, not even with citation to a categorical exclusion. The instant administrative record includes no evidence that DHS even considered the applicability of NEPA to its immigration related actions until commenters, in their public comments on the four actions at issue in Count IV, demanded that DHS connect the immigration-population-environment dots with NEPA review. When confronted with public comments demanding NEPA review for those actions challenged in Count IV,

---

[1] Although Defendant represented to Plaintiffs that they supplied the administrative record prior to Plaintiffs' Motion for Summary Judgment, Defendant's Cross Motion for Summary Judgment refers to documents that were not included in the Administrative Record produced to Plaintiffs. These documents include DHS's "Administrative Record for Categorical Exclusions," available at https://www.dhs.gov/sites/default/files/publications/Mgmt_NEPA_AdminRecdetailedCATEXsupport_0.pdf  The documents produced only upon Defendant's Cross Motion for Summary Judgment are likewise devoid of support that DHS considered impacts to the human environment through its actions that had the potential to increase the population.

DHS responded by determining that such rules are covered by DHS CATEX A3. 80 Fed. Reg. 23,680 (Apr. 29, 2015); 81 Fed. Reg. 13,040 (Mar. 11, 2016); 81 Fed. Reg. 82,398 (Nov. 18, 2016); 82 Fed. Reg. 5,238 (Jan. 17, 2017). DHS's stated reasoning for why the actions had no significant environmental impacts, was that they fit CATEX A3. That is, these actions had no environmental impacts because they were the type of actions that had no environmental impacts. Such "reasoning" is circular.

DHS's "Administrative Record for Categorical Exclusions"[2] reveals that CATEX A3 is the *only* invocation of NEPA that DHS has *ever* utilized in connection with its actions administering/regulating the entrance and settlement of foreign nationals into the United States.[3] DHS's "Administrative Record for Categorical Exclusions" confirms that  DHS grounded its conclusion that the activities covered by CATEX A3 have no potential to impact the human environment solely on the basis of the experience of the staff of DHS's legacy agencies, yet failed to *include those agencies concerned with the administration/regulation of immigration laws.*[4]  Admin. R. for Cat. Ex. at 8.  Despite the absence of any staff from the legacy agency concerned with immigration providing review of the categorical exclusion, DHS considers it "broad enough to be used by any DHS component," *including DHS components that administer immigration.* (Def. Br. at 19.) Furthermore, based on the content of all of the other 151 categorical exclusions adopted by DHS, CATEX A3 is the only categorical exclusion

---

[2] https://www.dhs.gov/sites/default/files/publications/Mgmt_NEPA_AdminRecdetailedCATEXsupport_0.pdf
[3] A review by Plaintiffs has shown that in the time since Plaintiffs filed this case, DHS has indeed continued to invoke CATEX A3 and only CATEX A3 in its actions relating to the administration of immigration. *See* 83 Fed. Reg. 24,905 (May 31, 2018); 84 Fed. Reg. 888 (Jan. 31, 2019).
[4] https://www.dhs.gov/sites/default/files/publications/Mgmt_NEPA_AdminRecdetailedCATEXsupport_0.pdf

Case No: 3:16-CV-2583

that could "fit" DHS's immigration related rules. Therefore, the Plaintiffs, whose affidavits substantiate the harm they experience from by immigration related effects of population growth, challenge the categorical exclusion that enables this harm.

Plaintiffs do not take the position, as Defendant argues, that DHS intended when it adopted CATEX A3, to specifically cover the "entire scope of its myriad actions governing the administration of the nation's immigration laws." (Def. Br. at 19.) Rather, Plaintiffs assert that CATEX A3 broad enough for DHS to invoke for any category of action. Plaintiffs assert that DHS utilized CATEX A3 in an impermissible post hoc manner in response to public comments on the four actions at issue in Count IV.

DHS justifies its use of CATEX A3 for actions that have the potential to cause population growth by throwing the burden to Plaintiffs to determine whether easing immigration program requirements will actually lead to population increase, claiming that the courts are not competent to make such determinations. (*See* Def. Br. at 10-11.) Requiring Plaintiffs to carry this burden is inappropriate under NEPA. The agency is responsible for creating a process that ensures actions with the potential for environmental impacts are examined. "The Ninth Circuit has held that in evaluating an agency's use of a CE, the issue is not only whether the project will cause significant environmental impacts, but "whether the path taken to reach the conclusion was the right one in light of NEPA's procedural requirements." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 481 F. Supp 2d 1059, 1086 (N.D. Cal. 2007) (quoting *West v. Sec'y of Dep't of Transp.,* 206 F.3d 920, 929 (2000)).

**2) CATEX A3 is not properly defined.**

"No Ninth Circuit case involving invocation of a CE, that was upheld on appeal, involved broad, far-reaching, programmatic actions…" *Citizens for Better Forestry,* 481 F. Supp. 2d at 1087. *See also Sierra Club v. Bosworth*, 510 F.3d 1016 (9th Cir. 2007); *Alaska Ctr. For Env't v. U.S. Forest Service*, 189 F.3d 851, 859 (9th Cir. 1999).

Case No: 3:16-CV-2583

CATEX A3 is itself impermissibly "broad [and] far reaching." *Citizens for Better Forestry*, 481 F. Supp. 2d at 1087. Defendant, in arguing that CATEX A3 is properly defined, inadvertently reaffirms just how broad CATEX A3 is, and how it could be applied post hoc to practically any situation where DHS wants to evade NEPA analysis. Defendant admits that CATEX A3 "can be used by *any* DHS component for *any* qualifying rule" (Def. Br. at 20, emphasis added.) CATEX A3 is not merely "susceptible" to erroneous application, or "possible" to envision it being applied to an improper scenario. (Def. Br. at 17.) CATEX A3 is so broad and vague that it is untethered from any limiting principle or application at all and thus allows DHS to evade its statutory obligation under NEPA to engage in environmentally informed decision-making for nearly *every* possible scenario merely by invoking it.

Defendant claims that CATEX A3 is properly defined because "it identifies a class of actions," and then identifies "examples." (Def. Br. at 16-17.) The "class of actions" (rules, interpretations, policies, orders, directives, notices, manuals, advisory circulars, and other guidance documents) consists of a list of every kind of major action an agency does. *Id.* The examples, far from being "specific" as claimed by Defendant, are as broad as the classes of actions themselves. One of the "examples" (CATEX A3(a)) is actions of "strictly administrative or procedural nature." Another is actions that "interpret or amend an existing regulation without changing its environmental effect." CATEX A3(d). Both classes are entirely amorphous.

DHS's NEPA procedures nowhere define what "administrative" or "procedural" actions are, and therefore DHS provides no hint at any sort of limiting principle for CATEX A3(a). Literally anything done or promulgated by DHS, which is an administrative agency, can be described as "administrative." Any procedural action or DHS undertakes can be described as "procedural." Despite its claim that "administrative" is properly defined, DHS does not attempt to define it in its brief. There is nothing to limit DHS from using it as a "catch all" rule to capture

conceivably any significant action it takes without conducting any initial NEPA review. DHS's use of CATEX A3 to cover its immigration related actions proves that this is indeed what DHS has done.

CATEX A3(d), "Those that interpret or amend an existing regulation without changing its environmental effect;" is also improperly defined in that it has no substance at all, but rather constitutes a tautology. Its tautological nature is only highlighted by DHS's argument that "by its own terms, CATEX A3(d) cannot be used for actions with environmental effects." (Def. Br. at 22.) When DHS actually cites CATEX A3(d), it states that its actions have no environmental effects because they fit into CATEX A3(d). 80 Fed. Reg. 23,688; 81 Fed. Reg. 13,117; 82 Fed. Reg. 5,284; 81 Fed. Reg. 82,475. There is nothing stopping DHS from invoking it for *any* regulatory update, because, according to DHS, once invoked, it cannot be questioned since the point of a categorical exclusion is to "reduce paperwork." (Def. Br. at 23.) By this same reasoning, DHS, or any other agency, could adopt a categorical exclusion that states "any rule that does not have a significant impact on the environment," and then simply invoke that rule for every rulemaking action it undertakes.

Defendant claims that the broadness of CATEX A3 is acceptable because categorical exclusions have the "extraordinary circumstances" provision which provides a "safety valve" to preventing abuse by identifying conditions where the application of a categorical exclusion would be improper. (Def. Br. at 18.) But the "extraordinary circumstances" list in the Instruction Manual merely sets forth the kind of environmental effects considered significant under NEPA. DIR00332. Nothing in this list provides any guidance whatsoever to conditions when CATEX A3 in particular would be inappropriate. The purported "safety value" provides no additional safety to ensure NEPA compliance.

**3) Defendant's attempt to disavow scoping is unavailing.**

CEQ regulations establish that NEPA compliance requires a federal agency to engage in "scoping," which is defined in relevant part as: "There shall be an early and open process for determining the scope of issues to be addressed and for identifying the significant issues related to a proposed action. This process shall be termed scoping." 40 C.F.R. §1501.7. CEQ regulation 40 C.F.R. § 1508.21 defines "NEPA process": "*NEPA process* means all measures necessary for compliance with the requirements of section 2 and title I of NEPA."

Defendant erroneously argues that "scoping" only applies to preparation of an EIS, citing 40 C.F.R §1501.7. The plain language of 40 C.F.R §1501.7 and 40 C.F.R § 1508.21 bely Defendant's contention. The plain language of CEQ's regulations requires application of "scoping" to the entire NEPA process, including formulation and application of a categorical exclusion.

As Plaintiffs have noted, there is no evidence in the Administrative Record that DHS engaged in any form of "scoping" (nor any NEPA analysis of any sort) with respect to the establishment of CATEX A3 or the application of CATEX A3 to the four actions at issue in Count IV. But such "scoping" is required by both the CEQ regulations and Ninth Circuit precedent.

In their Memorandum in Support of Motion for Summary Judgment (ECF No. 70-1), Plaintiffs rely principally on *Bosworth v. Sierra Club v. Bosworth*, 510 F.3d 1016 (9th Cir. 2007), for the requirement that an agency must conduct some form of "scoping" before either establishing or applying a categorical exclusion. (ECF No. 70-1 at 6-8) The *Bosworth* court held that the Forest Service committed reversible error when it failed to engage in the requisite scoping process before proceeding with establishment of a categorical exclusion: "The determination that a categorical exclusion was the proper path to take should have taken place *after* scoping, reviewing the data call, and determining that the proposed actions did not have individually or cumulatively significant impacts." *Id.* at 1027. The *Bosworth* court did also cite to a provision in the

8                                                          Case No: 3:16-CV-2583

Forest Service Handbook that the Ninth Circuit determined also requires scoping. *Id.* Defendant seizes on this Handbook citation in support of its argument that only the Forest Service mandates the extension of scoping to preparation and application of categorical exclusions and this Court should not further extend the scoping requirement to DHS. (Def. Br. at 18-19.) However, the DHS Instruction Manual itself does not limit scoping to preparation of an EIS. This is made plain by DHS's own definition of "NEPA Process" (which includes "scoping" at all stages of DHS "program and project planning") set forth in its Instruction Manual:

> NEPA process: The effort required to systematically address the environmental stewardship and compliance requirements set forth in NEPA during program and project planning, development, and design; and prior to execution of a proposed action for the purpose of protecting, sustaining, or restoring the quality of the human environment. This process consists wholly or in part of scoping, development, and consideration of the proposed action and alternatives, environmental impact evaluation, consideration of mitigation and monitoring its success, consultation, and public involvement. This includes the NEPA Process as defined in 40 C.F.R. §1508.21.

Department of Homeland Security, Instruction Manual 023-01-001-01, Revision 01, Implementation of the National Environmental Policy Act, II-5. Defendant's attempts to limit the requirement that only the Forest Service must comply with "scoping" requirements in its establishment and application of categorical exclusions is thus without merit and should be rejected.

**D)    Plaintiffs have standing under NEPA for their claims.**

**1)  Standard of Review for Standing in NEPA cases.**

To establish Article III standing, Plaintiffs must show: (1) injury-in-fact, (2) causation, and (3) redressability. *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167, 180-81 (2000); *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992). In a NEPA case, the causation and redressability standards are relaxed. *Lujan* 504 U.S at 573, n.7 ("The person who has been accorded a procedural right to protect his concrete interests can

assert that right without meeting all the normal standards for redressability and immediacy."); *Pub. Citizen v. Dep't of Transp.,* 316 F.3d 1002, 1006 (9th Cir. 2003); *rev'd on other grounds,* 541 U.S. 752 (2004); *Comm. To Save the Rio Hondo v. Lucerno,* 102 F.3d 445, 452 (10th Cir. 1996).

"To satisfy the injury in fact requirement, a plaintiff asserting a procedural injury must show that 'the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing.'" *Pub. Citizen,* 316 F.3d at 1015 (quoting *Cantrell v. City of Long Beach,* 241 F.3d 674, 679 (9th Cir. 2001)); *Lujan,* 504 U.S. at 573, n.8. In this analysis, a plaintiff need not present evidence of actual environmental harm. *Laidlaw,* 528 U.S. at 182; *Ocean Advocates v. U.S. Army Corps of Eng'rs,* 361 F.3d 1108, 1120 (9th Cir. 2004) ("To require actual evidence of environmental harm misunderstands the nature of environmental harm' and would unduly limit the enforcement of statutory environmental protections.") (quoting *Ecological Rights Fund. v. Pacific Lumber Co.,* 230 F.3d 1141, 1151 (9th Cir. 2000)); *Citizens for Better Forestry v. U.S. Dep't of Agric.,* 341 F.3d 961, 972 (9th Cir. 2003) ("Were we to agree… that a NEPA plaintiff's standing depends on 'proof that the challenged federal project will have particular environmental effects, we would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake.") Instead, a plaintiff need only show (1) the agency violated its procedural obligations; (2) these procedural obligations were meant to protect plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten plaintiffs' concrete interests. *See Citizens for Better Forestry,* 341 F.3d at 972; see also *Rio Hondo,* 102 F.3d at 451-52.

"Environmental plaintiffs 'seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs,' … can establish standing 'without meeting all the normal standards for … immediacy.'" *Citizens for Better Forestry,* 341 F.3d at 972 (quoting *Hall,* 266 F.3d at 975) (internal citations

Case No: 3:16-CV-2583

omitted); *see also Lujan,* 504 U.S. at 572 & n.7. Thus Plaintiffs need only demonstrate a reasonable probability that Defendant's actions threaten to increase the risk of injury to their concrete interests. *See Citizens for Better Forestry,* 341 F.3d at 972; *Rio Hondo,* 102 F.3d at 451-52. The question of reasonable probability deals with the likelihood of harm, *not with its cause. See Citizens for Better Forestry,* 341 F.3d at 973, n.8 ("It is common to confuse the issue of the likelihood of harm with its cause.").

### 2) Plaintiffs' claims clear the bar for standing in NEPA cases

Plaintiffs commenced this action in order to compel DHS to initiate NEPA compliance with respect to its specific discretionary actions that have fostered population growth in the United States, particularly California, Ex. 3 at 281-288, and are likely to continue to foster such growth. *See* R. Lamm Aff. ECF No. 44-9 ¶ 5; D. Rosenberg Aff. ECF No. 44-10 ¶ 4; C. Wiley Aff. ECF No. 44-11 ¶ 18; R. Oberlink Aff. ECF No. 12 ¶ 12; R. Schneider Aff. ECF 44-13 ¶ 25; S. Hurlbert Aff. ECF 44-14 ¶ 5. Plaintiffs' Amended Complaint includes expert evidence substantiating population growth resulting from DHS's actions and myriad "impacts to the human environment" resulting therefrom. Exs. 3-5. Plaintiffs demonstrate that affiants live in areas where ongoing population growth is caused primarily by Defendant's immigration related actions. (Am. Compl. ¶¶ 30-47.) Plaintiffs' affiants detail harms that are directly traceable to population growth largely resulting from settlement of foreign nationals which is (at least in part) the consequence of Defendant's actions. *Id.*

Defendant seeks to require Plaintiffs to prove beyond doubt that actions that administer the entrance and settlement of foreign nationals into the United States have increased the population. (Def. Br. at 11-12.) But NEPA does not require Plaintiffs to conduct the same environmental investigation that they seek to compel the agency. Yet the Amended Complaint does include expert evidence of actual numbers of immigrants in areas where affiants live, and documents "impacts to the human environment" resulting from this population growth. (Am. Compl. ¶¶ 79-91.)

These documented population growth impacts are not discussed or disputed by Defendant.

Defendant challenges Plaintiffs' standing with respect to CATEX 3A, which is a part of the Instruction Manual, the document that governs DHS's compliance with NEPA. In its earlier motion practice, Defendant did not challenge Plaintiffs' standing with respect to Count I, which asserts that the Instruction Manual is arbitrary and capricious because it fails to require that DHS address population growth related impacts in the course of its routine application of NEPA to its discretionary actions. Indeed, the Instruction Manual fails to include any NEPA framework with respect to the application of NEPA to its vast immigration mission, which includes its administration of immigration rules and policies (many of which qualify as major discretionary actions).

In the course of preparing this litigation, Plaintiffs reviewed every major immigration related action Defendant has undertaken during the last few decades. Plaintiffs' research revealed that Defendant promulgates regulations allowing for the entrance and settlement of foreign nationals without conducting NEPA compliance by preparing either an environmental assessment or an environmental impact statement. This has been borne out by the instant Administrative Record, which has no NEPA analysis for actions related to the entry and settlement of foreign nationals in the United States. This finding leads inexorably to Plaintiffs to conclude that Defendant must deem such actions categorically excluded, since Defendant does assert that it complies with NEPA. (*See, e.g.,* Def. Br. at 15, 20.)[5]

_____

[5] Defendant asserts that DHS "will determine and conduct the appropriate level of NEPA analysis for its actions at the time they are proposed." Def. Br. at 20. But DHS and its predecessor agency have proposed and promulgated dozens of actions administering immigration with no NEPA analysis whatsoever, including the

Plaintiffs reviewed each of DHS's groups of categorical exclusions set forth in the Instruction Manual in order to determine which categorical exclusion could conceivably encompass immigration related actions. CATEX A3 offers the only remotely plausible option, because immigration related rules are inherently "administrative and regulatory activities."[6] Indeed, virtually *everything* DHS undertakes (including every significant action taken to administer the nation's immigration laws) qualifies as "administrative and regulatory activities." When confronted with public comments demanding that DHS embark on NEPA compliance in its immigration related rulemaking, DHS has responded by choosing to "park" these actions in CATEX A3. Therefore, Plaintiffs' standing is properly derived from all of those categorically excluded DHS actions that have (even the potential) to increase the population of the United States, particularly in the areas where the Plaintiffs reside.

Defendant attacks Plaintiffs' standing by claiming that their asserted injuries, particularly those relating to environmental impacts resulting from DHS immigration actions that foster population growth, are not "fairly traceable" to CATEX A3, both

invocation of a categorical exclusion. If DHS does not believe CATEX A3 applies and cannot point to any other categorical exclusion that applies, there is no other conclusion but that Plaintiffs' are correct in their primary contention that DHS ignores NEPA altogether in its administration of immigration laws.

[6] DHS CATEXs are divided into the following functional groupings of DHS mission activities: (a) Administrative and Regulatory Activities. (b) Operational Activities. (c) Real Estate and Personal Property Management Activities. (d) Repair and Maintenance Activities. (e) Construction, Installation, and Demolition Activities. (f) Hazardous/Radioactive Materials Management and Operations. (g) Training and Exercises. (h) Federal Assistance Activities. (i) Component-Specific Categorical Exclusions. (Instruction Manual at V-4, p. 33 of 92.)

Plaintiffs reviewed each of DHS's 152 categorical exclusions in detail, and clearly, and only subsection A could even conceivably cover actions relating to the entry and settlement of foreign nationals into the United States.

on its face and as applied. (Def. Br. at 10-11.) Defendant states that "Plaintiffs fail to even allege, much less demonstrate, that any of the challenged actions have a direct impact on population growth or border crossings and thus could cause the harms they allege." (Def. Br. at 11.) Defendant is mistaken. Plaintiffs' exhibits in the Amended Complaint do establish the impacts of DHS's actions to increase United States population and do harm the southwest border. Again, Defendant has not contested any of the expert testimony presented by Plaintiffs to establish both the population growth, Exs. 3-5, and the impacts to the southwest border, Am. Comp. ¶¶ 29-31, resulting from Defendant's actions. The use of this review is exactly the relief Plaintiffs seek in this action and such NEPA review will constitute proper redress. Plaintiffs thus meet the "redressability" requirement CATEX A3 to avoid NEPA review of its immigration related actions demonstrates that DHS has turned to CATEX A3 as a means of avoiding such NEPA review.

Plaintiffs have established that DHS violated its procedural obligations under NEPA by promulgating the overbroad CATEX A3 and by "parking" the four actions at issue in Count IV in CATEX A3 in order to avoid NEPA review. Thus, Plaintiffs have standing because they allege injury from the harms only made possible because CATEX A3 is used to justify a total lack of NEPA review of those DHS actions that may increase and in fact do increase the United States population, particularly in those places where Plaintiffs reside. *Citizens for Better Forestry,* 341 F.3d at 961.

Plaintiffs' affidavits demonstrate the likelihood of harm to their concrete interests as a result of immigration induced population growth, and likewise demonstrate the cumulative effect Defendant's actions may contribute to this injury. Plaintiffs' demand that DHS consider the population growth effects of its actions comports with established NEPA law. CEQ regulation 40 C.F.R. §1508.8(b) establishes that "growth inducing effects and other effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air

14                                                    Case No: 3:16-CV-2583

and water and other natural systems, including ecosystems" are subject to NEPA analysis. Longstanding Ninth Circuit precedent holds that NEPA analysis includes analysis of "growth inducing effects[.]" *See City of Davis v. Coleman*, 521 F.2d 661 (9th Cir. 1975); *Laguna Greenbelt, Inc. v. U.S. Dep't of Transp.*, 42 F.3d 517 (9th Cir. 1994); *City of Carmel-By-The-Sea* v. *U.S. Dep't of Transp.*, 123 F.3d 1142 (9th Cir. 1997); *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 361 F.3d 1108, 1120 (9th Cir. 2004). Plaintiffs "seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs," can establish standing "without meeting all the normal standards for redressability and immediacy." *Lujan,* 504 U.S. at 572 & n. 7.

CATEX A3, at issue in Counts III and IV, is the NEPA exclusion that DHS asserts to shield its actions that have and continue to induce population growth from even minimal NEPA review. Plaintiffs affidavits document the specific injuries they have incurred due to population growth, which result from DHS actions. Yet DHS has never conducted any cumulative impacts analysis of the "impacts to the human environment" resulting from its actions, or any NEPA review at all.  The actions at issue in Count IV all potentially add population growth to the United States, and to the areas in which affiants reside.

Plaintiffs therefore have met the standing requirements for Counts III and IV.

Other Plaintiffs in the case meet the standing requirements for Count V. Plaintiffs Fred Davis, Patty Davis, Caren Cohen, John Ladd, and Ralph Pope all live by the border, and all have detailed in their affidavits the specific impacts they suffer when masses of foreign nationals cross the border illegally. *See* F. Davis Aff. ECF No. 44-7; P. Davis Aff. ECF No. 44-8; C. Cohen Aff. ECF No. 44-16; J. Ladd Aff. ECF No. 44-17; R. Pope Aff. ECF No. 44-19. Count V addresses the inadequacy of DHS's environmental assessment ("EA") of its response to the border crisis that began in 2014 but continues today, and therefore directly affects Plaintiffs. Defendant admits that the EV was limited to "expanding existing infrastructure" to house the border

crossers and concluded since the population increase was "short term" DHS could issue a "finding of no significant impact." (Def. Br. at 33.) In conducting an analysis strictly limited to the impact of infrastructure, DHS entirely missed that the border crisis itself (not just DHS's response to it) had significant environmental impacts. For instance, the population that entered the country, and resided in DHS's facilities, but then left the facilities for the interior of the United States, clearly have impacts even when they are not housed in DHS's own facilities. There is nothing short term about their impacts. If DHS did not have an institutional blindness to all environmental effects it causes other than infrastructure maintained by DHS itself, it might have noticed that its own asylum policies have induced the crisis, and it might have chosen to take more aggressive steps to *end* the border crisis rather than allow it, to the benefit of the Plaintiffs living at the border. NEPA was passed to ensure than agencies conduct environmentally informed decision-making. In conducting its EA, DHS arbitrarily and capriciously looked only at the effects of buildings within its control, rendering its NEPA compliance a meaningless exercise. The harm, again, was not the ultimate outcome, but "whether the path taken to reach the conclusion was the right one in light of NEPA's procedural requirements." *Citizens for Better Forestry*, 481 F. Supp 2d at 1086. NEPA violated the procedural obligations of NEPA in failing to conduct an environmental analysis.

Plaintiffs have met the standing requirements for Count V.

**E) Defendant disavows positions crucial to prevailing in dismissal of Count I.**

Through a doctrine known as judicial estoppel, courts have long prevented "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage

by pursuing an incompatible theory"). If the party's position is "clearly inconsistent" with the earlier position, "succeeded in persuading the court" to accept the earlier position, and obtains an "unfair advantage" through the "self-contradiction," the party is estopped from asserting the new position. *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001).

During the course of this litigation, DHS has changed its position on the question of whether NEPA procedures adopted by an agency are final, binding, and have legal consequences. In its Partial Motion to Dismiss (ECF No. 47-1), the essence of its argument for dismissal of Count I rested upon whether its NEPA procedures: the DHS Directive 023-01, Rev 01, and the Instruction Manual, DHS Instruction 023-01-001-01 Rev 01,[7] which includes CATEX A3, the categorical exclusion at issue in Counts III and IV, constituted reviewable agency action. DHS's success depended upon its claims that the Instruction Manual, which includes *all* of its categorical exclusions, was tentative, non-binding, and created no legal consequences.

First, DHS changed its position on whether its NEPA procedures are final and subject to external oversight, or merely tentative, non-binding, internal guidelines. DHS' NEPA procedures, adopted in 2014, are referenced as "the Instruction Manual" in Plaintiffs' Amended Complaint.[8] In its Summary Judgment brief, DHS explains that it originally "published its NEPA regulations in final form in April 2006." (Def. Br. at 16; *see also* Def. Br. at 6.) In 2014, DHS revised these NEPA "regulations," which includes the Instruction Manual containing CATEX A3, publishing them first in draft form for public comment, and then "in final form in November 2014." (Def. Br. at

---

[7] https://www.dhs.gov/sites/default/files/publications/DHS_Instruction%20Manual%20023-01-001-01%20Rev%2001_508%20Admin%20Rev.pdf

[8] The "Instruction Manual" is included in the Amended Complaint as Exhibit 2.

16.) Defendant's description of the process by which its NEPA procedures[9] were adopted leaves no doubt that their publication "in final form" in November 2014 marked a consummation of agency decision making process. Defendant takes care to note that "[t]hese regulations" were approved by CEQ. (Def. Br. at 16.) Defendant's argument clearly demonstrates there is nothing non-final, or tentative, about its NEPA procedures, including the Instruction Manual and within it, CATEX A3.[10] As a result of their finality,  DHS now argues that its NEPA procedures, including CATEX A3, are entitled to "great deference" because, "compellingly, CEQ itself reviewed" them. (Def. Br. at 17, quoting *Bosworth*.)

Yet in Defendant's prior formulation, these procedures were characterized as "nothing more" than "internal guidance." (ECF No. 47-1 at 9, 11, 13.) DHS maintained that "'tentative' is a precise description" of the Instruction Manual (and accordingly, CATEX A3 within it), and that it was meant only "to assist DHS personnel." Furthermore, according to DHS, these tentative "steps" were not "binding." (ECF No. 47-1 at 8, 12-13.) Defendant also argued its decision not to include the Instruction Manual in the Code of Federal Regulations was significant in divesting its NEPA procedures of finality or binding force. Defendant's description of

_____

[9] Defendant even calls the NEPA procedures "regulations," even though DHS previously argued that its decision not to enter the procedures in the Code of Federal Regulations was significant. Def. Br. at 16; Def. Mot. to Dismiss at 12.

[10] Defendant may argue that CATEX A3 is final and binding, but that the rest of the Instruction Manual was not. However, CATEX A3 is part of the Instruction Manual and was never adopted separately. CATEX A3's status as a final action is inseparable from that of the Instruction Manual. When CEQ approved of DHS' NEPA procedures, it did so in their entirety. *See, e.g.*, Letter from Connaughton to Chertoff, March 23, 2006. In its brief, DHS acknowledges that CATEX A3 "must be used in conjunction with" material elsewhere in Instruction Manual. (Def. Br. at 18.) That DHS did not include CATEX A3 in its motion to dismiss, suggests that a desire to take inconsistent positions played a role in its decision.

the Instruction Manual as merely internal, tentative guidance implies its contents could be changed at any time, at the will of DHS alone. Yet, as Defendant now acknowledges, DHs is required to, and did, obtain approval of the Instruction Manual from CEQ, an external, authoritative body.

Second, DHS changed its position on whether or not legal consequences flow when an agency adopts NEPA procedures. In Defendant's brief in support of its motion for dismissal of Counts I and II (ECF No. 47-1), Defendant claimed no legal consequences flowed from its adoption of NEPA procedures. Its adoption of its Instruction Manual (that is, its NEPA procedures), did not constitute "an action by which rights and obligations have been determined or from which legal consequences will flow." (ECF No. 47-1 at 9.) "Legal consequences do not flow from the Instruction Manual-- it has no force of law." (ECF No. 47-1 at 11.) "The Ninth Circuit," the Defendant claimed, has emphasized that the courts "have no authority to bind an agency to the guidelines in a Manual or a Handbook." (ECF No. 47-1 at 11).

However, in its pending summary judgment brief, Defendant asserts that legal consequences do indeed flow from the adoption of NEPA procedures, even if they are labelled a "handbook" (or a manual). (Def. Br.  at 19.) Defendant claims that the Ninth Circuit, in *Bosworth,* "relied [on] the Forest Service's Handbook" when it enforced a requirement to conduct scoping before adopting a categorical exclusion. *Id.* That is, in its latest motion practice, DHS admits, as a general matter, that the adoption of NEPA procedures is an action with legal consequences that a Court can enforce, and in the Forest Service's case, the court can require scoping before application of a categorical exclusion.[11] Furthermore, DHS acknowledges that its own

---

[11] The Forest Service called their NEPA procedures a "handbook." DHS called its procedures a "Manual." DHS made much of the fact that its NEPA procedures was labelled a "Manual" and insisted its label made it more akin to internal documents

adoption of the Instruction Manual has legal consequences. DHS claims that when invoking a categorical exclusion, it "*must*" (emphasis added) consult "a list" contained within the Instruction Manual "that identifies conditions" when that categorical exclusion can be used. (Def. Br. at 18.) DHS admits its use of the Instruction Manual is mandatory and insists it has legal consequences. The contradiction is clear. In its latest memorandum DHS asserts that legal consequences do indeed flow from the provisions of its Instruction Manual, just as legal consequences flow to other agencies from their own NEPA procedures. Defendant has entirely changed its position on whether *legal consequences* flow from the adoption of NEPA procedures.

DHS is attempting to "have it both ways," asserting that the Instruction Manual is both final agency action for purposes of its pending motion while it asserted to the contrary in its prior motion.  The principles of judicial estoppel must prohibit Defendant from thus "deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993).

## III. Conclusion

For the foregoing reasons, Plaintiffs should be granted summary judgment on Counts III, IV, and V.

Respectfully Submitted on June 17 2019,

/s/Julie B. Axelrod

| | |
|---|---|
| Julie B. Axelrod | Lesley Blackner |
| California Bar. No. 250165 | Admitted *Pro Hac Vice* |
| Center for Immigration Studies | Florida Bar No. 654043 |
| 1629 K Street, NW, Suite 600 | 340 Royal Poinciana Way, Suite 317-377 |

---

found in other agencies also labelled "manuals" but otherwise very different from agency NEPA procedures. (ECF 39-1 at 12.) The label is not what is important. DHS also presents no argument why, if legal consequences flow from other agencies' NEPA procedures, such consequences would not flow from DHS's. The CEQ requires every agency to adopt NEPA procedures.

Washington, D.C. 20001                    Palm Beach, FL 33480
jba@cis.org                               lesleyblackner@gmail.com


James P. Miller
California Bar No. 188266
Law Office of JP Miller Jr.
181 Rea Ave, Suite 101
El Cajon, CA 92020
jpmiller@jpmillerlaw.com